IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| De Lage Landen Financial Services, Inc. : | |
| : | CIVIL ACTION NO. 02-CV-2810 |
| Plaintiff : | |
| and : | |
| : | |
| Toshiba America Medical Systems, Inc. : | |
| : | |
| Intervenor Plaintiff : | |
| : | |
| vs. : | |
| : | |
| DeSoto Diagnostic Imaging, LLC., Randon J. Carvel, Lynn T. Carvel, Delta Radiology, P.C. and Zobar Properties, LLC. | |
| Defendants | |

**MEMORANDUM OF LAW OF
PLAINTIFF DE LAGE LANDEN FINANCIAL SERVICES, INC.
IN OPPOSITION TO DEFENDANTS' MOTION FOR CHANGE OF VENUE FOR
CONVENIENCE OF WITNESSES AND IN THE INTEREST OF JUSTICE**

I.    **PRELIMINARY STATEMENT**

This action for breach of contract was commenced by Plaintiff De Lage Landen Financial Services, Inc. ("DLL") to recover in excess of $3.25 million from Defendant DeSoto Diagnostic Imaging, LLC ("DDI") as a result of DDI's default upon a certain Master Lease Agreement (the "Master Lease") for the rental of medical equipment including an ultrasound device and MRI and CT systems, and as a further result of Defendants' Randon J. Carvel, Lynn T. Carvel, Delta Radiology, P.C. ("Delta") and Zobar Properties, LLC ("Zobar") (collectively, the "Guarantor Defendants") respective defaults upon certain Guaranties of DDI's obligations to DLL under the Master Lease. The Master Lease and Guaranties were assigned to DLL by Toshiba America Medical Systems, Inc. ("TAMS"), which has filed a Complaint as an Intervenor Plaintiff to

assert its rights under the Master Lease and Guaranties and certain service and maintenance agreements between itself and the Defendants.

Presently before the Court is Defendants' "Motion for Change of Venue for Convenience of Witnesses and in the Interest of Justice" (the "Motion"), in which Defendants seek to transfer venue of this action from the Eastern District of Pennsylvania to the Northern District of Mississippi. DLL respectfully submits that Defendants' Motion should be denied.

The United States Supreme Court, in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947), set forth a series of private and public factors to be considered in a motion for transfer of venue. In this case, virtually all of these factors weigh in favor of this Court retaining jurisdiction. First and foremost, DLL, as Plaintiff, chose the Eastern District of Pennsylvania as the forum for this action, and the Plaintiff's choice of forum is "generally entitled to great weight" and is a "paramount consideration [which] should not be lightly disturbed." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995); Shuttle v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970). Second, each of the five Defendants has consented to jurisdiction in the Eastern District of Pennsylvania pursuant to choice of forum provisions contained in the Master Lease and Guarantys that give rise to this action. See, Jumara, supra., 55 F.3rd at 880 (a forum selection clause is entitled to "substantial consideration in the decision of whether to transfer a case"). While a trial in Philadelphia might be inconvenient to Defendants, it is equally true that a trial in Mississippi would be inconvenient to plaintiff and, on information and belief, to TAMS.

Another important factor weighing against transfer is that DLL intends to assert a Crossclaim against TAMS which will be based upon a certain Master Contract Financing Program Agreement between DLL and TAMS which, inter alia, allocates the respective rights

and responsibilities of DLL and TAMS to one another under contracts such as the Master Lease and Guaranties executed by Defendants. The contract between DLL and TAMS, a copy of which is attached as Exhibit F to TAMS's Intervenor Complaint, is, by its own terms, to be construed under Pennsylvania law and will require testimony and documentary evidence that is located in the Eastern District of Pennsylvania, California, Tennessee, and possibly other districts, other than the Northern District of Mississippi. Thus, contrary to the assertion by Defendants in their Motion, there are many evidentiary components of this case that do not have any ties to the Northern District of Mississippi.

The burden of proof in a motion to transfer venue is on the moving party to establish that a balancing of the proper interests weighs in favor of the transfer. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947); Shuttle v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970). Further, the moving party must make an evidentiary showing that the factors set forth in Gulf Oil Corp. v. Gilbert support a decision to transfer the case. Pro Spice, Inc. v. Omni Trade Group, Inc., 173 F. Supp. 2d 336, 340-41 (E.D.Pa. 2001). DLL will demonstrate herein that Defendants have not met their burden. Accordingly, the Motion to Change Venue should be denied.

## II. FACTS AND PROCEDURAL HISTORY

On June 9, 2000, DDI leased certain medical equipment including an ultrasound device and MRI and CT systems from TAMS for a lease term of 63 months, during which time DDI was obligated to make 60 monthly payments, each in the amount of $48,434.87, to TAMS. The lease terms were memorialized in the Master Lease, which was signed and accepted by TAMS in Berwyn, Pennsylvania on December 29, 2000. On June 9, 2000, the Guarantor Defendants each executed an absolute and unconditional Guaranty of DDI's obligations to TAMS under the

Master Lease. Subsequently, TAMS assigned all of its right, title and interest under the Master Lease and Guaranties to DLL. Copies of the Master Lease and Guaranties are attached as Exhibits A, B, C, D and E, respectively, to DLL's Complaint.

On or about February 1, 2002, DDI defaulted upon its obligations to DLL by, <u>inter alia</u>, failing to make lease payments when due, and subsequently by dismantling and removing the medical equipment prior to the end of the lease term. Subsequently, the Guarantor Defendants defaulted for nonpayment upon their obligations to DLL. Defendants' outstanding balance to DLL under the Master Lease and Guaranties is in excess of $3.25 million. Upon DLL's information and belief from counsel for TAMS, each of the pieces of medical equipment leased to DDI under the Master Lease Agreement has been recovered by TAMS and removed from DDI's offices in Mississippi. All of the equipment, with the exception of the MRI, is presently being stored by TAMS in California, while the MRI is being stored by TAMS in Memphis, Tennessee.

Several provisions in the Master Lease and Guaranties are particularly germane to the Motion presently before the Court. Specifically, the Master Lease, at paragraph 24, states:

> "Choice of Law: <u>This Agreement and each Lease hereunder shall be binding and effective when accepted by Lessor at its corporate office in Berwyn, Pennsylvania, shall be deemed to have been made in Berwyn, Pennsylvania and</u>, except for local filing requirements and laws relating to conflict of laws, <u>shall be governed and construed in accordance with the laws of the Commonwealth of Pennsylvania. Lessee hereby consents to and agrees that personal jurisdiction over Lessee and subject matter jurisdiction over the Equipment shall be with the Courts of the Commonwealth of Pennsylvania or the Federal District Court for the Eastern District of Pennsylvania, solely at Lessor's option</u>, with respect to any provision of this Agreement or any Lease hereunder. Lessee agrees that service of process in any action or proceeding may be duly effected upon Lessee by mailing such process via certified mail, return receipt requested. Lessee also agrees to waive its right to a trial by jury." (emphasis supplied)

4

The Master Lease, at ¶2, further states:

> "This Agreement shall become effective upon acceptance and execution by Lessor at its corporate offices [in Berwyn, Pennsylvania]. … All payments hereunder shall be made to Lessor at its address specified above [in Berwyn, Pennsylvania]…."

Paragraph 8.2 of the Blanket Personal Guaranties signed by Defendants Lynn T. Carvel and Randon J. Carvel, and paragraph 8.2 of the Guaranties of Defendants Delta and Zobar (which were both executed by Lynn T. Carvel), state:

> "<u>Guarantor hereby irrevocably submits itself to jurisdiction in the Courts of the Commonwealth of Pennsylvania and to jurisdiction in the United States District Court for the Eastern District of Pennsylvania with respect to any matter, suit or proceeding arising out of this Guaranty</u> or to transactions contemplated hereby. Guarantor agrees that service of process may be duly made upon it by registered or certified mail (return receipt requested) at the address of Guarantor set forth herein or at such other address as Guarantor shall from time to time designate by notice to Lessor similarly given." (emphasis supplied)

On May 10, 2002, DLL commenced this diversity action by filing a Complaint against Defendants. In accordance with the choice of law and forum selection provisions quoted above, DLL chose to file in the Eastern District of Pennsylvania. DLL's Complaint sets forth five causes of action alleging that DDI and the Guarantor Defendants are liable to DLL for an amount in excess of $3.25 million for the various breaches of the Master Lease and Guaranties described above. The Complaint further alleges that DDI is liable to DLL for violating the Master Lease by dismantling and damaging some or all of the medical equipment, and requests that a judgment for replevin be entered for DDI's unlawful retention of some or all of the medical equipment. The Complaint further alleges a claim for money damages and an accounting against Defendant Lynne T. Carvel for her violation of a certain Debt Subordination Letter that she gave to TAMS and that was subsequently assigned to DLL.

On or about May 24, 2002, TAMS, not previously a party but believing it has an interest in the proceedings, filed a Complaint as an Intervenor Plaintiff against Defendants. TAMS's Complaint requests that the Court enter a declaratory judgment to effect that the Defendants are obligated to make payment to DLL under the terms of the Master Lease and Guaranties, and that the Defendants must indemnify TAMS and hold it harmless with respect to potential claims by DLL, including a recourse payment in the amount of $375,000 which TAMS owes to DLL as a result of the default by Defendants. TAMS's Complaint further alleges two additional claims against DDI, for breach of contract and unjust enrichment, for its violation of certain maintenance and service agreements involving the medical equipment.

On August 14, 2002 Defendants filed Answers and Counterclaims to the Complaints of both DLL and TAMS. The Answers and Counterclaims essentially admit that Defendants executed the Master Lease and Guaranties but deny liability and seek affirmative relief on the grounds that the medical equipment allegedly did not perform as intended and that TAMS failed to repair and maintain the radiological equipment to DDI's satisfaction. Defendants' theory of liability against DLL on the counterclaim is that DLL was an alleged joint venturer with TAMS and/or took the assignment of the Master Lease and Guaranties from TAMS with knowledge that the medical equipment was substandard.

Contemporaneously with the filing of their Answers and Counterclaims on August 14, 2002, Defendants filed the Motion for Change of Venue that is presently before the Court. The Motion alleges that venue should be transferred from this Court to the Northern District of Mississippi for the convenience of the parties and certain witnesses. As set forth more fully below, DLL respectfully requests that Defendants' Motion be denied.

## III. LEGAL ARGUMENT

### A. Legal Standards For a Motion to Change Venue

Pursuant to 28 U.S.C. §1391(a), venue in a diversity of citizenship action may be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the acts or omissions giving rise to the claim occurred or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, but only if there is no district in which the action may otherwise be brought." However, pursuant to 28 U.S.C. §1404(a) even when venue is proper under §1391(a), a Court may transfer venue for the convenience of the parties and witnesses, or in the interest of justice, to any other district where the action might have been brought.

The first step in a court's analysis of a Motion to Transfer Venue under §1404(a) is to determine whether venue would be proper in the district to which transfer has been proposed. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995); Pro Spice, Inc. v. Omni Trade Group, Inc., 173 F. Supp. 2d 336, 339 (E.D. Pa. 2001). If this prong of the analysis is satisfied, the Court must next determine whether a transfer would be appropriate by examining a series of private and public factors, including the Plaintiff's choice of venue; the Defendant's preference, where the claim arose; the relative physical and financial condition of the parties; the extent to which witnesses may be unavailable for trial in one of the fora; the extent to which records or other documentary evidence could not be produced in one of the fora; the enforceability of any judgment; practical considerations that could make the trial easy, expeditious or inexpensive; the relative administrative difficulty into fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the

trial judge with the applicable state law in diversity cases. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947); Jumara v. State Farm Ins. Co., 55 F. 3rd 873, 879 (3d Cir. 1995); Pro Spice, Inc. v. Omni Trade Group, Inc., 173 F. Supp. 2d 336, 339 (E.D.Pa. 2001).

The decision to transfer venue is in the Court's discretion, but a transfer is not to be liberally granted. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947). The party seeking to transfer the case bears the burden of proof and must demonstrate that a balancing of the pertinent factors weighs in favor of transfer. Jumara v. State Farm Ins. Co., 55 F.3d at 879; Myers v. Am. Dental Ass'n., 695 F. 2d 716, 724-725 (3d. Cir. 1982), cert. denied, 462 U.S. 1106, 103 F. Ct. 2453, 77 L Ed. 2d 1333 (1983); Pro Spice, Inc. v. Omni Trade Group, Inc., 173 F. Supp. 2d 336, 339 (E.D. Pa. 2001). In order to meet this burden, the moving party must make an evidentiary showing that the factors set forth in Gulf Oil Corp. v. Gilbert support a decision to transfer the case. Pro Spice, Inc. v. Omni Trade Group, Inc., 173 F. Supp. 2d 336, 340-41 (E.D.Pa. 2001).

Of the factors cited in Gulf Oil Corp. v. Gilbert, the Plaintiff's chosen forum is a "paramount consideration [which] should not be lightly disturbed," and unless the balance of convenience of the parties is "strongly in favor of " of the Defendant, the Plaintiff's choice of forum should prevail." Shuttle v. Armco Steel Corp., 431 F. 2d 22, 25, (3d Cir. 1970). In addition to the Plaintiff's choice of forum, forum selection clauses contained in the contracts or agreements between the litigants will greatly impact the decision of whether to transfer venue because such clauses are treated as a "manifestation of the parties' preferences as to a convenient forum." Jumara v. State Farm Ins. Co., 55 F.3d at 880 (quoting Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29-30, 108 S.Ct. 2239, 2244 101 L.Ed.2d 22 (1988). Forum selection

8

clauses, while not dispositive, are entitled to "substantial consideration." Jumara v. State Farm Ins. Co., 55 F.3d at 880 (quoting Stewart Organization, Inc. supra, 487 U.S. at 29-30, 108 S.Ct. at 2244); Shore Slurry Seal, Inc. v. CMI Corp., 964 F.Supp. 152, 156 (D.N.J. 1997). Where the forum selection clause is valid, which requires that there have been no "fraud, influence, or overweening bargaining power," the party seeking to transfer venue outside of the agreed upon forum bears the burden of demonstrating why they should not be bound by their contractual choice. Jumara v. State Farm Ins. Co., 55 F.3d at 880 (quoting The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12-13, 92 S.Ct. 1907, 1914-15, 32 L.Ed.2d 513 (1972)); see also, Electronic Realty Associates, L.P. v. Vaughn Real Estate, Inc., 897 F.Supp. 521 (D.Kan. 1995) (forum selection clause held valid absent showing of fraud or duress in its adoption). Applying these standards to the Motion presently before the Court, is clear that this action should not be transferred from this District.

### B.    Venue is Proper in This District Under 28 U.S.C. §1391(a).

Venue is proper in this District for two reasons. First, pursuant to 28 U.S.C. §1391(a)(2), venue in a diversity of citizenship action may lie in a judicial district in which a substantial part of the act or omissions giving rise to the claim occurred. In determining whether this standard has been met, a court considers the location of those events or omissions that gave rise to the plaintiff's claim and not the defendant's contacts with a particular district. Pro Spice, Inc. v. Omni Trade Group, Inc., 173 F. Supp. 2d 336, 339 (E.D.Pa. 2001) (citing, Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994). The events and omissions supporting the claim must be more than tangentially connected to the district to be considered to be substantial in order "to preserve the element of fairness so that a defendant is not haled into a remote district

having no real relationship to the dispute." Id. (citing, Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994).

In this case, the events and omissions supporting DLL's claims against Defendants and Crossclaims against TAMS are more than tangentially connected to the Eastern District of Pennsylvania. As noted, DLL maintains its place of business, indeed its United States headquarters, in Wayne, Pennsylvania; DDI's payments were mailed to Philadelphia and processed by DLL in Wayne, Pennsylvania; DLL's books and records pertaining to the Defendants were and are maintained in Wayne, Pennsylvania; and 10 of the 11 witnesses DLL presently expects to testify in this action maintain their offices at DLL's headquarters in Wayne, Pennsylvania. See, the Affidavit of Lawrence Levin, a Bankruptcy Specialist in DLL's Litigation and Recovery Department, at ¶¶2-9 (the "Levin Affidavit"), a copy of which is attached hereto, incorporated herein by reference and labeled as Exhibit A.

Second, each of the Defendants has consented to jurisdiction in the Eastern District of Pennsylvania pursuant to the forum selection clauses in the Master Lease and Guaranties. See, Coface v. Optique Du Monde, Ltd., 521 F.Supp. 500 (S.D.N.Y. 1980) (a forum selection clause constitutes the defendant's consent to venue in the court identified in the clause). Forum selection clauses will be upheld unless the party seeking to transfer venue can prove that the clause resulted from fraud, influence, or overweening bargaining power in the negotiation of the contract. The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12-13, 92 S.Ct. 1907, 1914-15, 32 L.Ed.2d 513 (1972). Defendants' Motion makes no claims of fraud, influence, or overweening bargaining power, nor does it otherwise attack the validity of the choice of forum provisions in

the Master Lease and Guaranties.[1] Thus, pursuant to 28 U.S.C. §1391(a)(2) and the choice of forum provisions, venue in this District is proper.

### C. This Court Should Not Transfer Venue Under 28 U.S.C. §1404(a).

DLL concedes that venue in this action would be proper in the Northern District of Mississippi under §1391(a)(2). Thus, under §1404(a), this Court must now determine whether a transfer would be appropriate by examining the private and public factors set forth by the United States Supreme Court in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947). In this regard, the burden is on the Defendants, as the movants, to make an evidentiary showing that these factors support a decision to transfer the case. Pro Spice, Inc. v. Omni Trade Group, Inc., 173 F. Supp. 2d 336, 340-41 (E.D.Pa. 2001).

#### (1) Private Factors Which Favor Venue in This Court.

In addition to the choice of forum clause noted above, DLL's decision to bring this action in Pennsylvania is a "paramount consideration [which] should not be lightly disturbed." Shuttle v. Armco Steel Corp., 431 F. 2d 22, 25, (3d Cir. 1970). Defendants have not made an evidentiary showing to meet their burden of proving that the balance of conveniences of the parties is strongly in their favor, and thus DLL's choice of forum should prevail. Pro Spice, Inc. v. Omni Trade Group, Inc., 173 F. Supp. 2d 336, 341 (E.D.Pa. 2001).

Of course, Defendants, rather than DLL, could have commenced this action by suing TAMS and/or DLL in Mississippi for the causes of action alleged in their Counterclaims. Surely

---

[1] While Defendants' Motion, at paragraph 25, alleges in a purely conclusory fashion that the Master Lease and Guaranties, in are, in their entirety, "contracts of adhesion," Defendants have neither made an evidentiary showing nor cited any legal authority to support this assertion or to otherwise persuade the Court that the choice of forum provisions should not be enforced. Obviously, if Defendants, who are well-educated, sophisticated physicians, felt that the Master Lease and Guaranties were contracts of adhesion or that they somehow did not have equal bargaining during their lease negotiations with TAMS, then they were of course free to lease the medical equipment from another lessor, or to not lease any equipment at all.

Defendants knew when they terminated their relationship with TAMS and refused to tender payment to DLL, that litigation would result. Indeed, Defendant Lynn T. Carvel's letter of October 8, 2001 addressed to Hiromitsu Igarashi of TAMS, which is attached as Exhibit D to Defendants' Answer and Counterclaim to TAMS's Intervenor Complaint, states that she has "sought legal counsel and [is] prepared to take the necessary action." Had Defendants taken the action that they claim they were prepared to take and sued DLL and/or TAMS prior to the date on which DLL commenced this action, then they could have secured venue in their own chosen forum, in which case they, rather than DLL, would be entitled to the deference accorded to the plaintiff's choice of forum.

Another factor that weighs against transfer is that this action is not, as Defendants would have the Court believe, a Mississippi dispute involving mainly Mississippi parties, Mississippi witnesses and medical equipment utilized and maintained solely in Mississippi. In fact, this is a multi-jurisdictional dispute involving parties who reside or have places of businesses throughout the United States. Specifically, the pleadings reveal that DLL is a Michigan corporation with a place of business in Wayne, Pennsylvania (see, DLL's Complaint at ¶1); TAMS is a California corporation with a principal place of business in Tustin, California (see, TAMS's Complaint at ¶1); both of the individual defendants, Randon J. Carvel and Lynn T. Carvel, reside in Tennessee; and Defendant Delta is a Tennessee corporation with a principal place of business in Tennessee. See, Defendants' Answer and Counterclaim to DLL's Complaint, at ¶¶4-6. Of the Defendants, only DDI and Zobar are Mississippi corporations with places of business in Mississippi. Further, upon DLL's information and belief, all of the medical equipment at issue

has been removed from DDI's offices in Mississippi and is now being stored in California and Tennessee.  Levin Affidavit, ¶9.

With respect to witnesses, from the Motion and Affidavit of Counsel submitted by Defendants, it appears that the majority of the non-party witnesses who reside in Mississippi are various employees of DDI (see, the Affidavit of Kyle Tate, which is attached to Defendants' Motion, at ¶6).  Because these witnesses are DDI's own employees, compulsory process will not be required to obtain their testimony, and thus this factor should not weigh in favor of transfer.  See, Lowery v. Great Lakes Dredge & Dock Co., 2001 WL 818548, at *2 (E.D.Pa.).  Further, Defendants' contention that each witness must be absent from their homes for two weeks to attend trial is without merit, as there is no reason why each individual would be required to remain in Philadelphia for the entire length of the trial.  In fact, other than Defendants Randon J. Carvel and Lynn T. Carvel, there is no reason why any defense witnesses must travel to Philadelphia as the testimony can be recorded via deposition or videotape deposition for presentation during trial.  Indeed, it does not appear that there are any material defense witnesses who are not controlled by Defendants or whose depositions cannot be taken in lieu of traveling to Philadelphia.

In addition, as set forth in paragraphs 4-5 of the Levin Affidavit, 10 of DLL's 11 witnesses maintain their offices at DLL's headquarters within the Eastern District of Pennsylvania in Wayne, Pennsylvania (the 11th witness works in Duluth, Georgia).  Further, DLL believes and therefore submits that, of the approximately 16 witnesses that TAMS may call, not one is located within the Northern District of Mississippi and two reside in Japan.  Thus, while litigating this action in Philadelphia may be inconvenient to Defendants and their witnesses, it would not be inconvenient for DLL and TAMS and their witnesses.  Indeed, if this

13

action is transferred to the Northern District of Mississippi, it will be just as inconvenient for DLL's and TAMS's witnesses to travel to Mississippi for trial as it would be for Defendants' witnesses to travel to Pennsylvania.  Pro Spice, Inc. v. Omni Trade Group, Inc., 173 F. Supp. 2d 336, 339 (E.D.Pa. 2001); Lowery v. Great Lakes Dredge & Dock Co., 2001 WL 818548, at *2 (E.D.Pa.).  Thus, the witness inconvenience factor does not weigh in favor of transfer.

Another important factor for the Court's consideration is that DLL intends to file a Crossclaim against TAMS based upon the Master Contract Financing Program Agreement between DLL and TAMS which, inter alia, allocates their respective rights and responsibilities to one another under contracts such as the Master Lease and Guarantys executed by Defendants. The contract between DLL and TAMS, a copy of which is attached as Exhibit F to TAMS's Intervenor Complaint, is by its own terms to be construed under Pennsylvania law and will require testimony and documentary evidence that is located in the Eastern District of Pennsylvania and possibly other Districts, but not the Northern District of Mississippi.  Levin Affidavit, ¶¶6-7.  Thus, contrary to Defendants' assertions, there are many components of this case that are unrelated to the performance of the medical equipment and which do not have any ties at all to the Northern District of Mississippi.  This factor should weigh heavily against transfer.

The final private factors which weigh against transfer involve cost.  First, DDI has failed to prove its assertion that litigating this action in Pennsylvania would be unduly costly in terms of disruption to its business.  This factor was cited only in the affidavit of Defendants' counsel (not an affidavit by a party), and there is no further documentation or explanation of this contention in the record, and thus it should be considered in favor of transfer.  See, Pro Spice, Inc., supra, 173 F. Supp. 2d at 341. Again, had Defendants wished to avoid potential disruption

of their business, they could have sued first on their Counterclaims, thus putting themselves in position to choose their own forum. Second, Defendants have made no claim that the cost of litigating this matter in Pennsylvania as opposed to Mississippi would be unduly prohibitive, and thus this factor should not weigh in favor of transfer.

### (2) There Are No Public Factors Which Favor Venue in Mississippi.

Defendants' Motion makes no reference to any of the public factors identified by the Supreme Court in Gulf Oil Corp. v. Gilbert, supra, as being pertinent to a motion to change venue. In fact, none of these factors (which include the relative administrative difficulty resulting from court congestion, the enforceability of judgments, the local interest in deciding local controversies at home, the public policies of the two jurisdictions, and, the familiarity of the trial judge with the applicable state law in diversity cases) dictate that Mississippi is a more appropriate forum than Pennsylvania.

Most significantly, since the Master Lease and Guaranties all contain Pennsylvania choice of law provisions, the judges of the Eastern District of Pennsylvania, being more familiar with Pennsylvania law than the judges of the Northern District of Mississippi, would be in a better position to preside over this action. Thus, this factor weighs against transfer. Further, the Defendants have not argued, and there is nothing in the record to establish, that the Federal Courts of Mississippi are less congested than those of Pennsylvania, or that either Court is so congested that the case might have administrative problems in either jurisdiction. Likewise, there is no indication that the State of Mississippi, as a matter of public policy, has any greater interest in seeing this dispute resolved within its borders than does the Commonwealth of Pennsylvania, or that final judgments against any of the parties would be more or less

enforceable in either of the jurisdictions. Thus, the public factors, like the private factors, weigh against transfer.

### (3) Caselaw Directly On-Point Favors Venue in Pennsylvania.

A recent opinion by the Honorable Jay C. Waldman of this Court in the action De Lage Landen Financial Services, Inc. v. Cardservice International, Inc., 2000 WL 1593978 (E.D.Pa.), a copy of which is attached hereto and labeled as Exhibit B, is on all fours with this case. Cardservice International is similar to this action not only in that DLL is the Plaintiff in both cases, but also in that it presented a motion to change venue that was denied by the Court under circumstances virtually identical to those presented here. In Cardservice International, which involved DLL's financing of a lease of photocopiers to a company in California, the Court held that, although many of the pertinent events took place in California and the defendant would clearly be inconvenienced by litigating the case in Pennsylvania, these factors were insufficient to overcome the fact that DLL chose to commence the action in Pennsylvania and that the parties had agreed to a forum selection clause providing for jurisdiction in Pennsylvania.

## IV. CONCLUSION

Defendants DeSoto Diagnostic Imaging, LLC, Randon J. Carvel, Lynn T. Carvel, Delta Radiology, PC and Zobar Properties, LLC have not met their burden of proving that a balancing of the pertinent factors weighs strongly in favor of transfer. Thus, for the reasons set forth herein, Plaintiff De Lage Landen Financial Services, Inc. respectfully requests that this Honorable Court enter an Order denying Defendants' Motion to transfer venue to the United States District Court for the Northern District of Mississippi.

    Respectfully submitted,

    **McCARTER & ENGLISH, LLP**

    Mellon Bank Center
    1735 Market Street
    Suite 700
    Philadelphia, PA  19103
    Attorneys for Plaintiff,
    De Lage Landen Financial Services, Inc.


    By: _____
        Rosetta B. Packer, Esquire
        Peter J. Boyer, Esquire
        David J. Gaier, Esquire

Dated: September 23, 2002

PH1: 112567.01