IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| De Lage Landen Financial Services, Inc. : | CIVIL ACTION NO. 02-CV-2810 |
| Plaintiff : | |
| And : | |
| Toshiba America Medical Systems, Inc. : | |
| Intervenor Plaintiff : | |
| vs. : | |
| DeSoto Diagnostic Imaging, LLC., Randon J. Carvel, Lynne T. Carvel, Delta Radiology, P.S. and Zobar Properties, LLC. : | |
| Defendants : | |

**ORDER**

AND NOW, this ____ day of ____, 2002, upon Intervenor Plaintiff Toshiba America Medical Systems, Inc.'s Motion to Dismiss Counts VIII, IX and XIII of Plaintiff De Lage Landen Financial Services, Inc.'s Crossclaim, and Plaintiff's Response thereto, it is hereby ORDERED that the said Motion is DENIED.  Intervenor Plaintiff shall file an Answer to Counts VIII, IX and XIII of Plaintiff's Crossclaim within 20 days of the date of service of this Order.

By the Court:

_____
Ronald L. Buckwalter, U.S.D.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| De Lage Landen Financial Services, Inc. :<br>:<br>Plaintiff :<br>And :<br>:<br>Toshiba America Medical Systems, Inc. :<br>:<br>Intervenor Plaintiff :<br>:<br>vs. :<br>:<br>DeSoto Diagnostic Imaging, LLC., Randon J. :<br>Carvel, Lynne T. Carvel, Delta Radiology, :<br>P.S. and Zobar Properties, LLC. :<br>:<br>Defendants : | CIVIL ACTION NO. 02-CV-2810 |

**PLAINTIFF'S RESPONSE TO INTERVENOR PLAINTIFF'S
MOTION TO DISMISS COUNTS VIII, IX AND XIII
OF PLAINTIFF'S CROSSCLAIM**

Plaintiff De Lage Landen Financial Services, Inc. ("DLL"), by its attorneys, McCarter & English, LLP, files the within Response in opposition to Intervenor Plaintiff Toshiba America Medical Systems, Inc. ("TAMS"), Motion to Dismiss Counts VIII, IX and XIII of DLL's Crossclaim, and in support thereof states as follows:

1. Denied. Paragraph one of TAMS's Motion to Dismiss states conclusions of law to which no response is required. Further, Counts VIII and IX of DLL's Crossclaim are not precluded by the "gist of the action" doctrine as alleged.

2. Denied. Paragraph two of TAMS's Motion to Dismiss states conclusions of law to which no response is required. Further, Count XIII of DLL's Crossclaim is not precluded under Pennsylvania law as alleged.

WHEREFORE, for the reasons set forth in the attached Memorandum of Law, Plaintiff De Lage Landen Financial Services, Inc. respectfully requests that this Honorable Court enter an Order

denying Intervenor Plaintiff Toshiba America Medical Systems, Inc.'s Motion to Dismiss Counts VIII, IX and XIII of Plaintiff's Crossclaim.

Respectfully submitted,

**McCARTER & ENGLISH, LLP**


By:_____
Rosetta B. Packer, Esquire
Peter J. Boyer, Esquire
David J. Gaier, Esquire

Mellon Bank Center
1735 Market Street, Suite 700
Philadelphia, PA  19103
Attorneys for Plaintiff,
De Lage Landen Financial Services, Inc.


Dated: November 19, 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| De Lage Landen Financial Services, Inc. : <br> : <br> Plaintiff : <br> and : <br> : <br> Toshiba America Medical Systems, Inc. : <br> : <br> Intervenor Plaintiff : <br> : <br> vs. : <br> : <br> DeSoto Diagnostic Imaging, LLC., Randon J. : <br> Carvel, Lynn T. Carvel, Delta Radiology, P.C. : <br> and Zobar Properties, LLC. : <br> : <br> Defendants : | CIVIL ACTION NO. 02-CV-2810 |

MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S RESPONSE TO INTERVENOR PLAINTIFF'S
MOTION TO DISMISS COUNTS VIII, IX AND XIII
OF PLAINTIFF'S CROSSCLAIM

I. PRELIMINARY STATEMENT

This action was commenced by Plaintiff De Lage Landen Financial Services, Inc. ("DLL") to recover in excess of $3.25 million from Defendants DeSoto Diagnostic Imaging, LLC ("DDI"), Randon J. Carvel, Lynn T. Carvel, Delta Radiology, P.C and Zobar Properties, LLC as a result of defendants' defaults upon a certain Master Lease Agreement and attendant Guaranties for the rental of medical and radiological diagnostic equipment. After Defendants filed an Answer and Counterclaim against DLL in which they allege that DLL is liable for TAMS's failure to properly service and maintain the medical equipment,[1] DLL filed a Crossclaim against TAMS for full indemnification for all costs and potential losses it may sustain in relation to this matter,

---

[1] Defendants have asserted a Counterclaim against TAMS based upon the same underlying facts.

1

as well as for other relief. Presently before the Court is TAMS's Motion to Dismiss three of the 13 claims asserted in DLL's Crossclaim (two for negligence and one for breach of the implied covenant of good faith and fair dealing). For the reasons set forth herein, TAMS's Motion to Dismiss should be denied.

## II. FACTUAL SUMMARY

As alleged by DLL in its Complaint against Defendants and its Crossclaim against TAMS, on June 9, 2000, TAMS leased certain medical and radiological equipment to Defendant DDI. The lease was secured by Guaranties given to TAMS by the remaining defendants. TAMS assigned all of its right, title and interest in the lease and guaranties to DLL. On or about February 1, 2002, DDI, alleging that the medical equipment never worked properly and that TAMS failed to honor its agreements to properly service and maintain the equipment, defaulted upon its payment obligations to DLL. Defendants' outstanding balance to DLL under the lease and guaranties is in excess of $3.25 million.

The Assignment of the Master Lease and Guaranties was made pursuant to two written agreements between TAMS and DLL; specifically a Master Contract Financing Program Agreement (the "Agreement") and an Application Approval Form (the "Application Approval Form"). Under the Agreement, DLL's predecessor, Tokai Financial Services, Inc., had agreed to facilitate TAMS's ability to lease and/or sell medical equipment to its customers (various medical providers) by purchasing from TAMS certain contracts for the equipment and related software between TAMS and its customers, while TAMS agreed to assume the obligation to service and maintain the equipment for its customers. The Application Approval Form set forth the specific terms of TAMS's Assignment of the Master Lease and Guaranties to DLL.

## III. PROCEDURAL POSTURE

To date, both DLL and TAMS have filed Complaints against Defendants, and Defendants have asserted Counterclaims against both TAMS and DLL. Defendants' Counterclaim against DLL

asserts that DLL is responsible for TAMS's alleged failure to properly service and maintain the medical equipment and that DLL allegedly took the assignment of the Master Lease and Guaranties from TAMS with knowledge that the equipment was substandard.

DLL has filed a Crossclaim against TAMS seeking full indemnification for its losses in relation to Defendants' defaults upon the Master Lease and Guaranties and for reimbursement of all attorneys fees and litigation costs incurred in this action, and for other affirmative relief in the event that DLL is found liable on Defendants Counterclaim. DLL's Crossclaim sets forth 13 counts (including breach of contract, breach of warranty, negligence, indemnification, and breach of the implied covenant of good faith and fair dealing) which arise primarily under the Agreement and Application Approval Form between DLL and TAMS, as well as common law causes of action that stand alone independent of the agreements between DLL and TAMS. Presently before the Court is TAMS's Motion to Dismiss counts VIII, IX and XIII of DLL's Crossclaim under Rule 12(b)(6). DLL requests that TAMS's Motion be denied.

### III. **LEGAL ARGUMENT**

**A. Legal Standards For a Motion to Dismiss Under Rule 12(b)(6).**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim or crossclaim will be dismissed if it fails to state a claim upon which relief can be granted. Under F.R.Civ.P. 8(a), a complaint (or crossclaim, as the case may be) must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." A 12(b)(6) motion should be granted only if it "appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); Caudill Seed and Warehouse Co., Inc. v. Prophet 21, Inc., 123 F.Supp.2d 826, 827-828 (E.D.Pa.2000). A claim should be dismissed under Rule 12(b)(6) only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint. Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Incorporated, 140 F.3d 478, 483 (3d Cir. 1998). Under these standards, DLL's Crossclaims are sufficient to withstand a motion to dismiss under Rule 12(b)(6).

**B. DLL's Negligence Claims Are Not Precluded By The "Gist Of The Action" Doctrine.**

The "gist of the action" doctrine is a creation of Pennsylvania law designed to determine whether a cause of action truly sounds in contract or tort.[2] In Caudill Seed and Warehouse Co., Inc. v. Prophet 21, Inc., 123 F.Supp.2d 826, 833 (E.D.Pa.2000), the doctrine was described as follows:

> "[w]hen a plaintiff alleges that the defendant committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts examine the claim and determine whether the 'gist' or gravamen of it sounds in contract or tort; a tort claim is maintainable only if the contract is 'collateral' to conduct that is primarily tortious. See,

---

[2] The gist of the action test has not been adopted by the Supreme Court of Pennsylvania. However, the federal courts of this District, interpreting state law, have consistently applied it in numerous cases based upon a finding that the Supreme Court *would* adopt the test *if* it were presented. See, Oxis International, Inc. v. Catarious, 2001 WL 180352, p.1 (E.D.Pa.2001); Caudill Seed and Warehouse Co., Inc. v. Prophet 21, Inc., 123 F.Supp.2d 826, 833 at n.11 (E.D.Pa.2000); Sunquest Information Systems, Inc. v. Dean Witter Reynolds, Inc., 40 F.Supp.2d 644, 651 (W.D.Pa.1999).

> Sunquest Information Systems, Inc. v. Dean Witter Reynolds, Inc., 40 F.Supp.2d 644, 651 (W.D.Pa.1999) (citing cases). First applied by the Superior Court of Pennsylvania in Bash v. Bell Tel. Co., 411 Pa.Super. 347, 601 A.2d 825 (1992), the gist of the action test requires the court to determine from the complaint the essential nature of the claim alleged by distinguishing between contract and tort claims on the basis of the source of the duties allegedly breached; if the claim essentially alleges a breach of duties that flow from an agreement between the parties, the claim is contractual in nature, whereas if the duties allegedly breached were of a type imposed on members of society as a matter of social policy, the claim is essentially tort-based. See, Phico Ins. Co. v. Presbyterian Medical Serv. Corp., 444 Pa.Super. 221, 229, 663 A.2d 753 (1995)."

In interpreting the gist of the action doctrine, several courts have held that it should not be liberally applied in the early stages of litigation, but rather, in the later stages after the parties have had a chance to develop a factual record. See, Caudill Seed and Warehouse Co., Inc. v. Prophet 21, Inc., 123 F.Supp.2d 826, 834 (E.D.Pa.2000), Grode v. Mutual Fire Ins. Co., 154 Pa.Cmwlth. 366, 373, 623 A.2d 933, 937 (1993); Mellon Bank, N.A. v. Maris Equipment Co., 53 Pa. D. & C.4th 209. In this context, the Superior Court of Pennsylvania has stated that "[t]he imposition of common law tort duties can often depend upon policy considerations heavily influenced by the factual context from which a case emerges. Development of the factual record will provide us with greater insight into the relationship among these parties .…" Grode v. Mutual Fire Ins. Co., 154 Pa.Cmwlth. 366, 373, 623 A.2d 933, 937 (1993) (citing Public Service Enterprise Group, Inc. v. Philadelphia Electric Co., 722 F.Supp. 184, 212 (D.N.J. 1989)).

Given the liberal notice pleading requirements of the Federal Rules of Civil Procedure as opposed to the fact pleading requirements under the Pennsylvania state rules[3], development of a

---

[3] In contrast to F.R.Civ.P. 8(a) which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," Pennsylvania's fact pleading rules require "that a party plead the material facts on which a cause of action or defense is based." See, Pa.R.C.P. 1019.

5

factual record is all the more appropriate in federal court. As noted by this Court in <u>Polymer Dynamics, Inc. v. Bayer Corporation</u>, 2000 WL 1146622 (E.D. PA. 2000):

> "The 'gist of the action' doctrine bars claims for allegedly tortious conduct where the gist of the conduct alleged sounds in contract rather than in tort. . . .
>
> "The factual bases underlying plaintiff's fraud and contract claims clearly overlap. Plaintiff, however, alleges that certain misrepresentations by defendant, including promises of future business not contemplated by the sales contracts, induced plaintiff to reveal confidential commercial information to defendant. Moreover, it is not clear that all of the proprietary information related was encompassed by the parties' disclosure agreement which on its face applied only to disclosures between December 1, 1995 and November 39, 1996. The court cannot conclude beyond doubt from the pleadings that the contract is not collateral to any of plaintiff's fraud allegations."

Count VIII of DLL's Crossclaim asserts that TAMS is liable to DLL in negligence "to the extent that [it] has breached, or may in the future breach, its duty to properly maintain the Medical Equipment while the same is in its [TAMS's] possession or control." <u>See</u>, Crossclaim at paragraph 49. TAMS argues that "there is no basis for a cause of action in tort because any duty that TAMS has to indemnify DLL for any such loss is purely contractual."
Under the case law, the gist of the action test will bar a tort claim only if the claim essentially alleges a breach of duties that flow from an agreement between the parties, but not if the duties are of a type imposed on members of society as a matter of social policy. <u>See</u>, <u>Phico Ins. Co. v. Presbyterian Medical Serv. Corp.</u>, 444 Pa.Super. 221, 229, 663 A.2d 753 (1995). In this case, TAMS has admitted that it has regained possession of the medical equipment leased to DDI. It is undisputed that DLL has a security interest in this equipment. Consequently, TAMS has a common law duty, independent of any contract with DLL, to protect the equipment from damage or loss. <u>In re Lloyd Securities, Inc.</u>, 1992 WL 318588, p.11 (Bankr.E.D.Pa.) (<u>citing</u> <u>Dravo Mechling Corp. v. Standard Terminals, Inc.</u>, 557 F.Supp. 1162, 1166 (W.D.Pa.1983), <u>aff'd</u>, 729 F.2d 1446 (3rd Cir.1984) (bailee liable in negligence for failure to exercise due care proximately resulting in loss of or damage to property that is subject of bailment). In effect, because TAMS has possession of the property, it is liable to DLL in negligence for any damage to the equipment irrespective of the Master Contract Financing Program or the Application Approval Form. Because the tort claim for negligence asserted in Count VIII of the Crossclaim will stand on its own irrespective of any contracts or agreements between DLL and TAMS, the claim is not precluded by the gist of the action doctrine. <u>See</u>, <u>Mellon Bank, N.A. v. Maris Equipment Co.</u>, 53 Pa. D. & C.4th 209.
Count IX of DLL's Crossclaim asserts that TAMS is liable to DLL in negligence "to the extent that TAMS breached its duty to DLL to properly maintain and service the Medical Equipment." <u>See</u>, Crossclaim at paragraph 55. TAMS's obligation to provide all required service and maintenance for the medical equipment derives not from its contracts or agreements with DLL, but from the service and maintenance agreements into which TAMS entered with DDI. TAMS's agreements with DLL are thus collateral to TAMS's contractual responsibility to DDI to properly service and maintain the equipment. As stated in <u>Oxis International, Inc. v. Catarious</u>,

2001 W.L. 180, 352 (E.D.Pa 2001), "the gist of the action test requires the Court to identify the source of the duty allegedly breached." In this case, the source of TAMS' duty to properly service and maintain the medical equipment comes from the service and maintenance agreements into which it entered with DDI. Accordingly, DLL's negligence claim is not barred by the gist of the action doctrine.

Further, DLL notes that the reluctance of both the federal and state courts in applying the gist of the action test to cases at the motion to dismiss or preliminary objections stage. As stated above, the courts have consistently held that the better practice is to allow the development of a factual record in order to provide with "greater insight into the relationship among [the] parties" before considering the dismissal of claims. See, Public Service Enterprise Group, Inc. v. Philadelphia Electric Co., supra; Grode v. Mutual Fire Ins. Co., supra. Accordingly, DLL's negligence claims are not, at this time, ripe for dismissal. For these reasons, TAMS's Motion to Dismiss under Rule 12(b)(6) should be denied as to Counts VIII and IX of DLL's Crossclaim.

**C. DLL's Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing Is Not Precluded By Pennsylvania Law.**

The Restatement (Second) of Contracts § 205 (1981) provides that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." This duty should be implied to allow enforcement of unstated contract terms in a manner that is consistent with the parties' reasonable expectations. Killian v. McCulloch, 850 F.Supp. 1239 (E.D.Pa.1994); Agrecycle, Inc. v. City of Pittsburgh, 783 A.2d 863, 867. The covenant of good faith and fair dealing is to be implied in a contract, where necessary and in the absence of an express provision, in order to carry out the purpose for which the contract was made, or to prohibit a party from doing anything that would destroy or injure the other party's right to receive the fruits of the contract. USX Corp. v. Prime Leasing, Inc., 988 F.2d 433, 439 (3d Cir. 1993); Daniel B. Van Campen Corp. v. Building & Constr. Trades Council, 202 Pa.Super. 118, 195 A.2d 134, 136-37 (1963). Since the covenant can be implied only in the absence of an express provision, there can be no implied covenant as to any matter specifically covered by the written contract between the parties. USX Corp. v. Prime Leasing, Inc., 988 F.2d 433, 439 (3d Cir. 1993); Reading Terminal Merchants Ass'n v. Samuel Rappaport Assocs., 310 Pa.Super. 165, 456 A.2d 552, 557 (1983).

7

Because the implied covenant of good faith and fair dealing can only be invoked to imply contract terms when there are no express terms in the contract relating to the particular issue, the courts of Pennsylvania have recognized it only in limited situations. Agrecycle, Inc. v. City of Pittsburgh, 783 A.2d 863, 867. Specifically, the duty of good faith may not be implied where (1) a plaintiff has an independent cause of action to vindicate the same rights with respect to which the plaintiff invokes the duty of good faith; (2) such implied duty would result in defeating a party's express contractual rights specifically covered in the written contract by imposing obligations that the party contracted to avoid; or (3) there is no confidential or fiduciary relationship between the parties. Id.; Department of Transportation v. E-Z Parks, Inc., 153 Pa.Cmwlth. 258, 620 A.2d 712 (1993), appeal denied, 534 Pa. 651, 627 A.2d 181 (1993); USX Corp. v. Prime Leasing, Inc., 988 F.2d 433 (3rd Cir.1993); Allstate Transportation Co. v. Southeastern Pennsylvania Transportation Authority, 2000 WL 329015 (E.D.Pa.).

TAMS seeks to dismiss Count XIII of DLL's Crossclaim (the claim for breach of the implied covenant of good faith and fair dealing) on the basis that DLL "has already asserted causes of action of based upon the same set of operatives facts" in its Crossclaims for breach of contract and warranty and because there is no "confidential or fiduciary relationship between DLL and TAMS." These arguments, however, do not preclude DLL's claim. Because there can be no implied covenant as to any matters specifically covered by the written contract between the parties, DLL's claim for breach of the implied covenant of good faith and fair dealings must be invoked to imply contract terms where there are no express terms in the contracts between the parties. In this case, the Application Approval Form sets forth the specific terms of TAMS's assignment of the Master Lease to DLL. Upon the development of an appropriate factual record, it is foreseeable that unwritten contract terms may have to be implied in order to carry out the intent of the parties so that they will "receive the fruits of the contract." See, USX Corp. v. Prime Leasing, Inc., 988 F.2d 433, 439 (3d Cir. 1993).

In addition, TAMS alleges that DLL's claim for breach of the implied covenant of good faith and fair dealing is precluded by the absence of a confidential or fiduciary relationship between the parties. In Pennsylvania, fiduciary duties arise out of special relationships of trust and confidence. Aamco Transmissions, Inc. v. Graham, 1990 W.L. 55675, P. 9 (E.D.Pa. 1990); see also, Young v. Kaye, 443 Pa. 335, 279 A.2d 759 (1971). Such "confidential relationships" exist whenever one party occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that you will act in good faith for the other's interest. Aamco Transmissions, Inc. v. Graham, 1990 W.L. 55675, P. 9 (Ed. Pa. 1990); see also, Kees v. Green, 365 Pa. 368, 75 A.2d 602 (1950). A review of the Agreement between TAMS and DLL's predecessor reveals the existence of a special relationship of confidence sufficient to establish a fiduciary duty between the parties.

Throughout the Agreement, DLL and TAMS are required to work together with mutual cooperation in order to help themselves and the other to meet their objectives, which necessarily requires confidence that they will each act in good faith for the other's interest. For example, Section 2.1 of the Agreement requires that the parties must assist each other and disclose to one another the results of credit reviews of prospective lessees, and Section 2.2 requires that the parties work together to periodically review and adjust the capacity of their portfolios. Further, DLL and TAMS must cooperate, work together and make confidential disclosures to one another with respect defaulted contracts (Section 2.4), the setting of Credit Pool Balances (Section 2.4(e)), the providing of notices under the Equal Credit Opportunity Act (Section 2.6). In addition, the various representations and warranties which TAMS and Tokai Financial Services, Inc. made to one another require that the parties have reposed confidence in one another such

9

that a fiduciary relationship sufficient to establish a claim for breach of the implied covenant of good faith and fair dealing is present.

It cannot be said, based upon the allegations, that no relief can be granted under any set of facts consistent with the allegations of the complaint.  <u>Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Incorporated</u>, <u>supra</u>.  Accordingly, DLL's claim for breach of the implied covenant of good faith and fair dealing as set forth in Count XIII of the its Crossclaim should withstand TAMS' Motion to Dismiss.

### IV. CONCLUSION

For the reasons set forth herein, DLL respectfully requests that this Honorable Court enter an Order denying Intervenor Plaintiff Toshiba America Medical Systems, Inc.'s Motion to Dismiss Counts VIII, IX and XIII of Plaintiff's Crossclaim.

Respectfully submitted,

**McCARTER & ENGLISH, LLP**

By:_____
Rosetta B. Packer, Esquire
Peter J. Boyer, Esquire
David J. Gaier, Esquire

Mellon Bank Center
1735 Market Street, Suite 700
Philadelphia, PA  19103
Attorneys for Plaintiff,
De Lage Landen Financial Services, Inc.

Dated: November 19, 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| De Lage Landen Financial Services, Inc. : <br> : <br> Plaintiff : <br> and : <br> : <br> Toshiba America Medical Systems, Inc. : <br> : <br> Intervenor Plaintiff : <br> : <br> vs. : <br> : <br> DeSoto Diagnostic Imaging, LLC., Randon J. : <br> Carvel, Lynn T. Carvel, Delta Radiology, P.C. : <br> and Zobar Properties, LLC. : <br> : <br> Defendants : | CIVIL ACTION NO. 02-CV-2810 |

## CERTIFICATE OF SERVICE

      I, Rosetta B. Packer, Esquire, hereby certify that on November 19, 2002 I caused a copy of the foregoing Plaintiff's Response to Intervenor Plaintiff's Motion to Dismiss Counts VIII, IX and XIII of Plaintiff's Crossclaim, and Memorandum of Law in support thereof, to be served by first class United States regular mail upon the following counsel in this action:

John Chesney, Esquire  
Drinker Biddle & Reath, LLP  
One Logan Square  
18th & Cherry Streets  
Philadelphia, PA  19103  

William Matthews, Esquire  
Saul Ewing LLP  
Centre Square West  
1500 Market Street, 38th Floor  
Philadelphia, PA  19102  

Kyle Tate, Esquire  
424 Quachita Avenue  
Hot Springs, AR  71901  

                                      _____  
                                      Rosetta B. Packer, Esquire  
                                      **McCARTER & ENGLISH, LLP**  
                                      Attorneys for Plaintiff,  
                                      Plaintiff De Lage Landen Financial Services, Inc.  
                                                                     PH1: 117982.02