IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DeLAGE LANDEN FINANCIAL SERVICES, INC., | : | |
| Plaintiff | : | CIVIL ACTION NO. 02-CV-2810 |
| and | : | |
| TOSHIBA AMERICA MEDICAL SYSTEMS, INC., | : | |
| Plaintiff/Intervenor | : | |
| v. | : | |
| DeSOTO DIAGNOSTIC IMAGING, LLC, RANDON J. CARVEL, LYNN T. CARVEL, DELTA RADIOLOGY, P.C. and ZOBAR PROPERTIES, LLC, | : | |
| Defendants | : | |

### MEMORANDUM

BUCKWALTER, J.                                                                                                                                                        December 18, 2002

        Presently before the Court are Defendants' Motion for Change of Venue for Convenience of Witnesses and in the Interest of Justice, Plaintiff DeLage Landen Financial Services, Inc.'s Answer in Opposition to Defendants' Motion and Plaintiff/Intervenor Toshiba America Medical Systems, Inc.'s Answer in Opposition to Defendants' Motion. For the reasons stated below, Defendants' Motion is **DENIED**.

### I.     BACKGROUND

        Defendant DeSoto Diagnostic, Inc. ("DDI") is a Mississippi corporation with a place of business in Olive Branch, Mississippi. Pl.'s Compl. at ¶ 2. On June 9, 2000, through its chief manager, Defendant Lynn T. Carvel ("Lynn Carvel"), DDI signed a Lease Agreement

("Master Lease") to lease certain radiological equipment from Toshiba America Medical Systems ("TAMS"or "Plaintiff/Intervenor"). Pl.'s Mem. in Opp'n to Defs.' Mot. Change Venue at 3; Defs.' Countercl. at ¶ 2. The Master Lease was for a term of 63 months, during which time DDI was to make 60 monthly payments to TAMS. Pl.'s Mem. in Opp'n to Defs.' Mot. Change Venue at 3. The Master Lease, which had been drafted solely by TAMS, was signed by TAMS on December 29, 2000. Def.'s Countercl. at ¶¶ 2, 4.

On June 9, 2000, the day Lynn Carvel signed the Master Lease, she and Defendant Randon J. Carvel ("Randon Carvel") each executed and delivered Personal Guarantees of DDI's obligations to TAMS under the Master Lease. On that same day, Defendants Delta Radiology, P.C. ("Delta") and Zobar Properties, LLC ("Zobar") each also executed and delivered Guarantees of DDI's obligations to TAMS under the Master Lease. Pl.'s Mem. in Opp'n to Defs.' Mot. Change Venue at 3. Lynn and Randon Carvel are citizens and residents of Mississippi, who also have a place of residence in Memphis, Tennessee. Delta is a Mississippi corporation with a place of business in Memphis, Tennessee, and Zobar is a Mississippi corporation with a place of business in Olive Branch, Mississippi. Defs.' Mot. Change Venue at ¶ 2.

Following the execution of the Master Lease and the Guarantees, TAMS assigned all of its rights, title and interest under the Master Lease and Guarantees to Plaintiff DeLage Landen Financial Services, Inc. ("DeLage" or "Plaintiff"). Pl.'s Mem. in Opp'n to Defs.' Mot. Change Venue at 4. DeLage is a Michigan corporation with a place of business in Wayne, Pennsylvania. Pl.'s Compl. at ¶ 1. Following this assignment to DeLage, TAMS entered into an agreement with DDI to continue to maintain and service the leased equipment. Pl./Intervenor's Mem. in Opp'n to Defs.' Mot. Change Venue at 5.

On February 1, 2002, DDI defaulted upon its obligations to DeLage by failing to make lease payments when due, and also by dismantling and removing the leased equipment prior to the end of the lease term. Pl.'s Mem. in Opp'n to Defs.' Mot. Change Venue at 4. DDI claims that the equipment never functioned properly, and therefore, it was under no obligation to continue making payments. Defs.' Countercl. at ¶¶ 21, 23. DeLage demanded that DDI pay all amounts due and owing under the Master Lease, but DDI refused. As a result, DeLage filed suit against Defendants. Pl.'s Compl. at ¶ 14.

Subsequent to DeLage filing suit, TAMS joined the action as an Intervenor Plaintiff. TAMS joined the action for several reasons. Among these reasons are that the assignment agreement between TAMS and DeLage provided that, if DDI defaulted, TAMS has recourse obligations to DeLage. In addition, TAMS is pursuing claims against DDI relating to the alleged breach of the terms of the service agreements it entered into with TAMS. Pl./Intervenor's Answer to Defs.' Mot. Change Venue at ¶ 3.

**II.    STANDARD OF REVIEW**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. 1404(a). The purpose of this section is to prevent a waste of time, energy and money, and further, to avoid unnecessary expense and inconvenience which litigants, witnesses and the public may otherwise incur. Saint-Gobain Calmer, Inc. v. Nat'l Prods. Corp., No. Civ.A.02-3626, 2002 U.S. Dist. LEXIS 21741, at *8 (E.D. Pa. Nov. 6, 2002), *citing* Van Dusen v. Barrack, 376 U.S. 612, 616 (1964). Section 1404(a) applies to transfer cases where the

original venue and the requested venue are both proper fora. Jumara v. State Farm Ins. Co., 55 F.3d 873, 878 (3d Cir. 1995).

"The burden is on the moving party to establish that a balancing of proper interests weigh[s] in favor of the transfer, and 'unless the balance of convenience of the parties is *strongly* in favor of defendant, the plaintiff's choice of forum should prevail.'" Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970) (citations omitted). A plaintiff's choice of forum is a "paramount consideration" in a determination as to whether to grant a change in venue and it should not be "lightly disturbed." Id. It is within the court's discretion whether to grant a transfer request, but requests are not to be granted liberally. Id.

**III.   DISCUSSION**

Pursuant to 28 U.S.C. § 1404(a), DDI has moved to transfer this action from the Eastern District of Pennsylvania to the Northern District of Mississippi, Delta Division. Defendants believe that both DeLage and TAMS could have originally brought this action in the Northern District of Mississippi, and neither DeLage nor TAMS disputes this fact. Defs.' Mot. Change Venue at ¶ 2; Pl.'s Answer to Defs.' Mot. Change Venue at ¶ 2; Pl./Intervenor's Answer to Defs.' Mot. Change Venue at ¶ 2. However, for the sake of convenience, DeLage and TAMS believe the best forum for this action is in this District, whereas Defendants believe the Northern District of Mississippi would be a much more convenient forum in which to litigate this dispute. Pl.'s Answer to Defs.' Mot. Change Venue at ¶ 26; Pl/Intervenor's Answer to Defs.' Mot. Change Venue at ¶ 26; Defs.' Mot. Change Venue at ¶ 26.

Defendants allege that this transfer is proper because the subject matter of this controversy arises out of and is in connection with transactions that occurred in Olive Branch, Mississippi. Defs.' Mot. Change Venue at ¶ 1. Defendants claim that the central issue in determining the parties' liability in this action concerns the performance of the equipment which was the subject matter of the Master Lease. Since this equipment was, at all times relevant to this action, located at DDI's facility in Mississippi, this action should be transferred to the Northern District of Mississippi, according to Defendants. Defs.' Mot. Change Venue at ¶¶ 5-10.

Defendants contend that another critical issue in this case is the condition of the equipment from the time it arrived at DDI's facility in Mississippi until DDI removed it from this facility. As the witnesses who can testify to the condition of this equipment are located in Mississippi, Defendants believe the Northern District of Mississippi is the proper forum for this action. Defs.' Mot. Change Venue at ¶¶ 12-14. Defendants claim that most, if not all, of the independent witnesses who will testify about critical events in this case are not subject to service of process in the Eastern District of Pennsylvania, but are subject in the Northern District of Mississippi. Defs.' Mot. Change Venue at ¶ 15. According to Defendants, these witnesses are beyond the reach of this Court and there is no lawful means to compel them to attend a trial in this District. Defendants do not believe these witnesses will voluntarily come to this District because it would be extremely expensive and time consuming for them to travel to Pennsylvania from Mississippi or the states near Mississippi where most of these potential witnesses reside. Defs.' Mot. Change Venue at ¶ 22. In addition to the inconvenience and expense associated with transporting witnesses to the Eastern District of Pennsylvania, Defendants allege that substantially all of the books, records, documents and exhibits necessary for trial are also located in

5

Mississippi. Defendants believe bringing such evidence to this District would be a substantial burden and an inconvenience to them. Defs.' Mot. Change Venue at ¶ 14.

Defendants contend that the controversies in this matter have no relationship with this District other than the fact that the contracts Defendants signed subject them to personal and subject matter jurisdiction in this District. Defs.' Mot. Change Venue at ¶ 25. In fact, Defendants imply that the Master Lease and the Guarantees were adhesion contracts, and therefore, the clauses subjecting them to jurisdiction in the Eastern District are unenforceable. Defendants provide no support for this allegation in their Motion for Change of Venue, but they have previously supported this contention in their counterclaims against DeLage. In these counterclaims, Defendants allege that, when Lynn Carvel received the contracts from TAMS, she had numerous questions she wanted answered. TAMS informed Lynn Carvel that the agreements were non-negotiable and she should not discuss the matter with her attorney, because TAMS would not alter these contracts in any regard. Defs.' Counterclaims at ¶ 15.

Defendants believe they would suffer substantial hardship if they were forced to defend this case in the Eastern District of Pennsylvania. They argue that the proper and most convenient forum for litigating all the claims in this action is in the Northern District of Mississippi, Delta Division.

DeLage and TAMS, on the other hand, believe that mere inconvenience to the Defendants is not a sufficient basis for transferring this action to the Northern District of Mississippi. DeLage and TAMS argue that the inconvenience that Defendants allege they will suffer by having to litigate in this District is the same inconvenience DeLage and TAMS will suffer if they have to litigate in the Northern District of Mississippi. Pl.'s Mem. in Opp'n to

Defs.' Mot. Change Venue at 2.  DeLage claims that, given that its principal place of business is in Wayne, Pennsylvania, all of the documents it would need to prosecute this case are located here, in the Eastern District, and will have to be transported to Mississippi if this case is transferred.  Ten of the eleven witnesses that DeLage expects to testify maintain offices at DeLage's Wayne, Pennsylvania office.  Pl.'s Mem. in Opp'n to Defs.' Mot. Change Venue at 13.  TAMS believes it would be more convenient for it to litigate this matter in Pennsylvania, because it can transport witnesses and necessary documents to this District with less difficulty than it could transport these witnesses and documents to Mississippi.  Pl./Intervenor's Mem. in Opp'n. to Defs.' Mot. Change Venue at 7.

Most critical to DeLage's and TAMS's case is that the Master Lease and each of the four Guarantees signed by Defendants contain forum selection clauses pursuant to which Defendants consented to personal jurisdiction and subject matter jurisdiction in the United States District Court for the Eastern District of Pennsylvania.  The Master Lease and the Guarantees also state that they shall be governed by the laws of Pennsylvania.  DeLage and TAMS believe the choice of law provisions protect against transferring this action because a federal court in this District is more likely to be familiar with Pennsylvania law than a federal court in Mississippi.  DeLage and TAMS believe the forum selection clauses are enforceable against Defendants and that this Court should defer to DeLage's original choice of forum.  Pl.'s Mem. in Opp'n to Defs.' Mot. Change Venue at 4-5; Pl./Intervenor's Mem. in Opp'n to Defs.' Mot. Change Venue at 6.

In deciding whether to transfer a case to another venue, courts consider more than just the convenience of the parties and witnesses and the interest of justice.  The Third Circuit has set forth several private and public interests for the courts to evaluate in making a transfer of

venue determination. <u>Jumara</u>, 55 F.3d at 879-80. The private interests which courts should consider include the plaintiff's original choice of forum, the defendant's forum preference, whether the claim arose in another location, convenience of the parties, convenience of potential witnesses, but only if they will be unavailable in one of the fora, and location of the books and records, again only to the extent such documents cannot be produced in an alternate forum. <u>Id.</u> at 879. The public interests include the enforceability of the judgment, the practical considerations that could make trial easy, expeditious or inexpensive, potential administrative difficulties relating to court congestion, the local interest in deciding the particular controversy, the public policies of the fora and the familiarity of the trial judge with the applicable state law in diversity cases. <u>Id.</u> at 879-80.

When considering all of these public and private factors, "a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum." <u>Jumara</u>, 55 F.3d at 880. Where the clause is found to be valid, the moving party bears the burden of demonstrating why it should not be bound by the contractual choice of forum. <u>Id.</u> A forum selection clause is valid where there is no fraud, influence or overweening bargaining power used to induce the inclusion of such a clause. <u>Id.</u> A forum selection clause in a contract between parties is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." <u>Copperweld Steel Co. v. Demag-Mannesmann-Bohler</u>, 578 F.2d 953, 965 (3d Cir. 1978). "[A] forum selection clause is unjust and unreasonable when obtained fraudulently or where enforcement would violate a strong public policy of the forum or effectively deprive the other party of his day in court." <u>Cedarbrook Assoc. v. Equitec Sav. Bank</u>, 678 F.Supp. 107, 108 (E.D. Pa. 1987).

8

Defendants allege that the forum selection clauses in the Master Lease and the Guarantees are unenforceable because the clauses were contained within adhesion contracts. Defendants believe the Master Lease and the Guarantees are adhesion contracts because they were standard form agreements provided by DeLage and because DeLage would not negotiate any of the terms in these agreements. Defs.' Countercl. at ¶ 15. However, even if the Master Lease and the Guarantees are adhesion contracts, the enforcement of the forum selection clause within these contracts is not automatically unreasonable. Defendants must provide evidence to support their contention that the forum selection clause was the product of fraud, coercion or unequal bargaining power. "[A] party cannot contest the validity of a forum selection clause by questioning the enforceability of the entire contract . . . [but] must show that the clause itself was the product of fraud or coercion." Barbuto v. Medicine Shoppe Int'l, Inc., 166 F.Supp.2d 341, 346 (W.D. Pa. 2001). See also Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 n.14 (1974).

Defendants have not provided evidence that they were coerced into accepting the entire contract, let alone the forum selection clause. Defendants have not alleged that they were unsophisticated lessees or that they were coerced into signing the agreements because they had significantly less bargaining power than did DeLage. In fact, Defendants provided no support in their Motion for Change of Venue to establish that the Master Lease and the Guarantees were unenforceable adhesion contracts. Since Defendants have not met their burden of showing why they should not be bound by their contractual choice of forum, enforcement of these valid forum selection clauses is reasonable.

The consideration of other public and private factors by this Court is altered because the forum selection clauses are valid. More weight should be given to the parties' pre-

9

litigation choice, and less weight afforded to the other factors. See W.G. Nichols, Inc. v. Kmart Corp., No. Civ.A. 01-3295, 2001 U.S. Dist. LEXIS 24131, at *8 (E.D. Pa. Oct. 1, 2001). However, in this instance, all these other factors also tend to weigh against granting Defendants' Motion for Change of Venue.

"The purpose of transfer is not to shift the inconvenience from one party to another." Frontier Ins. Co. v. Nat'l Signal Corp., No. Civ.A. 98-4265, 1998 U.S. Dist. LEXIS 17562, at *14 (E.D. Pa. Nov. 9, 1998). By agreeing to personal jurisdiction and subject matter jurisdiction in the Eastern District of Pennsylvania, Defendants have contracted to bear the risk of any personal inconvenience of litigating this matter in Pennsylvania. See Sparks Tune-Up Ctrs., Inc. v. Padussis, No. Civ.A. 88-9525, 1990 U.S. Dist. LEXIS 7721, at *5 (E.D. Pa. June 19, 1990). Defendants claim that it would be inconvenient for them to transport all of the documents and potential witnesses which they would need to establish their case to the Eastern District of Pennsylvania. However, Defendants would not have to require that all their witnesses physically appear for trial in Pennsylvania. The witnesses' testimony could be admitted through videotaped depositions or through reading the transcripts from their depositions. As for the documents which Defendants claim are all located in Mississippi and would be burdensome to transport to this District, it is illogical to simply place the inconvenience which Defendants are currently alleging that they would suffer onto DeLage and TAMS by transferring venue to the Northern District of Mississippi. DeLage selected this forum and great weight must be afforded DeLage's preference. Shutte, 431 F.2d at 25.

Defendants allege that the condition of the equipment which is the subject matter of this case will be a critical factor in this case. This contention is most likely accurate. However,

litigating the case in Mississippi will not make it easier to establish the condition of the equipment, because the equipment is no longer located in Mississippi. All of the equipment is located in either Tennessee or California. Pl.'s Mem. in Opp'n to Defs.' Mot. Change Venue at 4. Accordingly, it is only the individuals who have knowledge of the condition of this equipment that will be necessary for litigating this case. The videotaped or transcribed testimony of these individuals can be presented at trial regardless of where this case is litigated.

Defendants have not offered any evidence that it will be more difficult to enforce the judgment of this case in the Eastern District of Pennsylvania than it would be if the case were decided in the Northern District of Mississippi. Further, Defendants have not shown that public policy favors one jurisdiction over another, that court congestion requires this case be transferred to the Northern District of Mississippi, or that the familiarity of judges with applicable law weighs in favor of transfer. See Pro Spice Inc. v. Omni Trade Group, Inc., 173 F.Supp.2d 336, 342 (E.D. Pa. Sept. 20, 2001). In fact, the Master Lease and the Guarantees contain choice of law provisions indicating that Pennsylvania law governs these contracts. Accordingly, courts in this District are more likely to be familiar with applicable law than courts in Mississippi.

## IV.    CONCLUSION

For the reasons stated above, Defendants' Motion for Change of Venue is denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DeLAGE LANDEN FINANCIAL SERVICES, INC., | : : | |
| Plaintiff | : : | CIVIL ACTION NO. 02-CV-2810 |
| and | : : | |
| TOSHIBA AMERICA MEDICAL SYSTEMS, INC., | : : | |
| Plaintiff/Intervenor | : : | |
| v. | : : | |
| DeSOTO DIAGNOSTIC IMAGING, LLC, RANDON J. CARVEL, LYNN T. CARVEL, DELTA RADIOLOGY, P.C. and ZOBAR PROPERTIES, LLC, | : : : : | |
| Defendants | : | |

**ORDER**

AND NOW, this 18th day of December, upon consideration of Defendants' Motion for Change of Venue for Convenience of Witnesses and in the Interest of Justice (Docket No. 13), Plaintiff DeLage Landen Financial Services, Inc.'s Answer in Opposition to Defendants' Motion (Docket No. 23) and Plaintiff/Intervenor Toshiba America Medical Systems, Inc.'s Answer in Opposition to Defendants' Motion (Docket No. 24), it is hereby **ORDERED** that Defendants DeSoto Diagnostic Imaging, LLC's, Randon J. Carvel's, Lynn T. Carvel's, Delta Radiology, P.C.'s and Zobar Properties, LLC's Motion for Change of Venue is **DENIED**.

BY THE COURT:

_____
RONALD L. BUCKWALTER, J.