# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DELAGE LANDEN FINANCIAL
SERVICES, INC.,
                Plaintiff,

TOSHIBA AMERICA MEDICAL
SYSTEMS, INC.
                Plaintiff/Intervenor,

          v.

DESOTO DIAGNOSTIC IMAGING,
LLC., RANDON J. CARVEL, LYNN T.
CARVEL, DELTA RADIOLOGY, P.C.
and ZOBAR PROPERTIES, LLC

                Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION NO. 2:02CV2810

HON. RONALD L. BUCKWALTER

## **ORDER**

AND NOW, this _____ day of _____, 2003, upon consideration of the

Motion of Plaintiff/Intervenor Toshiba America Medical Systems, Inc. ("TAMS") to Compel

Discovery Directed to Defendants and for Expedited Relief, it is hereby ORDERED that

Defendants shall file and serve any response to said motion within five (5) business days of

service, that is, on or before October 30, 2003.

                BY THE COURT:


                _____

                Ronald L. Buckwalter, U.S.D.J.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DELAGE LANDEN FINANCIAL SERVICES, INC., | : | CIVIL ACTION NO. 2:02CV2810 |
| Plaintiff, | : | |
| | : | HON. RONALD L. BUCKWALTER |
| TOSHIBA AMERICA MEDICAL SYSTEMS, INC. | : | |
| Plaintiff/Intervenor, | : | |
| | : | |
| v. | : | |
| | : | |
| DESOTO DIAGNOSTIC IMAGING, LLC., RANDON J. CARVEL, LYNN T. CARVEL, DELTA RADIOLOGY, P.C. and ZOBAR PROPERTIES, LLC | : | |
| | : | |
| Defendants. | : | |
| | : | |

**ORDER**

AND NOW, this _____ day of _____, 2003, upon consideration of the Motion of Plaintiff/Intervenor Toshiba America Medical Systems, Inc. ("TAMS") to Compel Discovery Directed to Defendants and for Expedited Relief, it is hereby ORDERED that said motion be, and the same hereby is, GRANTED and IT IS FURTHER ORDERED that within ten (10) days of the date of this Order Defendants shall:

1.    Produce all documents responsive to TAMS' Third Request for Production of Documents; and

2.    Produce a privilege log that identifies, in accordance with the Federal Rules of Civil Procedure, all documents responsive to TAMS' First, Second and Third Requests for the Production of Documents that Defendants claim are protected by the attorney-client privilege and/or work product doctrine.

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DELAGE LANDEN FINANCIAL SERVICES, INC., | : | CIVIL ACTION NO. 2:02CV2810 |
| Plaintiff, | : | |
| | : | HON. RONALD L. BUCKWALTER |
| TOSHIBA AMERICA MEDICAL SYSTEMS, INC. | : | |
| Plaintiff/Intervenor, | : | |
| | : | |
| v. | : | |
| | : | |
| DESOTO DIAGNOSTIC IMAGING, LLC., RANDON J. CARVEL, LYNN T. CARVEL, DELTA RADIOLOGY, P.C. and ZOBAR PROPERTIES, LLC | : | |
| | : | |
| Defendants. | : | |
| | : | |

## TOSHIBA AMERICA MEDICAL SYSTEMS, INC.'S
## MOTION TO COMPEL DISCOVERY DIRECTED TO DEFENDANTS AND FOR
## EXPEDITED RELIEF

Plaintiff/Intervenor Toshiba America Medical Systems, Inc. ("TAMS"), by and through

its undersigned attorneys, moves this Honorable Court pursuant to Federal Rule of Civil

Procedure 37(d) to enter (1) an Order in the form attached hereto requiring an expedited response

to this motion and (2) after a response from Defendants, an Order in the form attached hereto

compelling Defendants DeSoto Diagnostic Imaging, LLC, Randon J. Carvel, Lynn T. Carvel,

Delta Radiology, P.C. and Zobar Properties, LLC to produce documents in response to TAMS'

Third Request for Production of Documents, and to produce a Privilege Log properly identifying

all documents that have been withheld from production in this action.  In support of this Motion,

TAMS relies upon the accompanying Memorandum of Law and the Exhibits in support

thereof, which are incorporated herein by reference.

Dated: October 23, 2003

*Julianne Peck*

John Chesney (Attorney I.D. No. 24458)
Julianne Peck (Attorney I.D. No. 79966)
Jonathan Sturz (Attorney I.D. No. 88153)
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996
(215) 988-1996

Attorneys for Plaintiff/Intervenor
Toshiba America Medical Systems, Inc.

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DELAGE LANDEN FINANCIAL SERVICES, INC., <br>         Plaintiff, <br><br> TOSHIBA AMERICA MEDICAL SYSTEMS, INC. <br>         Plaintiff/Intervenor, <br><br>     v. <br><br> DESOTO DIAGNOSTIC IMAGING, LLC., RANDON J. CARVEL, LYNN T. CARVEL, DELTA RADIOLOGY, P.C. and ZOBAR PROPERTIES, LLC <br><br>         Defendants. | CIVIL ACTION NO. 2:02CV2810 <br><br> HON. RONALD L. BUCKWALTER |

## TOSHIBA AMERICA MEDICAL SYSTEMS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY DIRECTED TO DEFENDANTS AND FOR EXPEDITED RELIEF

### I.  INTRODUCTION

Plaintiff/Intervenor Toshiba America Medical Systems, Inc. ("TAMS") brings this motion to compel discovery from defendants (collectively referred to herein, for convenience, as "DeSoto") in response to DeSoto's failure to **produce** documents responsive to TAMS' Third Request for Production of Documents.  As set forth in TAMS' initial Motion to Compel, filed on October 9, 2003, TAMS has spent months seeking -- and being promised without result -- the production of documents and information responsive to its initial interrogatories and document requests.  As the expert disclosure and discovery deadlines (October 29 and November 30, 2003, respectively) approach, DeSoto has carried its refusal to meet its discovery obligations to new levels, refusing even to respond to TAMS' efforts to meet and confer concerning TAMS' Third

Request for Production of Documents. Accordingly, TAMS has filed this motion to compel and for expedited relief, seeking production of the remaining documents it has requested. DeSoto's recalcitrance has already unfairly prejudiced TAMS and, unless the required documents are produced promptly, will have succeeded in impeding TAMS' ability to prepare adequately for trial.

## II.    FACTUAL BACKGROUND

### A.    The Lease of the Equipment

As this Court is by now well aware from previous filings, this case arises out of the breach by Defendant DeSoto Diagnostic Imaging, LLC of a lease covering a variety of medical diagnostic imaging equipment. *See* Exhibit "A" (Intervenor Compl. ¶¶ 10). The other defendants, Randon J. and Lynn T. Carvel (DeSoto's principals), and Delta Radiology and Zobar Properties, each executed and delivered Guarantees to secure Desoto's performance under the Lease. *Id.* ¶¶ 11, 12.

DeSoto and the guarantor defendants breached their obligations under the Lease by dismantling and removing the equipment prior to the end of the lease term and by failing and refusing to make payments when due. Intervenor Compl. ¶ 15. In addition, DeSoto has failed to abide by and has breached each of the service agreements. *Id.* ¶ 17. As a result, on May 10, 2002, DLL filed a complaint in this Court seeking damages in excess of $3,250,000 relating to defendants' breach of contract.

On June 21, 2002, TAMS filed a complaint in intervention seeking a declaratory judgment that defendants have a duty to comply with the terms of the Lease and/or Guarantees and seeking damages relating to DeSoto's breach of the service agreements. On August 15, 2002, defendants filed a counterclaim against TAMS seeking damages from TAMS on the theory

that the equipment failed to "consistently" perform as warranted, and that TAMS failed to adequately maintain and/or service the equipment. Defendants later filed amended affirmative defenses and amended counterclaims on September 22, 2003.

### B.    Relevant Discovery Proceedings

TAMS served its initial interrogatories and document requests on March 12, 2003. DeSoto's responses and objections are attached hereto as Exhibits "B" and "C." TAMS served its second set of interrogatories and document requests on June 24, 2003. DeSoto's responses and objections are attached hereto as Exhibits "D" and "E." TAMS served its third set of interrogatories and document requests on August 27, 2003. DeSoto's responses and objections are attached hereto as Exhibits "F" and "G."

DeSoto failed to produce the majority of the categories of documents requested, and failed to respond to the majority of TAMS' interrogatories, based primarily on meritless contentions that the discovery was not "relevant" and that TAMS had exceeded the federal limit on interrogatories (due to clarifying subparts). Pursuant to the meet and confer process, DeSoto also made repeated promises to produce additional categories of documents in response to TAMS' first and second requests for production, but those promises were unfulfilled. After further attempts to meet and confer with counsel for DeSoto failed, TAMS filed a motion to compel on October 9, 2003, in regard to its first, second and third sets of interrogatories, and its first and second requests for production of documents. At that time, TAMS did not move on its Third Request for the Production of Documents because it had not had an opportunity to comply fully with its obligation to meet and confer with DeSoto's counsel.

DeSoto has objected to the majority of the 37 requests in TAMS' third set of document requests. In response to some requests, DeSoto has claimed that it has already produced

"responsive documents" although (1) DeSoto does not claim that it has produced *all* responsive documents and (2) in many cases it is clear that DeSoto has not, in fact, produced *all* responsive documents, or even all categories of responsive documents. In response to other requests, DeSoto repeated its frequently made, but usually unfulfilled, promise to produce documents at some point.

By letter dated October 10, 2003 (attached hereto as Exhibit "H"), TAMS set forth in detail the deficiencies in DeSoto's responses and asked that DeSoto, in view of the impending expert disclosure and discovery deadlines,[1] agree to promptly produce the promised documents, as well as those documents as to whose production it had made meritless objections, and that DeSoto produce a complete privilege log. TAMS also asked DeSoto to contact TAMS in the event that it was willing to meet and confer further on these issues. TAMS' letter and invitation were ignored. Accordingly, by letter dated October 17, 2003 (attached hereto as Exhibit "J"), TAMS repeated its request that DeSoto comply with its discovery obligations promptly in view of the impending deadlines and informed DeSoto that unless it received a response by October 21, 2003, it would file a motion seeking expedited disposition and production of the responsive documents. This letter, too, was ignored. By e-mail dated October 20, 2003, TAMS re-confirmed that it would be required to file the instant motion unless DeSoto would fulfill its obligation to provide discovery in good faith. DeSoto did not ignore this communication, although it *did* continue to sidestep the discovery issues. In response to TAMS' counsel's e-mail, Mr. Tate, counsel for DeSoto sought to further DeSoto's attempt to conceal and withhold important information by ignoring the discovery issues entirely and informing counsel for TAMS that he would no longer communicate with her on this case! Exhibit "K."

---

[1] The expert disclosure deadline is October 29, 2003 and the close of discovery is November 30, 2003. Exhibit "I".

## III.    ARGUMENT

Where a party fails to produce documents in response to a request for the production of documents under Federal Rule of Civil Procedure 34, a motion to compel discovery is appropriate.  *See* Fed. R. Civ. P. 37(2)(B).  Furthermore, evasive and/or incomplete answers to a discovery request constitute a failure to respond, *see* Fed. R. Civ. P. 37(3), and, if the motion is granted, or if the requested discovery is provided after the motion is filed, the moving party is entitled to reasonable expenses incurred in making the motion, including attorneys' fees.  *See* Fed. R. Civ. P. 37(4).

### A.    DeSoto's Bald Assertion that TAMS' Requests are Not Relevant is Frivolous.

DeSoto objected to the majority of TAMS Third Request for Production on the ground that the documents sought are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  This "objection" is completely without foundation and frivolous.  It is now clear that it has been made as part of DeSoto's ongoing attempt to conceal highly relevant discovery, at times by objecting to production and at times by proffering, but never actually making, production.

### 1.    TAMS is entitled to all Documents that Reflect the Use (or anticipated use) of the Equipment (Requests Nos. 1, 2, 25, 26, and 27)

The captioned requests seek documents that relate to the use of the Toshiba equipment that is the subject matter of this dispute.  For example, TAMS has requested: *all* patient records relating to DeSoto's use of the equipment (Request No. 1), including without limitation all documents that reflect the procedures that were ordered by referring physicians and *all* billing records relating to procedures performed by the equipment.  (Request No. 2); DeSoto's annual financial information for the time period that the equipment was installed (Request No. 25); the bills, charges and invoices sent to private or third-party payers for the professional services

rendered by Lynn T. Carvel, PLLC (*i.e.* the interpretation of the images produced by the equipment) (Request No. 26); and all documents that reflect payments from Lynn T. Carvel, PLLC to defendants. (Request No. 27).

While DeSoto has -- very tardily -- produced degraded versions of the images taken by the equipment, as well as *some* billing records that reflect the actual procedures performed, it has flatly refused to produce many of the records that TAMS needs to explore its claims and defenses in this case. For example, DeSoto has refused to produce: the referring physician requisition forms (*i.e.* the documents that reflect what procedures were actually *ordered* by the referring physicians as opposed to performed by DeSoto); the radiologist's dictation reports (or equivalent documents) of Dr. Carvel or her collaborators that would reflect the purported basis for any differences between the procedures that referring physicians requested and that DeSoto actually performed (as well as the basis for the charges to third-party payors for the procedures performed); and the claim forms submitted to third-party payors and/or patients for the services performed. All of these records are highly relevant for multiple reasons.

First, DeSoto contends that the equipment did not perform as warranted, resulting in Dr. Carvel's being unable, at times, to complete requested procedures. Carvel Dep., Sept. 9, 2003, at 158-166 (Exhibit "L."). Cr. Carvel was entirely unable, however, to support this contention with any estimate as to the number of instances in which this allegedly occurred, the names of the patients allegedly affected, or even the kinds of scans that were being performed when these problems allegedly occurred. *Id.* at 161, 166. Obviously, TAMS is entitled to *all* documents (including those described above) that will demonstrate the extent to which requested procedures were or were not successfully performed. Obviously, the degree to which the equipment in fact produced diagnostic images -- that is, produced images that Dr. Carvel used to make diagnoses

and billed for -- is centrally relevant to the question of whether the equipment operated properly. The extent to which Defendants were in fact able to perform all necessary procedures and to bill for them, thus profiting from the Toshiba equipment, is obviously "relevant" to the question of whether that equipment failed to meet its essential purpose as Defendants claim. TAMS has a right to review *all* documents (not just those selected documents that DeSoto has, for whatever reason, chosen to produce) that bear on the efficiency of the equipment and the profits it generated.

Second, these documents -- and particularly the referring physician requisitions, the radiologist dictation reports, and any claims sent to third-party payors, including Medicare -- are central to the issue of whether Defendants regularly over-billed for the services performed at DeSoto. The issue of whether DeSoto's practice includes regular over-billing is crucially relevant to a number of issues in this case. Most obviously, it bears on Defendants' claims for damages. To the extent TAMS is able to show that Defendants' "profits" are in fact the result of revenues to which DeSoto was not lawfully entitled -- whether because of over-billing for appropriate procedures or billing for inappropriate and unnecessary procedures -- the loss of such "profits" cannot constitute legally cognizable damages any more than could the loss of an opportunity to rob a bank.

This issue is also highly relevant to at least two other important issues in the case. One is the credibility of Defendants' main (and in many areas only) witness, Dr. Carvel, who has testified under oath that DeSoto *did not* over bill or perform unnecessary procedures and that its financial performance as reflected in its financial records is, therefore, pristine. Another is Dr. Carvel's claim that DeSoto's "damages" include the loss of qualified radiological technologists due to their dissatisfaction with the equipment and the consequent need to train replacement

technologists.  TAMS contends that many technologists left DeSoto not because they had any

problem with the Toshiba equipment, but because they became concerned about precisely the

practices that Dr. Carvel claims did not take place.  It is, perhaps, a fair inference that DeSoto, if

it had nothing to hide, would not be so determined to withhold such obviously relevant

documents.  More importantly, however, it is clear that these documents are not only likely to

lead to the discovery of admissible evidence, but are likely to have evidential value in and of

themselves.  Given the impending deadlines, the *immediate* production of these documents is

critical.

### 2. TAMS is Entitled to Documents Relating to the Replacement Equipment (Request Nos. 8(b)(c)(d), 10-12, 18-20)

After using the Toshiba equipment to start up a very profitable business, Defendants

unilaterally de-installed it and replaced each modality with other makes and models.  TAMS

seeks, with regard to the replacement equipment, documents relating to: the financing by DeSoto

to lease or purchase the equipment; the installation of the equipment; communications with third-

parties, including Siemen's, Miller Medical Imaging and Medical Equipment Consulting

Services, regarding the equipment; billing records reflecting the use of such equipment;

complaints by DeSoto with regard to the equipment; services required on the equipment; and

fees due by DeSoto relating to the equipment.

Despite DeSoto's failure and refusal to provide it, this information is also centrally

relevant to this lawsuit.  DeSoto contends, among other things, that: (1) it required "top of the

line" and "state of the art" equipment to compete with its competitors; (2) Toshiba knew this and

represented that the leased equipment was "top of the line" and "state of the art"; (3) the Toshiba

equipment was not in fact "top of the line" or "state of the art"; and (4) that the equipment with

which Desoto replaced the Toshiba equipment is in all respects adequate to meet DeSoto's needs.

In these circumstances, documentation relating to the replacement equipment -- which is, according to DeSoto, adequate to DeSoto's needs -- is clearly relevant.  The nature, cost and performance of the replacement equipment bears *directly* on at least the following issues: (1) whether DeSoto in fact requires "state of the art" or "top of the line" equipment; (2) whether, if it does not, DeSoto's claim that Toshiba "knew" that it did is credible or unworthy of belief; and (3) whether the *concededly adequately performing* replacement equipment performs appreciably better, or worse, than the Toshiba equipment that DeSoto seeks to malign in this case.  Such information as whether the replacement equipment is new or used, what its specifications (performance limitations) are, what DeSoto paid for it, what procedures it has and has not proved able to perform, the number and nature of service calls experienced with regard to it, etc., is all directly relevant to these issues.

To provide one specific example: Dr. Carvel claims that, when she was selecting a Nuclear Medicine (or Gamma) Camera, she made it clear to TAMS that she wanted to "do hearts in fifteen minutes", something that only a variable dual head camera could do.  In fact, DeSoto leased a *fixed* dual head, 7200 Series Nuclear Camera.  Dr. Carvel claims that she did not know that she was leasing only a fixed dual head camera when she leased it.  When DeSoto replaced the Toshiba Nuclear Camera, however, it bought a *single* head camera with significantly less functionality than the Toshiba camera it replaced.  It is undisputed that this replacement camera will not "do hearts in fifteen minutes" and it is not "top of the line" or "state of the art".  This, TAMS submits, bears directly on both (1) the question of whether the Toshiba camera could adequately perform *needed* functions at DeSoto and (2) the credibility of Dr. Carvel's claim that,

9

as to all of the equipment, the parties' written agreements should be disregarded because she relied exclusively upon alleged oral representations by TAMS representatives.

In addition, some of the requested materials will help to establish such things as when DeSoto *really* made the decision to de-install the Toshiba equipment (since there is ordinarily a fairly long lead time between order and delivery and installation for this kind of equipment) and whether the replacement equipment cost less than the Toshiba equipment (which might support TAMS' position that lowering, by evading lawfully incurred, cost was DeSoto's ulterior motive for the de-installation of the Toshiba equipment). In short, the requested information is, once again, centrally relevant to the issues in this case and DeSoto's efforts to prevent it from seeing the light of day are entirely sham.

### 3.    TAMS Is Also Entitled To The Remaining Documents Requested

There are also a number of other, miscellaneous document requests in response to which DeSoto has failed to make production and as to which production should be ordered. Specifically:

**Request No. 16:** This request seeks correspondence and communications between DeSoto and third parties relating to the medical equipment. DeSoto objects to the relevancy of this request and states that it needs to be stated with greater particularity. There is no basis for either objection. It obviously includes all invoices and bills relating to use of the medical equipment, all communications with physicians relating to the medical equipment or its functioning, any filings with the State of Mississippi that refer to the medical equipment, any communications with third parties relating to the de-installation or removal of the medical equipment, and any other communications with third parties relating or referring to the medical equipment. All such communications are relevant and should be produced.

**Request No. 22:** This request seeks documents evidencing DeSoto's billing policies and procedures, which are necessary for the purpose of determining whether DeSoto was operating pursuant to proper procedures or was following its own nominally applicable procedures to the extent they were proper.

**Request Nos. 28**: This request seeks information relating to the AGFA PACS system purchased/leased by DeSoto for use with the Toshiba equipment.  Dr. Carvel has complained at length regarding the performance of AGFA PACS, has sought to blame what she claims is the poor performance of these systems on TAMS  and has claimed that it formed part of the basis for her decision to de-install the equipment.  Thus, any and all records relating to the AGFA PACS system and, in particular, any communications DeSoto had with AGFA or Talk Tech (a company believed to be affiliated with AGFA) regarding the PACS system, the Talk Tech System or any interface between those systems is highly relevant at least to the following questions: (1) was any particular claimed "problem" in fact a system malfunction, as opposed to being simply a system feature that Dr. Carvel did not like;  (2) are DeSoto's efforts to hold TAMS responsible for alleged problems with AGFA's products fairly supportable; and (3) with regard to the alleged issues, did DeSoto raise them with AGFA or Talk Tech rather than TAMS and, if so, when did it do so, did AGFA take "ownership" of the alleged problems, were these issues resolved and, if so, when were they resolved.

**Request No. 29:** This request seeks information relating to the RIS system.  Dr. Carvel testified that the radiology information system ("RIS") stores patient name and information, and serves as an online patient appointment file.   Carvel Dep., July 21, 2003, at 231-233.  To the extent that it stores information relating to procedures performed (or scheduled to be performed) on the Toshiba equipment it is clearly relevant and should be produced.

**Request No. 30:** seeks documents that relate to any way in which the RIS system

affected the performance of the Medical equipment.  In its initial response to this request,

DeSoto purported not to understand this request.  This response was less than candid and, in its

October 10, 2003 letter, TAMS pointed out that Dr. Carvel (at page 53 of her July 21, 2003

deposition) had *testified* that there was a problem relating to the RIS system, specifically a

problem in transferring accession numbers as produced by the RIS system between the

modalities (*i.e.* the Toshiba equipment) and the AGFA PACS system via HL-7.  Dr. Carvel also

added that there were also other issues that were "not popping into her head" at the moment she

was being deposed.  Between Requests Nos. 28 and 30, TAMS sought, among other things, to

obtain all documents relating to ways in which the RIS system and/or the AGFA PACS system

affected the performance of the Toshiba equipment.

**Request No. 31:** This request seeks documents in defendants' possession, custody or

control that relate to methods of operating the Toshiba equipment.  Given DeSoto's claims that it

experienced trouble operating the equipment, this information is obviously relevant.  It is no

response to say, as DeSoto has said, that responsive information may be in TAMS' possession.

Even if TAMS does have materials relating to the operation of the equipment, that does not

absolve DeSoto from producing what *it* has.  This is particularly significant in that it appears that

DeSoto may not have employed TAMS operating manuals but, instead, an unofficial "manual"

created by a DeSoto part-time technologist and consultant, Mr. James Smith.  Vokaty Dep. at

107 (Exhibit "M").  DeSoto's failure and refusal to produce this unofficial "manual" is

particularly significant in view of TAMS' contention that many of DeSoto's "problems" resulted

from the fact that Dr. Carvel was unwilling to make the investment necessary to train many of

DeSoto's replacement technologists (who were, no doubt, perfectly competent in their fields) so as to allow them to optimize the performance of the Toshiba equipment.

**Request No. 32:** This request seeks documents relating to any tests or procedures run by Desoto (such as "floods", Quality Assurance checks or tests, uniformity tests or checks or checks and other tests employing phantoms) to ensure that the Toshiba equipment was properly set up and in proper condition to perform procedures. This request is stated with more than sufficient particularity. It is directly addressed to the question of whether DeSoto had internal procedures that it would have been required to have in order to operate in accordance with good practice. Specifically, the request seeks the results of regular, in many cases daily, tests that DeSoto performed (or *should* have performed) to ensure that the equipment was properly calibrated, tuned, etc. prior to being used to generate images. DeSoto's contention that the request is "incomprehensible" is not only meritless, it is blatant bad faith. Given that DeSoto claims that this lawsuit is largely about whether the equipment functioned properly, DeSoto's claim that this request is *not relevant* is equally egregious.

**Request No. 34:** This request seeks documents relating to any generally accepted standards used by radiologists regarding image quality. DeSoto contends -- again in bad faith -- that this request calls for privileged documents and for expert testimony. The contention that the request seeks "privileged documents" is interposed in bad faith because (a) the request is addressed to generally accepted standards and (b) DeSoto has not produced a log identifying any documents as being withheld on the grounds of privilege. The contention that the request seeks an "expert opinion" is equally frivolous. The request seeks no such thing. Rather, it seeks the production of any documents in DeSoto's possession, custody or control that refer or relate to standards used by radiologists to determine the acceptability, from a quality standpoint, of

radiological images.  If DeSoto has such documents other than opinions of its experts, it is obliged to produce them.  If it does not, it is obliged to admit that.

        **Request No. 3:**  This request seeks the personnel files of all DeSoto employees. These files will reveal the identities and positions held of all physicians, administrative assistants, billing personnel, etc. who may have information relevant to this dispute.  Obviously, these persons are likely to have significant knowledge about DeSoto's practices that might bear significantly on the issues in this action.

**B.**    <u>DeSoto Is Obliged to Produced a Privilege Log</u>

        DeSoto has objected to the production of various documents and information on the ground of attorney-client privilege or work product.  *See, e.g.*, Defendants' Responses to TAMS' First Request for Production of Documents Nos. 2 and 18; Defendants' Responses to TAMS' Second Request for Production of Documents No. 4; and Defendants' Responses to TAMS' Third Request for Production of Documents Nos. 21, 23, 34 and 37.  Despite this, DeSoto has failed to provide a privilege log that identifies *even one single document* as having been withheld on grounds of the attorney-client privilege or work product doctrine.  Instead, DeSoto has produced a list reflecting redactions from documents none of which are allegedly subject to either privilege.  Given that DeSoto claims to have withheld documents on the ground of attorney-client privilege or the work product doctrine, its failure to identify those documents is highly inappropriate.

        "A claim of privilege must specify for what documents the privilege is being claimed as well as 'precise and certain' reasons for non-disclosure of the documents."  *General Refractories Co. v. Liberty Mutual Ins. Co.*, No. 97-7494, 1999 U.S. Dist. LEXIS 6524, at *4-5 (E.D. Pa. May

6, 1999) (citing *United States v. O'Neill*, 619 F.2d 222, 226 (3d Cir. 1980)).   In addition, Federal

Rule of Civil Procedure 26(b)(5) provides, in relevant part:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged . . . the party shall make the claim expressly and shall describe the nature of the documents . . . not produced . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Here, the "log" that DeSoto has produced does not identify the allegedly applicable

"privilege" that has resulted in redactions and, in addition, does not identify any of the

documents that DeSoto has withheld on the basis of attorney-client privilege or work product.

DeSoto must, therefore, be compelled to produce a privilege log that is sufficiently detailed to

allow an informed evaluation of their claims of privilege.

### C.    DeSoto's Inexcusable Delay and Refusal to Produce Relevant Documents is Prejudicial to TAMS

The result of DeSoto's refusal to participate in good faith in the discovery process has led

to considerable prejudice and hardship to TAMS.  As discussed above, expert disclosures are due

October 29, 2003, and DeSoto has failed to produce entire categories of documents that require

expert review and analysis.  Moreover, as expressed in TAMS' initial motion to compel, the

discovery deadline of November 30, 2003 is looming, and TAMS has had to continue to prepare

its case without critical documents, including taking the 30(b)(6) deposition of Desoto, as well as

the individual depositions of Dr. Carvel and Randon Carvel.

DeSoto is deliberately withholding the information requested above.  Moreover, while

repeating its repeatedly unfulfilled promise to produce documents responsive to **Requests Nos.**

**4, 5, 6, 7, 8(a)(iii), 14, 15, 23, 24 and 37**, DeSoto has declined to state when such documents will

be produced.  Indeed, Mr. Tate has improperly refused even to communicate with TAMS'

designated counsel on that issue.  TAMS has attempted in good-faith to work out these discovery

issues with DeSoto and has tried to accommodate DeSoto's pleas that, as a small organization, it

needs more time to fulfill this or that task.  At this point, it is apparent that TAMS' good faith has

been grossly abused and that, without Court intervention, DeSoto will not produce all documents

and information responsive to TAMS' discovery requests before the applicable deadlines.

Consequently, in order to prevent any additional prejudice to TAMS, TAMS respectfully

requests that this Court grant its motion to compel.

## IV.    **CONCLUSION**

For the foregoing reasons, TAMS respectfully requests that this Honorable Court enter an

Order in the form attached hereto, compelling Defendants DeSoto Diagnostic Imaging, LLC,

Randon J. Carvel, Lynn T. Carvel, Delta Radiology, P.C. and Zobar Properties, LLC to provide

answers and documents in response to TAMS' Third Request for Production of Documents, to

produce a complete and adequate privilege log, and for sanctions in an amount equal to the cost

of bringing this motion.


Dated: October 23, 2003

John Chesney (Attorney I.D. No. 24458)
Julianne Peck (Attorney I.D. No. 79966)
Jonathan Sturz (Attorney I.D. No. 88153)
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996
(215) 988-1996
Attorneys for Plaintiff/Intervenor
Toshiba America Medical Systems, Inc.

## <u>CERTIFICATION OF COUNSEL</u>

Pursuant to Local Rule 26.1(f), we hereby certify that John Chesney, Esquire and

Julianne Peck, Esquire of this office have conferred with Kyle P. Tate, Esquire, counsel for the

Defendants in this matter, in a good faith effort to resolve by agreement the issues raised by the

motion without intervention by the Court. Unfortunately, the parties have been unable to resolve

these issues through informal means. The issues which remain unresolved are discussed in the

Memorandum of Law submitted herewith.


Dated: October 23, 2003

John Chesney, Esquire
DRINKER BIDDLE & REATH, LLP


Dated: October 23, 2003

Julianne Peck, Esquire
DRINKER BIDDLE & REATH, LLP

Attorneys for Plaintiff/Intervenor
Toshiba America Medical Systems, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that today I caused a true and correct copy of **Toshiba American Medical Systems, Inc.'s Motion To Compel Discovery Directed To Defendants and for Expedited Relief** and the Exhibits thereto to be served upon counsel of record for all of the other parties to this proceeding as follows:

**(Via Facsimile and Federal Express)**

Kyle P. Tate, Esquire
9085 Sandidge Center Cove
Olive Branch, Mississippi 38654

**(Via Hand Delivery)**

Rosetta B. Packer, Esquire
MCCARTER & ENGLISH
Mellon Bank Center, Suite 700
1735 Market Street
Philadelphia, PA 19103-7501

William Matthews, Esquire
SAUL EWING LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102

Dated:  October 23, 2003

Julianne Peck

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DELAGE LANDEN FINANCIAL
SERVICES, INC.,
           Plaintiff,
:
:
:
:

TOSHIBA AMERICA MEDICAL
SYSTEMS, INC.
           Plaintiff/Intervenor,
:
:
:
:
:

v.

DESOTO DIAGNOSTIC IMAGING,
LLC., RANDON J. CARVEL, LYNN T.
CARVEL, DELTA RADIOLOGY, P.C.
and ZOBAR PROPERTIES, LLC
           Defendants.

:
:
:
:
:
:
:
:
:
:

CIVIL ACTION NO. 2:02CV2810

HON. RONALD J. BUCKWALTER

## INDEX

### Exhibits in Support of Toshiba America Medical Systems, Inc.'s
### Motion to Compel Discovery and Expedited Relief Directed to Defendants

Exhibit A ................... Complaint of Intervenor, served June 21, 2002.

Exhibit B. ................... Defendants' Response to TAMS First Set of Interrogatories, served April14, 2003.

Defendants' Supplemental Response to First Set of Interrogatories, served August 21, 2003.

Defendants' Amended Supplemental Response to First Set of Interrogatories, served September 15, 2003.

Defendants' Second Supplemental Response to First Set of Interrogatories, served October 2, 2003.

Exhibit C ................... Defendants' Response to TAMS First Request for Production of Documents, served April 14, 2003.

Defendants' First Supplemental Response to First Request for Production of Documents, served October 2, 2003.

Exhibit D....................Defendants' Objection to TAMS' Second Set of Interrogatories, served October 2, 2003.

Exhibit E ....................Defendants' Response to TAMS' Second Request for Production of Documents, served July 23, 2003.

Defendants' First Supplemental Response to Second Request for Production of Documents, served October 2, 2003.

Exhibit F....................Defendants' Response to TAMS Third Set of Interrogatories, served September 30, 2003.

Exhibit G....................Defendants' Response to TAMS Third Request for Production of Documents, served September 30, 2003.

Exhibit H....................Letter from J. Peck to K. Tate, dated October 10, 2003.

Exhibit I ....................Stipulation and Order.

Exhibit J ....................Letter from J. Peck to K. Tate, dated October 17, 2003.

Exhibit K....................October 20 and 21, 2003 e-mail exchange between J. Peck and K. Tate.

Exhibit L ....................Portions of (30)(b)(6) Deposition of Lynn T. Carvel dated July 21, 2003 at 53, 231-233 and September 9, 2003 at 158-166.

Exhibit M. ..................Portion of May Vokaty Deposition dated August 12, 2003 at 107.

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

DELAGE LANDEN FINANCIAL : 
SERVICES, INC., : 
              Plaintiff, : CIVIL ACTION NO. 2:02CV2810
: 
: HON. RONALD J. BUCKWALTER
TOSHIBA AMERICA MEDICAL : 
SYSTEMS, INC. : 
         Plaintiff/Intervenor, : 
: 
        v. : 
: FILED JUN 2 1 2002
DESOTO DIAGNOSTIC IMAGING, : 
LLC., RANDON J. CARVEL, LYNN T. : 
CARVEL, DELTA RADIOLOGY, P.C. : 
and ZOBAR PROPERTIES, LLC. : 
          Defendants. : 

**COMPLAINT OF INTERVENOR**

    Plaintiff/Intervenor Toshiba America Medical Systems, Inc., by and through its

undersigned attorneys, brings this action for damages and for declaratory relief against

defendants, and in support of its claims avers as follows:

**PARTIES**

    1.    Plaintiff/Intervenor, Toshiba America Medical Systems, Inc. ("TAMS"), is a

corporation, organized and existing under the laws of the State of California, with its principle

place of business located in Tustin, California.

    2.    Upon information and believe, the original Plaintiff in this action, De Lage

Landen Financial Services, Inc. ("DLL"), is a corporation, organized and existing under the laws

of the State of Michigan, with a place of business at 1111 Old Eagle School Road, Wayne,

Pennsylvania, 19087.

3.      Defendant, DeSoto Diagnostic Imaging, LLC ("Desoto") is a limited liability company organized under the laws of the State of Mississippi, with a place of business at 9085 Sandridge Center Cove, Olive Branch, Mississippi, 38654.

4.      Defendant, Randon J. Carvel is an adult individual who is a citizen and resident of the State of Mississippi with a place of residence at 2464 Monroe Avenue, Memphis, Tennessee 38112.

5.      Defendant, Lynn T. Carvel is an adult individual who is a citizen and resident of the State of Mississippi with a place of residence at 2464 Monroe Avenue, Memphis, Tennessee 38112.

6.      Defendant, Delta Radiology, P.C. ("Delta") is a professional corporation organized and existing under the laws of the State of Mississippi with a place of business at 5948 Lake tide Cove, Memphis, Tennessee 38120.

7.      Defendant Zobar Properties, LLC ("Zobar") is a limited liability company organized and existing under the laws of the State of Mississippi with a place of business at 9085 Sandridge Center Cove, Olive Branch, Mississippi 38654.

## **JURISDICTION**

8.      Jurisdiction is proper pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

9.    Personal jurisdiction and venue are appropriate in this District because, among other reasons, the defendants each executed documents (described _infra_ and attached hereto as Exhibits) consenting to the jurisdiction of this Court.

## **FACTS**

10.    On or about February 17, 2000, defendant Desoto executed and delivered to Toshiba America Medical Credit, a program of TAMS, a Master Lease Agreement and related attachments (collectively, the "Master Lease"), whereby Desoto leased from TAMS certain equipment more fully described therein. A true and correct copy of the Master Lease is attached hereto as **Exhibit "A."**

11.    In order to secure the obligations of Desoto to TAMS under the Master Lease, defendants Randon J. Carvel and Lynn T. Carvel each executed and delivered to TAMS their respective Blanket Personal Guarantees, true and correct copies of which are attached hereto as **Exhibits "B" and "C"** respectively.

12.    In order to secure the obligations of Desoto to TAMS, defendants Delta Radiology, P.C. and Zobar Properties, LLC each executed and delivered to TAMS their respective Guarantees, true and correct copies of which are attached hereto as **Exhibits "D" and "E"** respectively.

13.    Pursuant to a Master Financing Program Agreement entered into between TAMS and Tokai Financial Services, Inc. (whose rights were subsequently assigned to Plaintiff DLL) TAMS assigned to DLL all of its right, title and interest in and to the Master Lease and the guarantees. A true and correct copy of the Master Financing Program Agreement is attached hereto as **Exhibit "F."**

14.    Pursuant to the Master Financing Program Agreement TAMS agreed to continue to provide maintenance and services for the equipment leased to Desoto and, in fact, TAMS and Desoto entered into a separate service agreement for each piece of equipment leased.

15.    Desoto is in default of the terms and conditions of the Master Lease because it has, inter alia, failed and refused to timely make payments when due and has dismantled and removed the equipment described in the Master Lease prior to the end of the lease term.

16.    Desoto is also in default of the terms of the services agreements it entered into with TAMS in that it has failed and refused to pay for services rendered to date.

17.    In addition, Desoto has failed to abide by and has breached the following provision of each of the service agreements:

> Customer may not terminate this Agreement before its expiration unless Toshiba substantially fails to perform any of its material obligations specified in this Agreement, provided, however, that before such termination, customer must notify Toshiba in writing of the breach and of its intent to terminate this Agreement if such breach is not corrected within thirty (30) days from Toshiba's receipt of the notice of breach.  If Customer elects to terminate this Agreement before its expiration for any reason other than Toshiba's breach, Toshiba reserves the right, in its sole discretion to allow Customer to terminate the Agreement provided Customer pays Toshiba as liquidated damages, an amount equal to 25% of the total service amounts payable under this Agreement for the term remaining as of the date of termination.

## COUNT I

### (Declaratory Judgment – All Defendants)

18.    TAMS repeats and incorporates herein by referencing the preceding paragraphs of the complaint as fully as if the same were set forth at length herein.

- 4 -

19.    Desoto had a duty to comply with the terms and conditions of the Master Lease and to timely make payments to DLL under the terms set forth therein.

20.    Desoto has breached its duty to DLL by failing to make timely payments to DLL under the Master Lease, and, as a result, owes DLL a sum in excess of $3,250,000.00 representing the balance due under the Master Lease and other charges due thereunder including, but not limited to, taxes, residual amounts due, attorneys' fees and late charges.

21.    Defendants, Randon J. Carvel, Lynn T. Carvel, Delta Radiology, P.C. and Zobar Properties, LLC were guarantors of the Master Lease obligations of Desoto to DLL pursuant to the Guarantees attached hereto as Exhibits "B" through "E.," and as such, had and have a duty to comply with the terms of the Guarantees.

22.    The guarantor defendants are indebted, jointly and severally, to DLL in an amount in excess of $3,250,000.00 representing the sums due and owing from Desoto to DLL.

23.    If DLL does not recover the amounts owed to it by Desoto and/or the guarantor defendants, or independently, DLL may assert claims against TAMS under the Master Contract Financing Program Agreement for such damages as DLL may sustain as a result of the breaches of Desoto and/or the guarantor defendants.  Under the Master Contract Financing Program Agreement, in the event the Defendants default in their payment obligations to DLL under the Master Lease, TAMS is obligated to pay DLL a recourse amount of $375,000.

WHEREFORE, TAMS requests that this Court enter a Declaratory Judgment in its favor and against the Defendants, and each of them, to the effect that:

a.    Desoto is obliged to make payment to DLL in accordance with the terms of the Master Lease;

b.    The remaining Defendants, and each of them, is obligated to make payment to DLL if Desoto fails to do so in accordance with the guarantees that they signed;

c.    In entering into contractual agreements with DLL, TAMS justifiably relied upon the fact that Desoto and the guarantor defendants would honor their obligations under the Master Lease and the guarantees and, accordingly;

d.    Desoto, the guarantor defendants, and each of them jointly and severally, are obliged to indemnify and hold TAMS harmless of and from any liability to DLL to which TAMS may prove liable as a result of Defendants' breaches of their obligations under the Master Lease and the guarantees.

e.    The Defendants, and each of them jointly and severally, are obliged to pay TAMS the costs of this action.

## COUNT II

### (Breach Of Contract as to Desoto)

24.    TAMS repeats and incorporates herein by reference the preceding paragraphs of this Complaint as fully as if the same were set forth at length herein.

25.    Desoto has a duty to comply with the terms and conditions of its services agreements with TAMS.

26.    Desoto has breached and repudiated its duty to TAMS by failing to make timely payments under the service agreements.

27.     Desoto has also improperly terminated the service agreements prior to their term.

28.     As a result of Desoto's failure to make timely payments under the service agreements and unlawful termination of said agreements, TAMS has been damaged.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Desoto in the following particulars:

a.     In an amount for unpaid services currently in excess of $75,000 and that TAMS believes, and therefore avers, will increase prior to trial as a result of Desoto's ongoing failure and refusal to pay for services, together with interest;

b.     For liquidated damages in an amount equal to 25% of the total service amounts payable under the services agreements for the term remaining as of the date of Desoto's unlawful termination, together with interest;

c     For TAMS's costs of this action, including reasonable attorney's fees.


## COUNT III

### (Unjust Enrichment and Quantum Meruit as to Desoto)

29.     TAMS repeats and incorporates herein by reference the preceding paragraphs of this Complaint as fully as if the same were set forth at length herein.

30.     Desoto accepted and received the benefits of the maintenance and services provided by TAMS for the leased equipment.  Desoto knew, or should have known, that TAMS expected and was entitled to be compensated for performing these services.

31.    TAMS is entitled to recover from Desoto under the doctrines of <u>quantum meruit</u> and/or unjust enrichment in an amount of the reasonable value of the performance of these services.

WHEREFORE, Plaintiff demands judgment against Desoto for an amount in excess of $75,000 representing the value of its services, plus interest and attorneys' fees.

DRINKER BIDDLE & REATH LLP

Dated:  June 21, 2002                        By:    _Julianne Peck_____

John Chesney (Attorney I.D. No. 24458)
Julianne Peck (Attorney I.D. No. 79966)
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA  19103-6996
(215) 988-2700

Attorneys for Plaintiff

# Exhibit B

NS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DELAGE LANDEN FINANCIAL SERVICES, INC., | : | |
| | : | CIVIL ACTION NO. 2:02CV2810 |
| Plaintiff, | : | |
| | : | |
| TOSHIBA AMERICA MEDICAL SYSTEMS, INC. | : | HON. RONALD J. BUCKWALTER |
| | : | |
| Plaintiff/Intervenor, | : | |
| | : | |
| v. | : | |
| | : | |
| DESOTO DIAGNOSTIC IMAGING, LLC, RANDON J. CARVEL, LYNN T. CARVEL, DELTA RADIOLOGY, P.C. and ZOBAR PROPERTIES, LLC | : | |
| | : | |
| Defendants and Counter-Claimants | : | |

## RESPONSE TO FIRST SET OF INTERROGATORIES
## PROPOUNDED BY TOSHIBA AMERICA MEDICAL SYSTEMS, INC.

NOW COME the Defendants, Desoto Diagnostic Imaging, LLC, Randon J. Carvel, Lynn T. Carvel, Delta Radiology, P.C. and Zobar Properties, LLC, by and through their attorneys, TATE, RAY & BRADY, by Kyle P. Tate, and for their Response to First Set of Interrogatories Propounded by Toshiba America Medical Systems, Inc. do hereby state and answer:

### GENERAL OBJECTIONS

1.    Defendants object to Plaintiff/Intervenor's instructions and definitions to the extent that they suggest or require any burdens, responsibilities, or objections beyond those set forth in or required by the Federal Rules of Civil Procedure. In responding to these requests, Defendants will comply with the applicable provisions of the Federal Rules of Civil Procedure.

*Defendants' Response to*
*Toshiba America Medical Systems, Inc.'s*
*First Set of Interrogatories*

2.       Defendants object to any discovery directed at information protected by the attorney work product doctrine, the attorney-client privilege or any other applicable privilege. Defendants further object to any discovery which seeks information that is private, confidential business or commercial information, trade secrets, confidential research or development or proprietary information.

3.       Defendants object to discovery which is not relevant or material and which is not reasonable calculated to lead to the discovery or proprietary information.

4.       Defendants object to discovery which is unduly burdensome, overly broad, vague and/or ambiguous, and not subject to reasonable limitation in time. Defendants further object to discovery which does not permit the identification of particular documents, subjects and time-frames with sufficient particularity to permit a reasonable response.

5.       **DEFENDANTS OBJECT TO DISCOVERY BEYOND THAT WHICH IS ALLOWED BY RULE 33 OF THE FEDERAL RULES OF CIVIL PROCEDURE WHICH LIMITS WRITTEN INTERROGATORIES TO 25 IN NUMBER, INCLUDING ALL DISCRETE SUBPARTS.**

6.       Each of these general objections is incorporated into each and every response as though fully set forth at length therein, in addition to any specific objections stated.

7.       Defendants reserve the right to supplement their answers.

*Defendants' Response to*
*Toshiba America Medical Systems, Inc.'s*
*First Set of Interrogatories*

## ANSWERS TO INTERROGATORIES

1.      Please identify all of the technicians or other persons employed by you who operated any of the Medical Equipment at Desoto at any time during which such equipment was located at Desoto. For each person identified, please provide the following information:

   a.  The name of each such person;

   b.  The dates of employment for each such person;

   c.  The Medical Equipment each such person operated in the scope of his or her employment;

   d.  Whether or not the person is still employed by you; and

   e.  The last known address and telephone number for each such person who is no longer employed by you.

**Response**:      Defendants object to this Interrogatory on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant information. Further, Defendants object to this Interrogatory to the extent that it seeks confidential, private, business or commercial information and proprietary information. Without waiving these objections, Defendants state that the following persons, during the course of their employment at DDI, may have operated Medical Equipment as set forth below:

| Employee Name: | **Holly Clark** |
|---|---|
| Dates of Employment: | 2/25/2002 – 5/6/2002 |
| Equipment Operated: | Toshiba R&F System |
| | GE Mammography System |
| Currently Employed by DDI: | No |
| Last Known Address: | 2220 Shannon Cove |
| | Horn Lake, MS 38637 |
| Last Known Telephone Number: | (662) 393-5500 |

*Defendants' Response to*
*Toshiba America Medical Systems, Inc.'s*
*First Set of Interrogatories*

| | |
|---|---|
| **Employee Name:** | **Brian Gibbs** |
| Dates of Employment: | 02/05/2001 – 6/22/2001 |
| Equipment Operated: | Toshiba Excelart MRI System |
| | Toshiba Asteion CT System |
| | Toshiba R&F System |
| Currently Employed by DDI: | No |
| Last Known Address: | 1749 Brookhaven Drive |
| | Southaven, MS 38671 |
| Last Known Telephone Number: | (662) 393-3512 |

| | |
|---|---|
| **Employee Name:** | **Cindy Holmes** |
| Dates of Employment: | 12/11/2000 – 3/27/2002 |
| Equipment Operated: | Toshiba Asteion CT System |
| | Toshiba R&F System |
| | GE Mammography System |
| Currently Employed by DDI: | No |
| Last Known Address: | 1305 Dogwood Hollow |
| | Nesbit, MS 38651 |
| Last Known Telephone Number: | (662) 449-3286 |

| | |
|---|---|
| **Employee Name:** | **Deborah May** |
| Dates of Employment: | 12/31/2001 – 2/14/2003 |
| Equipment Operated: | Toshiba Excelart MRI System |
| | Toshiba Asteion CT System |
| | Toshiba R&F System |
| Currently Employed by DDI: | No |
| Last Known Address: | 13260 Coldwater Drive |
| | Olive Branch, MS 38654 |
| Last Known Telephone Number: | (662) 893-6891 |

| | |
|---|---|
| **Employee Name:** | **Pam Paulk** |
| Dates of Employment: | 07/09/2001 – 01/24/2003 |
| Equipment Operated: | Toshiba Asteion CT System |
| | Toshiba Nuclear Camera System |
| | Toshiba R&F System |
| Currently Employed by DDI: | No |
| Last Known Address: | 10327 Maplebrook Lane |
| | Olive Branch, MS 38654 |
| Last Known Telephone Number: | (662) 890-7402 |

*Defendants' Response to*
*Toshiba America Medical Systems, Inc.'s*
*First Set of Interrogatories*


**Employee Name:**             **Debra Powers**
Dates of Employment:        12/18/2000 – 1/22/2001
Equipment Operated:         Toshiba Asteion CT System
                            Toshiba R&F System
Currently Employed by DDI:  No
Last Known Address:         340 Crestfield Road
                            Coldwater, MS 38618
Last Known Telephone Number: (662) 622-0008


**Employee Name:**             **James Smith**
Dates of Employment:        PRN
Equipment Operated:         Toshiba Nuclear Camera System
Currently Employed by DDI:  No
Last Known Address:         2641 Union Extended (work)
                            Memphis, TN 38112
Last Known Telephone Number: (901) 458-0116 (work)


**Employee Name:**             **Rick Stoughbaugh**
Dates of Employment:        12/1/2001 – 5/4/2001
Equipment Operated:         Toshiba Nuclear Camera System
                            Toshiba R&F System
Currently Employed by DDI:  No
Last Known Address:         5821 White Ridge Cir. S.
                            Olive Branch, MS 38654
Last Known Telephone Number: (662) 890-4929


**Employee Name:**             **Joanne Tucker**
Dates of Employment:        12/11/2000 – 8/30/2002
Equipment Operated:         Toshiba Excelart MRI System
                            Toshiba R&F System
Currently Employed by DDI:  No
Last Known Address:         4114 Glenroy Drive
                            Memphis, TN 38125
Last Known Telephone Number: (901) 754-4508

*Defendants' Response to*
*Toshiba America Medical Systems, Inc.'s*
*First Set of Interrogatories*

**Employee Name:**           **May Vokaty**
Dates of Employment:     12/11/2000 – Present
Equipment Operated:     Toshiba Nuclear Camera System
                              Toshiba R&F System
                              Toshiba Powervision Ultrasound
Currently Employed by DDI:  Yes

2.     Please identify the person or persons who were operating the Medical Equipment on the two occasions where the Medical Equipment allegedly malfunctioned causing injury to patients as alleged in paragraph 33 or your Crossclaim. In addition, please provide the following such information for each such incident:

     a.   The date it occurred;

     b.   The Medical Equipment involved;

     c.   The identity of the person or persons injured;

     d.   The nature of the injury suffered by the person(s) involved; and

     e.   Whether any legal proceeding were instituted, or claims made against you, by the person or persons injured in the incidents.

**Response**:   Defendants did not draft or file a Crossclaim in this matter, thus Defendants are not aware of any information that would be responsive to this request. If Plaintiff/Intervenor TAMS resubmits this request, an attempt would be made to provide the information requested.

3.     Please identify all physicians or medical groups who ordered tests to be performed using the Medical Equipment during the period that such equipment was located at DeSoto. For each person identified, please provide the following information:

     a.   The name of each physician;

*Defendants' Response to*
*Toshiba America Medical Systems, Inc.'s*
*First Set of Interrogatories*

    b.  The date of each test;

    c.  The specific nature of the test;

    d.  The Medical Equipment used for each test;

    e.  Whether there were any complaints made by the physician regarding the performance of the Medical Equipment; and

    f.  A description of all documents created as part of or as a result of such test or as a result of any complaints regarding the performance of the Medical Equipment.

**Response**: Defendants object to this Interrogatory, including all of its subparts, because the information requested is protected under the Healthcare Insurance Portability and Accountability Act of 1996. Defendants further object to this Interrogatory to the extent that it seeks confidential, private, business or commercial information and proprietary information. Without waiving these objections, Defendants have attached hereto a list of referring physicians.

    4.    Please identify all persons, including physicians or medical groups, who refused to pay for services rendered by Desoto as a result of any alleged malfunctioning or failure to perform as warranted of the Medical Equipment during the relevant time period. For each person or entity identified, please provide the following information:

    a.  The name of each person or entity;

    b.  The date of such services;

    c.  The Medical Equipment used to perform such services;

    d.  The amount sought to be charged for such services and the amount, if any paid; and

*Defendants' Response to*
*Toshiba America Medical Systems, Inc.'s*
*First Set of Interrogatories*

    e.  The reason for the refusal to pay for such services in whole or in part.

**Response**:   Defendants do not maintain the information requested in the manner requested and to properly respond to this Interrogatory would place an undue burden and an enormous expense on the Defendants that outweighs its likely benefit. Pleading affirmatively, Defendants state that the vast majority of payments made to Desoto are from insurance providers who do not have the option to refuse payment of an insured's benefits based upon the quality of the medical care provided. Further, Defendants have no record of a physician assuming responsibility to pay for a patient's medical services.

    5.    Please identify all persons, including physicians or medical groups, who stopped referring patients to Desoto as a result of any alleged malfunctioning or failure to perform as warranted of the Medical Equipment during the relevant time period. For each person or entity identified, please provide the following information:

    a.  The name of each person or entity;

    b.  The date of such services and Medical Equipment utilized to perform such services; and

    c.  The reasons provided to Desoto for the failure to refer additional patients.

**Response**:   Defendants object to this Interrogatory to the extent that it seeks confidential, private, business or commercial information and proprietary information. Pleading affirmatively, Defendants state that when physicians and medical groups stop referring patients they typically do not send letters of explanation or make phone calls, but rather, they simply refer their patients elsewhere.

*Defendants' Response to*
*Toshiba America Medical Systems, Inc.'s*
*First Set of Interrogatories*

6.    Identify by name, address and title all persons know to you, your attorney and any other representative, who have knowledge or information as to any facts pertaining to any of the occurrences or acts upon which the claims alleged in your Crossclaims are based.

**Response**:    Defendants object to discovery beyond that which is allowed by Rule 33 of the Federal Rules of Civil Procedure which limits written interrogatories to 25 in number, including all discrete subparts. This Interrogatory goes beyond that which is allowed by the Federal Rules of Civil Procedure absent leave of court or party stipulation, neither of which have occurred. Without waiving the foregoing objection, Defendants are not aware of any information that would be responsive to this request in that Defendants did not draft or file a Crossclaim in this matter.

7.    Identify and describe in detail every oral warranty, promise or assurance that TAMS allegedly provided to you regarding the Medical Equipment before, during and after the execution of the Master Lease as alleged in paragraphs 24 through 27 in your Crossclaim. For each warranty, promise or assurance identified, please provide the following information:

      a.  The date and time of the warranty, promise or assurance;

      b.  The person who made the warranty, promise or assurance;

      c.  To whom the warranty, promise or assurance was made; and

      d.  The content of the warranty, promise or assurance.

**Response**:    Defendants object to discovery beyond that which is allowed by Rule 33 of the Federal Rules of Civil Procedure which limits written interrogatories to 25 in number, including all discrete subparts. This Interrogatory goes beyond that which is allowed by the

*Defendants' Response to*
*Toshiba America Medical Systems, Inc.'s*
*First Set of Interrogatories*

Federal Rules of Civil Procedure absent leave of court or party stipulation, neither of which have

occurred. Without waiving the foregoing objection, Defendants are not aware of any information

that would be responsive to this request in that Defendants did not draft or file a Crossclaim in

this matter.

       8.     Identify for each piece of Medical Equipment:

         a.   The time period(s) that the equipment was in operation;

         b.   The monthly leasing cost;

         b.   (sic) The total revenues received by Desoto from the operation of the equipment.

**Response**:    Defendants object to discovery beyond that which is allowed by Rule 33

of the Federal Rules of Civil Procedure which limits written interrogatories to 25 in number,

including all discrete subparts. This Interrogatory goes beyond that which is allowed by the

Federal Rules of Civil Procedure absent leave of court or party stipulation, neither of which have

occurred. Defendants further object to this Interrogatory on the grounds that it is vague and

overly broad in that the phrase "in operation" is not defined, and further Defendants deny that the

Medical Equipment ever operated as warranted, promised and assured by Toshiba America

Medical Systems, Inc.

Defendants further object to this Interrogatory on the grounds that the information

requested in the second paragraph "b" above is not maintained by the Defendants in the manner

requested in the normal course of business and to properly respond to this Interrogatory within

the time allowed under the Federal Rules of Civil Procedure is not possible, but that Defendants

are in the process of compiling the requested information and will supplement their answer when

*Defendants' Response to*
*Toshiba America Medical Systems, Inc.'s*
*First Set of Interrogatories*

the information has been assembled. Without waiving these objections, Defendants provide the

following information in response to this Interrogatory:

| | |
|---|---|
| **Equipment**: | Toshiba Excelart 1.5T MRI System |
| In Operation: | Objection |
| Monthly Leasing Cost: | $23,345 |
| Total Revenues | |
| from Operation of the Equipment: | Information not kept in the ordinary course of business |

| | |
|---|---|
| **Equipment**: | Toshiba Asteion CT System |
| In Operation: | Objection |
| Monthly Leasing Cost: | $8,793 |
| Total Revenues | |
| from Operation of the Equipment: | Information not kept in the ordinary course of business |

| | |
|---|---|
| **Equipment**: | Toshiba GCA7200 Nuclear Camera System |
| In Operation: | Objection |
| Monthly Leasing Cost: | $5,486 |
| Total Revenues | |
| from Operation of the Equipment: | Information not kept in the ordinary course of business |

| | |
|---|---|
| **Equipment**: | Toshiba DUA450 R&F System |
| In Operation: | Objection |
| Monthly Leasing Cost: | $4,967 |
| Total Revenues | |
| from Operation of the Equipment: | Information not kept in the ordinary course of business |

| | |
|---|---|
| **Equipment**: | Toshiba Powervision 6000 System |
| In Operation: | Objection |
| Monthly Leasing Cost: | $2,675 |
| Total Revenues | |
| from Operation of the Equipment: | Information not kept in the ordinary course of business |

*Defendants' Response to*
*Toshiba America Medical Systems, Inc.'s*
*First Set of Interrogatories*

| | |
|---|---|
| **Equipment**: | GE Mammography System |
| In Operation: | Objection |
| Monthly Leasing Cost: | $2,283 |
| Total Revenues | |
| from Operation of the Equipment: | Information not kept in the ordinary course of business |

9.      Identify the equipment that Desoto purchased or leased to replace the functions performed by the Medical Equipment leased by Desoto from TAMS. For each piece of any such equipment, please provide the following information:

   a.   The time period(s) that the equipment is/was in operation;

   b.   From whom the equipment was purchased and/or leased;

   c.   The make and model of the equipment;

   d.   The monthly leasing cost and/or total purchase price;

   e.   Whether the equipment was new or used; and

   f.   The total revenues received by Desoto from the operation of the equipment.

**Response:**      Defendants object to discovery beyond that which is allowed by Rule 33 of the Federal Rules of Civil Procedure which limits written interrogatories to 25 in number, including all discrete subparts. This Interrogatory goes beyond that which is allowed by the Federal Rules of Civil Procedure absent leave of court or party stipulation, neither of which have occurred.

Defendants object to subpart "a" of this Interrogatory on the grounds that it is vague and overly broad in that the phrase "in operation" is not defined; Defendants object to subpart "b" and "c" of this Interrogatory the extent that they seeks confidential, private, business or

*Defendants' Response to*
*Toshiba America Medical Systems, Inc.'s*
*First Set of Interrogatories*

commercial information and proprietary information; and Defendants further object to this Interrogatory on the grounds that the information requested in subpart "f" above is not maintained by the Defendants in the manner requested in the normal course of business and to properly respond to this Interrogatory within the time allowed under the Federal Rules of Civil Procedure is not possible, but that Defendants are in the process of compiling the requested information and will supplement their answer when the information has been assembled. Without waiving these objections, Defendants provide the following information in response to this Interrogatory:

| **Equipment**: | MRI System |
|---|---|
| In Operation: | Objection |
| Purchased/Leased From: | Objection |
| Make and Model: | Objection |
| Monthly Leasing Cost: | $20,520 |
| Selling Price: | $1,231,178 |
| Equipment New or Used: | New |
| Total Revenues from Operation of the Equipment: | Information not kept in the ordinary course of business |

| **Equipment**: | MRI System Upgrades |
|---|---|
| In Operation: | Objection |
| Purchased/Leased From: | Objection |
| Make and Model: | Objection |
| Monthly Leasing Cost: | $1,238 |
| Selling Price: | $66,874 |
| Equipment New or Used: | New |
| Total Revenues from Operation of the Equipment: | Information not kept in the ordinary course of business |

*Defendants' Response to*
*Toshiba America Medical Systems, Inc.'s*
*First Set of Interrogatories*

| | |
|---|---|
| **Equipment**: | CT System |
| In Operation: | Objection |
| Purchased/Leased From: | Objection |
| Make and Model: | Objection |
| Monthly Leasing Cost: | $5,841 |
| Selling Price: | $350,460 |
| Equipment New or Used: | New |
| Total Revenues | |
| from Operation of the Equipment: | Information not kept in the ordinary course of business |

| | |
|---|---|
| **Equipment**: | Nuclear Camera System |
| In Operation: | Objection |
| Purchased/Leased From: | Objection |
| Make and Model: | Objection |
| Monthly Leasing Cost: | N/A |
| Selling Price: | $150,542 |
| Equipment New or Used: | Used |
| Total Revenues | |
| from Operation of the Equipment: | Information not kept in the ordinary course of business |

| | |
|---|---|
| **Equipment**: | R&F System |
| In Operation: | Objection |
| Purchased/Leased From: | Objection |
| Make and Model: | Objection |
| Monthly Leasing Cost: | N/A |
| Selling Price: | $220,150 |
| Equipment New or Used: | Remanufactured |
| Total Revenues | |
| from Operation of the Equipment: | Information not kept in the ordinary course of business |

*Defendants' Response to*
*Toshiba America Medical Systems, Inc.'s*
*First Set of Interrogatories*

| | |
|---|---|
| **Equipment**: | Ultrasound System |
| In Operation: | Objection |
| Purchased/Leased From: | Objection |
| Make and Model: | Objection |
| Monthly Leasing Cost: | |
| Selling Price: | $225,000 |
| Equipment New or Used: | New |
| Total Revenues | |
| from Operation of the Equipment: | Information not kept in the ordinary course of business |

Respectfully Submitted,

Desoto Diagnostic Imaging, LLC, Randon J. Carvel, Lynn T. Carvel, Delta Radiology, P.C., Zobar Properties, LLC, Defendants and Counter-Claimants.

By:   _____

Kyle P. Tate, AR Bar No. 95097
for TATE, RAY, & BRADY
An Association of Professional Corporations
424 Ouachita Avenue
Hot Springs, AR 71901
(501) 624-9900

*Defendants' Response to*
*Toshiba America Medical Systems, Inc.'s*
*First Set of Interrogatories*

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that the foregoing has been served upon the attorney of record for all other parties in this proceeding and upon parties not represented by attorneys by telefax or by delivering a copy of this pleading to the attorney or party personally, or to the offices of such attorney or party, or by placing a copy in the U.S. Mail addressed to such attorney or party named below at his office with sufficient prepaid postage on this 14th day of April, 2003.

Ms. Rosetta B. Packer
MCCARTER & ENGLISH, LLP
Mellon Bank Center, Suite 700
1735 Market Street
Philadelphia, PA 19103-7501

Mr. John Chesney
Ms. Julianne Peck
DRINKER BIDDLE & REATH, LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103-6996

Kyle P. Tate

## VERIFICATION

Lynn T. Carvel, M.D., Chief Manager of Desoto Diagnostic Imaging, LLC, Defendant, states upon oath that she has read the statements contained in the foregoing Responses to TAMS' Interrogatories and they are true and correct to the best of her knowledge and belief.

LYNN T. CARVEL, M.D., Chief Manager

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DELAGE LANDEN FINANCIAL
SERVICES, INC.,

            Plaintiff,

TOSHIBA AMERICA MEDICAL
SYSTEMS, INC.

            Plaintiff/Intervenor,

            v.

DESOTO DIAGNOSTIC IMAGING, LLC,
RANDON J. CARVEL, LYNN T. CARVEL,
DELTA RADIOLOGY, P.C. and
ZOBAR PROPERTIES, LLC

            Defendants and Counter-
            Claimants

CIVIL ACTION NO. 2:02CV2810

HON. RONALD J. BUCKWALTER

## SUPPLEMENTAL RESPONSE TO FIRST SET OF INTERROGATORIES
## PROPOUNDED BY TOSHIBA AMERICA MEDICAL SYSTEMS, INC.

NOW COME the Defendants, Desoto Diagnostic Imaging, LLC, Randon J. Carvel, Lynn

T. Carvel, Delta Radiology, P.C. and Zobar Properties, LLC, by and through their attorneys,

TATE, RAY & BRADY, by Kyle P. Tate, and for their Response to First Set of Interrogatories

Propounded by Toshiba America Medical Systems, Inc. do hereby state and answer:

### GENERAL OBJECTIONS

1.     Defendants object to Plaintiff/Intervenor's instructions and definitions to the

extent that they suggest or require any burdens, responsibilities, or objections beyond those set

forth in or required by the Federal Rules of Civil Procedure. In responding to these requests,

Defendants will comply with the applicable provisions of the Federal Rules of Civil Procedure.

2.    Defendants object to any discovery directed at information protected by the attorney work product doctrine, the attorney-client privilege or any other applicable privilege. Defendants further object to any discovery which seeks information that is private, confidential business or commercial information, trade secrets, confidential research or development or proprietary information.

3.    Defendants object to discovery which is not relevant or material and which is not reasonable calculated to lead to the discovery or proprietary information.

4.    Defendants object to discovery which is unduly burdensome, overly broad, vague and/or ambiguous, and not subject to reasonable limitation in time. Defendants further object to discovery which does not permit the identification of particular documents, subjects and time-frames with sufficient particularity to permit a reasonable response.

5.    **DEFENDANTS OBJECT TO DISCOVERY BEYOND THAT WHICH IS ALLOWED BY RULE 33 OF THE FEDERAL RULES OF CIVIL PROCEDURE WHICH LIMITS WRITTEN INTERROGATORIES TO 25 IN NUMBER, INCLUDING ALL DISCRETE SUBPARTS.**

6.    Each of these general objections is incorporated into each and every response as though fully set forth at length therein, in addition to any specific objections stated.

7.    Defendants reserve the right to supplement their answers.

<u>ANSWERS TO INTERROGATORIES</u>

2.    Please identify the person or persons who were operating the Medical Equipment on the two occasions where the Medical Equipment allegedly malfunctioned causing injury to patients as alleged in paragraph 33 or your Crossclaim. In addition, please provide the following such information for each such incident:

    a.  The date it occurred;

    b.  The Medical Equipment involved;

    c.  The identity of the person or persons injured;

    d.  The nature of the injury suffered by the person(s) involved; and

    e.  Whether any legal proceeding were instituted, or claims made against you, by the person or persons injured in the incidents.

**Response**:

| | |
|---|---|
| **Date of Occurrence**: | July 27, 2001 |
| Equipment Involved: | Toshiba GCA 7200 Nuclear Camera System |
| Personnel Involved: | May Vokaty |
| Person Injured: | Cloyce Shearin |
| Nature of Injury: | Robocontour failed during acquisition of patient data causing damage to the soft tissue of Mrs. Shearin's upper arm, causing immediate bruising |
| Legal Proceedings Instituted: | None at this time |

| | |
|---|---|
| **Date of Occurrence**: | September 12, 2001 |
| Equipment Involved: | Toshiba GCA 7200 Nuclear Camera System |
| Personnel Involved: | May Vokaty |
| Nature of Injury: | Robocontour failed during acquisition of patient data, but tech was able to stop the camera from hitting the patient. No injury occurred. |
| Legal Proceedings Instituted: | None at this time |

3.    Please identify all physicians or medical groups who ordered tests to be performed using the Medical Equipment during the period that such equipment was located at DeSoto. For each person identified, please provide the following information:

    a.  The name of each physician;

    b.  The date of each test;

    c.  The specific nature of the test;

    d.  The Medical Equipment used for each test;

e.   Whether there were any complaints made by the physician regarding the performance of the Medical Equipment; and

f.   A description of all documents created as part of or as a result of such test or as a result of any complaints regarding the performance of the Medical Equipment.

**Response**:       The information requested in subpart (a) of this Interrogatory has previously been provided in a list of over 450 referring physicians. Regarding the remaining information requested, Defendants have provided electronic images burned to 100 compact discs to date, and will continue to supplement this disclosure. Through the use of your Dicom viewer you will be able to ascertain and compile the requested information such as the name of the patient, the date of the exam, the specific nature of each exam, the name of the referring physician and so forth.

4.       Please identify all persons, including physicians or medical groups, who refused to pay for services rendered by Desoto as a result of any alleged malfunctioning or failure to perform as warranted of the Medical Equipment during the relevant time period. For each person or entity identified, please provide the following information:

a.   The name of each person or entity;

b.   The date of such services;

c.   The Medical Equipment used to perform such services;

d.   The amount sought to be charged for such services and the amount, if any, paid; and

e.   The reason for the refusal to pay for such services in whole or in part.

**Response**:       Although Defendants do not maintain the information requested in the manner requested, Defendant is unaware of any "self-pay" patients that have declined to pay for

-4-

services as a result of any alleged malfunctioning or failure to perform as warranted of the medical equipment during the relevant time period.

     5.     Please identify all persons, including physicians or medical groups, who stopped referring patients to Desoto as a result of any alleged malfunctioning or failure to perform as warranted of the Medical Equipment during the relevant time period. For each person or entity identified, please provide the following information:

     a.   The name of each person or entity;

     b.   The date of such services and Medical Equipment utilized to perform such services; and

     c.   The reasons provided to Desoto for the failure to refer additional patients.

**Response:**     Defendants are not aware of any information that would be responsive to this interrogatory due to the fact that as previously stated, when physicians and medical groups stop referring patients they typically do not send letters of explanation or make phone calls, but rather, they simply refer their patients elsewhere.

     6.     Identify by name, address and title all persons know to you, your attorney and any other representative, who have knowledge or information as to any facts pertaining to any of the occurrences or acts upon which the claims alleged in your Crossclaims are based.

**Response:**     This information has already been disclosed with the exception of Defendants' expert witness(s) which will be disclosed in accordance with the court's order and the Federal Rules of Civil Procedure.

     7.     Identify and describe in detail every oral warranty, promise or assurance that TAMS allegedly provided to you regarding the Medical Equipment before, during and after the

execution of the Master Lease as alleged in paragraphs 24 through 27 in your Crossclaim. For each warranty, promise or assurance identified, please provide the following information:

    a.   The date and time of the warranty, promise or assurance;

    b.   The person who made the warranty, promise or assurance;

    c.   To whom the warranty, promise or assurance was made; and

    d.   The content of the warranty, promise or assurance.

**Response:**    Without waiving any previous objections, Defendants maintain that the statements set forth below, while not verbatim, are representative of the oral warranties, promises and/or assurances made by agents, representatives and employees of Toshiba America Medical Systems, Inc. to the Defendants.

- Toshiba representatives promised Dr. Carvel before, during and after the purchase of the medical equipment that Toshiba was totally and fully committed to providing Dr. Carvel with state-of-the-art equipment that performed at its highest level and in operation at all times with little or no downtime. In soliciting Dr. Carvel's business, Toshiba representatives, including but not limited to Dave Steiff, Greg Zagorski, Mike Smith and Dave Begy, reiterated that Toshiba would be a single-source for sales, service and finance which would be a fabulous opportunity for both parties involved in that Dr. Carvel would receive state-of-the-art equipment, and that Toshiba would be able to use DDI as a premier show site since Toshiba did not have a show site of this kind in this area.

- Once DDI opened, a Japanese executive from Toshiba was flown in specifically for the purpose of meeting with Dr. Carvel. During the open house celebration, the Japanese executive told Dr. Carvel that he would do anything and everything in his power to make DDI successful, and that he was very excited to be partners with Dr. Carvel on this project. The Japanese executive made promises to Dr. Carvel with regard to the uptime guaranty. The Japanese executive also promised Dr. Carvel that she was receiving state-of-the-art equipment which would provide her with the highest quality images.

- During a fifteen month period of time in which over 200 service calls and/or application visits were made to DeSoto Diagnostic Imaging to address the different equipment modality problems, Toshiba representatives repeatedly promised Dr. Carvel and/or Paul King that the equipment would be up-and-running, and that they would have the medical equipment in good working order.

8.    Identify for each piece of Medical Equipment:

    a.  The time period(s) that the equipment was in operation;

    b.  The monthly leasing cost;

    b.  (sic) The total revenues received by Desoto from the operation of the equipment.

**Response:**    Without waiving any previous objections, Defendants renew their objection to this Interrogatory on the grounds that it is vague and overly broad in that the phrase "in operation" is not defined, and further Defendants deny that the Medical Equipment ever operated as warranted, promised and assured by Toshiba America Medical Systems, Inc.

Without waiving these objections, Defendants provide the following information in response to this Interrogatory:

| **Equipment:** | Toshiba Excelart 1.5T MRI System |
| Date Installed: | Between October 11, 2000 and December 7, 2000 |
| Date Deinstalled: | February 28, 2002 |
| Monthly Leasing Cost: | $23,345 |
| Total Revenues from Operation | |
| Per Piece of Equipment: | Information not kept in the ordinary course of business during first thirty-two months of operation |

| **Equipment:** | Toshiba Asteion CT System |
| Date Installed: | Between October 11, 2000 and December 7, 2000 |
| Date Deinstalled: | August 12, 2002 |
| Monthly Leasing Cost: | $8,793 |
| Total Revenues from Operation | |
| Per Piece of Equipment: | Information not kept in the ordinary course of business during first thirty-two months of operation |

| **Equipment:** | Toshiba GCA7200 Nuclear Camera System |
| Date Installed: | Between October 11, 2000 and December 7, 2000 |
| Date Deinstalled: | February 28, 2002 |
| Monthly Leasing Cost: | $5,486 |
| Total Revenues from Operation | |
| Per Piece of Equipment: | Information not kept in the ordinary course of business during first thirty-two months of operation |

-7-

| | |
|---|---|
| **Equipment:** | Toshiba DUA450 R&F System |
| Date Installed: | Between October 11, 2000 and December 7, 2000 |
| Date Deinstalled: | February 28, 2002 |
| Monthly Leasing Cost: | $4,967 |
| Total Revenues from Operation | |
| Per Piece of Equipment: | Information not kept in the ordinary course of business during first thirty-two months of operation |

| | |
|---|---|
| **Equipment:** | Toshiba Powervision 6000 System |
| Date Installed: | Between October 11, 2000 and December 7, 2000 |
| Date Deinstalled: | February 28, 2002 |
| Monthly Leasing Cost: | $2,675 |
| Total Revenues from Operation | |
| Per Piece of Equipment: | Information not kept in the ordinary course of business during first thirty-two months of operation |

| | |
|---|---|
| **Equipment:** | GE Mammography System |
| Date Installed: | Between October 11, 2000 and December 7, 2000 |
| Date Deinstalled: | February 28, 2002 |
| Monthly Leasing Cost: | $2,283 |
| Total Revenues from Operation | |
| Per Piece of Equipment: | Information not kept in the ordinary course of business during first thirty-two months of operation |

9.    Identify the equipment that Desoto purchased or leased to replace the functions performed by the Medical Equipment leased by Desoto from TAMS. For each piece of any such equipment, please provide the following information:

    a.  The time period(s) that the equipment is/was in operation;

    b.  From whom the equipment was purchased and/or leased;

    c.  The make and model of the equipment;

    d.  The monthly leasing cost and/or total purchase price;

    e.  Whether the equipment was new or used; and

    f.  The total revenues received by Desoto from the operation of the equipment.

**Response:**    Without waiving any previous objections, Defendants provide the following information in response to this Interrogatory:

Equipment:                          MRI System
In Operation:                       April 30, 2002 to present
Purchased/Leased From:              Siemens Medical Solutions USA, Inc.
Make and Model:                     Siemens Symphony, 1.5T Maestro Class MRI
Monthly Leasing Cost:               $20,520
Selling Price:                      $1,231,178
Equipment New or Used:              New
Total Revenues from Operation
Per Piece of Equipment:             Information not kept in the ordinary course of
                                    business during first thirty-two months of operation


Equipment:                          MRI System Upgrades
In Operation:                       April 30, 2002 to present
Purchased/Leased From:              Siemens Medical Solutions USA, Inc.
Make and Model:                     Body Imaging Package, w/o extender
                                    Advanced Turbo Syngo #H,S
                                    Advanced Angiography Syngo #H,S
                                    CARE Bolus Syngo #H,S
                                    IPP – Panoramic Table Syngo #H,S
                                    CP Body Array Flex Coil
Monthly Leasing Cost:               $1,238
Selling Price:                      $66,874
Equipment New or Used:              New
Total Revenues from Operation
Per Piece of Equipment:             Information not kept in the ordinary course of
                                    business during first thirty-two months of operation


Equipment:                          CT System
In Operation:                       August 16, 2002  to present
Purchased/Leased From:              Siemens Medical Solutions USA, Inc.
Make and Model:                     Siemens Somatom Emotion Duo CT
Monthly Leasing Cost:               $5,841
Selling Price:                      $350,460
Equipment New or Used:              New
Total Revenues from Operation
Per Piece of Equipment:             Information not kept in the ordinary course of
                                    business during first thirty-two months of operation


Equipment:                          Nuclear Camera System
In Operation:                       March 7, 2002 to present
Purchased/Leased From:              Miller Medical Imaging
Make and Model:                     Reconditioned  SMV  DSX  Nuclear  Medicine
                                    Imaging System
Monthly Leasing Cost:               N/A
Selling Price:                      $150,542
Equipment New or Used:              Used

Total Revenues from Operation
Per Piece of Equipment:                   Information not kept in the ordinary course of
                                          business during first thirty-two months of operation

**Equipment**:                            R&F System
In Operation:                             March 14, 2002 to present
Purchased/Leased From:                    Medical Equipment Consulting Services, Inc.
Make and Model:                           MECS Genesis Plus Remanufactured GE Advantx
                                          Rad/Fluoro System with new CPI High Frequency
                                          Generator and New InfiMed GoldOne Digital
                                          System
Monthly Leasing Cost:                     N/A
Selling Price:                            $220,150
Equipment New or Used:                    Remanufactured
Total Revenues from Operation
Per Piece of Equipment:                   Information not kept in the ordinary course of
                                          business during first thirty-two months of operation


**Equipment**:                            Ultrasound System
In Operation:                             May 17, 2003 to present
Purchased/Leased From:                    Siemens Medical Solutions USA, Inc.
Make and Model:                           Acuson Aspen Ultrasound system
Monthly Leasing Cost:                     N/A
Selling Price:                            $225,000
Equipment New or Used:                    New
Total Revenues from Operation
Per Piece of Equipment:                   Information not kept in the ordinary course of
                                          business during first thirty-two months of operation



Respectfully Submitted,


By: _____
      Kyle P. Tate, AR Bar No. 95097
      for TATE LAW FIRM
      424 Ouachita Avenue
      Hot Springs, AR 71901
      (501) 624-9900


-10-

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that the foregoing has been served upon the attorney of record for all other parties in this proceeding and upon parties not represented by attorneys by telefax or by delivering a copy of this pleading to the attorney or party personally, or to the offices of such attorney or party, or by placing a copy in the U.S. Mail addressed to such attorney or party named below at his office with sufficient prepaid postage on this _21st_ day of August, 2003.

Mr. John Chesney
Ms. Julianne Peck
DRINKER BIDDLE & REATH, LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103-6996

Ms. Rosetta B. Packer
MCCARTER & ENGLISH, LLP
Mellon Bank Center, Suite 700
1735 Market Street
Philadelphia, PA 19103-7501

Kyle P. Tate

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DELAGE LANDEN FINANCIAL
SERVICES, INC.,

        Plaintiff,

TOSHIBA AMERICA MEDICAL
SYSTEMS, INC.

        Plaintiff/Intervenor,

        v.

DESOTO DIAGNOSTIC IMAGING, LLC,
RANDON J. CARVEL, LYNN T. CARVEL,
DELTA RADIOLOGY, P.C. and
ZOBAR PROPERTIES, LLC

        Defendants and Counter-
        Claimants

CIVIL ACTION NO. 2:02CV2810

HON. RONALD J. BUCKWALTER

## AMENDED SUPPLEMENTAL RESPONSE TO FIRST SET OF INTERROGATORIES PROPOUNDED BY TOSHIBA AMERICA MEDICAL SYSTEMS, INC.

NOW COME the Defendants, Desoto Diagnostic Imaging, LLC, Randon J. Carvel, Lynn T. Carvel, Delta Radiology, P.C. and Zobar Properties, LLC, by and through their attorneys, TATE LAW FIRM, by the undersigned attorney, and for their Amended Response to First Set of Interrogatories Propounded by Toshiba America Medical Systems, Inc. do hereby state and answer:

## GENERAL OBJECTIONS

1.      Defendants object to Plaintiff/Intervenor's instructions and definitions to the extent that they suggest or require any burdens, responsibilities, or objections beyond those set forth in or required by the Federal Rules of Civil Procedure. In responding to these requests, Defendants will comply with the applicable provisions of the Federal Rules of Civil Procedure.

2.      Defendants object to any discovery directed at information protected by the attorney work product doctrine, the attorney-client privilege or any other applicable privilege. Defendants further object to any discovery which seeks information that is private, confidential business or commercial information, trade secrets, confidential research or development or proprietary information.

3.      Defendants object to discovery which is not relevant or material and which is not reasonable calculated to lead to the discovery or proprietary information.

4.      Defendants object to discovery which is unduly burdensome, overly broad, vague and/or ambiguous, and not subject to reasonable limitation in time. Defendants further object to discovery which does not permit the identification of particular documents, subjects and time-frames with sufficient particularity to permit a reasonable response.

5.      **DEFENDANTS OBJECT TO DISCOVERY BEYOND THAT WHICH IS ALLOWED BY RULE 33 OF THE FEDERAL RULES OF CIVIL PROCEDURE WHICH LIMITS WRITTEN INTERROGATORIES TO 25 IN NUMBER, INCLUDING ALL DISCRETE SUBPARTS.**

6.      Each of these general objections is incorporated into each and every response as though fully set forth at length therein, in addition to any specific objections stated.

7.      Defendants reserve the right to supplement their answers.

<u>ANSWERS TO INTERROGATORIES</u>

3.      Please identify all physicians or medical groups who ordered tests to be performed using the Medical Equipment during the period that such equipment was located at DeSoto. For each person identified, please provide the following information:

a.   The name of each physician;

    b.  The date of each test;

    c.  The specific nature of the test;

    d.  The Medical Equipment used for each test;

    e.  Whether there were any complaints made by the physician regarding the performance of the Medical Equipment; and

    f.  A description of all documents created as part of or as a result of such test or as a result of any complaints regarding the performance of the Medical Equipment.

**Response:**    The information requested in subpart (a) of this Interrogatory has previously been provided in a list of over 450 referring physicians. Regarding the remaining information requested, Defendants have provided electronic images burned to 180 compact discs to date, and will continue to supplement this disclosure. Through the use of your Dicom viewer you will be able to ascertain and compile the requested information such as the name of the patient, the date of the exam, the specific nature of each exam, the name of the referring physician and so forth.

8.      Identify for each piece of Medical Equipment:

    a.  The time period(s) that the equipment was in operation;

    b.  The monthly leasing cost;

    b.  (sic) The total revenues received by Desoto from the operation of the equipment.

**Response:**    Without waiving any previous objections, Defendants renew their objection to this Interrogatory on the grounds that it is vague and overly broad in that the phrase "in operation" is not defined, and further Defendants deny that the Medical Equipment ever operated as warranted, promised and assured by Toshiba America Medical Systems, Inc.

Respectfully Submitted,

By: _____

Holly E. Brady, AR Bar No. 2001160
for TATE LAW FIRM
9085 Sandidge Center Cove
Olive Branch, MS  38654
(662) 893-9933

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that the foregoing has been served upon the attorney of record for all other parties in this proceeding and upon parties not represented by attorneys by telefax or by delivering a copy of this pleading to the attorney or party personally, or to the offices of such attorney or party, or by placing a copy in the U.S. Mail addressed to such attorney or party named below at his office with sufficient prepaid postage on this _15_ day of September, 2003.

Mr. John Chesney
Ms. Julianne Peck
DRINKER BIDDLE & REATH, LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103-6996

Ms. Rosetta B. Packer
MCCARTER & ENGLISH, LLP
Mellon Bank Center, Suite 700
1735 Market Street
Philadelphia, PA 19103-7501

_____

Holly E. Brady

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DELAGE LANDEN FINANCIAL
SERVICES, INC.,

         Plaintiff,

TOSHIBA AMERICA MEDICAL
SYSTEMS, INC.

         Plaintiff/Intervenor,

         v.

DESOTO DIAGNOSTIC IMAGING, LLC,
RANDON J. CARVEL, LYNN T. CARVEL,
DELTA RADIOLOGY, P.C. and
ZOBAR PROPERTIES, LLC

         Defendants and Counter-
         Claimants

CIVIL ACTION NO. 2:02CV2810

## SECOND SUPPLEMENTAL RESPONSE TO FIRST SET OF INTERROGATORIES PROPOUNDED BY TOSHIBA AMERICA MEDICAL SYSTEMS, INC.

NOW COME the Defendants, Desoto Diagnostic Imaging, LLC, Randon J. Carvel, Lynn T. Carvel, Delta Radiology, P.C. and Zobar Properties, LLC, by and through their attorneys, TATE LAW FIRM, by the undersigned attorney, and for their Second Supplemental Response to First Set of Interrogatories Propounded by Toshiba America Medical Systems, Inc. do hereby state and answer:

## GENERAL OBJECTIONS

1.    Defendants object to Plaintiff/Intervenor's instructions and definitions to the extent that they suggest or require any burdens, responsibilities, or objections beyond those set forth in or required by the Federal Rules of Civil Procedure. In responding to these requests, Defendants will comply with the applicable provisions of the Federal Rules of Civil Procedure.

2.      Defendants object to any discovery directed at information protected by the attorney work product doctrine, the attorney-client privilege or any other applicable privilege. Defendants further object to any discovery which seeks information that is private, confidential business or commercial information, trade secrets, confidential research or development or proprietary information.

3.      Defendants object to discovery which is not relevant or material and which is not reasonable calculated to lead to the discovery or proprietary information.

4.      Defendants object to discovery which is unduly burdensome, overly broad, vague and/or ambiguous, and not subject to reasonable limitation in time. Defendants further object to discovery which does not permit the identification of particular documents, subjects and time-frames with sufficient particularity to permit a reasonable response.

5.      **DEFENDANTS OBJECT TO DISCOVERY BEYOND THAT WHICH IS ALLOWED BY RULE 33 OF THE FEDERAL RULES OF CIVIL PROCEDURE WHICH LIMITS WRITTEN INTERROGATORIES TO 25 IN NUMBER, INCLUDING ALL DISCRETE SUBPARTS.**

6.      Each of these general objections is incorporated into each and every response as though fully set forth at length therein, in addition to any specific objections stated.

7.      Defendants reserve the right to supplement their answers.

## ANSWERS TO INTERROGATORIES

1.      Please identify all of the technicians or other persons employed by you who operated any of the Medical Equipment at Desoto at any time during which such equipment was located at Desoto. For each person identified, please provide the following information:

      a.      The name of each such person;

     b.     The dates of employment for each such person;

     c.     The Medical Equipment each such person operated in the scope of his or her employment;

     d.     Whether or not the person is still employed by you; and

     e.     The last known address and telephone number for each such person who is no longer employed by you.

**Response**:     All responsive information has been provided to date, however, Defendants, per the Federal Rules of Civil Procedure, reserve the right to supplement this response in the event new information which would be responsive to this interrogatory comes to light.

2.     Please identify the person or persons who were operating the Medical Equipment on the two occasions where the Medical Equipment allegedly malfunctioned causing injury to patients as alleged in paragraph 33 or your Crossclaim. In addition, please provide the following such information for each such incident:

     a.     The date it occurred;

     b.     The Medical Equipment involved;

     c.     The identity of the person or persons injured;

     d.     The nature of the injury suffered by the person(s) involved; and

     e.     Whether any legal proceeding were instituted, or claims made against you, by the person or persons injured in the incidents.

**Response**:     Defendants state that they have already properly responded to this Interrogatory in their First Supplemental Response to First Set of Interrogatories Propounded by Toshiba America Medical Systems, Inc.

3.    Please identify all physicians or medical groups who ordered tests to be performed using the Medical Equipment during the period that such equipment was located at DeSoto. For each person identified, please provide the following information:

    a.    The name of each physician;

    b.    The date of each test;

    c.    The specific nature of the test;

    d.    The Medical Equipment used for each test;

    e.    Whether there were any complaints made by the physician regarding the performance of the Medical Equipment; and

    f.    A description of all documents created as part of or as a result of such test or as a result of any complaints regarding the performance of the Medical Equipment.

**Response**:    Without waiving any previous objections, Defendants state that they have already properly responded to this Interrogatory in their First Supplemental Response and their Amended Supplemental Response to First Set of Interrogatories Propounded by Toshiba America Medical Systems, Inc. and that after an exhaustive and burdensome effort to comply with the Federal Rules of Civil Procedure, responsive information has been provided. In the event that new responsive information is discovered, Defendants agree to supplement this response according to the Federal Rules of Civil Procedure. Furthermore, Defendants state that there are no documented complaints kept in their ordinary course of business.

4.    Please identify all persons, including physicians or medical groups, who refused to pay for services rendered by Desoto as a result of any alleged malfunctioning or failure to perform as warranted of the Medical Equipment during the relevant time period. For each person or entity identified, please provide the following information:

a.    The name of each person or entity;

b.    The date of such services;

c.    The Medical Equipment used to perform such services;

d.    The amount sought to be charged for such services and the amount, if any

paid; and

e.    The reason for the refusal to pay for such services in whole or in part.

**Response**:    Defendants state that they have already properly responded to this Interrogatory in their Response to First Set of Interrogatories Propounded by Toshiba America Medical Systems, Inc. and supplemental responses thereto. In the event that new responsive information is discovered, Defendants agree to supplement this response according to the Federal Rules of Civil Procedure.

5.    Please identify all persons, including physicians or medical groups, who stopped referring patients to Desoto as a result of any alleged malfunctioning or failure to perform as warranted of the Medical Equipment during the relevant time period. For each person or entity identified, please provide the following information:

a.    The name of each person or entity;

b.    The date of such services and Medical Equipment utilized to perform such

services; and

c.    The reasons provided to Desoto for the failure to refer additional patients.

**Response**:    Without waiving any previous objections, Defendants state that they have already properly responded to this Interrogatory in their Response to First Set of Interrogatories Propounded by Toshiba America Medical Systems, Inc. and supplemental responses thereto. In

the event that new responsive information is discovered, Defendants agree to supplement this response according to the Federal Rules of Civil Procedure.

6.    Identify by name, address and title all persons known to you, your attorney and any other representative, who have knowledge or information as to any facts pertaining to any of the occurrences or acts upon which the claims alleged in your Crossclaims are based.

**Response**:    Without waiving any previous objections, Defendants state that this information has already been disclosed with the exception of those persons listed below, and Defendants' expert witness(s) which will be disclosed in accordance with the court's order and the Federal Rules of Civil Procedure. In the event that new responsive information is discovered, Defendants agree to supplement this response according to the Federal Rules of Civil Procedure.

1)    Philip Daugherty
      H & H  Systems & Design
      130 E. Main Street
      New Albany, IN 47150

2)    Steve Whitworth
      H & H  Systems & Design
      130 E. Main Street
      New Albany, IN 47150

3)    Frank Heinz
      H & H  Systems & Design
      130 E. Main Street
      New Albany, IN 47150

4)    Paul Forbes
      Med Image Systems, Inc.
      1679 Shelby Oaks, Suite 6
      Memphis, TN  38134

5)    James Smith
      Cardinal Health
      2641 Union Extended
      Memphis, TN  38112

7.    Identify and describe in detail every oral warranty, promise or assurance that TAMS allegedly provided to you regarding the Medical Equipment before, during and after the execution of the Master Lease as alleged in paragraphs 24 through 27 in your Crossclaim. For each warranty, promise or assurance identified, please provide the following information:

    a.    The date and time of the warranty, promise or assurance;

    b.    The person who made the warranty, promise or assurance;

    c.    To whom the warranty, promise or assurance was made; and

    d.    The content of the warranty, promise or assurance.

**Response**:    Without waiving any previous objections, Defendants state that they have already properly responded to this Interrogatory in their First Supplemental Response to First Set of Interrogatories Propounded by Toshiba America Medical Systems, Inc. in addition to the testimony given by Dr. Lynn T. Carvel in the four days of 30(b)(6) depositions in which she testified on this very issue.

8.    Identify for each piece of Medical Equipment:

    a.    The time period(s) that the equipment was in operation;

    b.    The monthly leasing cost;

    b.    (sic) The total revenues received by Desoto from the operation of the equipment.

**Response**:    Without waiving any previous objections, Defendants state that they have already properly responded to this Interrogatory in their First Supplemental Response and their Amended Supplemental Response to First Set of Interrogatories Propounded by Toshiba America Medical Systems, Inc.

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that the foregoing has been served upon the attorney of record for all other parties in this proceeding and upon parties not represented by attorneys by telefax or by delivering a copy of this pleading to the attorney or party personally, or to the offices of such attorney or party, or by placing a copy in the U.S. Mail addressed to such attorney or party named below at his office with sufficient prepaid postage on this 3rd day of October, 2003.

Mr. John Chesney
Ms. Julianne Peck
DRINKER BIDDLE & REATH, LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103-6996

Ms. Rosetta B. Packer
MCCARTER & ENGLISH, LLP
Mellon Bank Center, Suite 700
1735 Market Street
Philadelphia, PA 19103-7501

_____
Kyle P. Tate

## VERIFICATION

Lynn T. Carvel, M.D., Chief Manager of DeSoto Diagnostic Imaging, LLC, Defendant, states upon oath that she has read the statements contained in the foregoing Responses to TAMS' Interrogatories and they are true and correct to the best of her knowledge and belief.

LYNN T. CARVEL, M.D., Chief Manager

# Exhibit C

NS

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DELAGE LANDEN FINANCIAL SERVICES, INC., | : |
| Plaintiff, | : CIVIL ACTION NO. 2:02CV2810 |
| TOSHIBA AMERICA MEDICAL SYSTEMS, INC. | : HON. RONALD J. BUCKWALTER |
| Plaintiff/Intervenor, | : |
| v. | : |
| DESOTO DIAGNOSTIC IMAGING, LLC, RANDON J. CARVEL, LYNN T. CARVEL, DELTA RADIOLOGY, P.C. and ZOBAR PROPERTIES, LLC | : |
| Defendants and Counter-Claimants | : |

### RESPONSE TO FIRST REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED BY TOSHIBA AMERICA MEDICAL SYSTEMS, INC.

NOW COME the Defendants, Desoto Diagnostic Imaging, LLC, Randon J. Carvel, Lynn T. Carvel, Delta Radiology, P.C. and Zobar Properties, LLC, by and through their attorneys, TATE, RAY & BRADY, by Kyle P. Tate, do hereby submit their Response to First Request for Production of Documents Propounded by Toshiba America Medical Systems, Inc. Defendants also reserve their right to amend and/or supplement their responses at any time in the future.

### GENERAL OBJECTIONS

1.      Defendants object to Plaintiff/Intervenor's instructions and definitions to the extent that they suggest or require any burdens, responsibilities, or objections beyond those set forth in or required by the Federal Rules of Civil Procedure. In responding to these requests, Defendants will comply with the applicable provisions of the Federal Rules of Civil Procedure.

*Defendants' Response to*
*Toshiba America Medical Systems, Inc.*
*First Request for Production*

2.    Defendants object to any discovery directed at information protected by the attorney work product doctrine, the attorney-client privilege or any other applicable privilege. Defendants further object to any discovery which seeks information that is private, confidential business or commercial information, trade secrets, confidential research or development or proprietary information.

3.    Defendants object to discovery which is not relevant or material and which is not reasonably calculated to lead to the discovery of admissible evidence.

4.    Defendants object to discovery which is unduly burdensome, overly broad, vague and/or ambiguous, and not subject to reasonable limitation in time. Defendants further object to discovery which does not permit the identification of particular documents, subjects and time-frames with sufficient particularity to permit a reasonable response.

5.    Defendants object to Plaintiff/Intervenor's document requests that request documents from entities or persons other than Defendants or that request documents that are not in the possession, custody or control of the Defendants.

6.    Defendants object to Plaintiff/Intervenor's requests for production of documents to the extent they seek documents which have already been produced in this litigation from any person or party or to the extent they seek documents that are publicly available.

7.    Each of these general objection is incorporated into each and ever response as though fully set forth at length therein, in addition to any specific objections stated.

8.    Defendants reserve the right to supplement their answers.

*Defendants' Response to*
*Toshiba America Medical Systems, Inc.*
*First Request for Production*

## RESPONSE TO DOCUMENT REQUESTS

1.    Any and all documents identified in your answers to TAMS' First Set of Interrogatories to Defendants.

**Response:**    Defendants have produced documents responsive to this Request which have not been previously produced by any party in this litigation.

2.    All documents referenced, viewed, consulted or otherwise used in preparation of your answers to TAMS' First Set of Interrogatories.

**Response:**    Defendants object to this request to the extent that the documents requested were prepared in anticipation of litigation and are protected by the attorney work product doctrine, the attorney-client privilege or any other applicable privilege. Defendants further object to this request to the extent that it seeks information that has already been produced in this litigation. Without waiving these objections, the general objections or any other objections, Defendants have produced documents responsive to this Request which have not been previously produced by any party in this litigation.

3.    Any and all documents and/or tangible things that support or relate to any of the allegations made in the Crossclaim, or which you referred to or relied upon in drafting the Crossclaim.

**Response:**    Defendants did not draft or file a Crossclaim in this matter, thus Defendants are not aware of any information that would be responsive to this request. If Plaintiff/Intervenor Toshiba America Medical Systems, Inc. resubmits this request, an attempt would be made to provide the information requested.

*Defendants' Response to*
*Toshiba America Medical Systems, Inc.*
*First Request for Production*

4.    All documents that refer or relate to TAMS and/or the Medical Equipment, including but not limited to all documents concerning the Master Lease and Service Agreements.

**Response**:    Defendants have produced documents responsive to this Request in its initial disclosures and in the Responses hereto. See attached.

5.    All documents and materials upon which you allegedly relied regarding the performance and reliability of the Medical Equipment prior and subsequent to the execution of the Master Lease, including but not limited to brochures, advertisements, manuals, and promotional materials.

**Response**:    See attached.

6.    All images and x-rays taken by the Medical Equipment, including but not limited to all images and x-rays that you contend were defective or of poor quality as a result of alleged failure of the Medical Equipment to perform as warranted.

**Response**:    Defendants object to this request on the grounds that to provide the information requested in the manner requested would be in violation of the Healthcare Insurance Portability and Accountability Act of 1996. Defendants further object to this request on the grounds that it is unduly burdensome inasmuch as DDI does not maintain the information requested in the manner requested. Defendants state that images are not stored as tangible films or x-rays, but rather stored as Digital Image Communication and Medicine (DICOM) images on a Picture Archive Communications System (PACS) which can only be viewed by a specialized system. To respond to this Interrogatory would require that each individual image be

*Defendants' Response to*
*Toshiba America Medical Systems, Inc.*
*First Request for Production*

downloaded to the appropriate modality and then printed to film, at a minimum of 30 minutes per film, with thousands of pictures on the system.

7.    All documents that support your contention in paragraph 32 of your Crossclaim that there were "approximately 100 separate incidents" during which the Medical Equipment failed to operate as warranted and failed of its essential purpose.

**Response**:    Defendants are not aware of any information that would be responsive to this request in that Defendants did not draft or file a Crossclaim in this matter. If Plaintiff/Intervenor Toshiba America Medical Systems, Inc. resubmits this request, an attempt would be made to provide the information requested.

8.    All documents that refer or relate to the use of the Medical Equipment, including without limitation all patient log books and records that reflect such use, and all documents that refer or relate to the revenue generated by such use.

**Response**:    Defendants object to this request on the grounds that to provide the information requested in the manner requested would be in violation of the Healthcare Insurance Portability and Accountability Act of 1996. Defendants also object to this request to the extent that it seeks confidential, private, business or commercial information or proprietary information. By way of further response, Defendants are not aware of any documents responsive to the request as set forth for documents referring or relating to the revenue generated by the use of the Medical Equipment. Without waiving these objections, the general objections or any other objections, Defendants have produced documents responsive to this Request which have not been previously produced by any party in this litigation.

*Defendants' Response to*
*Toshiba America Medical Systems, Inc.*
*First Request for Production*

9.    All documents that refer or relate to training provided to DeSoto employees and/or agents on the use of the Medical Equipment.

**Response**:    Defendants object to this request because it is requesting information that should be in the control and possession of Toshiba America Medical Systems, Inc., who conducted the medical equipment training. Without waiving these objections, the general objections or any other objections, Defendants have produced documents responsive to this Request which have not been previously produced by any party in this litigation.

10.    All documents that refer or relate to the loss of referrals to DeSoto based on the alleged failure of the Medical Equipment to operate as warranted.

**Response**:    Defendants are not aware of any documents responsive to the request. Pleading affirmatively, Defendants state that when physicians and medical groups stop referring patients they typically do not send letters of explanation or make phone calls, but rather, they simply refer their patients elsewhere.

11.    All documents that refer or relate to the servicing of the Medical Equipment.

**Response**:    Defendants object to this request to the extent that it seeks information that has already been produced in litigation, and information that should be in the control and possession of Toshiba America Medical Systems, Inc., who administered or oversaw service on the Medical Equipment. Without waiving these objections, the general objections or any other objections, Defendants have produced documents responsive to this Request which have not been previously produced by any party in this litigation.

*Defendants' Response to*
*Toshiba America Medical Systems, Inc.*
*First Request for Production*

12.     All documents that refer or relate to the two separate incidents in which the medical Equipment allegedly malfunctioned and caused injury to your patients as alleged in paragraph 33 of your Crossclaim.

**Response**:     Defendants are not aware of any information that would be responsive to this request in that Defendants did not draft or file a Crossclaim in this matter. If Plaintiff/Intervenor Toshiba America Medical Systems, Inc. resubmits this request, an attempt would be made to provide the information requested.

13.     All documents that refer or relate to the removal of the Medical Equipment from your premises prior to the end of the term of the Master Lease.

**Response**:     Defendants deny that the Master Lease is a legally binding agreement and object to this request to the extent that it seeks information that has already been produced in litigation, and information that should be in the control and possession of Toshiba America Medical Systems, Inc., who administered or oversaw the removal of the Medical Equipment. Without waiving these objections, the general objections or any other objections, Defendants have produced documents responsive to this Request which have not been previously produced by any party in this litigation.

14.     All federal and state income tax returns, together with all schedules or attachments, filed on behalf of DeSoto for years 2000, 2001, and 2002.

**Response**:     Defendants object to this request to the extent that it seeks confidential, private, business or commercial information or proprietary information. Without waiving these objections, the general objections or any other objections, Defendants are in the process of

*Defendants' Response to*
*Toshiba America Medical Systems, Inc.*
*First Request for Production*

compiling the requested information as it pertains to Defendants' counterclaims and will supplement this request when the information has been compiled.

15.    All documents concerning DeSoto's annual financial information for the years 2000, 2001, and 2002, including, but not limited to: (a) DeSoto's annual financial statements; (b) DeSoto's profit and loss statements; and (c) any other annual compilation of DeSoto's financial information.

**Response**:    Defendants object to this request to the extent that it seeks confidential, private, business or commercial information or proprietary information. Without waiving these objections, the general objections or any other objections, Defendants are in the process of compiling the requested information as it pertains to Defendants' counterclaims and will supplement this request when the information has been compiled.

16.    All documents that constitute, reflect, refer or relate to communications between DeSoto and TAMS.

**Response**:    Defendants object to this request to the extent that it seeks information that has already been produced in this litigation. Defendants further object to this request because it is requesting information that by its very nature should be in the control and possession of Toshiba America Medical Systems, Inc. Without waiving these objections, the general objections or any other objections, Defendants have produced documents responsive to this Request which have not been previously produced by any party in this litigation.

17.    All documents that constitute, reflect, refer or relate to communications between DeSoto and DLL.

*Defendants' Response to*
*Toshiba America Medical Systems, Inc.*
*First Request for Production*

**Response:**    Defendants object to this request to the extent that it does not permit the identification of particular documents, subjects and time-frames with sufficient particularity to permit a reasonable response. Defendants also object to this request to the extent that it seeks confidential, private, business or commercial information or proprietary information. Defendants further object to this request to the extent that it seeks information that has already been produced in this litigation. Without waiving these objections, the general objections or any other objections, Defendants have produced documents responsive to this Request which have not been previously produced by any party in this litigation.

18.    All documents that constitute, reflect, refer or relate to any communications between or among DeSoto's present or former directors, officers, employees, agents and representatives regarding TAMS and/or the Medical Equipment.

**Response:**    Defendants object to this request to the extent that it seeks confidential, private, business or commercial information or proprietary information. Defendants also object to this request to the extent that it seeks documents protected by the attorney client privilege and the attorney work product doctrine. Finally, Defendants object to this request to the extent that it seeks information that has already been produced in this litigation.

19.    All filings (and all documents that refer or relate to any such filings) with the local, state or federal governmental agencies or bodies that refer or relate to TAMS and/or the Medical Equipment.

*Defendants' Response to*
*Toshiba America Medical Systems, Inc.*
*First Request for Production*

**Response:**    Defendants object to this request to the extent that it seeks information that has already been produced in this litigation. Defendants further object to this request as this information can be obtained from another source, namely the public record.

20.    All requests for payment or reimbursement made to any patient or client or any third party payor, including without limitation private insurers, Medicare and Medicaid for services provided through use of the Medical Equipment.

**Response:**    Defendants object to this request on the grounds that to provide the information requested in the manner requested would be in violation of the Healthcare Insurance Portability and Accountability Act of 1996. Defendants further object to this request to the extent that it seeks confidential, private, business or commercial information or proprietary information.

21.    All documents reflecting any decision not to seek payment or reimbursement, in whole or in part, from any patient or client or any third party payor, including without limitation private insurers, Medicare and Medicaid, for services provided through use of the Medical Equipment.

**Response:**    Defendants have no information in their possession that would be responsive to this request in that Defendants are prohibited by law from refusing to seek payment or reimbursement, in whole or in part, from any patient or client or any third party payor, including private insurers, Medicare and Medicaid, for any services provided.

22.    All documents that refer or relate to any equipment that DeSoto purchased or leased to replace the functions performed by the Medical Equipment leased by DeSoto from TAMS, including without limitation all documents that refer or relate to the purchasing and/or

*Defendants' Response to*
*Toshiba America Medical Systems, Inc.*
*First Request for Production*

leasing of such equipment, any complaints or problems relating to the performance of such equipment, the cost of operating such equipment, the servicing of such equipment, and the revenues generated by the use of such equipment.

**Response:**    Defendants object to this request to the extent that it seeks confidential, private, business or commercial information and proprietary information. Further, Defendants are not aware of any information that would be responsive to that part of this request regarding the revenues generated by the use of such replacement equipment that the information requested is not maintained by the Defendants in the manner requested in the normal course of business and to properly respond to this request within the time allowed under the Federal Rules of Civil Procedure is not possible, but that Defendants are in the process of compiling the requested information that is not objectionable and will supplement their answer when the information has been assembled.

23.    All images and x-rays taken by the equipment that DeSoto purchased or leased to replace the functions performed by the Medical Equipment that were adequate in areas that the images and x-rays taken by the Medical Equipment were allegedly defective or of poor quality.

**Response**:    Defendants object to providing the information requested because the information requested is protected under the Healthcare Insurance Portability and Accountability Act of 1996.

*Defendants' Response to*
*Toshiba America Medical Systems, Inc.*
*First Request for Production*

Respectfully Submitted,

Desoto Diagnostic Imaging, LLC, Randon J. Carvel, Lynn T. Carvel, Delta Radiology, P.C., Zobar Properties, LLC, Defendants and Counter-Claimants.

By: _____

Kyle P. Tate, AR Bar No. 95097
for TATE, RAY, & BRADY
An Association of Professional Corporations
424 Ouachita Avenue
Hot Springs, AR 71901
(501) 624-9900

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that the foregoing has been served upon the attorney of record for all other parties in this proceeding and upon parties not represented by attorneys by telefax or by delivering a copy of this pleading to the attorney or party personally, or to the offices of such attorney or party, or by placing a copy in the U.S. Mail addressed to such attorney or party named below at his office with sufficient prepaid postage on this 14th day of April, 2003.

Ms. Rosetta B. Packer
MCCARTER & ENGLISH, LLP
Mellon Bank Center, Suite 700
1735 Market Street
Philadelphia, PA 19103-7501

Mr. John Chesney
Ms. Julianne Peck
DRINKER BIDDLE & REATH, LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103-6996

_____

Kyle P. Tate

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DELAGE LANDEN FINANCIAL SERVICES, INC., | : | |
| Plaintiff, | : | CIVIL ACTION NO. 2:02CV2810 |
| | : | |
| TOSHIBA AMERICA MEDICAL SYSTEMS, INC. | : | |
| Plaintiff/Intervenor, | : | |
| v. | : | |
| DESOTO DIAGNOSTIC IMAGING, LLC, RANDON J. CARVEL, LYNN T. CARVEL, DELTA RADIOLOGY, P.C. and ZOBAR PROPERTIES, LLC | : | |
| Defendants and Counter-Claimants | : | |

## FIRST SUPPLEMENTAL RESPONSE TO FIRST REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED BY TOSHIBA AMERICA MEDICAL SYSTEMS, INC.

NOW COME the Defendants, Desoto Diagnostic Imaging, LLC, Randon J. Carvel, Lynn T. Carvel, Delta Radiology, P.C. and Zobar Properties, LLC, by and through their attorneys, TATE LAW FIRM, by the undersigned attorney, do hereby submit their First Supplemental Response to First Request for Production of Documents Propounded by Toshiba America Medical Systems, Inc. Defendants also reserve their right to amend and/or supplement their responses at any time in the future.

## GENERAL OBJECTIONS

1.    Defendants object to Plaintiff/Intervenor's instructions and definitions to the extent that they suggest or require any burdens, responsibilities, or objections beyond those set forth in or

required by the Federal Rules of Civil Procedure. In responding to these requests, Defendants will comply with the applicable provisions of the Federal Rules of Civil Procedure.

2. Defendants object to any discovery directed at information protected by the attorney work product doctrine, the attorney-client privilege or any other applicable privilege. Defendants further object to any discovery which seeks information that is private, confidential business or commercial information, trade secrets, confidential research or development or proprietary information.

3. Defendants object to discovery which is not relevant or material and which is not reasonably calculated to lead to the discovery of admissible evidence.

4. Defendants object to discovery which is unduly burdensome, overly broad, vague and/or ambiguous, and not subject to reasonable limitation in time. Defendants further object to discovery which does not permit the identification of particular documents, subjects and time-frames with sufficient particularity to permit a reasonable response.

5. Defendants object to Plaintiff/Intervenor's document requests that request documents from entities or persons other than Defendants or that request documents that are not in the possession, custody or control of the Defendants.

6. Defendants object to Plaintiff/Intervenor's requests for production of documents to the extent they seek documents which have already been produced in this litigation from any person or party or to the extent they seek documents that are publicly available.

7. Each of these general objection is incorporated into each and ever response as though fully set forth at length therein, in addition to any specific objections stated.

8. Defendants reserve the right to supplement their answers.

## RESPONSE TO DOCUMENT REQUESTS

1.     Any and all documents identified in your answers to TAMS' First Set of Interrogatories to Defendants.

**Response**:     Defendants have produced documents responsive to this Request which have not been previously produced by any party in this litigation. In the event that new responsive documents are discovered, Defendants agree to supplement these responses according to the Federal Rules of Civil Procedure.

2.     All documents referenced, viewed, consulted or otherwise used in preparation of your answers to TAMS' First Set of Interrogatories.

**Response**:     Without waiving any previous objections, Defendants have produced documents responsive to this Request which have not been previously produced by any party in this litigation. In the event that new responsive documents are discovered, Defendants agree to supplement these responses according to the Federal Rules of Civil Procedure.

3.     Any and all documents and/or tangible things that support or relate to any of the allegations made in the Crossclaim, or which you referred to or relied upon in drafting the Crossclaim.

**Response**:     Defendants have produced documents responsive to this Request which have not been previously produced by any party in this litigation. In the event that new responsive documents are discovered, Defendants agree to supplement these responses according to the Federal Rules of Civil Procedure.

4.     All documents that refer or relate to TAMS and/or the Medical Equipment, including but not limited to all documents concerning the Master Lease and Service Agreements.

**Response**:     Defendants have produced documents responsive to this Request which have

not been previously produced by any party in this litigation. In the event that new responsive documents are discovered, Defendants agree to supplement these responses according to the Federal Rules of Civil Procedure.

    5.    All documents and materials upon which you allegedly relied regarding the performance and reliability of the Medical Equipment prior and subsequent to the execution of the Master Lease, including but not limited to brochures, advertisements, manuals, and promotional materials.

**Response**:    Defendants have produced documents responsive to this Request which have not been previously produced by any party in this litigation. In the event that new responsive documents are discovered, Defendants agree to supplement these responses according to the Federal Rules of Civil Procedure.

    6.    All images and x-rays taken by the Medical Equipment, including but not limited to all images and x-rays that you contend were defective or of poor quality as a result of alleged failure of the Medical Equipment to perform as warranted.

**Response**:    Without waiving any previous objections, Defendants have produced information responsive to this Request which is designated as "Confidential" pursuant to the Confidentiality Stipulation and Protective Order. In the event that new responsive information is discovered, Defendants agree to supplement these responses according to the Federal Rules of Civil Procedure.

    7.    All documents that support your contention in paragraph 32 of your Crossclaim that there were "approximately 100 separate incidents" during which the Medical Equipment failed to operate as warranted and failed of its essential purpose.

**Response**:    Defendants have produced documents responsive to this Request which have

not been previously produced by any party in this litigation. In the event that new responsive documents are discovered, Defendants agree to supplement these responses according to the Federal Rules of Civil Procedure.

8.    All documents that refer or relate to the use of the Medical Equipment, including without limitation all patient log books and records that reflect such use, and all documents that refer or relate to the revenue generated by such use.

**Response**:    Without waiving any previous objections, Defendants have produced information responsive to this Request which is designated as "Confidential" pursuant to the Confidentiality Stipulation and Protective Order.  In the event that new responsive documents are discovered, Defendants agree to supplement these responses according to the Federal Rules of Civil Procedure.

9.    All documents that refer or relate to training provided to DeSoto employees and/or agents on the use of the Medical Equipment.

**Response**:    Without waiving any previous objections, Defendants are unaware of any documents responsive to this request. In the event that new responsive information is discovered, Defendants agree to supplement these responses according to the Federal Rules of Civil Procedure.

10.    All documents that refer or relate to the loss of referrals to DeSoto based on the alleged failure of the Medical Equipment to operate as warranted.

**Response**:    Defendants reiterate its previous response that Defendants are unaware of any such documents in its possession. In the event that new responsive information is discovered, Defendants agree to supplement these responses according to the Federal Rules of Civil Procedure.

11.    All documents that refer or relate to the servicing of the Medical Equipment.

**Response**:    Without waiving any previous objections, Defendants have produced

documents responsive to this Request which have not been previously produced by any party in this litigation. In the event that new responsive documents are discovered, Defendants agree to supplement these responses according to the Federal Rules of Civil Procedure.

12.    All documents that refer or relate to the two separate incidents in which the medical Equipment allegedly malfunctioned and caused injury to your patients as alleged in paragraph 33 of your Crossclaim.

**Response**:    Defendants have produced documents responsive to this Request which have not been previously produced by any party in this litigation. In the event that new responsive documents are discovered, Defendants agree to supplement these responses according to the Federal Rules of Civil Procedure.

13.    All documents that refer or relate to the removal of the Medical Equipment from your premises prior to the end of the term of the Master Lease.

**Response**:    Without waiving any previous objections, Defendants state that DeSoto did not oversee the removal of the equipment from its operating location. As previously disclosed, DeSoto hired professionals to deinstall the equipment, (Bullit, Inc. and Oxford Instruments), and from there TAMS removed the equipment from the facility. Defendants are not aware of any documents relating to the removal of the equipment, as TAMS oversaw the removal of the equipment.

14.    All federal and state income tax returns, together with all schedules or attachments, filed on behalf of DeSoto for years 2000, 2001, and 2002.

**Response**:    Without waiving any previous objections Defendants have produced documents responsive to this Request which are designated as "Confidential" pursuant to the Confidentiality Stipulation and Protective Order.

15.    All documents concerning DeSoto's annual financial information for the years 2000, 2001, and 2002, including, but not limited to: (a) DeSoto's annual financial statements; (b) DeSoto's profit and loss statements; and (c) any other annual compilation of DeSoto's financial information.

**Response**:    Defendants object to this request on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant information. Further, Defendants renew their objection to this request to the extent that it seeks confidential, private, business or commercial information or proprietary information. Without waiving these objections, Defendants state that DeSoto has disclosed its certified tax returns which provide an annual compilation of DeSoto's financial information.

16.    All documents that constitute, reflect, refer or relate to communications between DeSoto and TAMS.

**Response**:    Without waiving any previous objections, Defendants have produced documents responsive to this Request.  In the event that additional responsive documents are discovered, Defendants agree to supplement these responses according to the Federal Rules of Civil Procedure.

17.    All documents that constitute, reflect, refer or relate to communications between DeSoto and DLL.

**Response**:    Without waiving any previous objections, Defendants have produced documents responsive to this Request.  In the event that additional responsive documents are discovered, Defendants agree to supplement these responses according to the Federal Rules of Civil Procedure.

18.    All documents that constitute, reflect, refer or relate to any communications between

or among DeSoto's present or former directors, officers, employees, agents and representatives regarding TAMS and/or the Medical Equipment.

**Response**:   Without waiving any previous objections, Defendants have produced documents responsive to this Request and supplement as attached hereto. In the event that additional responsive documents are discovered, Defendants agree to supplement these responses according to the Federal Rules of Civil Procedure.

19.   All filings (and all documents that refer or relate to any such filings) with the local, state or federal governmental agencies or bodies that refer or relate to TAMS and/or the Medical Equipment.

**Response**:   Without waiving any previous objections, Defendants are unaware of any documents responsive to this request, other than those responsive documents that have already been provided. In the event that new responsive documents are discovered, Defendants agree to supplement these responses according to the Federal Rules of Civil Procedure.

20.   All requests for payment or reimbursement made to any patient or client or any third party payor, including without limitation private insurers, Medicare and Medicaid for services provided through use of the Medical Equipment.

**Response**:   Without waiving any previous objections, Defendants have produced documents responsive to this Request and which are designated as "Confidential" pursuant to the Confidentiality Stipulation and Protective Order. In the event that additional responsive documents are discovered, Defendants agree to supplement these responses according to the Federal Rules of Civil Procedure.

22.   All documents that refer or relate to any equipment that DeSoto purchased or leased

to replace the functions performed by the Medical Equipment leased by DeSoto from TAMS, including without limitation all documents that refer or relate to the purchasing and/or leasing of such equipment, any complaints or problems relating to the performance of such equipment, the cost of operating such equipment, the servicing of such equipment, and the revenues generated by the use of such equipment.

**Response**:    Without waiving any previous objections, Defendants have produced documents responsive to this Request which are designated as "Confidential" pursuant to the Confidentiality Stipulation and Protective Order.

23.    All images and x-rays taken by the equipment that DeSoto purchased or leased to replace the functions performed by the Medical Equipment that were adequate in areas that the images and x-rays taken by the Medical Equipment were allegedly defective or of poor quality.

**Response**:    Without waiving any previous objections, Defendants will produce responsive documents as soon as practicable considering the time-consuming and burdensome nature of the process and which are designated as "Confidential" pursuant to the Confidentiality Stipulation and Protective Order.

By:    _Kyle P Tate/hb_

Kyle P. Tate
for TATE LAW FIRM
9085 Sandidge Center Cove
Olive Branch, MS  38654
(662) 893-8833
(662) 893-8824 facsimile

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that the foregoing has been served upon the attorney of record for all other parties in this proceeding and upon parties not represented by attorneys by telefax or by delivering a copy of this pleading to the attorney or party personally, or to the offices of such attorney or party, or by placing a copy in the U.S. Mail addressed to such attorney or party named below at his office with sufficient prepaid postage on this _____ day of October, 2003.

Mr. John Chesney
Ms. Julianne Peck
DRINKER BIDDLE & REATH, LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103-6996

Ms. Rosetta B. Packer
MCCARTER & ENGLISH, LLP
Mellon Bank Center, Suite 700
1735 Market Street
Philadelphia, PA 19103-7501

_____
Kyle P. Tate

# Exhibit D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

DELAGE LANDEN FINANCIAL
SERVICES, INC.,

               Plaintiff,

TOSHIBA AMERICA MEDICAL
SYSTEMS, INC.

               Plaintiff/Intervenor,

               v.

DESOTO DIAGNOSTIC IMAGING, LLC,
RANDON J. CARVEL, LYNN T. CARVEL,
DELTA RADIOLOGY, P.C. and
ZOBAR PROPERTIES, LLC

               Defendants and Counter-
               Claimants

CIVIL ACTION NO. 2:02CV2810

## OBJECTIONS TO SECOND SET OF INTERROGATORIES
## PROPOUNDED BY TOSHIBA AMERICA MEDICAL SYSTEMS, INC.

NOW COME the Defendants, Desoto Diagnostic Imaging, LLC, Randon J. Carvel, Lynn

T. Carvel, Delta Radiology, P.C. and Zobar Properties, LLC, by and through their attorneys,

TATE LAW FIRM, by Kyle P. Tate, and for their Response to Second Set of Interrogatories

Propounded by Toshiba America Medical Systems, Inc. do hereby state and answer:

## GENERAL OBJECTIONS

1.     Defendants object to Plaintiff/Intervenor's instructions and definitions to the

extent that they suggest or require any burdens, responsibilities, or objections beyond those set

forth in or required by the Federal Rules of Civil Procedure. In responding to these requests,

Defendants will comply with the applicable provisions of the Federal Rules of Civil Procedure.

2.      Defendants object to any discovery directed at information protected by the attorney work product doctrine, the attorney-client privilege or any other applicable privilege. Defendants further object to any discovery which seeks information that is private, confidential business or commercial information, trade secrets, confidential research or development or proprietary information.

3.      Defendants object to discovery which is not relevant or material and which is not reasonable calculated to lead to the discovery or proprietary information.

4.      Defendants object to discovery which is unduly burdensome, overly broad, vague and/or ambiguous, and not subject to reasonable limitation in time. Defendants further object to discovery which does not permit the identification of particular documents, subjects and time-frames with sufficient particularity to permit a reasonable response.

5.      **DEFENDANTS OBJECT TO DISCOVERY BEYOND THAT WHICH IS ALLOWED BY RULE 33 OF THE FEDERAL RULES OF CIVIL PROCEDURE WHICH LIMITS WRITTEN INTERROGATORIES TO 25 IN NUMBER, INCLUDING ALL DISCRETE SUBPARTS.**

6.      Each of these general objections is incorporated into each and every response as though fully set forth at length therein, in addition to any specific objections stated.

7.      Defendants reserve the right to supplement their answers.

## ANSWERS TO INTERROGATORIES

1.      For each piece of equipment that DeSoto leased or purchased to replace the functions performed by the Medical Equipment leased by DeSoto under the Master Lease, identify and describe in detail the capabilities, specifications, and features of said equipment.

**Response:**    Without waiving any previous or foregoing objections, Defendants object to discovery beyond that which is allowed by Rule 33 of the Federal Rules of Civil Procedure which limits written interrogatories to 25 in number, including all discrete subparts. This Interrogatory goes beyond that which is allowed by the Federal Rules of Civil Procedure absent leave of Court or party stipulation, neither of which have occurred.

Defendants further object to this Interrogatory on the grounds that it is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

2.    For each piece of equipment that DeSoto leased or purchased to replace the functions performed by the Medical Equipment leased by DeSoto under the Master Lease, identify and describe in detail all representations and/or warranties made by any party as to the capabilities, specifications, features, image quality and/or performance of said equipment.

**Response:**    Without waiving any previous or foregoing objections, Defendants object to discovery beyond that which is allowed by Rule 33 of the Federal Rules of Civil Procedure which limits written interrogatories to 25 in number, including all discrete subparts. This Interrogatory goes beyond that which is allowed by the Federal Rules of Civil Procedure absent leave of Court or party stipulation, neither of which have occurred.

Defendants further object to this Interrogatory on the grounds that it is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

3.    For each piece of equipment that DeSoto leased or purchased to replace the functions performed by the Medical Equipment leased by DeSoto under the Master Lease,

identify the date(s) that you contracted to purchase or lease said equipment and the date(s) that said equipment was installed in DeSoto's facilities.

**Response:**    Without waiving any previous or foregoing objections, Defendants object to discovery beyond that which is allowed by Rule 33 of the Federal Rules of Civil Procedure which limits written interrogatories to 25 in number, including all discrete subparts. This Interrogatory goes beyond that which is allowed by the Federal Rules of Civil Procedure absent leave of Court or party stipulation, neither of which have occurred.

Defendants further object to this Interrogatory on the grounds that it is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

4.    Identify and describe in detail every complaint made by you to the manufacturer, vendor, seller, or lessor regarding the performance and/or reliability of the equipment that DeSoto leased or purchased to replace the functions performed by the Medical Equipment leased by DeSoto under the Master Lease. For each such complaint identified, please provide the following information:

a.    the date and time of the complaint;

b.    the person who made the complaint;

c.    the person and/or entity to whom the complaint was made;

d.    the piece of equipment forming the basis of the complaint; and

e.    the content of the complaint.

**Response:**    Without waiving any previous or foregoing objections, Defendants object to discovery beyond that which is allowed by Rule 33 of the Federal Rules of Civil Procedure which limits written interrogatories to 25 in number, including all discrete subparts. This

Interrogatory goes beyond that which is allowed by the Federal Rules of Civil Procedure absent leave of Court or party stipulation, neither of which have occurred.

Defendants further object to this Interrogatory on the grounds that it is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

5.    Identify and describe in detail every complaint made by you to any party responsible for servicing or maintaining the equipment purchased and/or leased to replace the functions performed by the Medical Equipment leased by DeSoto under the Master Lease. For each such complaint identified, please provide the following information:

      a.          the date and time of the complaint;

      b.          the person who made the complaint;

      c.          the person and/or entity to whom the complaint was made;

      d.          the piece of equipment forming the basis of the complaint; and

      e.          the content of the compliant.

**Response:**    Without waiving any previous or foregoing objections, Defendants object to discovery beyond that which is allowed by Rule 33 of the Federal Rules of Civil Procedure which limits written interrogatories to 25 in number, including all discrete subparts. This Interrogatory goes beyond that which is allowed by the Federal Rules of Civil Procedure absent leave of Court or party stipulation, neither of which have occurred.

Defendants further object to this Interrogatory on the grounds that it is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

6.     For each piece of equipment that DeSoto leased or purchased to replace the functions performed by the Medical Equipment leased by DeSoto under the Master Lease, state whether or not you have paid all fees and/or monies due under any contractual agreement with any party in connections with the sale and/or lease as well as the servicing and/or maintenance of said equipment. If you have failed to pay any fees as described above, please provide the following information:

        a.     the amount of the fee(s) owed by you;

        b.     to whom the fee(s) are owed;

        c.     the reasons for the fee(s); and

        d.     the reason for your failure to pay the fee(s).

**Response:**     Without waiving any previous or foregoing objections, Defendants object to discovery beyond that which is allowed by Rule 33 of the Federal Rules of Civil Procedure which limits written interrogatories to 25 in number, including all discrete subparts. This Interrogatory goes beyond that which is allowed by the Federal Rules of Civil Procedure absent leave of Court or party stipulation, neither of which have occurred.

Defendants further object to this Interrogatory on the grounds that it is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

7.     Identify and describe in detail each and every express written or oral warranty or representation made by TAMS regarding the performance and reliability of each piece of Medical Equipment leased by DeSoto under the Master Lease. For each warranty or representation identified, please provide the following information:

        a.   the date and time of the warranty or representation;

b.  the person who made the warranty or representation;

c.  to whom the warranty or representation was made;

d.  the specific piece of Medical Equipment referenced in the warranty or representation; and

e.  the content of the warranty or representation.

**Response:**    Without waiving any previous or foregoing objections, Defendants object to discovery beyond that which is allowed by Rule 33 of the Federal Rules of Civil Procedure which limits written interrogatories to 25 in number, including all discrete subparts. This Interrogatory goes beyond that which is allowed by the Federal Rules of Civil Procedure absent leave of Court or party stipulation, neither of which have occurred.

Defendants further object to this Interrogatory as unreasonably cumulative or duplicative in that it appears to seek the same information sought in Interrogatory No. 7 in the First Set of Interrogatories Propounded by Toshiba America Medical Systems, Inc., which has previously been answered and supplemented by the Defendants. Further, it would be extremely burdensome for Defendants to list "each and every express written or oral warranty or representation" when responsive information has been provided in hundred of pages of deposition testimony taken thus far.

8.    For each piece of equipment that DeSoto leased or purchased to replace the functions performed by the Medical Equipment leased by DeSoto under the Master Lease, identify and describe in detail each area where said equipment exceeds the capabilities, specifications, performance and features of the Medical Equipment leased by DeSoto under the Master Lease.

**Response:**    Without waiving any previous or foregoing objections, Defendants object to discovery beyond that which is allowed by Rule 33 of the Federal Rules of Civil Procedure which limits written interrogatories to 25 in number, including all discrete subparts. This Interrogatory goes beyond that which is allowed by the Federal Rules of Civil Procedure absent leave of Court or party stipulation, neither of which have occurred.

Defendants further object to this Interrogatory on the grounds that it is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

9.    State the number of times during each calendar year that each piece of Medical Equipment was used for diagnostic purposes.

**Response:**    Defendants object to discovery beyond that which is allowed by Rule 33 of the Federal Rules of Civil Procedure which limits written interrogatories to 25 in number, including all discrete subparts. This Interrogatory goes beyond that which is allowed by the Federal Rules of Civil Procedure absent leave of Court or party stipulation, neither of which have occurred.

Without waiving any previous or foregoing objections, Defendants have produced responsive information which is designated as "Confidential" pursuant to the Confidentiality Stipulation and Protective Order.

10.    Identify and describe in detail each and every instance where the Medical Equipment did not perform in accordance with the express oral and written warranties and representations made by TAMS identified in Interrogatory No. 7 above. The purpose of this Interrogatory is to identify each and every instance where the Medical Equipment did not perform as allegedly warranted by TAMS.

**Response:**    Defendants object to discovery beyond that which is allowed by Rule 33 of the Federal Rules of Civil Procedure which limits written interrogatories to 25 in number, including all discrete subparts. This Interrogatory goes beyond that which is allowed by the Federal Rules of Civil Procedure absent leave of Court or party stipulation, neither of which have occurred.

Defendants further object to this Interrogatory as attempting to obtain an expert opinion which is not yet due in this case. Without waiving any previous or foregoing objections, Defendants have produced responsive information which is designated as "Confidential" pursuant to the Confidentiality Stipulation and Protective Order.

11.    Identify and describe in detail each and every instance where the Medical Equipment did not perform in accordance with the specifications and features set forth in the operating manuals for said equipment, allegedly provided to you by TAMS as described in paragraph 22 of your Counterclaim.

**Response:**    Defendants object to discovery beyond that which is allowed by Rule 33 of the Federal Rules of Civil Procedure which limits written interrogatories to 25 in number, including all discrete subparts. This Interrogatory goes beyond that which is allowed by the Federal Rules of Civil Procedure absent leave of Court or party stipulation, neither of which have occurred.

Defendants further object to this Interrogatory as attempting to obtain an expert opinion which is not yet due in this case. Without waiving any previous or foregoing objections, Defendants state that at the same time TAMS removed the Medical Equipment, all operating manuals for said equipment were also removed, and said manuals have been in the possession and control of TAMS since that time. Not until on or about September 18, 2003 did Defendants

receive revised versions of operating manuals for said equipment, which do not represent the original versions in effect during the relevant period of time, and which hinder Defendants' expert's ability to provide a complete expert opinion.

12.    With respect to the "serious deficiencies" of the Medical Equipment as alleged in paragraph 27 of your Counterclaim, describe in detail: (1) how TAMS' service and maintenance technicians failed to alleviate said deficiencies; and (2) anything the aforementioned technicians should have done by way of servicing the Medical Equipment properly to alleviate said deficiencies.

**Response:**    Defendants object to discovery beyond that which is allowed by Rule 33 of the Federal Rules of Civil Procedure which limits written interrogatories to 25 in number, including all discrete subparts. This Interrogatory goes beyond that which is allowed by the Federal Rules of Civil Procedure absent leave of Court or party stipulation, neither of which have occurred.

Defendants further object to this Interrogatory as attempting to obtain an expert opinion which is not yet due in this case. Without waiving any previous or foregoing objections, Defendants state that at the same time TAMS removed the Medical Equipment, all operating manuals for said equipment were also removed, and said manuals have been in the possession and control of TAMS since that time. Not until on or about September 18, 2003 did Defendants receive revised versions of operating manuals for said equipment, which do not represent the original versions in effect during the relevant period of time, and which hinder Defendants' expert's ability to provide a complete expert opinion.

13.    Identify and describe in detail all of the "approximately 100 separate incidents" during which the Medical Equipment allegedly failed to operate as warranted and failed of its

essential purpose as alleged in paragraph 32 of your Counterclaim. In addition to describing in detail each incident, please provide the following information:

  a.    the date of such incident;

  b.    the Medical Equipment involved in the incident;

  c.    the technician or technicians operating the Medical Equipment at the time of the incident; and

  d.    the problem with the Medical Equipment or reason it failed to allegedly operate as warranted.

**Response:**    Without waiving any previous or foregoing objections, Defendants object to discovery beyond that which is allowed by Rule 33 of the Federal Rules of Civil Procedure which limits written interrogatories to 25 in number, including all discrete subparts. This Interrogatory goes beyond that which is allowed by the Federal Rules of Civil Procedure absent leave of Court or party stipulation, neither of which have occurred.

Defendants further object to this Interrogatory as unreasonably cumulative or duplicative in that it appears to call for the compilation of information previously produced by Intervenor/Plaintiff Toshiba America Medical Services, Inc., (see TAMS 800 – TAMS 910).

14.    Do you contend that the technicians employed by you received training from you to operate the Medical Equipment? If your answer is in the positive, describe in detail all training programs offered by you to your technicians.

**Response:**    Defendants object to discovery beyond that which is allowed by Rule 33 of the Federal Rules of Civil Procedure which limits written interrogatories to 25 in number, including all discrete subparts. This Interrogatory goes beyond that which is allowed by the

Federal Rules of Civil Procedure absent leave of Court or party stipulation, neither of which have occurred.

Defendants further object to this Interrogatory on the grounds that it is an improper contention-style interrogatory which seeks a legal conclusions and/or analysis which is beyond the scope of permissible discovery.

15.    Identify, quantify and describe in detail all damages DeSoto has allegedly incurred, including actual, incidental and consequential damages, punitive damages, attorney's fees, costs and any other component of damages.

**Response:**    Without waiving any previous or foregoing objections, Defendants object to discovery beyond that which is allowed by Rule 33 of the Federal Rules of Civil Procedure which limits written interrogatories to 25 in number, including all discrete subparts. This Interrogatory goes beyond that which is allowed by the Federal Rules of Civil Procedure absent leave of Court or party stipulation, neither of which have occurred.

Defendants further object to this Interrogatory to the extent, as framed, it should be interpreted as calling for information protected by the attorney-client privilege. Without waiving any previous or foregoing objections, Defendants agree to supplement this response as to all counterclaims as set forth in Defendants' First Amended Affirmative Defenses and First Amended Counterclaims as the Federal Rules of Civil Procedure require.

By:  _Kyle P. Tate / hb_____

Kyle P. Tate, AR Bar No. 95097
for TATE LAW FIRM
9085 Sandidge Center Cove
Olive Branch, MS 38654
(662) 893-8833
(662) 893-8824 facsimile

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that the foregoing has been served upon the attorney of record for all other parties in this proceeding and upon parties not represented by attorneys by telefax or by delivering a copy of this pleading to the attorney or party personally, or to the offices of such attorney or party, or by placing a copy in the U.S. Mail addressed to such attorney or party named below at his office with sufficient prepaid postage on this 2nd day of October, 2003.

Mr. John Chesney
Ms. Julianne Peck
DRINKER BIDDLE & REATH, LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103-6996

Mr. Peter Boyer
Ms. Rosetta Packer
MCCARTER & ENGLISH, LLP
Mellon Bank Center, Suite 700
1735 Market Street
Philadelphia, PA 19103-7501

_Kyle P Tate / hb_

Kyle P. Tate

<u>VERIFICATION</u>

Lynn T. Carvel, M.D., Chief Manager of DeSoto Diagnostic Imaging, LLC, Defendant, states upon oath that she has read the statements contained in the foregoing Responses to TAMS' Interrogatories and they are true and correct to the best of her knowledge and belief.

_____
LYNN T. CARVEL, M.D., Chief Manager

Exhibit E

7/23/03

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DELAGE LANDEN FINANCIAL SERVICES, INC., : | |
| : | CIVIL ACTION NO. 2:02CV2810 |
| Plaintiff, : | |
| : | HON. RONALD J. BUCKWALTER |
| TOSHIBA AMERICA MEDICAL SYSTEMS, INC. : | |
| Plaintiff/Intervenor, : | |
| : | |
| v. : | |
| : | |
| DESOTO DIAGNOSTIC IMAGING, LLC., : | |
| RANDON J. CARVEL, LYNN T. CARVEL, : | |
| DELTA RADIOLOGY, P.C. and : | |
| ZOBAR PROPERTIES, LLC. : | |
| : | |
| Defendants and Counter- Claimants. : | |
| : | |

### RESPONSES TO TAMS' SECOND REQUEST FOR
### PRODUCTION OF DOCUMENTS ADDRESSED TO DEFENDANTS

NOW COME the Defendants, Desoto Diagnostic Imaging, LLC, Randon J. Carvel, Lynn

T. Carvel, Delta Radiology, P.C. and Zobar Properties, LLC, by and through their attorneys,

TATE LAW FIRM by Holly E. Brady, and hereby submit their Responses to TAMS' Second

Request for Production of Documents Addressed to Defendants. Defendants also reserve their

right to amend and/or supplement their responses at any time in the future.

### GENERAL OBJECTIONS

1.      Defendants object to Plaintiff/Intervenor's instructions and definitions to the

extent that they suggest or require any burdens, responsibilities, or objections beyond those set

forth in or required by the Federal Rules of Civil Procedure. In responding to these requests,

Defendants will comply with the applicable provisions of the Federal Rules of Civil Procedure.

*Defendant's Response to TAMS'*
*Second Request for Production*

2.    Defendants object to any discovery directed at information protected by the attorney work product doctrine, the attorney-client privilege or any other applicable privilege. Defendants further object to any discovery which seeks information that is private, confidential business or commercial information, trade secrets, confidential research or development or proprietary information.

3.    Defendants object to discovery which is not relevant or material and which is not reasonably calculated to lead to the discovery of admissible evidence.

4.    Defendants object to discovery which is unduly burdensome, overly broad, vague and/or ambiguous, and not subject to reasonable limitation in time. Defendants further object to discovery which does not permit the identification of particular documents, subjects and time-frames with sufficient particularity to permit a reasonable response.

5.    Defendants object to Plaintiff/Intervenor's document requests that request documents from entities or persons other than Defendants or that request documents that are not in the possession, custody or control of the Defendants.

6.    Defendants object to Plaintiff/Intervenor's requests for production of documents to the extent they seek documents which have already been produced in this litigation from any person or party or to the extent they seek documents that are publicly available.

7.    Each of these general objection is incorporated into each and ever response as though fully set forth at length therein, in addition to any specific objections stated.

8.    Defendants reserve the right to supplement their answers.

*Defendant's Response to TAMS'*
*Second Request for Production*

## RESPONSE TO DOCUMENT REQUESTS

1.    All documents that refer or relate to all forms of training given by DeSoto to all technicians who operated the Medical Equipment identified by DeSoto in its responses to TAMS' First Set of Interrogatories.

**Response:**    Defendants are currently aware of only those documents that have been previously disclosed by the Parties in the matter. Defendants agree to supplement this request pursuant to the Federal Rules of Civil Procedure should they find any other documents relating to this request.

2.    The personnel files for all of the technicians identified by DeSoto in its responses to TAMS' First Set of Interrogatories.

**Response:**    Objection. Defendants object to this request on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant information. Further, Defendants object to this request to the extent that it seeks confidential, private, business or commercial information and proprietary information. Defendants also object to this request to the extent that it seeks documents protected by the attorney client privilege and the attorney work product doctrine. However, Defendants agree to produce such documents subject to the Confidentiality Stipulation and Protective Order and the redacting of certain information that may be deemed confidential pursuant to the laws of the States of Mississippi and Tennessee, including, but not limited to, the employees social security number, rate of pay and identifying medical information.

*Defendant's Response to TAMS'*
*Second Request for Production*

    3.     All documents sufficient to identify the start and end dates of the employment terms of all of the technicians identified by DeSoto in its responses to TAMS' First Set of Interrogatories.

    **Response:**    Please see Response to Request for Production No. 2.

    4.     The personnel file of Paul King.

    **Response:**    Objection. Defendants object to this request on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of relevant information. Further, Defendants object to this request to the extent that it seeks confidential, private, business or commercial information and proprietary information. Defendants also object to this request to the extent that it seeks documents protected by the attorney client privilege and the attorney work product doctrine. However, Defendants agree to produce such documents subject to the Confidentiality Stipulation and Protective Order and the redacting of certain information that may be deemed confidential pursuant to the laws of the States of Mississippi and Tennessee, including, but not limited to, the employees social security number, rate of pay and identifying medical information.

    5.     All documents that reflect, refer or relate to any representations and/or warranties made by any party as to the capabilities, specifications, features, image quality and/or performance of the equipment that DeSoto leased or purchased to replace the functions performed by the Medical Equipment leased by DeSoto under the Master Lease.

    **Response:**    Defendants agree to produce all such documents in their possession.

*Defendant's Response to TAMS'*
*Second Request for Production*

6.    All documents that constitute, reflect, refer or relate to all promotional and/or marketing materials, brochures, specification sheets, manual and user's guides received by you in connection with the equipment that DeSoto leased or purchased to replace the function performed by the Medical Equipment leased by DeSoto under the Master Lease.

**Response:**    Defendants agree to produce all such documents in their possession.

7.    All images in your possession that were created by the Medical Equipment that you claim were in any sense non-diagnostic or substandard so as to be in violation of any claimed obligation, warranty or representation of TAMS or so as to reflect a failure by any piece of Medical Equipment to conform to or to perform in accordance with its specifications.

**Response:**    Objection. Defendants object to this Request on the grounds that it is overly broad and unduly burdensome. Further, Defendants object to this Request to the extent that it seeks information that is protected by the physician patient privilege and to infringe upon this privilege would be a breach of patient confidentiality.

8.    All documents that refer or relate to the number of times each piece of Medical Equipment was used for diagnostic purposes.

**Response:**    Objection. Defendants object to this request on the grounds that it is overly broad and unduly burdensome. However, although this information is not held in the normal course of business Defendants would agree to compile this information upon TAMS' agreement to cover the expenses of which it would cost Dr. Carvel and her staff to make such compilations.

*Defendant's Response to TAMS'*
*Second Request for Production*

Respectfully Submitted,

By:    _Holly E. Brady_

Holly E. Brady, AR Bar No. 2001160
for TATE LAW FIRM
424 Ouachita Avenue
Hot Springs, AR  71901
(501) 624-9900

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that the foregoing has been served upon the attorney of record for all other parties in this proceeding and upon parties not represented by attorneys by telefax or by delivering a copy of this pleading to the attorney or party personally, or to the offices of such attorney or party, or by placing a copy in the U.S. Mail addressed to such attorney or party named below at his office with sufficient prepaid postage on this 23rd day of July, 2003.

Ms. Rosetta B. Packer
MCCARTER & ENGLISH, LLP
Mellon Bank Center, Suite 700
1735 Market Street
Philadelphia, PA  19103-7501

Mr. John Chesney
Ms. Julianne Peck
DRINKER BIDDLE & REATH, LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA  19103-6996

_Holly E. Brady_

Holly E. Brady

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

DELAGE LANDEN FINANCIAL
SERVICES, INC.,                              :
                                             :        CIVIL ACTION NO. 2:02CV2810
            Plaintiff,                       :
                                             :
TOSHIBA AMERICA MEDICAL                      :
SYSTEMS, INC.                                :
                                             :
            Plaintiff/Intervenor,            :
                                             :
            v.                               :
                                             :
DESOTO DIAGNOSTIC IMAGING, LLC,              :
RANDON J. CARVEL, LYNN T. CARVEL,            :
DELTA RADIOLOGY, P.C. and                    :
ZOBAR PROPERTIES, LLC                        :
                                             :
            Defendants and Counter-          :
            Claimants                        :
                                             :

**FIRST SUPPLEMENTAL RESPONSE TO SECOND REQUEST FOR PRODUCTION**
**OF DOCUMENTS PROPUNDED BY TOSHIBA AMERICA MEDICAL SYSTEMS, INC.**

NOW COME the Defendants, Desoto Diagnostic Imaging, LLC, Randon J. Carvel, Lynn T.

Carvel, Delta Radiology, P.C. and Zobar Properties, LLC, by and through their attorneys, TATE

LAW FIRM by the undersigned attorney, and hereby submit their First Supplemental Responses to

Second Request for Production of Documents Propounded by Toshiba America Medical Systems,

Inc. Defendants also reserve their right to amend and/or supplement their responses at any time in the

future.

**GENERAL OBJECTIONS**

1.      Defendants object to Plaintiff/Intervenor's instructions and definitions to the extent

that they suggest or require any burdens, responsibilities, or objections beyond those set forth in or

required by the Federal Rules of Civil Procedure. In responding to these requests, Defendants will comply with the applicable provisions of the Federal Rules of Civil Procedure.

2.    Defendants object to any discovery directed at information protected by the attorney work product doctrine, the attorney-client privilege or any other applicable privilege. Defendants further object to any discovery which seeks information that is private, confidential business or commercial information, trade secrets, confidential research or development or proprietary information.

3.    Defendants object to discovery which is not relevant or material and which is not reasonably calculated to lead to the discovery of admissible evidence.

required by the Federal Rules of Civil Procedure. In responding to these requests, Defendants will comply with the applicable provisions of the Federal Rules of Civil Procedure.

2.      Defendants object to any discovery directed at information protected by the attorney work product doctrine, the attorney-client privilege or any other applicable privilege. Defendants further object to any discovery which seeks information that is private, confidential business or commercial information, trade secrets, confidential research or development or proprietary information.

3.      Defendants object to discovery which is not relevant or material and which is not reasonably calculated to lead to the discovery of admissible evidence.

4.      Defendants object to discovery which is unduly burdensome, overly broad, vague and/or ambiguous, and not subject to reasonable limitation in time. Defendants further object to discovery which does not permit the identification of particular documents, subjects and time-frames with sufficient particularity to permit a reasonable response.

5.      Defendants object to Plaintiff/Intervenor's document requests that request documents from entities or persons other than Defendants or that request documents that are not in the possession, custody or control of the Defendants.

6.      Defendants object to Plaintiff/Intervenor's requests for production of documents to the extent they seek documents which have already been produced in this litigation from any person or party or to the extent they seek documents that are publicly available.

7.      Each of these general objection is incorporated into each and ever response as though fully set forth at length therein, in addition to any specific objections stated.

8.      Defendants reserve the right to supplement their answers.

## RESPONSE TO DOCUMENT REQUESTS

7.      All images in your possession that were created by the Medical Equipment that you claim were in any sense non-diagnostic or substandard so as to be in violation of any claimed obligation, warranty or representation of TAMS or so as to reflect a failure by any piece of Medical Equipment to conform to or to perform in accordance with its specifications.

**Response**:    Without waiving any previous objections, Defendants have produced approximately 180 compact discs containing images which are responsive to this Request and which are designated as "Confidential" pursuant to the Confidentiality Stipulation and Protective Order. In the event that new responsive information is discovered, Defendants agree to supplement these responses according to the Federal Rules of Civil Procedure.

8.      All documents that refer or relate to the number of times each piece of Medical Equipment was used for diagnostic purposes.

**Response**:    Without waiving any previous objections, Defendants have produced approximately 180 compact discs containing images which are responsive to this Request and which are designated as "Confidential" pursuant to the Confidentiality Stipulation and Protective Order. In the event that new responsive information is discovered, Defendants agree to supplement these responses according to the Federal Rules of Civil Procedure.

By:    _Kyle P Tate / hb_
       Kyle P. Tate
       for TATE LAW FIRM
       9085 Sandidge Center Cove
       Olive Branch, MS  38654
       (662) 893-8833
       (662) 893-8824 facsimile

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that the foregoing has been served upon the attorney of record for all other parties in this proceeding and upon parties not represented by attorneys by telefax or by delivering a copy of this pleading to the attorney or party personally, or to the offices of such attorney or party, or by placing a copy in the U.S. Mail addressed to such attorney or party named below at his office with sufficient prepaid postage on this 2nd day of October, 2003.

Mr. John Chesney
Ms. Julianne Peck
DRINKER BIDDLE & REATH, LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103-6996

Ms. Rosetta B. Packer
MCCARTER & ENGLISH, LLP
Mellon Bank Center, Suite 700
1735 Market Street
Philadelphia, PA 19103-7501

_Kyle P. Tate/hb_

Kyle P. Tate

Exhibit F

NS

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DELAGE LANDEN FINANCIAL SERVICES, INC., | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 2:02CV2810 |
| | : | |
| | : | |
| TOSHIBA AMERICA MEDICAL SYSTEMS, INC. | : | |
| | : | |
| | : | |
| Plaintiff/Intervenor, | : | |
| | : | |
| v. | : | |
| | : | |
| DESOTO DIAGNOSTIC IMAGING, LLC, | : | |
| RANDON J. CARVEL, LYNN T. CARVEL, | : | |
| DELTA RADIOLOGY, P.C. and | : | |
| ZOBAR PROPERTIES, LLC | : | |
| | : | |
| Defendants and Counter-Claimants | : | |

### RESPONSE TO THIRD SET OF INTERROGATORIES PROPOUNDED BY TOSHIBA AMERICA MEDICAL SYSTEMS, INC.

NOW COME the Defendants, Desoto Diagnostic Imaging, LLC, Randon J. Carvel, Lynn T. Carvel, Delta Radiology, P.C. and Zobar Properties, LLC, by and through their attorneys, TATE LAW FIRM, by Kyle P. Tate, and for their Response to Third Set of Interrogatories Propounded by Toshiba America Medical Systems, Inc. do hereby state and answer:

### GENERAL OBJECTIONS

1.    Defendants object to Plaintiff/Intervenor's instructions and definitions to the extent that they suggest or require any burdens, responsibilities, or objections beyond those set forth in or required by the Federal Rules of Civil Procedure. In responding to these requests, Defendants will comply with the applicable provisions of the Federal Rules of Civil Procedure.

2.    Defendants object to any discovery directed at information protected by the attorney work product doctrine, the attorney-client privilege or any other applicable privilege. Defendants further object to any discovery which seeks information that is private, confidential business or commercial information, trade secrets, confidential research or development or proprietary information.

3.    Defendants object to discovery which is not relevant or material and which is not reasonable calculated to lead to the discovery or proprietary information.

4.    Defendants object to discovery which is unduly burdensome, overly broad, vague and/or ambiguous, and not subject to reasonable limitation in time. Defendants further object to discovery which does not permit the identification of particular documents, subjects and time-frames with sufficient particularity to permit a reasonable response.

5.    **DEFENDANTS OBJECT TO DISCOVERY BEYOND THAT WHICH IS ALLOWED BY RULE 33 OF THE FEDERAL RULES OF CIVIL PROCEDURE WHICH LIMITS WRITTEN INTERROGATORIES TO 25 IN NUMBER, INCLUDING ALL DISCRETE SUBPARTS.**

6.    Each of these general objections is incorporated into each and every response as though fully set forth at length therein, in addition to any specific objections stated.

7.    Defendants reserve the right to supplement their answers.

### ANSWERS TO INTERROGATORIES

1.    Please identify all persons who (a) have been employed by DeSoto, including but not limited to all officers, technologists and administrative personnel such as office managers, billing assistants or secretarial assistants or (b) have been employed by DeSoto, as licensed

physicians, and whether or not employees of DeSoto, provided professional services to DeSoto patients. For each person identified, please provide the following information:

    i.      the name of each such person;

    ii.     the dates of employment for each such person;

    iii.    the position(s) held by such person;

    iv.    whether or not the person is still employed by you; and

    v.     the last known address and telephone number for each such person who is no longer employed by you.

**Response:**    Defendants object to discovery beyond that which is allowed by Rule 33 of the Federal Rules of Civil Procedure which limits written interrogatories to 25 in number, including all discrete subparts. This Interrogatory goes beyond that which is allowed by the Federal Rules of Civil Procedure absent leave of Court or party stipulation, neither of which have occurred.

Defendants further object to this Interrogatory on the grounds that it is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence in that it would, by its terms, seek information regarding current employees who have no knowledge or information whatsoever relating to the claims as set forth in the Complaint or in the Intervenor Complaint. Further, Defendants object to this request to the extent that it seeks confidential, private, business or commercial information or proprietary information.

Without waiving the foregoing objections, Defendants state that the foregoing information has already been disclosed with regard to persons who were employed by DeSoto at the relevant time period, who had knowledge and information relating to the claims as set forth in the Complaint and/or the Intervenor Complaint.

-3-

By: _____

Kyle P. Tate
for TATE LAW FIRM
9085 Sandidge Center Cove
Olive Branch, MS  38654
(662) 893-8833
(662) 893-8824 facsimile

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that the foregoing has been served upon the attorney of record for all other parties in this proceeding and upon parties not represented by attorneys by telefax or by delivering a copy of this pleading to the attorney or party personally, or to the offices of such attorney or party, or by placing a copy in the U.S. Mail addressed to such attorney or party named below at his office with sufficient prepaid postage on this 30$^+$ day of September, 2003.

Mr. John Chesney
Ms. Julianne Peck
DRINKER BIDDLE & REATH, LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103-6996

Mr. Peter Boyer
Ms. Rosetta Packer
MCCARTER & ENGLISH, LLP
Mellon Bank Center, Suite 700
1735 Market Street
Philadelphia, PA 19103-7501

_____
Kyle P. Tate

## VERIFICATION

Lynn T. Carvel, M.D., Chief Manager of DeSoto Diagnostic Imaging, LLC, Defendant, states upon oath that she has read the statements contained in the foregoing Responses to TAMS' Interrogatories and they are true and correct to the best of her knowledge and belief.

*Lynn T Carvel, MD*

LYNN T. CARVEL, M.D., Chief Manager

Exhibit G

NS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DELAGE LANDEN FINANCIAL SERVICES, INC., | : | |
| | : | |
| | : | CIVIL ACTION NO. 2:02CV2810 |
| Plaintiff, | : | |
| | : | |
| TOSHIBA AMERICA MEDICAL SYSTEMS, INC. | : | |
| | : | |
| | : | |
| Plaintiff/Intervenor, | : | |
| | : | |
| v. | : | |
| | : | |
| DESOTO DIAGNOSTIC IMAGING, LLC, RANDON J. CARVEL, LYNN T. CARVEL, DELTA RADIOLOGY, P.C. and ZOBAR PROPERTIES, LLC, | : | |
| | : | |
| | : | |
| Defendants and Counter-Claimants. | : | |

## RESPONSE TO THIRD REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED BY TOSHIBA AMERICA MEDICAL SYSTEMS, INC.

NOW COME the Defendants, Desoto Diagnostic Imaging, LLC, Randon J. Carvel, Lynn T. Carvel, Delta Radiology, P.C. and Zobar Properties, LLC, by and through their attorneys, TATE LAW FIRM, by Kyle P. Tate, do hereby submit their Response to Third Request for Production of Documents Propounded by Toshiba America Medical Systems, Inc. Defendants also reserve their right to amend and/or supplement their responses at any time in the future.

## GENERAL OBJECTIONS

1.      Defendants object to Plaintiff/Intervenor's instructions and definitions to the extent that they suggest or require any burdens, responsibilities, or objections beyond those set forth in or required by the Federal Rules of Civil Procedure. In responding to these requests, Defendants will comply with the applicable provisions of the Federal Rules of Civil Procedure.

2.    Defendants object to any discovery directed at information protected by the attorney work product doctrine, the attorney-client privilege or any other applicable privilege. Defendants further object to any discovery which seeks information that is private, confidential business or commercial information, trade secrets, confidential research or development or proprietary information.

3.    Defendants object to discovery which is not relevant or material and which is not reasonably calculated to lead to the discovery of admissible evidence.

4.    Defendants object to discovery which is unduly burdensome, overly broad, vague and/or ambiguous, and not subject to reasonable limitation in time. Defendants further object to discovery which does not permit the identification of particular documents, subjects and time-frames with sufficient particularity to permit a reasonable response.

5.    Defendants object to Plaintiff's document requests that request documents from entities or persons other than Defendants or that request documents that are not in the possession, custody or control of the Defendants.

6.    Defendants object to Plaintiff/Intervenor's requests for production of documents to the extent they seek documents which have already been produced in this litigation from any person or party or to the extent they seek documents that are publicly available.

7.    Each of these general objection is incorporated into each and every response as though fully set forth at length therein, in addition to any specific objections stated.

8.    Defendants reserve the right to supplement their answers.

## RESPONSE TO DOCUMENT REQUESTS

1.      All patient or medical records for patients treated at DeSoto since the date of its opening to the present.

**Response:**     Defendants object to this Request as irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence and unnecessarily duplicative. Without waiving the foregoing objections, Defendants have provided responsive documents relating to the relevant period of time and the specific transaction or transactions (*i.e.*, the lease of equipment to DeSoto) at issue in this litigation.

2.      To the extent not covered in Request No. 1: (a) all documents from referring physicians requesting procedures to be performed by DeSoto in any of the modalities covered by the Medical Equipment (*i.e.,* MR, CT, Ultrasound, Nuclear Medicine and R & F); (b) all documents reflecting any additional procedures ordered by Dr. Carvel or any other DeSoto physician to be performed on patients in any of the modalities covered by the Medical Equipment and; (c) all billing records relating to procedures performed in any of the modalities covered by the Medical Equipment.

**Response:**     Defendants object to this Request as irrelevant to the subject matter of this action and irrelevant as to any claims or defenses of this action and not reasonably calculated to lead to the discovery of admissible evidence.   Without waiving the foregoing objections, Defendants have provided responsive documents that have been designated as "Confidential" pursuant to the Confidentiality Stipulation and Protective Order relating to the relevant period of time and the specific transaction or transactions (*i.e.*, the lease of equipment to DeSoto) at issue in this litigation.

3.    The personnel files for all persons employed by DeSoto at any during [sic] time during its existence, including but not limited to the personnel files for all billing assistants and office managers.

**Response:**    Defendants object to this Request as irrelevant to the subject matter of this action and irrelevant as to any claims or defenses of this action and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the foregoing objections, Defendants state that the personnel files for the technologists who were employed by DeSoto at the relevant time period, have already been produced, and which are designated as "Confidential" pursuant to the Confidentiality Stipulation and Protective Order.

4.    All versions of DeSoto's Employment Handbook & Information Manual.

**Response:**    Defendants object to this Request as irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the foregoing objections, Defendants will produce any non-privileged documents responsive to this Document Request that can be identified by virtue of a reasonable search.

5.    All agreements, contracts or other legal documents that individuals were required to sign as a condition of employment or of continued employment with DeSoto since the date of its opening to the present.

**Response:**    Defendants object to this Request as irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the foregoing objections, Defendants will produce any non-privileged documents responsive to this Document Request that can be identified by virtue of a reasonable search.

6.    All employee Disciplinary Action Forms that were generated with respect to any employees of DeSoto since the date of its opening to the present.

**Response:**    Defendants object to this Request as irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the foregoing objections, Defendants will produce any non-privileged documents responsive to this Document Request that can be identified by virtue of a reasonable search.

7.    All documents that refer or relate to the deinstallation of the Medical Equipment.

**Response:**    Defendants state that they believe they have already produced the non-privileged documents responsive to this Request in response to TAMS' First Request for Production, but will produce any additional non-privileged responsive documents if they are identified.

8.    All agreements with, or communications or correspondence by, from, to or with any of the following or by, from, to or with any employee, agent or representative of the following:

(a)    entities involved in (i) the installation of the Medical Equipment or work related to such installation (including, without limitation, construction, electrical or plumbing work), (ii) the deinstallation of the Medical Equipment, or work related to such deinstallation or (iii) the replacement of the Medical Equipment with other equipment, or work related to such replacement. Without limitation, this request includes all communications or correspondence involving those entities believed by TAMS to be named, or to have names resembling: Bullit, Inc., Oxford Instruments, H & H and

Lindgren; entities from which DeSoto purchased, leased or otherwise acquired equipment to replace the Medical Equipment (collectively the "Replacement Equipment") and;

      (b)    entities providing, or that have provided, maintenance or repair services to any of the Replacement Equipment;

      (c)    entities providing, or that have provided, application or operational training or support to DeSoto in connection with the Replacement Equipment.

      (d)    entities providing, or that have provided, applications or operational training or support to DeSoto in connections with the Replacement Equipment.

**Response**:    Defendants object to this Request as irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the foregoing objection, Defendants state that they believe they have already produced the non-privileged documents responsive to parts (a)(i) and (a)(ii) and will supplement this response in the event other non-privileged documents can be identified by virtue of a reasonable search. Without waiving any foregoing objections, Defendants will also conduct a reasonable search regarding the "work related to such replacement" request portion of part (a)(iii) and will produce any non-privileged responsive documents if they are identified.

9.    DeSoto's complete log book for the nuclear medicine machine.

**Response**:    Without waiving any previous objections, Defendants have previously produced information responsive to this Request which is designated as "Confidential" pursuant to the Confidentiality Stipulation and Protective Order. Defendants will however attach another complete copy is designated as "Confidential" pursuant to the Confidentiality Stipulation and Protective Order.

10.    To the extent not produced in response to the foregoing requests, all documents that refer or relate to the installation of the equipment that DeSoto leased and purchased to replace the functions performed by the Medical Equipment leased by DeSoto under the Master Lease, including but not limited to all documents sufficient to identify all individuals and companies who participated in the installation of said equipment.

**Response:**    Defendants object to this Request as irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence.

11.    To the extent not produced in response to the foregoing requests, all documents that refer or relate to the financing by DeSoto of equipment that DeSoto leased and purchased to replace the functions performed by the Medical Equipment leased by DeSoto under the Master Lease.

**Response:**    Defendants object to this Request as irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence.

12.    To the extent not produced in response to the foregoing requests, all communications and correspondence between DeSoto and any third party, including but not limited to Siemen's [sic] Medical Solutions USA, Inc., Miller Medical Imaging or Medical Equipment Consulting Services, Inc., regarding the equipment that DeSoto leased and purchased to replace the functions performed by the Medical Equipment leased by DeSoto under the Master Lease.

**Response:**    Defendants object to this Request as irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence.

13.    All UCC filings by DeSoto from the year 2000 to the present, including all UCC filings by DeSoto with respect to the equipment that DeSoto leased and purchased to replace the functions performed by the Medical Equipment leased by DeSoto under the Master Lease.

**Response:**    Defendants object to this Request as duplicative in that it appears to call for the production of documents that have already been requested in TAMS' First Request for Production of Documents Addressed to Defendants, No. 19. Defendants restate that they are unaware of any documents responsive to this request, other than those responsive documents that have already been provided by the parties in this litigation. In the event that new responsive documents are discovered, Defendants agree to supplement these responses according to the Federal Rules of Civil Procedure.

14.    All documents that reflect, relate or refer to your change of name from DeSoto Diagnostic Imaging, LLC to Carvel Imaging Center.

**Response:**    Defendants object to this Request as irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the foregoing objection, Defendants will produce any non-privileged documents responsive to this Document Request that can be identified by virtue of a reasonable search.

15.    All correspondence and communications with all referring physicians that refer or relate to the Medical Equipment.

**Response:**    Defendants object to this Request as irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the foregoing objection, Defendants will produce any non-privileged documents responsive to this Document Request that can be identified by virtue of a reasonable search.

16.    All correspondence and communications between DeSoto and any third party relating to the Medical Equipment.

**Response:**    Defendants object to this Request as vague and overbroad in that it fails to set forth and describe the items requested to be reviewed "with reasonable particularity" as required by Federal Rule of Civil Procedure 34(b). Defendants further object to this Request as irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence.

17.    To the extent not produced in response to the foregoing requests, all billing records sufficient to show the number of times each piece of Medical Equipment was used for diagnostic purposes.

**Response:**    Without waiving any previous objections, Defendants have produced approximately 4,000 documents consisting of DeSoto's billing ledger which is responsive to this request and which is designated as "Confidential" pursuant to the Confidentiality Stipulation and Protective Order.

18.    To the extent not produced in response to the foregoing requests, all billing records sufficient to show the number of times the equipment that DeSoto leased and purchased to replace the functions performed by the Medical Equipment leased by DeSoto under the Master Lease has been used for diagnostic purposes.

**Response:**    Defendants object to this Request as irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence.

19.    All documents, including without limitation equipment logs, maintained by DeSoto or service or "call" logs kept by DeSoto or any third party, that constitute, reflect, refer or relate to:

(a) all complaints, queries or requests for service, advice or repairs made by you concerning the performance or reliability of the equipment that DeSoto leased or purchased to replace the Medical to (i) the provider (e.g., manufacturer, vendor or lessor) of such equipment (ii) any person providing warranty, maintenance or repair service with respect to such equipment or (iii) any person providing applications or operational training or support with respect to such equipment;

(b) responses to any of the matters identified in (a).

**Response:**    Defendants object to this Request as irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence.

20.    All documents that constitute, reflect, refer or relate to all fees and/or monies due under any contractual agreement with any party in connection with the sale and/or lease as well as the servicing and/or maintenance of the equipment that DeSoto leased or purchased to replace the functions performed by the Medical Equipment leased by DeSoto under the Master Lease.

**Response:**    Defendants object to this Request as irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence.

21.    All documents that constitute, reflect, refer or relate to all damages DeSoto has allegedly incurred, including actual, incidental and consequential damages, punitive damages, attorney's fees, costs and any other component of damages.

**Response:**    Defendants object to this Request to the extent, as framed, it should be interpreted as calling for the production of documents or materials protected by the attorney-client privilege. Without waiving the foregoing objection, Defendants will produce any non-privileged documents responsive to this Document Request identified by virtue of a reasonable search.

22.    All documents that constitute, concern, reflect or relate to DeSoto's billing policies, practices or procedures with respect to the billing of private payors and/or third party payors, including without limitation private insurers, Medicare and Medicaid, for services provided through the use of the Medical Equipment.

**Response:**    Defendants object to this Request as irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence.

23.    All documents that refer or relate to the negotiation or execution of the Master Lease or the Guaranties.

**Response:**    Defendants object to this Request to the extent, as framed, it should be interpreted as calling for the production of documents or materials protected by the attorney-client privilege. Without waiving the foregoing objection, Defendants will produce any non-privileged documents responsive to this Document Request identified by virtue of a reasonable search.

24.    All insurance policies maintained by you that may provide insurance coverage for the acts alleged in the pleadings or which might otherwise be relevant to this action.

**Response:**    Defendants are unaware at this time of any responsive documents to this Document Request.    Defendants will conduct a reasonable search and produce any non-privileged documents responsive to this Document Request.

25.    All documents concerning DeSoto's annual financial information for the years 2000, 2001, and 2002, including, but not limited to: (a) DeSoto's annual financial statements; (b) DeSoto's revenue and profit and loss statements; and (c) any other annual compilation of DeSoto's financial information.

**Response:**    Without waiving any previous objections, Defendants further object to this Request as unnecessarily duplicative in that it appears to call for the production of documents that have already been requested in TAMS' First Request for Production of Documents Addressed to Defendants, No. 15, to which Defendants have objected. Without waiving any previous objections, Defendants state that DeSoto has provided responsive documents in the form of its certified tax returns which provide a complete and accurate compilation of DeSoto's financial information for the years requested.

26.    All documents that constitute, refer or relate to (a) bills, charges or invoices issued to private or third party payors, including private insurers, Medicare or Medicaid, by Lynn T. Carvel, P.L.L.C. or any other person or entity for the professional component of services rendered in connection with procedures performed through DeSoto's use of the Medical Equipment (b) amounts paid in response to such bills, charges or invoices.

**Response:**    Defendants object to this Request as irrelevant to the subject matter of this action and irrelevant as to any claims or defenses of this action and not reasonably calculated to lead to the discovery of admissible evidence.

27.    All documents that refer or relate to the entity knows as Lynn T. Carvel, P.L.L.C., including but not limited to all documents that reflect any payments made by Lynn T. Carvel, P.L.L.C. to Dr. Lynn Carvel or to DeSoto Diagnostic Imaging, LLC in connection with or on account of services provided through use of Medical Equipment.

**Response**:    Defendants object to this Request as irrelevant to the subject matter of this action and irrelevant as to any claims or defenses of this action and not reasonably calculated to lead to the discovery of admissible evidence.

28.    All documents that refer or relate to AGFA and the PACS System purchased and/or leased by you in conjunction with your lease of the Medical Equipment, including but not limited to all correspondence between you and AGFA or Talk Tech regarding the PACS System, the Talk Tech system or any interface between those systems and the Medical Equipment.

**Response**:    Defendants object to this Request as irrelevant to the subject matter of this action and irrelevant as to any claims or defenses of this action and not reasonably calculated to lead to the discovery of admissible evidence.

29.    All documents that constitute, reflect, refer or relate to the RIS system or any information that resides on the RIS system.

**Response**:    Defendants object to this Request as vague and overbroad in that it fails to set forth and describe the items requested to be reviewed "with reasonable particularity" as required by Federal Rule of Civil Procedure 34(b), and to the extent that it is incomprehensible. Defendants further object to this Request as irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence.

30.    All documents relating to any way in which the RIS system affected, or allegedly affected, the performance of the Medical Equipment or of any equipment or systems (such as, by way of example only, DICOM or the AGFA PACS system) used in conjunction with the Medical Equipment.

**Response**:    Defendants object to this Request as vague and overbroad in that it fails to set forth and describe the items requested to be reviewed "with reasonable particularity" as required by Federal Rule of Civil Procedure 34(b), and to the extent that it is incomprehensible Defendants further object to this Request as irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence.

31.    All documents that relate to or describe the proper method of starting up, shutting down or operating the Medical Equipment, including without limitation all service, applications or operator's manuals and all protocol books or other notes (including without limitation notes of the kind described by May Vokaty in her deposition) relating to the appropriate protocols or settings to be used for particular purposes.

**Response**:    Defendants object to this Request as being irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this Request to the extent that it seeks documents in the possession of parties other than the Defendants. To the best of Defendants' knowledge, information and belief, any documents responsive to this Request are in the possession, custody or control of Plaintiff/Intervenor Toshiba America Medical Systems, Inc. as TAMS removed all such documents at the time the Medical Equipment was removed.

32.    All documents that constitute, reflect or refer to (a) checks, test or procedures performed by DeSoto on the Medical Equipment, whether regularly (e.g., daily, weekly,

monthly, etc.) or otherwise in order to ensure that the equipment was properly set up and in proper condition to perform the procedures for which it was designed, including without limitation all "floods", Quality Assurance (Q and A) checks or tests, uniformity tests or checks and other tests checks or tests employing phantoms and (b) the results of such checks, tests or procedures.

**Response**:    Defendants object to this Request as vague and overbroad in that it fails to set forth and describe the items requested to be reviewed "with reasonable particularity" as required by Federal Rule of Civil Procedure 34(b), and to the extent that it is incomprehensible Defendants further object to this Request as being irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence.

33.    The document identified by May Vokaty in her deposition as a kind of manual relating to Nuclear Medicine that was provided to DeSoto by Mr. Jim Smith and that was believed by Ms. Vokaty to have been written by Mr. Smith.

**Response**:    Defendants object to this Request as being irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this Request to the extent that it seeks documents in the possession of parties other than the Defendants. To the best of Defendants' knowledge, information and belief, any documents responsive to this Request are in the possession, custody or control of Plaintiff/Intervenor Toshiba America Medical Systems, Inc. as TAMS removed all such documents at the time the Medical Equipment was removed.

34.    All documents that constitute, reflect, relate or refer to generally recognized standards among radiologists, or standards that DeSoto or any Defendant contends are generally

recognized among radiologists, relating to image quality with regard to any of the modalities covered by the Toshiba equipment.

**Response:**    Defendants object to this Request as vague and overbroad in that it fails to set forth and describe the items requested to be reviewed "with reasonable particularity" as required by Federal Rule of Civil Procedure 34 (b), and to the extent that it is incomprehensible. Defendants further object to this request as attempting to obtain an expert opinion which is not yet due in this case.  Defendants further object to this Request to the extent, as framed, it should be interpreted as for calling for the production of documents or materials protected by the attorney-client privilege.

35.    All documents sufficient to show the ownership and management structure of each corporate defendant, including the identity of all present and past owners, shareholders, subsidiaries, officers, employees, divisions, joint ventures and office locations.

**Response:**    Defendants object to this Request as being irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence.

36.    All corporate organizational charts.

**Response:**    Defendants object to this Request as being irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence.

37.    All documents that you contend support any of the 27 Affirmative Defenses contained in your Answer and Counterclaim to TAMS.

**Response:**    Defendants object to this Request to the extent that it calls for the mental impressions and legal conclusions of their attorneys in the preparation of their case of which materials are protected by the work product doctrine and the attorney-client privilege.  Without

-16-

waiving the foregoing objection, Defendants have produced and will continue to produce throughout discovery any non-privileged documents responsive to this Request.

By: _____

Kyle P. Tate
for TATE LAW FIRM
9085 Sandidge Center Cove
Olive Branch, MS  38654
(662) 893-8833
(662) 893-8824 facsimile

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that the foregoing has been served upon the attorney of record for all other parties in this proceeding and upon parties not represented by attorneys by telefax or by delivering a copy of this pleading to the attorney or party personally, or to the offices of such attorney or party, or by placing a copy in the U.S. Mail addressed to such attorney or party named below at his office with sufficient prepaid postage on this 30th day of September, 2003.

Mr. John Chesney
Ms. Julianne Peck
DRINKER BIDDLE & REATH, LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103-6996

Mr. Peter Boyer
Ms. Rosetta Packer
MCCARTER & ENGLISH, LLP
Mellon Bank Center, Suite 700
1735 Market Street
Philadelphia, PA 19103-7501

Kyle P. Tate

# Exhibit H

DrinkerBiddle&Reath
L L P

Julianne Peck
215-988-1996
julianne.peck@dbr.com

*Law Offices*

One Logan Square
18TH and Cherry Streets
Philadelphia, PA
19103-6996

215-988-2700
215-988-2757 fax
www.drinkerbiddle.com

NEW YORK
WASHINGTON
LOS ANGELES
SAN FRANCISCO
PRINCETON
FLORHAM PARK
BERWYN
WILMINGTON

October 10, 2003

**VIA FACSIMILE**

Kyle P. Tate, Esq.
9085 Sandidge Center Cove
Olive Branch, Mississippi  38654

> RE: ***De Lage Laden Financial Services, Inc. and Toshiba Medical Systems, Inc. v. DeSoto Diagnostic Imaging, L.L.C., et al**, U.S.D.C. Eastern* <u>District of Pennsylvania, C.A. No. 2:02CV2810</u>

Dear Kyle:

We are in receipt of Defendants' responses to TAMS' Third Set of Interrogatories and our Third Request for Production of Documents. Given that you have flat out refused to produce various important categories of responsive information, and given that we are on the eve of our expert disclosure deadline, we have outlined our position as to the deficiencies of your responses below. To the extent that you are willing to meet and confer with us with regard to any or all of these issues, we would appreciate a telephone call at your earliest convenience as we intend to file a motion to compel with regard to the categories of information and documents that are not received in our office on or before Friday October 17, 2003.

We are also in receipt of what you purport is a privilege log. Your clients objected to the production of various documents and information requested in interrogatories on the ground that the information sought was protected by the attorney-client privilege. *See, e.g.*, Defendants' Responses to TAMS' First Request for Production of Documents Nos. 2 and 18; Defendants' Responses to TAMS' Second Request for Production of Documents No. 4; and Defendants' Responses to TAMS' Third Request for Production of Documents Nos. 21, 23, 34 and 37. However, your privilege log does not list a single document protected by that privilege. Rather, it lists confidential information redacted from documents that have been produced. If no attorney-client privileged documents exist, please amend your responses, or inform us in writing that such is the case. Otherwise please produce a supplemental privilege log on or before October 17, 2003.

**<u>Third Set of Interrogatories</u>**

As we have stated on numerous occasions, your objection to our interrogatories on the basis that they exceed the twenty five interrogatory limit of Federal Rule of Civil Procedure 33(a) is frivolous. So too, is your blanket contention that the identity of former DeSoto employees, including office staff and physicians, is irrelevant. Dr. Carvel

*Established*
*1849*

NS

DrinkerBiddle&Reath

Kyle P. Tate, Esquire
October 10, 2003
Page 2

has already testified that at least one other radiologist (other than herself) worked at DeSoto during the relevant time period. A radiologist who made diagnoses from the images produced on the Toshiba equipment can hardly be considered irrelevant. Moreover, as to the other employees, it is impossible, especially given that DeSoto was a small family-run business, that they would not have relevant information, or information that could lead to the discovery of admissible evidence, particularly when you contend that the equipment was so bad that it failed to meet its essential purpose, caused DeSoto to lose referrals, and forced Randon Carvel (according to his deposition testimony) to quit his job and help out. TAMS has a right to explore the validity of these claims with the individuals that worked at DeSoto day in and day out, and had contact with the referring physicians and your clients on a daily basis.

**<u>Third Request For Production</u>**

You have responded to these requests in the following ways: (a) you have outright refused to produced the requested documents on the ground that they are irrelevant; (b) you have agreed to produce a limited category (as opposed to all categories) of the requested documents; or (c) you have agreed to produce documents that can be identified by virtue of a reasonable search.

We obviously have no dispute with regard to what you have agreed to produce, but simply cannot wait (as we have in the past) to our prejudice, for you to produce these documents at some unidentified future date. We look forward to receiving them within the week.

We dispute your bald assertion that the following requests are irrelevant, for the following reasons:

      Request Nos. 8(b)(c)(d), 10-12, 18-20: (*Documents Relating to Replacement Equipment*)

These requests seek, with regard to the replacement equipment, documents relating to: the financing by DeSoto to lease or purchase the equipment; the installation of the equipment; communications with third-parties, including Siemen's, Miller Medical Imaging and Medical Equipment Consulting Services, regarding the equipment; billing records reflecting the use of such equipment; complaints by DeSoto with regard to the equipment; service required on the equipment; and fees due by DeSoto relating to the equipment.

This information is relevant in that it will help demonstrate whether the equipment purchased and/or leased to replace the Toshiba equipment operated

NS

DrinkerBiddle&Reath
L L P

Kyle P. Tate, Esquire
October 10, 2003
Page 3

any better or worse than the Toshiba equipment.  It will also help demonstrate
when the equipment was contracted for (*i.e.* when DeSoto *really* made the
decision to de-install the Toshiba equipment), and whether the replacement
equipment cost more or less than the Toshiba equipment – which may establish an
ulterior motive for the de-installation of the Toshiba equipment.  What DeSoto
paid for the replacement equipment also bears on defendants' alleged damages.
In what manner DeSoto used the replacement equipment (*i.e.* how often and for
what procedures) also bears on many of the issues in the case, particularly when
Dr. Carvel has put the capabilities of the Toshiba equipment versus her
expectations, directly at issue in this case.  For these reasons all of the above
mentioned documents are relevant, and TAMS will move to compel if they are
not produced.

Request No. 16:  seeks correspondence and communications between
DeSoto and third parties relating to the medical equipment.  This request does not
need to be stated with greater particularity.  Obviously it includes all invoices and
bills relating to use of the medical equipment, all communications with physicians
relating to the medical equipment, any filings with the State of Mississippi that
refer to the medical equipment, any communications with third parties relating to
the de-installation or removal of the medical equipment, and any other
communications with third parties relating or referring to the medical equipment.
All such communications are relevant and should be produced.

Request No. 22:  seeks documents evidencing DeSoto's billing policies
and procedures, which are necessary for the purpose of determining whether
DeSoto was using the Toshiba or replacement equipment for legal purposes, and
to determine whether DeSoto's profits were or are inflated due to
Medicare/insurance fraud.  To the extent that defendants' seek damages in this
case, this information is clearly relevant.

Request Nos. 26, 27: *(Revenues Generated by Lynn T. Carvel, PLLC)*

These requests seek bills, charges and invoices to private or third-party
payers for the professional services rendered by Lynn T. Carvel, PLLC, in
connection with the use of the Toshiba equipment, and all documents relating to
Lynn T. Carvel, PLLC, including those that reflect payments from Lynn T.
Carvel, PLLC to defendants Dr. Carvel and/or DeSoto.  During the relevant time
period, all monies earned by Lynn T. Carvel, PLLC were generated through the
use of the Toshiba equipment that defendants allege failed to meet its essential
purpose.  Your contention that information relating to this company (which

NS

**DrinkerBiddle&Reath**
L L P

Kyle P. Tate, Esquire
October 10, 2003
Page 4

thrived or failed based only on the quality of the images produced on the Toshiba
equipment) is not relevant, is astounding.

**Request Nos. 28**: seeks information relating to the AGFA and PACS
system purchased/leased by DeSoto for use with the Toshiba equipment. Given
that Dr. Carvel has complained at length regarding the performance of those
systems, and blamed the poor performance on TAMS and on her decision to de-
install the equipment, we deem any and all records relating to AGFA and PACS,
in particular any communications DeSoto had with AGFA or Talk Tech regarding
the PACS system, the Talk Tech System or any interface between those systems
to be highly relevant and demonstrative of whether the problem was in fact
deemed by DeSoto to be a TAMS issue or an AGFA issue, or admitted by
AGFA/PACS to be their problem. They are also relevant to show whether and
when DeSoto raised its alleged issues with AGFA/PACS, and whether and when
those issues were resolved. If your clients would like to withdraw their claim that
TAMS is responsible for the problems they allege to have had with these systems,
then I would agree, this request is not relevant. Otherwise there is no basis for
you to withhold these documents.

**Request No. 29:** seeks information relating to the RIS system. Dr. Carvel
testified that the radiology information ("RIS") system stores patient name and
information, and serves as an online patient appointment file. See Dr. Carvel's
July 21, 2003 Dep. at 231-233. To the extent that it stores information relating to
procedures performed (or scheduled to be performed) on the Toshiba equipment it
is clearly relevant and should be produced. If you contend that the information
stored on the system is irrelevant, I suggest that you identify precisely what
information is stored on the equipment and state with particularity why that
information is not relevant.

**Request No. 30:** seeks documents that relate to any way in which the RIS
system affected the performance of the Medical equipment. Because you purport
not to understand this request, I direct your attention to Dr. Carvel's July 21,
2003, deposition transcript at page 53 where she testified that there was some sort
of problem between the modalities (*i.e.* the Toshiba equipment) and AGFA in
transferring the accession numbers (which she stated were produced by the RIS
system) via HL-7. She added that other factors were not popping into her head at
the moment. Between Request Nos. 28 and 30 we seek any all documents
relating to the problem Dr. Carvel was describing therein, and that relate to any
other ways if which the RIS system and/or the AGFA/PACS systems affected the
performance of the Toshiba equipment.

NS

DrinkerBiddle&Reath
L L P

Kyle P. Tate, Esquire
October 10, 2003
Page 5

**Request No. 31:** seeks documents in defendants' possession, custody or control that relate to methods of operating the Toshiba equipment. Obviously, given that DeSoto alleges it experienced trouble operating the equipment, this information is relevant. It is of no consequence that responsive information may be in TAMS' possession. This does no absolve DeSoto of its discovery obligations, and your argument that this information (particularly the records about which May Vokaty testified) is irrelevant is indefensible.

**Request No. 32:** seeks documents relating to any tests or procedures run by Desoto (such as "floods", Quality Assurance checks or tests, uniformity tests or checks or checks and other tests employing phantoms) to ensure that the Toshiba equipment was properly set up and in proper conditions to perform procedures. This request is stated with sufficient particularity, and contrary to your assertion, is not incomprehensible. Moreover, given that, from your standpoint, this lawsuit is all about whether the equipment functioned properly, your position that this information is not relevant will not stand.

**Request No. 34:** seeks documents relating to any standards used by radiologists regarding image quality. While you do not object to this request as irrelevant, you content that it calls for privileged documents (although none were identified in your privilege log) and for expert testimony. This request does not seek an expert opinion as to the images produced by the Toshiba equipment. Rather, it seeks the production of any documents, in DeSoto's possession, custody or control, that refer or relate to standards used by radiologists to determine the diagnostic value of radiological images.

We also dispute your unilateral decision to produce only a limited category of documents responsive to certain requests. To the extent requested information is relevant to this lawsuit – *all* responsive documents must be produced.   As such, it is our position that the following responses are also deficient.

**Request No. 1:** You have not produced all patient medical records which will help demonstrate the procedures requested, the procedures performed, the diagnoses (or inability to perform diagnoses) from the images produced by the Toshiba equipment etc.  There simply is no legitimate basis to withhold any documents that reflect this information.

**Request No. 2(a):** As stated above, TAMS is entitled to all documents that reflect the procedures ordered by referring physicians. Dr. Carvel testified that the billing records produced do not reflect the procedures ordered, but rather the procedures actually performed. Given that you have alleged that the poor

NS

DrinkerBiddle&Reath
L L P

Kyle P. Tate, Esquire
October 10, 2003
Page 6

performance of the Toshiba equipment affected referrals and caused DeSoto to lose business, TAMS has an unqualified right to all documents that reflect the procedures ordered, and by whom. TAMS also has a right to this information in order to compare the procedures requested to the procedures performed. This comparison will help demonstrate or refute DeSoto's allegation that due to equipment failure not all procedures that were ordered could be performed. It will also help demonstrate whether Dr. Carvel performed unnecessary/unauthorized procedures in order to generate illegal fees.

**Request No. 3:** TAMS is entitled to the personnel files of all DeSoto employees as they will reveal the identities and positions held of all physicians, administrative assistants, billing personnel, etc. who may have information relevant to this dispute. The idea that none of these employees in your small "mom and pop" operation (as referred to by Dr. Carvel) is ridiculous and indefensible.

**Request No. 25:** seeks DeSoto's annual financial information for the years 200, 2001 and 2002. The fact that you have produced DeSoto's tax return does not absolve you of the obligation to produce other relevant financial information. DeSoto's financial performance was directly tied to the performance of the Toshiba equipment, and therefore all financial information is relevant – particularly when this information will either refute or support your damages theory.

I look forward to hearing from you shortly.

Very truly yours,

Julianne Peck

JP

cc:    Rosetta Packer, Esq.
       William Matthews, Esq.

NS

Exhibit I

NS

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DELAGE LANDEN FINANCIAL SERVICES, INC.,  :

         Plaintiff,  :     CIVIL ACTION NO. 2:02CV2810

     :

     :     HON. RONALD L. BUCKWALTER

TOSHIBA AMERCA MEDICAL SYSTEMS, INC.  :

        Plaintiff/Intervenor,  :

     :

     v.  :

     :

DESOTO DIAGNOSTIC IMAGING, LLC., RANDON J. CARVEL, LYNN T. CARVEL, DELTA RADIOLOGY, P.C. and ZOBAR PROPERTIES, LLC  :     STIPULATION AND ORDER FOR EXTENTION OF PRE-TRIAL DEADLINES

     :

        Defendants.  :

## STIPULATION AND ORDER

     WHEREAS, Defendants wish to amend their pleadings in this matter and have provided the other parties with copies of their proposed amended pleadings for review;

     WHEREAS, plaintiff De Lage Landen Financial Services, Inc. ("DLL) intends to oppose Defendants' proposed amendments and plaintiff-intervenor Toshiba America Medical Systems, Inc. ("TAMS") may do so;

     WHEREAS, Defendants shall, therefore, promptly file a motion for leave to amend their pleadings;

     WHEREAS the parties, in order to avoid any undue delay, have agreed that, without waiver of any objections to Defendants' proposed amendments, the parties will take discovery of

the additional issues sought to be raised by Defendants' proposed amendments while Defendants' motion for leave to amend is *sub judice* and without awaiting a ruling by the Court on such motion;

WHEREAS, defendant DeSoto Diagnostic Imaging has, in addition, been unable to date to complete the requested production and cataloging of many thousands of digital images that the parties agree are crucial to the resolution of this case and to appropriate and meaningful expert review;

WHEREAS, defendant DeSoto has advised the other parties that the retrieval, copying and production of the images in question is extremely time-consuming and burdensome, requiring the copying of information to literally hundreds of CDs, has placed considerable strain on DeSoto's limited resources, and has not been completed at this time despite DeSoto's diligent efforts;

WHEREAS, the current discovery deadline in this matter is the deadline originally established by the Court, September 30, 2003, and has not been extended;

AND WHEREAS, the parties are in agreement that a sixty (60) day extension of the discovery deadline and all other current pretrial deadlines would allow them to complete such discovery as might be necessary in view of Defendants' intended amendments as well as to complete other outstanding discovery and prepare adequately for the trial of this matter:

NOW, THEREFORE, the parties hereto stipulate by their undersigned counsel, subject to the Court's approval, that all pre-trial deadlines are hereby extended for an additional (60) days, such that:

1.    The original discovery deadline of September 30, 2003 shall be extended to November 30, 2003.

2.     The original deadline of October 20, 2003 for all dispositive motions is extended to December 20, 2003.

3.     The due date for initial expert disclosures required under Rule 26 is extended to October 29, 2003.

4.     The due date for providing Rule 26 disclosure for rebuttal experts is extended to November 22, 2003.

Rosetta B. Packer, Esq.
Peter J. Boyer, Esq.
McCARTER & ENGLISH, LLP
Mellon Bank Center, Suite 700
Philadelphia, PA 19103

John Chesney, Esq.
Julianne Peck, Esq.
Jonathan Sturz, Esq.
DRINKER BIDDLE & REATH, LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103

Attorneys for Plaintiff De Lage Landen
Financial Services, Inc.

Attorneys for Plaintiff-Intervenor
Toshiba America Medical Systems, Inc.

William Mathews, Esq.
SAUL EWING LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA  19102

Kyle P. Tate, Esq.
9085 Sandidge Center Cove
Olive Branch, Mississippi 38654

Attorneys for Defendants

The foregoing Stipulation is hereby approved and it is further ordered that this action shall be placed in the trial pool on _____.

SO ORDERED:

_____

Buckwalter, J.

# Exhibit J

NS

# DrinkerBiddle&Reath
L L P

Julianne Peck
215-988-1996
julianne.peck@dbr.com

*Law Offices*

One Logan Square
18TH and Cherry Streets
Philadelphia, PA
19103-6996

215-988-2700
215-988-2757 fax
www.drinkerbiddle.com

NEW YORK
WASHINGTON
LOS ANGELES
SAN FRANCISCO
PRINCETON
FLORHAM PARK
BERWYN
WILMINGTON

October 17, 2003

**VIA FACSIMILE**

Kyle P. Tate, Esq.
9085 Sandidge Center Cove
Olive Branch, Mississippi  38654

RE:    ***De Lage Laden Financial Services, Inc. and Toshiba Medical Systems,
Inc. v. DeSoto Diagnostic Imaging, L.L.C., et al,*** U.S.D.C. Eastern
District of Pennsylvania, C.A. No. 2:02CV2810

Dear Kyle:

As stated in my letter dated October 10, 2003, we intend to file a motion to compel if we do not hear from you today with regard to the discovery deficiencies identified in that letter. We would have preferred to work these issues out without involving the Court, but, having heard nothing from you, we cannot wait any longer for the production of centrally relevant documents.

The most significant deficiency is DeSoto's failure to produce *all* documents relating to the procedures requested and performed on the equipment. Most importantly, DeSoto has withheld the referring physician scripts/requests for procedures and the dictation reports (or similar reports, however designated) prepared by Dr. Carvel and/or any other radiologist involved with the procedures performed by DeSoto. As you know, these documents are very important for a number of reasons that we have discussed.

Please note that these documents were requested on **March 12, 2003**, in TAMS' First Request for Production of Documents, Request No. 8 (seeking all documents that refer or relate to the use of the Medical Equipment); on **June 24, 2003**, in TAMS' Second Request for Production of Documents, Request No. 8 (seeking all documents that refer or relate to the number of times each piece of Medical Equipment was used for diagnostic purposes); and on **August 27, 2003**, in TAMS' Third Request for Production of Documents, Request No. 1 (seeking all patient/medical records for patients treated at DeSoto since the date of its opening to present) and Request No. 2 (seeking, to the extent not covered in Request No. 1, all documents from referring physicians requesting procedures to be performed by DeSoto and all documents reflecting any additional procedures (i.e. beyond those requested) performed by Desoto).

An expert or consultant will need to review these documents and the work will take a good deal of time. Their production is long overdue and necessary immediately. Accordingly, we will be filing an emergency motion with the Court early next week and

NS

**DrinkerBiddle&Reath**
LLP

Kyle P. Tate, Esquire
October 17, 2003
Page 2

requesting expedited disposition of that motion unless you advise me today that these
documents will be produced, via federal express, on or before Monday, October 20, 2003.

    We hope such a motion will not be necessary and hope to hear from you shortly.

            Very truly yours,

            Julianne Peck

JP

cc:   Rosetta Packer, Esq.
      William Matthews, Esq.

NS

# Exhibit K

## PECK, JULIANNE (PH)

**From:** PECK, JULIANNE (PH)
**Sent:** Tuesday, October 21, 2003 11:09 AM
**To:** 'Kyle Tate'
**Cc:** Chesney, John; wmatthews@saul.com
**Subject:** RE: Motion to Compel

Kyle,

You have ignored our correspondence regarding your latest discovery deficiencies for over a week. Certainly if you had any intention of substantively responding, you or Holly could have communicated that fact. In fact, you still refuse to communicate on this issue even now. At this stage of the litigation we can not sit back for weeks on end while you continuously ignore this issue. If you do in fact intend to change your position with regard to the relevancy of some or all of our requests (and/or are willing to discuss it), please let me know immediately. If not, we have no choice but to file a motion to compel.

Juli

-----Original Message-----
**From:** Kyle Tate [mailto:ktate@tatelawfirm.com]
**Sent:** Tuesday, October 21, 2003 10:28 AM
**To:** PECK, JULIANNE (PH)
**Cc:** Chesney, John; wmatthews@saul.com
**Subject:** Re: Motion to Compel

Juli,

Your below e-mail is the exact reason why I asked that you not communicate with me anymore on this case. Even though you knew I was in a Settlement conference all day yesterday in Arkansas and unable to respond, you proceeded with yet another inappropriate self serving e-mail. Your below e-mail is confirmation of nothing. Please do not send me anymore e-mails and if you do, I will not respond. Your continued behavior is unacceptable and will be shared with the Court.

Kyle

> ----- Original Message -----
> **From:** Julianne.Peck@dbr.com
> **To:** ktate@tatelawfirm.com ; hbrady@tatelawfirm.com
> **Cc:** John.Chesney@dbr.com
> **Sent:** Monday, October 20, 2003 4:38 PM
> **Subject:** Motion to Compel
>
> Kyle,
>
> Neither John nor I have heard anything from you in response to my letters dated October 10 and October 17, 2003, regarding DeSoto's discovery deficiencies. This e-mail confirms that unless we receive the requested information tomorrow, (or notice that the requested information has been sent), we will be filing an emergency motion to

compel this week.

Juli

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This message contains information which may be confidential and privileged.
Unless you are the addressee (or authorized to receive for the addressee),
you may not use, copy or disclose to anyone the message or any information
contained in the message. If you have received the message in error,
please advise the sender by reply e-mail@dbr.com, and delete the message.

Thank you very much.

Exhibit L

NS

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DELAGE LANDEN FINANCIAL SERVICES, )
INC, )
                                   )
          PLAINTIFF,               )
                                   )
TOSHIBA AMERICA MEDICAL SYSTEMS,   )
INC.,                              )
                                   )
          PLAINTIFF/INTERVENOR,    )
                                   )
                                   )
VS.                                ) 2-02CV2810
                                   ) VOLUME I
                                   ) (PAGES 1-274)
DESOTO DIAGNOSTIC IMAGING, LLC,    )
RANDON J. CARVEL, LYNN T. CARVEL,  )
DELTA RADIOLOGY, PC, AND ZOBAR     )
PROPERTIES, LLC,                   )
                                   )
          DEFENDANTS.              )

DEPOSITION

OF

LYNN T. CARVEL, M.D.

RULE 30(B)(6) TESTIMONY

JULY 21, 2003

ALPHA REPORTING CORPORATION
KORIAN NEAL, RPR, CCR
100 North Main Building, The Lobby
Memphis, Tennessee 38103
(901) 523-8974

Page 2

1       The deposition of LYNN T. CARVEL, M.D.,
2 is taken on this, the 21st day of July, 2003, on
3 behalf of the Plaintiff/Intervenor, pursuant to notice
4 and consent of counsel, beginning at approximately
5 9:25 a.m. in the offices of Baker, Donelson, Bearman,
6 Caldwell, & Berkowitz, 19th Floor, 165 Madison Avenue,
7 Memphis, Tennessee.
8       This deposition is taken pursuant to the
9 terms and provisions of the Federal Rules of Civil
10 Procedure.
11       All forms and formalities are waived, and
12 objections alone as to relevancy, materiality and
13 competency are reserved, to be presented at or before
14 the hearing. Objections as to the form of the
15 question must be made at the time of the taking of the
16 deposition. The signature of the witness is not
17 waived.

Page 4

1           INDEX
2 Witness (LYNN T. CARVEL, M.D.)     Page
3 Direct Examination by Mr. Chesney..........05

7          EXHIBITS
8 No.              Page
9 1   TAMS' Notice of Deposition............07
10 2   Diagram..............................88
11 3   Work Order Notes.....................180
12 4   X-Ray Journal........................189
13 5   Transcribed Telephone Conversation...194
14 6   Transcribed Telephone Conversation...194
15 7   Transcribed Telephone Conversation...194
16 8   Transcribed Telephone Conversation...194
17 9   Transcribed Telephone Conversation...194
18 10   Transcribed Telephone Conversation...194
19 11   Toshiba Warranty Information.........241
25 COURT REPORTER'S CERTIFICATE..............274

Page 3

1      - APPEARANCES -
2 For THE PLAINTIFF:
3        PETER J. BOYER, ESQ.
       Mccarter & English, LLP
4        Attorneys at Law
       Mellon Bank Center
5        Suite 1700
       1735 Market Street
6        Philadelphia, PA 19103-7501
       (215) 979-3800
7
8
9 For THE PLAINTIFF/INTERVENOR:
10        JOHN CHESNEY, ESQ.
       JULIANNE PECK, ESQ.
11        Drinker, Biddle & Reath, LLP
       Attorneys at Law
12        One Logan Square
       18th and Cherry Streets
13        Philadelphia, PA 19103-6996
14
15 For THE DEFENDANT DESOTO DIAGNOSTIC IMAGING:
16        KYLE P. TATE, ESQ.
       Tate Law Firm
17        Attorneys at Law
       424 Ouachita Avenue
18        Hot Springs, AK 71901
       (501) 624-9900
19
20
21
22
23 COURT REPORTING FIRM: ALPHA REPORTING CORPORATION
       Korian Neal, RPR, CCR
24        100 North Main Street
       The Lobby
25        Memphis, Tennessee 38103
       (901) 523-8974

Page 5

1        LYNN CARVEL,
2 called as a witness, having been first duly sworn, was
3 examined and testified as follows:
4       MR. TATE: John, just as a preliminary
5 matter, I want to make sure that we're all straight on
6 something as far as the 30(b)(6) deposition with
7 Dr. Carvel will be on behalf of both TAMS and DLL at
8 the present time. That was my understanding coming
9 here.
10       MR. CHESNEY: Well, we noticed it. I
11 think Peter will have questions. I mean, do you have
12 an estimate of how long -- this is not on the record.
13       MR. TATE: I want this on the record.
14       MR. CHESNEY: On the record, this was a
15 30(b)(6) deposition noticed by TAMS.
16       MR. TATE: But it's my understanding of
17 our conversations that you did coordinate that with
18 DLL?
19       MR. CHESNEY: Culminating the scheduling.
20       MR. TATE: It's my understanding through
21 conversation of a conference that we had that y'all
22 would conduct a 30(b)(6) deposition together.
23       MR. BOYER: I think that's right. And we
24 also indicated that we would separately take the
25 deposition of Dr. Carvel in her individual capacity.

2 (Pages 2 to 5)

Page 50

1   Q. Was it before or after the Toshiba equipment
2   was deinstalled?
3   A. It was before.
4   Q. You said it would not burn CDs in the jukebox,
5   I think you called it?
6   A. Correct.
7   Q. And was that problem solved?
8   A. It was solved, but that has been a recurring
9   problem since it was initially solved.
10  Q. When was it initially solved?
11  A. I don't remember.
12  Q. Was it before or after the Toshiba
13  equipment --
14  A. Before.
15  Q. -- was deinstalled?
16  A. It was before the Toshiba equipment was
17  deinstalled.
18  Q. Now you said, I think, that this problem
19  caused the potential loss of image. Did you in fact
20  lose any images?
21  A. Not to my knowledge.
22  Q. And why was that?
23  A. Because there is a short-term memory storage
24  within the system. The CD burning is for long-term
25  storage purposes. Had the problem not been caught, then

Page 51

1   we could have potentially lost that data on the
2   short-term storage when the memory filled up and needed
3   to burn the CD to long-term storage.
4   Q. Got it. But from what you're saying, I take
5   it the problem was caught and resolved before that
6   problem actually eventually --
7   A. Correct.
8   Q. Okay. All right. Now, then I think you said
9   that the PACS system would not properly present
10  accession numbers in the HL-7 format?
11  A. (Witness nods affirmatively.)
12  Q. Can you tell me what that mean in laymen's
13  terms?
14  A. It' all very complicated. I don't even think
15  they have laymen's terms for this stuff.
16  Q. Well, let me ask it a different way if that's
17  a problem. That's fair enough.
18  First of all, from the stand point of what you do
19  as a doctor, what are these accession numbers, and why
20  are they important to you?
21  A. The accession numbers are unique numbers
22  assigned for each exam, which is different from patient
23  ID numbers that's assigned to each patient. For
24  example, John Smith comes in on today for an exam. John
25  Smith will have an ID number. He may have three

Page 52

1   different types of exams. For each different type of
2   exam, it has its own unique accession number. John
3   Smith may come back next week and have another exam. He
4   will still have the same patient ID number. But any
5   exams he has done will all have individual accession
6   numbers generated for those exams. And that's important
7   in the whole HL-7 interface.
8   The HL-7 interface -- I didn't know anything about
9   this prior to opening my imaging center, by the way. So
10  this was an unpleasant, fast learning curve on all this
11  computer stuff. The HL-7 interface is what industry
12  standards use to transmit data between and amongst
13  modalities and vendors. And there are all these
14  specifications with all these different fields that the
15  computer gurus from the various vendors have to match up
16  in order for that information to transmit to what areas
17  you're trying to get it to transmit. Whether it's the
18  modality workstation, the PACS system, a billing system,
19  Talk Technology system, HL-7 is involved in all of that.
20  Q. Okay. So when you said that the PACS system
21  wouldn't properly produce accession numbers in HL-7
22  format, did it produce accession numbers in a different
23  format?
24  A. I think I probably misstated that in that --
25  and again, I haven't reviewed this. So this is just all

Page 53

1   off of memory as to what happened back in December of
2   2000. The RIS System produces the accession numbers.
3   But there was some sort of problem between the modality
4   and AGFA in transferring that information via HL-7. And
5   I believe one of those factors was the accession number.
6   I also believe that there were other factors, too, of
7   which are just not popping up in my head right now.
8   Q. Now, was that problem solved?
9   A. Yes.
10  Q. When was that problem solved?
11  A. Before the deinstallation of the Toshiba
12  equipment. But I can't give you specific dates. I'm
13  sorry.
14  Q. Well, if it was in -- if the equipment was
15  installed in December, end of December 2000, was it
16  solved within a month or a couple of months?
17  A. I don't know that solved is the right word to
18  use. But I think they fixed it to where it got me what
19  I needed. And that was images on my PACS viewing
20  station.
21  Q. Okay. And was that done, you say, by what,
22  the end of January?
23  A. Yeah.
24  Q. Okay.
25  MR. BOYER: John, could we take a short

14 (Pages 50 to 53)

Page 230

1    Q.  Okay.  Anything else that you were --
2        THE WITNESS:  You want me to go back to
3  it?
4        MR. TATE:  Just answer what he asks you.
5    Q.  (BY MR. CHESNEY)  Anything else in that
6  paragraph that you would take issue with, other than I
7  guess you're taking issue with the word instant in
8  telling us that it took too long, however, you can't say
9  how long.
10   A.  It wasn't instant access, as this paragraph
11 states.
12   Q.  Okay.  Anything else?
13   A.  000808, Patient Management:  Individual
14 patient information can be entered at the time of the
15 examination, which is true, or an advance into an online
16 patient appointment file, which would have been our RIS
17 System, to make actual patient scanning proceed as
18 quickly as possible.  And it could not do that.  So it
19 could do this first part.  It couldn't do the second
20 part.
21   Q.  Are you saying it couldn't do the second part
22 or it couldn't do it in conjunction with what you call
23 the RIS System?
24   A.  It could not do it in conjunction with our RIS
25 System.

Page 231

1    Q.  What was your RIS System?
2    A.  Rad Pro.
3    Q.  What is that?
4    A.  It is a radiology information system.
5    Q.  A recordkeeping system?
6    A.  It's where patient's name and information
7  related to the scan and the accession number and patient
8  ID number are entered in and transferred to the modality
9  via Worklist Management to access in order to start the
10 study on the patient.
11   Q.  Who sells the RIS system?
12   A.  We purchased it from a man named Bassell.
13 There's no way I could begin to spell or say his last
14 name.  It starts with an N.
15   Q.  Okay.
16   A.  I can provide that information.  But we no
17 longer use our RIS System.
18   Q.  Why not?
19   A.  Because it relates to problems with the
20 billing system and its inability to cross information
21 over to the billing system without duplication of entry
22 of the data, not being able to pull reports like you
23 guys are asking for.  We need those own reports in order
24 to track utilization referring physicians, how many
25 studies they're sending of each modality, if they drop

Page 232

1  off, why they dropped off, the ability to address that,
2  et cetera.  And his system was not able to do that.  So
3  as of April 1st, we switched to a medical manager
4  system.
5    Q.  Is that an online patient appointment system
6  or file?
7    A.  The --
8    Q.  The one you switched.
9    A.  -- Rad Pro?
10   Q.  Either of them.
11   A.  They're both online, what I consider online.
12 It's via HL-7 interface.
13   Q.  And does the Asteion work with the system you
14 currently have?
15   A.  I have no idea.
16   Q.  Okay.  It doesn't say on Page 000808 it would
17 work for the RIS system, does it?
18   A.  That's what I understood as the online patient
19 appointment file.
20   Q.  It doesn't say the.  It says an.
21   A.  All right.  That's what I understood it as an
22 online patient appointment file.
23   Q.  Did you ever ask anyone at Toshiba if that's
24 what they understood by it?
25   A.  Not specifically.

Page 233

1    Q.  So what did they mean by an online patient
2  appointment file, if you know?
3    A.  I don't know.
4    Q.  Okay.
5    A.  If it doesn't mean my RIS System, I don't know
6  what it means.
7    Q.  Okay.  Carry on.
8    A.  Refer to DDI 0001097.  It's a brochure of a CT
9  scanner.
10   Q.  1097 did you say?
11   A.  Yes.  Networking and Service:  Issues of
12 Utmost Importance.  Advanced Network Communications
13   Q.  Hang on one second because I think when Kyle
14 gave me these, he said they were broken up by modality.
15 I'm in the CT scanner one, but I don't think I have that
16 page.  What is the page that immediately follows the one
17 you just --
18   A.  It's going in this whole set here.
19   Q.  Read me the number one more time.
20   A.  This begins this whole copy of the brochure.
21       MR. TATE:  1097.
22   Q.  And go about that far back (indicating).
23   Q.  00?
24       MS. PECK:  1097.
25   A.  And this is what it looks like (indicating).

59 (Pages 230 to 233)

13:221          IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA
13:222  _____

13:223   DELAGE LANDEN FINANCIAL SERVICES,  )
INC,                                        )
13:224                                      )
          PLAINTIFF,                        )
13:225                                      )
TOSHIBA AMERICA MEDICAL SYSTEMS,            )
13:226   INC.,                              )
                                            )
13:227          PLAINTIFF/INTERVENOR,       )
                                            )
13:228                                      )
VS.                                )  2-02CV2810
13:229                                      )  VOLUME IV
                                   )  (PAGES 1-236)
13:220   DESOTO DIAGNOSTIC IMAGING, LLC,    )
RANDON J. CARVEL, LYNN T. CARVEL,  )
13:221   DELTA RADIOLOGY, PC, AND ZOBAR     )
PROPERTIES, LLC,                            )
13:222                                      )
          DEFENDANTS.                       )
13:223  _____


13:224
                    DEPOSITION
13:225

13:226                     OF

13:227          LYNN T. CARVEL, M.D.

13:228

13:229          RULE 30(B)(6) TESTIMONY

13:220
             SEPTEMBER 9, 2003
13:221

13:222

13:223          ALPHA REPORTING CORPORATION
           KORIAN NEAL, RPR, CCR
13:224       100 North Main Building, The Lobby
           Memphis, Tennessee 38103
13:225               (901) 523-8974


           ALPHA REPORTING CORPORATION
                 (901) 523-8974

Page 2

13:221    ...ion of LYNN T. CARVEL, M.D.,
13:222    is taken on this the 9th day of September, 2003, on
13:223    behalf of the Plaintiff/Intervenor, pursuant to notice
13:224    and consent of counsel, beginning at approximately
13:225    9:15 a.m. in the offices of Baker, Donelson, Bearman,
13:226    Caldwell, & Berkowitz, 19th Floor, 165 Madison Avenue
13:227    Memphis, Tennessee.
13:228    This deposition is taken pursuant to the
13:229    terms and provisions of the Federal Rules of Civil
13:220    Procedure.
13:221    All forms and formalities are waived, and
13:222    objections alone as to relevancy, materiality and
13:223    competency are reserved, to be presented at or before
13:224    the hearing. Objections as to the form of the
13:225    question must be made at the time of the taking of the
13:226    deposition. The signature of the witness is not
13:227    waived.
18
19
20
21
22
23
24
25

ALPHA REPORTING CORPORATION
(901) 523-8974

Page 4

13:221    INDEX
13:222    Witness (LYNN T. CARVEL, M.D.)          Page
13:223    Direct Examination by Mr. Chesney...........05
13:224    Cross-Examination by Mr. Gaier............193
13:225    Redirect Examination by Mr. Chesney.......196
13:226
13:227
13:228
13:229
13:220
13:221    EXHIBITS
13:222    * * * * NO EXHIBITS MARKED * * * *
13:223
13:224
13:225
13:226
13:227
13:228
13:229
13:220
13:221
13:222
13:223
13:224
13:225    COURT REPORTER'S CERTIFICATE..............236

ALPHA REPORTING CORPORATION
(901) 523-8974

Page 3

13:221    - APPEARANCES -
13:222    For THE PLAINTIFF:
13:223        DAVID J. GAIER, ESQ.
13:224        McCarter & English, LLP
13:22        Attorneys at Law
13:225        Mellon Bank Center
                Suite 1700
13:226            1735 Market Street
13:22            Philadelphia, PA 19103-7501
13:227            (215) 979-3800
13:228
13:22    For THE PLAINTIFF/INTERVENOR:
13:229
13:22        JOHN CHESNEY, ESQ.
13:220        Drinker, Biddle & Reath, LLP
13:22        Attorneys at Law
13:221        One Logan Square
13:22        18th and Cherry Streets
13:222        Philadelphia, PA 19103-6996
13:223
13:224
13:22    For THE DEFENDANT DESOTO DIAGNOSTIC IMAGING:
13:225
13:22        KYLE P. TATE, ESQ.
13:226        Tate Law Firm
13:22        Attorneys at Law
13:227            424 Ouachita Avenue
13:22            Hot Springs, AK 71901
13:228            (501) 624-9900
13:229
13:220
13:221
13:222
13:223    COURT REPORTING FIRM: ALPHA REPORTING CORPORATION
13:22        Korian Neal, RPR, CCR
13:224        100 North Main Street
13:22        The Lobby
13:225        Memphis, Tennessee 38103
13:22        (901) 523-8974

ALPHA REPORTING CORPORATION
(901) 523-8974

Page 5

08:531        LYNN T. CARVEL, M.D.,
09:172    called as a witness, having been first duly sworn,
09:173    was examined and testified as follows:
09:174            DIRECT EXAMINATION
09:175    BY MR. CHESNEY:
09:176    Q. Is the document you have in front of you
09:177    Desoto Exhibit 26, Dr. Carvel?
09:178    A. Yes.
09:179    Q. Well, we were going through some of that
09:170    yesterday. So I just want to pick up and ask you a few
09:171    more questions about it today. First, is there anything
09:172    at all that would prevent you from testifying fully and
09:173    accurately today?
09:174    A. No, except possibly this congested nose. But
09:175    I'm sure I'll get through it.
09:186    Q. Would that prevent you from thinking and
09:187    expressing yourself clearly, or would it simply mean
09:188    that you might be hard to understand?
09:189    A. I might just be hard to understand.
09:180    Q. Well, I'm sure the court reporter will let you
09:181    know. And if that becomes a problem for you that you're
09:182    uncomfortable with testifying and feel that you can't do
09:183    a proper job, let us know; and we'll stop.
09:184    A. Okay.
09:185    Q. Okay. Take a look at Paragraph 10 of your

ALPHA REPORTING CORPORATION
(901) 523-8974

Page 158

14:301  damage?
14:302      A.  I don't think we mentioned, or I mentioned,
14:303  the loss in income due to it taking longer to perform
14:304  various types of exams, in particular, MRI and nuc med
14:305  studies, of which it wouldn't have taken had the
14:306  equipment been functioning like it was supposed to,
14:307  which kept me from being able to schedule more patients
14:318  during the same time period.
14:319      Q.  So are you saying you had to turn down
14:310  referrals as a result of the nuclear medicine equipment
14:311  or the MR equipment functioning more slowly than you
14:312  would have liked it to perform?
14:313      A.  I potentially had to turn down referrals for
14:314  not being able to get them in when they wanted to come.
14:315  I lost some patients who we were in the process of
14:316  scanning and got so frustrated and disgusted with the
14:317  situation that they then left and didn't come back.  And
14:318  I lost referrals due to the length of time that it took
14:319  and those patients going back to their referring
14:310  physicians complaining about what happened.
14:321      Q.  Okay.
14:322          MR. CHESNEY:  Could you read me back the
14:323  witness' answer?  I want to make sure I've got all the
14:324  categories.
14:325          (WHEREUPON, THE LAST ANSWER WAS READ

ALPHA REPORTING CORPORATION
(901) 523-8974

Page 159

14:321          BACK BY THE COURT REPORTER.)
14:322      Q.  (BY MR. CHESNEY)  Okay.  First of all, you say
14:323  you potentially lost patients due to being unable to
14:324  schedule them the way you would like to.  Did you
14:325  actually lose any as a result of that, if you know?
14:326      A.  I don't know.
14:327      Q.  Okay.  Next one you say you lost patients who
14:338  got so disgusted in the process of scanning that they
14:339  didn't come back; right?
14:330      A.  Right.
14:331      Q.  And that's people who -- are you saying people
14:332  did not even stay to have their scans completed?
14:333      A.  Right.
14:334      Q.  Okay.  And I guess what we would have to know
14:335  in order to figure out where to place the blame for that
14:336  problem, we'd have to know why it was that the scans
14:337  were taking so long; correct?
14:338      A.  Oh.  I already know the answer to that.
14:339      Q.  I doubt it.  But we'd agree that we'd have to
14:330  know the answer to that.  Can we agree that much?
14:331          MR. TATE:  I believe she's already
14:332  testified, John, that she knows the answer to it.  And
14:333  I think you testified that you doubt it.  So are y'all
14:334  arguing here today or what?
14:335          MR. CHESNEY:  Not at all.  I'm asking a

ALPHA REPORTING CORPORATION
(901) 523-8974

Page 160

14:331      different question.
14:332          MR. TATE:  Oh, okay.
14:333      Q.  (BY MR. CHESNEY)  My question is, can we agree
14:334  that we would need to know what the cause of the
14:335  slowness in scanning was in order to determine where the
14:336  blame should be placed for any loss of patients related
14:347  to that?
14:348      A.  Well, I know the answer to why it occurred.
14:349  So if you're wanting me to agree with you that you don't
14:340  know the answer to it, then I'll be happy to agree with
14:341  that.
14:342          MR. CHESNEY:  The witness appears to be
14:343  befuddled by a simple question.  I'll ask the court
14:344  reporter to read it back to her.
14:345          (WHEREUPON, THE LAST QUESTION WAS READ
14:346          BACK BY THE COURT REPORTER.)
14:347          MR. TATE:  I'll object to the form of the
14:348  question.  The contentions in the lawsuit make it
14:349  clear who's to blame.
14:350      Q.  (BY MR. CHESNEY)  Answer the question, please,
14:351  Dr. Carvel.
14:352      A.  No.  I can't agree with you that we first have
14:353  to determine who's to blame because I already feel like
14:354  I know who's to blame.
14:355      Q.  So do we.

ALPHA REPORTING CORPORATION
(901) 523-8974

Page 161

14:351      A.  So we don't have to first determine who's to
14:352  blame because I already know.
14:353      Q.  I didn't ask you that, did I?  I said, we
14:354  would have to know who's to blame.
14:355      A.  Well, I know who's to blame.
14:356      Q.  I disagree with you.
14:357      A.  So there's no we about it.
14:358          MR. TATE:  Well, good thing you're not a
14:359  witness, John.  You're the lawyer.  Or are you a
14:350  witness?
14:351      Q.  (BY MR. CHESNEY)  Do you agree with me that in
14:352  order to know who would be responsible for the loss of
14:353  patients in this situation, we would first have to know
14:354  what the reason was for the scans having taken longer
14:355  than the patient was willing to tolerate?
14:356      A.  Yes.
14:357      Q.  Thank you very much.  I knew you'd get that
14:358  eventually.  Now, you say you know what the blame was or
14:369  what the cause was; right?
14:360      A.  Correct.
14:361      Q.  Okay.  How many instances of this occurred?
14:362      A.  I'm not sure.
14:363      Q.  What are the names of the patients ever?
14:364      A.  I just said I wasn't sure.
14:365      Q.  What were the types of scans being performed?

ALPHA REPORTING CORPORATION
(901) 523-8974

Page 162

14:361    A.  I'll have to look all this up and see what I
14:362 can get back to you.
14:363    Q.  You don't know?
14:364    A.  Sitting here today?
14:365    Q.  Yes.
14:366    A.  No.
14:367    Q.  Okay.  What was the cause of the delay in the
14:368 scanning process specifically with regard to each
14:369 patient?
14:360    A.  Well, I can go through all of these documents
14:361 here that list all the different problems that occurred
14:362 with the MRI.  And those would all be attributable to
14:363 delayed scanning time with the patients.  So if you'd
14:364 like for me to do that, I'll be happy to.
14:365    Q.  I just want anything you can tell me right now
14:366 without reading documents.  You told me you know what
14:367 the cause was.  Tell me what the cause was.
14:368    A.  There were persistent RF errors that required
14:379 the rebooting of the system, which caused scrolling to
14:370 occur either while the patient was being scanned or
14:371 before the patient being scanned, which aborted the
14:372 scan, and the scan had to be started all over again,
14:373 further delaying time.  There were poor fat saturation
14:374 studies producing poor image quality in which sequences
14:375 had to be repeated.  There were problems with the table

ALPHA REPORTING CORPORATION
(901) 523-8974

Page 163

14:371 as far as moving it in and out of the gantry.  There was
14:372 a problem with a piece of the MRI coming off with the
14:373 patient as they were being pulled out.  There were
14:384 problems tuning the magnet.
14:385    There were a variety of artifacts including the
14:386 white dot artifact, the -- I'm trying to remember
14:387 the specific names of these variety of artifacts that
14:388 occurred which required repeating the sequences on these
14:389 patients.
14:380    I can sit here and continue without looking at my
14:381 documents trying to remember all these things if you'd
14:392 like for me to.
14:393    Q.  You told me you knew what the cause was.  I
14:394 want to hear what you know.
14:395    A.  Well, if you want a full and complete, honest
14:396 answer, then I need to look at the information.
14:397    Q.  No.  Just tell me what you know.  You said
14:398 you --
14:399    MR. TATE:  You can give him a full and
14:390 complete answer by looking at what you need to look
14:391 to.
14:392    Q.  (BY MR. CHESNEY)  Dr. Carvel --
14:393    MR. TATE:  If he doesn't want to hear it,
14:394 then so be it.
14:395    Q.  (BY MR. CHESNEY)  Dr. Carvel, please don't

ALPHA REPORTING CORPORATION
(901) 523-8974

Page 164

14:391 look at documents.  I'm asking for your unrefreshed
14:392 recollection, which I'm entitled to test the credibility
14:393 of your testimony.  What are you looking at?  Is there
14:394 anything else you can add without looking at documents?
14:395 Let me ask you that.
14:396    A.  As long as I'm at some point allowed the
14:397 option to look at my documents.  Whether I remember
14:398 everything off the top of my head over 15 months of
14:409 problems that occurred has no bearing on the credibility
14:400 of my testimony here.
14:401    Q.  Is there anything else you can remember
14:402 without looking at documents?  That's all I'm asking.
14:403    A.  I can remember coils having to be replaced,
14:404 CTL coils, head coil.  Because the field engineer rubbed
14:405 baby oil on it and subsequently produced artifacts --
14:406    Q.  Excuse me.  Excuse me.
14:407    A.  -- on images.  Don't interrupt me while I'm
14:408 answering your question.
14:409    Q.  Well, forgive me.
14:400    MR. TATE:  Well, John, we won't forgive
14:401 you right now.  Let her finish.
14:402    MR. CHESNEY:  I just want to make sure
14:403 we're on track here.
14:404    THE WITNESS:  No.  I am not going to let
14:405 you --

ALPHA REPORTING CORPORATION
(901) 523-8974

Page 165

14:401    MR. TATE:  We're on track here.  John --
14:402    MR. CHESNEY:  We are --
14:403    MR. TATE:  No.  Real clear.  She's going
14:404 to finish.  You be quiet, and let her answer the
14:405 question.
14:406    A.  I am totally focused.  You want to know what
14:417 happened without me being able to look at my documents
14:418 that caused the increased scan time of my patients in
14:419 MRI.
14:410    Q.  (BY MR. CHESNEY)  That caused those
14:411 patients --
14:412    A.  And I'm continuing to go through these
14:413 accounts without looking at my records.  So I'm going to
14:414 continue to answer that question.
14:415    MR. TATE:  You're going to sit there and
14:416 let her answer.
14:417    Q.  (BY MR. CHESNEY)  Are we focused, Dr. Carvel
14:418 on those patients who actually left in the middle
14:419 because that was my original question.  Or are you just
14:410 talking on and on about other things that you believe delayed
14:411 scan time generally?
14:412    A.  No.  I'm focusing on things that actually
14:413 caused the patients to leave.
14:414    Q.  Okay.  And not come back?
14:415    A.  And not come back.

ALPHA REPORTING CORPORATION
(901) 523-8974

Page 166

14:411  Q.  Carry on. That's fine.
14:412      MR. CHESNEY:  I just want to make sure
14:413  she's focused.
14:414      MR. TATE:  You just want to interrupt her
14:415  is what you want to do.
14:416      MR. CHESNEY:  Not at all.
14:417  Q.  (BY MR. CHESNEY)  Go ahead, Dr. Carvel.
14:418      MR. TATE:  You want to read back her last
14:419  answer?
14:410      (WHEREUPON, THE LAST ANSWER WAS READ
14:411      BACK BY THE COURT REPORTER.)
14:432  A.  That's all I can recall without looking at any
14:433  of my notes at this time.
14:434  Q.  (BY MR. CHESNEY)  That's fine. Can you
14:435  identify any patients who left in the middle of an exam
14:436  that didn't come back.
14:437  A.  Not right now, I can't. I'll be happy to
14:438  provide you with that information if I can find it.
14:439  Q.  How would we go about trying to identify those
14:430  patients?
14:431  A.  When I get back, I'll try to identify them the
14:432  best I can.
14:433  Q.  Right. I'm asking you how would we go about
14:434  trying to identify them?
14:435  A.  How will you go about it?  Well, I guess

ALPHA REPORTING CORPORATION
(901) 523-8974

Page 167

14:431  you'll have to wait for me to get back and look through
14:432  my stuff to see if I can then provide them for you.
14:433  Q.  Maybe I will, and maybe I won't. But here's
14:434  my question:  What stuff, as you put it in your answer,
14:435  exists at DDI that you would be able to look through
14:436  that you believe would give you a reasonable likelihood
14:437  of identifying the patients in question?
14:448  A.  The same stuff that's already been disclosed
14:449  to you regarding patient imaging, manuals, any other
14:440  documentation that's been turned over to you or that I
14:441  can find that hadn't been turned over to you and
14:442  subsequently will be.
14:443  Q.  How would the documentation that you believe
14:444  has been turned over to us help us identify patients
14:445  whose scans were not completed, who left the facility
14:446  and didn't come back? Where would we look to find that
14:447  information?
14:448  A.  In the logbooks. There may be notations.
14:449  There may be incomplete studies that are on all of those
14:440  CDs that we burned for you. So if you want to start
14:441  looking in there, you can.
14:442  Q.  Anywhere else?
14:443  A.  Possibly in the -- all of the billing
14:454  information which we have for you you in which we were not
14:455  able to charge for a complete scan and it had to be down

ALPHA REPORTING CORPORATION
(901) 523-8974

Page 168

14:451  coded to an incomplete scan when it was billed.
14:452  Q.  Now, the billing information hasn't been
14:453  provided yet. That's the billing information that's on
14:454  the RIS system?
14:455  A.  There is no billing information on the RIS
14:456  system, as I've previously testified to. It's the
14:457  billing information on the billing system.
14:458  Q.  Okay. Is that hard copy information or
14:459  computerized information?
14:450  A.  Hard copy information. Remember, I told you
14:451  I'd have to print out every single patient's -- I'm
14:452  trying to think of what they're called -- account
14:453  information from our billing system, of which I have
14:454  done.
14:455  Q.  You have done that?
14:456  A.  Yes.
14:457      MR. CHESNEY:  We haven't received it.
14:458      MR. TATE:  You will when you leave. The
14:469  courier will be bringing it here at 5:00 o'clock.
14:460      MR. CHESNEY:  Bringing it here?
14:461      MR. TATE:  Yeah. For you to take.
14:462      MR. CHESNEY:  How voluminous is it?
14:463      MR. TATE:  I don't know. Good luck.
14:464      MR. CHESNEY:  Off the record.
14:465      (SHORT BREAK)

ALPHA REPORTING CORPORATION
(901) 523-8974

Page 169

14:581  Q.  (BY MR. CHESNEY)  I think you told me what you
14:582  could without looking at documents relating to the loss
14:583  of patients as a result of people leaving before scans
14:584  were completed. The other category you mentioned was
14:585  that there were patients who complained to their doctors
14:586  about the length of time the scans had taken and the
14:587  result was in your view that you therefore lost
14:588  referrals. Is that correct?
14:589  A.  Yeah. But I'm sorry. I was just thinking
14:580  about what we just finished talking about. And I
14:581  thought that was the billing.
14:582  Q.  Oh, I'm sorry. No. We talked about the
14:583  billing records in the context of how would we go about
14:584  trying to figure it out.
14:585  A.  Oh, okay. So we're finished with that one;
14:586  right.
14:587  Q.  Yeah. We're going to go back to it because
14:588  you may have been out of the room when Mr. Tate and I
14:589  were talking about it.
14:580  A.  Yeah, I was.
14:581  Q.  But we'll talk about the billing records in a
14:582  different context in hopefully about two minutes. We'll
14:593  see.
14:594      But now I want to talk to you about the last
14:595  subcategory, if you will, of the loss in income that you

ALPHA REPORTING CORPORATION
(901) 523-8974

Page 170

14:591  referred to as resulting from slow scanning on the
14:592  nuclear medicine camera and the MRI. Okay?
14:593       A.   Okay.
14:594       Q.   And that subcategory was, I believe, related
14:595  to the fact that you felt due to the length of time it
14:596  took to complete scans, patients went back to their
14:597  doctors complaining, and the doctors either ceased
14:598  referring patients to you or reduced the number of
14:599  referrals; is that correct?
14:590       A.   Correct.
14:591       Q.   Okay. Now, tell me what you can about that
14:592  last subcategory of damages.
14:593       A.   I can't tell you anything with specificity
14:594  right now without going back to my records.
14:595       Q.   Well, can you identify any patient who
15:006  actually did that, to your knowledge?
15:007       A.   Not off the top of my head. I can remember a
15:008  physician who told me that the patient had come back and
15:009  done that, had complained.
15:000       Q.   And who was that?
15:001       A.   Dr. Gina Bray.
15:002       Q.   How do you spell that?
15:003       A.   Last name is B-R-A-Y, first name Gina,
15:004  G-I-N-A.
15:005       Q.   And did Dr. Bray stop referring patients to

ALPHA REPORTING CORPORATION
(901) 523-8974

Page 171

15:001  you as a result?
15:002       A.   I don't believe so.
15:003       Q.   Okay. Are you aware of any physician who
15:004  stopped referring patients to you as a result of their
15:005  patient allegedly stating that the scans at your
15:006  facility took too long?
15:017       A.   There again, there's somebody on the tip of my
15:018  tongue as far as physician wise that did tell me that
15:019  and then subsequently I saw a decrease in referrals.
15:010  But I'm not able to recall right now and may be able to
15:011  once I go back and further investigate it.
15:012       Q.   Any other information you can provide on that
15:013  subject?
15:014       A.   Not right now.
15:015       Q.   Okay. Any other items of damage that have
15:016  come to your mind as we've been talking today?
15:017       A.   Not that I can think of.
15:018       Q.   Okay. Both off and on the record we talked a
15:029  little bit about what I think I may have called billing
15:020  records and you may have called account records. You
15:021  recall that a few minutes ago?
15:022       A.   I think I call them billing records, too. But
15:023  yeah. I agree we were talking about the same subject.
15:024       Q.   And I understand from your counsel, Mr. Tate,
15:025  that you have copied and will be delivering I guess here

ALPHA REPORTING CORPORATION
(901) 523-8974

Page 172

15:021  to this law firm this evening but probably too late for
15:022  any questioning in your deposition today billing records
15:023  relating to DDI's facility; correct?
15:024       A.   That's what I understand, too.
15:025       Q.   Now therefore, I want to ask you, since we
15:026  will not have the opportunity to ask you specific
15:027  questions about the specific billing records today, just
15:028  a few questions about what those records are, what they
15:029  reflect and so forth, so that as we read them when we
15:030  get them, we will have a better ability to understand
15:031  what they're all about. Fair enough?
15:032       A.   Sure.
15:033       Q.   First of all, tell me what do you call the
15:034  records that we're going to receive later today?
15:035       A.   In general terms, billing records or records
15:036  off of our -- patients' account records off of our
15:037  billing system.
15:038       Q.   Does each patient account have a separate
15:039  document that reflects the billing records for that
15:030  patient?
15:031       A.   Yes.
15:032       Q.   Are all of the billing --
15:033       A.   Wait. Say that again. I'm sorry. Does each
15:034  patient's account have a separate record?
15:035       A.   Yes.

ALPHA REPORTING CORPORATION
(901) 523-8974

Page 173

15:031       A.   Yes. It's all listed printed out one patient
15:032  at a time. I don't know whether it's on one patient per
15:043  one page or if it carries over. But it would not be
15:044  intermingled. One patient's information would not be
15:045  intermingled with another patient's information. It
15:046  would be that patient's account for all studies that
15:047  they had during the time period that we were open and
15:048  using this billing system.
15:049       MR. TATE:  You want me to clarify for
15:040  you?
15:041       MR. CHESNEY:  Yeah. Why don't you
15:042  clarify.
15:043       MR. TATE:  Just if you don't mind. I
15:044  don't think there's one sheet for one patient.
15:045       THE WITNESS:  Right.
15:046       MR. TATE:  I think it's going to run.
15:047  Wherever the patient's information stops, the next
15:048  patient would pick up.
15:049       Q.   (BY MR. CHESNEY)  But if new information --
15:040  let's say you got patient one and two. Patient one's
15:041  information ends and begins in the middle of the page.
15:042  If there were a new billing entry for that patient, it
15:043  would go at the end of patient one, and patient two's
15:044  record would move down a line or two of type?  Is that
15:055  basically how it works?

ALPHA REPORTING CORPORATION
(901) 523-8974

# Exhibit M

NS

Page 1

1            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA
2     _____

3    DELAGE LANDEN FINANCIAL SERVICES,   )
     INC,                                )
4                                        )
              PLAINTIFF,                 )
5                                        )
     TOSHIBA AMERICA MEDICAL SYSTEMS,    )
6    INC.,                               )
                                         )
7             PLAINTIFF/INTERVENOR,      )
                                         )
8                                        )
     VS.                                 )  2-02CV2810
9                                        )  VOLUME I
                                         )  (PAGES 1-274)
10   DESOTO DIAGNOSTIC IMAGING, LLC,     )
     RANDON J. CARVEL, LYNN T. CARVEL,   )
11   DELTA RADIOLOGY, PC, AND ZOBAR      )
     PROPERTIES, LLC,                    )
12                                       )
              DEFENDANTS.                )
13   _____

14                    VIDEO DEPOSITION

15

16                         OF

17              MAY KILLEBREW VOKATY

18

19

                      AUGUST 12, 2003
20

21                       COPY

22

23          ALPHA REPORTING CORPORATION
               KORIAN NEAL, RPR, CCR
24      100 North Main Building, The Lobby
            Memphis, Tennessee 38103
25               (901) 523-8974

Page 2

1                    The video deposition of MAY KILLEBREW

2    VOKATY, IS taken on this, the 12th day of August,

3    2003, on behalf of the Plaintiff/Intervenor, pursuant

4    to notice and consent of counsel, beginning at

5    approximately 9:20 a.m. in the offices of Baker,

6    Donelson, Bearman, Caldwell, & Berkowitz, 19th Floor,

7    165 Madison Avenue, Memphis, Tennessee.

8                    This deposition is taken pursuant to the

9    terms and provisions of the Federal Rules of Civil

10   Procedure.

11                   All forms and formalities are waived, and

12   objections alone as to relevancy, materiality and

13   competency are reserved, to be presented at or before

14   the hearing.  Objections as to the form of the

15   question must be made at the time of the taking of the

16   deposition.  The signature of the witness is not

17   waived.

18

19

20

21                        COPY

22

23

24

25

Page 3

```
 1                        - APPEARANCES -

 2
     For THE PLAINTIFF/INTERVENOR:
 3
                            JOHN CHESNEY, ESQ.
 4                          Drinker, Biddle & Reath, LLP
                            Attorneys at Law
 5                          One Logan Square
                            18th and Cherry Streets
 6                          Philadelphia, PA 19103-6996

 7

 8

 9

10   For THE DEFENDANT DESOTO DIAGNOSTIC IMAGING:

11                          KYLE P. TATE, ESQ.
                            Tate Law Firm
12                          Attorneys at Law
                            424 Ouachita Avenue
13                          Hot Springs, AK 71901
                            (501) 624-9900
14

15

16   ALSO PRESENT,          BOB GUTHERIDGE, VIDEOGRAPHER

17

18

19

20

21

22

23   COURT REPORTING FIRM: ALPHA REPORTING CORPORATION
                            Korian Neal, RPR, CCR
24                          100 North Main Street
                            The Lobby
25                          Memphis, Tennessee 38103
                            (901) 523-8974
```

Page 4

1                              INDEX

2    Witness (MAY K. VOKATY)                          Page

3    Direct Examination by Mr. Chesney.........05

4    Cross-Examination by Mr. Tate............215

5    Redirect Examination by Mr. Chesney.......224

6

7

8                            EXHIBITS

9    No.                                              Page

10   1    Mrs. Vokaty's Resume.................09

11   2    Pictures............................49

12   3    MedWatch Form.......................83

13   4    System Operation Manual.............91

14   5    Nuclear Medicine Journal...........179

15

16

17

18

19

20

21

22

23

24

25   COURT REPORTER'S CERTIFICATE.............242

Page 107

1      A.   (Witness nods affirmatively.)

2      Q.   Okay.  Apparently, when these interrogatories

3  were answered, people didn't think that Cindy operated

4  the nuclear camera.  But you believe she did at least on

5  occasions?

6      A.   Yes, I do.

7      Q.   Okay.  Do you know if she ever received any

8  training on how to operate the camera?

9      A.   I don't know.

10     Q.   You had mentioned, incidentally, that you had

11  received some kind of training or instruction or

12  something from a guy called Jim Smith?

13     A.   Yes.

14     Q.   Okay.  Can you tell me what it was that

15  Mr. Smith did by way of giving you training or

16  instruction or both, whatever he did?

17     A.   He gave me a manual, a step-by-step

18  instruction, to refer to if I needed it.

19     Q.   Was that a Toshiba manual?

20     A.   No.

21     Q.   What manual was that?

22     A.   It didn't really have a name.  It was just

23  help if I needed it for nuclear medicine.  It

24  encompassed more than just the Toshiba.  It included hot

25  lab work and recordkeeping.

Page 108

1     Q.    But it was focused on nuclear medicine;

2   correct?

3     A.    Yes, it was.

4     Q.    When you say recordkeeping, what do you mean

5   by recordkeeping as it would relate to nuclear medicine?

6     A.    Well, when radioactive isotopes come into our

7   building, we have to keep careful records to make sure

8   they're not misused.  So we recorded every isotope that

9   comes in the building, at what time it gets there, what

10  time we assay it or measure it, and what time we inject

11  the patient.

12    Q.    Okay.  Do you still have this manual that

13  Mr. Smith gave you?

14    A.    I do not.

15    Q.    Why not?

16    A.    Someone took it.

17    Q.    Who took it?

18    A.    I don't know.

19    Q.    When did you last have it?

20    A.    February 2002.

21    Q.    You don't know who took it, though?

22    A.    No.

23    Q.    Okay.  You mentioned Cindy Holmes as having

24  operated the nuclear camera.  How frequently did she

25  operate it?