**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DELAGE LANDEN FINANCIAL SERVICES, INC., : | : | CIVIL ACTION NO. 2:02CV2810 |
| Plaintiff, : | : | |
| : | : | HON. RONALD J. BUCKWALTER |
| TOSHIBA AMERICA MEDICAL SYSTEMS, INC. : | : | |
| Plaintiff/Intervener, : | : | |
| : | : | |
| v. : | : | |
| : | : | |
| DESOTO DIAGNOSTIC IMAGING, LLC., RANDON J. CARVEL, LYNN T. CARVEL, DELTA RADIOLOGY, P.C. and ZOBAR PROPERTIES, LLC. : | : | |
| Defendants and Counter-Claimants : | : | |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION
TO CORRECT DOCKET TO REFLECT JURY DEMAND**

**I. INTRODUCTION**

Ignoring substance and relying on distinguishable case law, Plaintiff De Lage Landen Financial Services, Inc. ("DLL") and Intervenor Toshiba America Medical Systems, Inc. ("TAMS") opposed Defendants' Motion to Correct the Docket to Reflect Jury Demand. The docket has now been corrected to reflect the Defendants' jury demand. See Exhibit A. However, having not seen an Order from the Court relating to this Motion, Defendants file this Reply Brief to respond to the briefs of DLL and TAMS. In the event the Court has already decided to grant Defendants' Motion (as seemingly reflected on the docket), Defendants ask that this Reply Brief, along with the original Motion, serve as Defendants' response DLL's Cross Motion to Strike Defendants' Jury Demand. As it is undisputed that Defendants made a timely jury demand, served that

demand on all parties over one year ago, and filed the demand with the Clerk of Court, Defendants ask that this case be tried to a jury, as previously requested by Defendants and TAMS in their Case Status Reports.

## II. ARGUMENT

A. DLL and TAMS Do Not Dispute Defendants' Compliance with Rule 38(b)

Upon review of DLL's brief, which TAMS adopted, it is clear there is no dispute among the parties that Defendants complied with Rule 38(b). DLL posited that the substance of Rule 38 is that a demand be put in writing, sent to the parties, and filed of record with the court, and that the demand need not take the form of an endorsement on a pleading. DLL Br. at 3 ("While it is true . . . that Rule 38 does not require that the demand be endorsed upon a pleading, it does require a written demand that is served and filed of record.")  In their Motion, Defendants walked through the requirements of Rule 38, and showed that Defendants met each of the 3 requirements:  (1) under the "last pleading" provision of Rule 38(b), the demand for jury was submitted more than 30 days before it was required to be made and was therefore timely; (2) the demand was served on counsel for all parties on September 10, 2002, thereby providing the requisite written notice; and (3) the demand was filed with the Court, as reflected on the Court docket. Significantly, neither DLL nor TAMS challenges any one of these facts. Neither argue that Defendants' Case Status Report was not submitted more than a month before it was required to be submitted (DLL admits it received this Report on September 12, 2002; see Boyer Affidavit at ¶ 7). Neither argue that it was not served with Defendants' written jury demand over one year ago. (Id.)  Finally, neither argue that Defendants' jury demand was not filed with the Court, as evidenced by the docket (DLL admits that this

occurred but argues only that the cover letter of defendants' counsel's September 10, 2002 letter did not inform DLL that it would be filed with the Court; see DLL Brief at 4). Given the undisputed facts, then, Defendants are entitled to a jury trial, as there is no dispute whether they have complied with Rule 38(b).

Rather than dispute any of the facts proving that Defendants complied with Rule 38(b), DLL rattled off several string citations in the apparent belief that it could distract the Court away from these 3 critical facts with distinguishable case law.  Despite these string citations, DLL has failed to cite any case in which a court faced with a timely demand that was served on the parties and filed with the Court, i.e., in which all of the requirements of Rule 38(b) were met, did what DLL is asking this Court to do:  ignore the demand and strip the party making the timely demand of its Seventh Amendment right to a jury.  Instead, DLL cited nothing but inapposite cases involving situations where no notice was provided, demand was not timely made, and/or the demand was not filed with the Court.  Ballas v. City of Reading, Civ. No. 00-CV-2943, 2001 U.S. Dist. LEXIS 7966 at * 2 (E.D. Pa. June 12, 2001) (in case where counsel ignored court warning, issued 3 months prior, that no jury demand had been made, court expressly noted that notation on civil cover sheet is insufficient because civil cover sheet "is not served on the defendant"); Biesenkamp v. Atlantic Richfield Co., 70 F.R.D. 365, 365-366 (E.D. Pa. 1976) ("Since a demand for Jury Trial was not affixed to the Complaint, Defendants' attorneys were naturally not put on notice of the evidence of any Jury Trial Demand"; "it is clear that the Plaintiff has not met the requirement of Rule 38(b) since no demand was served upon the Defendants within the appropriate time") (emphasis added); Cain v. Hyatt, Civ. No. 88-6665, 1989 U.S. Dist. LEXIS 1881, at *3 (granting motion to

strike jury demand where plaintiff did not "serve[] a demand for a trial by jury upon the defendants"); Katzenmoyer v. City of Reading, Civ. No. 00-CV-5574, U.S. Dist. LEXIS (E.D. Pa. Aug. 6, 2001) (distinguishable for myriad of reasons, including counsel's decision to ignore court's warning that no jury trial had been requested and evidence that defendants decided not to employ an expert because the case was to be a bench trial, but also noted in court's opinion that notation on cover sheet "is not a substitute for the service of written notice as required under the federal rules"); Sullivan v. Chevron, Civ. No. 88-6245, 1989 U.S. Dist LEXIS 782, at *3 (E.D. Pa. Jan. 27, 1989) (notation on a civil cover sheet is not sufficient because "[t]his document is not served upon the defendant and, therefore, cannot properly substitute for service in accordance with Rule 38(b)") (emphasis added); Hare v. H&R Indus., Civ. No. 00-CV-4533, 2001 U.S. Dist. LEXIS 8661, at *3 (civil cover sheet notation insufficient because cover sheet "is not a document filed with the Court"); see also Seal v. United Cerebral Palsy Assn., Civ. No. 89-1101, U.S. Dist. LEXIS 3587, at *5-6 (March 30, 1990) (notation filed 14 days late was not only untimely, but also "conflict[ed] with the explicit statement on civil trial cover sheet . . . that this is a non-jury action").

   DLL's cases stand in stark contrast to a case cited by Defendants in their Motion (which, tellingly, neither DLL nor TAMS addressed), Palmer v. Angelica Healthcare Services Group, Inc., 170 F.R.D. 88 (N.D.N.Y. 1997). Palmer held that timely submission of a proposed Civil Case Management Plan noting a jury trial demand satisfies Rule 38(b) where it was served on all parties and filed with the Court. In Palmer, the court recognized that "What Rule 38(b) mandates is timely notice of the jury demand to the court and other parties." Id. at 90 (internal citations omitted). That is

exactly the point that DLL and TAMS have attempted to obscure in their briefs. Defendants' jury demand, though not indorsed on a pleading, was timely; it was filed with the Court; and it was served on DLL and TAMS over one year ago. In other words, Defendants complied with Rule 38(b). As these critical facts are not even challenged by DLL or TAMS, Defendants respectfully request that the Court honor Defendants' Constitutional right to a jury trial.

If the Court refuses to follow the reasoning of Palmer and/or deems it necessary to consider the issue under Rule 39(b) (allowing for judicial discretion to order jury trial where Rule 38(b) not met), Defendants respectfully request that the Court consider these critical, undisputed facts and exercise its discretion so as to allow a jury trial on all counts. If the Court considers this Motion under Rule 39(b), Defendants draw the Court's attention to Richardson v. Advanced Pulver Sys., Inc., Civ. No. 01-CV-3459, 2002 U.S. Dist. LEXIS 12145, at *6 (E.D. Pa. March 12, 2002), in which the Court discussed certain factors to be considered in connection with a Rule 39(b) motion and held that a jury trial would be granted even though plaintiff failed to show that all factors supported granting a jury trial.

B. No Cases Permit TAMS to Withdraw Its Jury Demand

Neither DLL nor TAMS offered any case law distinguishing Romy v. Picker Int'l, Inc., Civ. No. 89-9138, 1991 U.S. Dist. LEXIS 8546, at *5-6 (E.D. Pa. June 20, 1991) (refusing to allow party to withdraw jury demand in action involving claims by purchaser of defective MRI where action "clearly" entitled purchaser to jury trial). In fact, DLL barely mentioned TAMS' jury demand, setting forth its entire analysis of this fact in a conclusory footnote. DLL Br. at 4, n.1. In doing so, DLL undoubtedly hoped to avoid

addressing the fact that, even if the Court were to uphold the contractual provisions relating to a jury cited by DLL in its alternative arguments, such provisions are inapplicable to TAMS, and cannot enable TAMS to withdraw its jury demand and/or to strip Defendants of their right to a jury trial against at least TAMS <u>or</u> DLL.  Despite admitting that it, too, asked for a jury trial in its Case Status Report, TAMS made a half-hearted attempt to dispel the claim that it was not seeking to withdraw its jury demand as part of a late change in strategy, and proffered that its prior demand was instead "an inadvertent mistake." TAMS Br. at 2.  As neither DLL nor TAMS offered any case law enabling TAMS to withdraw its jury demand, and as TAMS has still failed to file a Motion seeking such action (as required by Rule 39(d) to allow withdrawal of a jury demand), Defendants request that TAMS' jury demand also be noted on the docket along with Defendants'.

   C. <u>Defendants Are Entitled to a Jury Trial on the New Issues Raised.</u>

For the reasons set forth in Defendants' original Motion, Defendants request that the Court order that a jury trial shall be had with respect to all claims.  Under any circumstances, however, it is clear that Defendants must be entitled to a jury trial on the new issues raised in the Amended Counterclaims.  Notwithstanding DLL's latest position that the new claims in the Amended Counterclaims "arise out of the same general issues as the original claims", DLL Br. at 5-6, both DLL and TAMS have previously admitted that there are new facts and new theories raised by the Amended Counterclaims, and that these new theories and facts have "significantly" (or, to use TAMS' word, "drastically") changed this case.  In its opposition to Defendants' Motion for Leave to Amend, DLL flatly admitted that the Amended Counterclaims raised new issues that would have a

major impact on the scope of the recovery Defendants could receive from DLL. Similarly, TAMS admitted that the new amended counterclaims would have a drastic impact on the counterclaim.  <u>See</u>, <u>e.g.</u>, DLL Opp. to Mot. for Leave at 5 ("Now . . . the Defendants seek to inject <u>new theories</u> of recovery into the case . . . which, if permitted, <u>significantly</u> expand and enlarge the scope of the recovery sought against Plaintiff") (emphasis added); TAMS Opp. to Mot. for Leave at 2 ("if the amendments were permitted, they would <u>drastically</u> change the Defendants' counterclaim") (emphasis added).  Given the clear discrepancy between the current position of TAMS and DLL, little further is required to establish that, if the Court decides that Defendants did not comply with Rule 38(b), Defendants are nevertheless entitled to a jury trial on the new issues raised by their Amended Counterclaims, as there is again no debate that Defendants timely made a jury demand on its amended pleading.[1]

> D. <u>DLL's Alternative Argument Is Untimely, and Fails to Overcome the Presumption Against Waiver of the Seventh Amendment Right to a Jury.</u>

As an "alternative" argument, DLL alleges that Defendants contractually waived all rights to demand a jury trial, a contention that should be rejected for several reasons. Not surprisingly, DLL conspicuously failed to mention the fundamental tenet of Third Circuit and United States Supreme Court jurisprudence which dictates that any attempt to impose a waiver of a right to a jury trial be closely "scrutinized with the utmost care." <u>See</u>, <u>e.g.</u>, <u>Collins v. Government of the Virgin Islands</u>, 366 F.2d 279, 284 (3d Cir. 1966) ("Since 'the right of jury trial is fundamental, courts indulge every reasonable

---

[1] Another aspect of DLL's Brief that merits little mention is the notion that DLL would be prejudiced if the Court granted Defendants' Motion because allowing this to be a jury trial would in some, unexplained way compromise DLL's ability to complete discovery and prepare for trial.  This statement makes no sense, *particularly* in light of DLL's statement that it has not been active in discovery to begin with.  DLL Br. at 5.

presumption against waiver.' . . . 'Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.'") (citations omitted).

DLL not only failed to reference the legal standard governing its claim of waiver, DLL also avoided numerous critical facts defeating DLL's attempted reliance on the purported waivers, including the following: (1) DLL is not mentioned in any of the documents they say gives them the right to raise the alleged contractual waiver; (2) even if DLL could assert the alleged waiver, Defendants would therefore be entitled to a jury trial in its claims against TAMS; (3) TAMS also requested a jury trial, and neither DLL nor TAMS asserts that the alleged waivers prevent TAMS from seeking a jury trial; and (4) DLL has waited over one year, without justifiable excuse, to raise the alleged contractual waivers.

Contrary to the implication of DLL's Brief, alleged contractual waivers of a right to demand a jury are not uniformly enforced, and the scope of the purported waivers in this case is not nearly broad enough to strip Defendants and TAMS of a jury trial on all counts, or as to all parties. See, e.g., National Acceptance Co. v. MYCA Prods., Inc., 381 F. Supp. 269 (W.D. Pa. 1974). In National Acceptance, the court did exactly what was contemplated by the Third Circuit in the passage cited above from the Collins decision: it closely scrutinized, with the utmost care, an attempt to curtail the right to a jury trial and ultimately refused to apply an alleged contractual waiver of a right to a jury trial contained within a "Loan and Security Agreement." The language of the purported waiver of the right to a jury trial in National Acceptance reads as follows: "Borrower and

Lender hereby irrevocably waive the right to trial by jury with respect to any action in which Lender and Borrower are parties." Id. at 269. Despite this extremely broad language, the court began its analysis by noting that "[t]he Seventh Amendment right to trial by jury is a fundamental right. Courts will narrowly construe any waiver of this right and will indulge in every reasonable presumption against waiver. Beacon Theatres, Inc. v. Westover, 359 U.S. 500 (1959)." Id. at 270 (citation in original). The National Acceptance court strictly construed the alleged waiver of the right to a jury, and determined that, although "the waiver language . . . is broad," id., the fact that the action involved an oral agreement that predated the written agreement, and plaintiff's failure to set the alleged waiver language apart, perhaps "in a separate paragraph clearly marked as 'Waiver of Jury Trial in Any and All Actions Between Parties Arising at Any Time'", id., rendered the purported waiver, which was contained within a paragraph dealing with "rights of the parties as to default and replevin" ambiguous. Id. Applying the basic principle that ambiguities in a contract should be resolved against the drafter, the court denied plaintiff's motion to deny defendant's request for a jury trial. Id. at 271.

The reasoning of the National Acceptance court applies with equal force to this case. The scope of the purported waiver must be narrowly construed, and the Court is to "indulge in every reasonable presumption against waiver." Id. at 270. The purported waiver not only fails to mention DLL, it suffers from some of the identical deficiencies as the purported waiver in National Acceptance. The "waivers" are not set apart in any paragraphs of the Master Lease or the Guaranties.[2] Instead, the alleged waivers are contained in long paragraphs, the titles of which give no indication that they include a

---

[2] The versions of these documents attached to Defendants' copy of DLL's Brief are largely unreadable. Defendants are unaware if the copy provided to the Court suffers from the same problem.

waiver of a right to a jury.  Moreover, the alleged contractual waivers are, at a minimum, not clear and unambiguous waivers of Defendants' rights to a jury trial against both DLL and TAMS.  DLL is not even mentioned in the documents it says entitle it to now raise waiver as an argument.  These documents are stained with fraud, as DLL implicitly admitted in its Brief, and in past pleadings and discovery.  The Master Lease, for example, was signed by Lisa Sparta, who purportedly held the title of "Director" of TAMS.  Yet, both DLL and TAMS have already admitted in their pleadings that Ms. Sparta was never an employee of TAMS.  <u>Compare</u> Exhibit B at 4 (Lisa Sparta signed as "Director" of TAMS) <u>with</u> Exhibit C, DLL Ans. to Amended Counterclaims at ¶ 17 ("It is admitted that . . . Lisa Sparta signed the Master Lease, and that Lisa Sparta has never been a director of Toshiba America Medical Systems, Inc.") and Exhibit D, TAMS Ans. to Amended Counterclaims at  ¶ 17 ("TAMS admits that the Master Lease was signed by Lisa Sparta. . .  TAMS further admits that Lisa Sparta has not been an employee of TAMS at any time.")

      DLL's reliance on the purported contractual waivers is consistent with a predictable approach that DLL and TAMS have taken:  they are one company when it suits them, and they are 2 distinct companies when it does not.  In every document DLL relies on to proffer that Defendants have contractually waived their rights to a jury trial, DLL is not named or mentioned.  Instead, the entity mentioned is "Toshiba America Medical Credit, a program of Toshiba America Medical Systems, Inc".   Defendants have repeatedly stated that the representations by DLL and TAMS that TAMS was a single source for sales, service and financing were significant factors in Defendants' decision to enter into the Master Lease.  DLL and TAMS intentionally set out to deceive customers

into believing that Toshiba was a one-stop source, and memorialized this plot in their Master Contract Financing Program Agreement:  "TFS [Tokai Financial Services, DLL's predecessor] will service all Contracts on a private label basis in the name of TAMS so that the lease financing program will at all times <u>appear</u> to Lessees to be a proprietary program of TAMS."  Exhibit E at § 6.1 (emphasis added).  Then, when TAMS' incessant, yet unfulfilled, promises to cure the deficient medical equipment finally forced Defendants, after several prior warnings to TAMS, to de-install the equipment, DLL decided that it wanted to distance itself from TAMS.  Unwilling to simply misrepresent itself to Defendants through concealment any more, DLL chose to blatantly lie to Defendants, sending a series of letters describing DLL as a "Purchaser" and "informing" Defendants that the Master Lease had been assigned from Toshiba America Medical Credit (TAMC) to DLL.  In discovery, DLL has admitted that these letters were false, and has taken the position that, contrary to the plain language of the letters, there was no assignment of the lease between TAMC and DLL.  <u>Compare</u> Exhibit F ("Please be advised that the above referenced Contract with Toshiba America Medical Credit, a program of Toshiba America Medical Systems, Inc. has been assigned to De Lage Landen Financial Services, Inc. ('Purchaser')" <u>with</u> Exhibit G at Ans. to Interr. 10 ("This interrogatory incorrectly assumes that there was an 'assignment' of the Master Lease and Guaranties from TAMC to DLL.  No such assignment occurred.")  In fact, DLL's latest position is that "TAMC" or "Toshiba America Medical Credit" was a "d/b/a" of DLL.  Given this series of lies, it is not surprising that DLL does not want this case to be tried to a jury.

As noted above, however, if there is anything that is clear about the documents on which DLL relies, it is that there is no ambiguous waiver by Defendants of their right to a jury trial against both TAMS and DLL, which there would need to be for the contract to strip Defendants of their Seventh Amendment rights. Applying the correct legal standard of closely scrutinizing the alleged waiver and indulging in every reasonable presumption against waiver, Defendants respectfully submit that the purported waivers on which DLL rely do not satisfy the requirements of Third Circuit and Supreme Court jurisprudence. Moreover, as DLL does not deny that it received Defendants' Case Status Report over one year ago, Defendants proffer that DLL cannot now raise the alleged contractual waiver, especially where DLL argues that it did not previously raise the alleged contractual waiver because their counsel only read the cover letter accompanying the Case Status Report, which is inexcusable.

Given the presumption against the waiver of a right to a trial by jury that a court must apply, the reasoning of the National Acceptance court, and the fact that, at a minimum, the documents on which DLL relies do not unambiguously provide for a waiver by Defendants of their right to a jury trial against both TAMS and DLL, it is respectfully submitted that DLL's "alternative" theory should be dismissed, and Defendants should be entitled to a jury trial.

### III. **CONCLUSION**

For the reasons set forth in this Memorandum and in Defendants' original Memorandum, Defendants respectfully request that the Court order that this case be tried to a jury on all counts, and grant such further relief as the Court deems appropriate.

 

 
                                                  _____
Kyle P. Tate, AR Bar No. 95097
for TATE LAW FIRM
424 Ouachita Avenue
Hot Springs, AR 71901
(501) 624-9900

William Matthews
Attorney I.D. No. 82730
SAUL EWING LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186
(215) 972-7106

Date: October 28, 2003

# CERTIFICATE OF SERVICE

I certify that I am this day serving a copy of the attached Defendants' Reply Brief in Support of Motion to Correct Docket to Reflect Jury Demand upon the persons and in the manner indicated below:

Service by *first-class mail*, postage prepaid to:

Ms. Rosetta B. Packer
MCCARTER & ENGLISH, LLP
Mellon Bank Center, Suite 700
1735 Market Street
Philadelphia, PA 19103-7501

Mr. John Chesney
Ms. Julianne Peck
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996

                                                                                                                                _____

                                                         William Matthews

Date:  October 28, 2003