**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DE LAGE LANDEN FINANCIAL SERVICES, INC., | : | |
| | : | CIVIL ACTION NO. 2:02CV2810 |
| Plaintiff, | : | |
| | : | |
| TOSHIBA AMERICA MEDICAL SYSTEMS, INC., | : | |
| | : | |
| Plaintiff/Intervenor, | : | |
| | : | |
| v. | : | |
| | : | |
| DESOTO DIAGNOSTIC IMAGING, LLC, RANDON J. CARVEL, LYNN T. CARVEL, DELTA RADIOLOGY, PC and ZOBAR PROPERTIES, LLC, | : | |
| | : | |
| Defendants and Counter-Claimants. | : | |

**PRAECIPE TO ATTACH SUPPLEMENTAL EXHIBIT TO MOTION TO COMPEL
DEPOSITION TESTIMONY OF DAVID BENNETT**

TO THE CLERK:

Defendants and Counter-Claimants, DESOTO DIAGNOSTIC IMAGING, LLC,

RANDON J. CARVEL, LYNN T. CARVEL, DELTA RADIOLOGY, P.C. and ZOBAR

PROPERTIES, LLC, ("DDI), by and through their attorneys TATE LAW FIRM, by Kyle P.

Tate, hereby request that in the interest of justice the attached supplemental exhibit be included

in Defendants' October 27, 2003 filing entitled Motion to Compel Deposition Testimony of

David Bennett, which was not included in Defendants' original filing for reasons explained

therein.

1.     Defendants served their Motion to Compel Deposition Testimony of David Bennett and Memorandum in support thereof on October 23, 2003, which was filed with this Court on October 27, 2003.

2.     Therein, Defendants state that the issue of whether Mr. Bennett should be compelled to testify could be properly brought – or renewed – in the Pennsylvania action, based upon Judge Haynes' courtroom dialogue explaining his ruling.

3.     Having now received the official Transcript of Proceedings, Defendants respectfully direct this Court's attention to pages 23:9 – 18, as follows:

MR. TATE:    It's my understanding in the federal district courts that the district in Philadelphia would not have power to compel Mr. Bennett's testimony, or compel him through (sic) a deposition. It would be through this district, [the Middle District of Tennessee, Nashville Division], Your Honor.

THE COURT: I think that that would be true if he were not an agent of the party. If he was an agent of a party, **the Court [in Philadelphia] could require him to appear where the action is pending.**

4.     Defendants also request this Court to take notice of page 24:2 – 5, as follows:

THE COURT: I'm going to grant the motion for protective order and quash the subpoena **without prejudice to be filed in the District Court in Pennsylvania.**

5.     In further support of the arguments in their Motion , Defendants respectfully direct this Court's attention to pages 21:11 through 24:18 of the attached Transcript of Proceedings which sets forth the oral argument of the parties, in particular Mr. Hicks' position that the Pennsylvania court could compel Mr. Bennett's deposition testimony, and Judge

Haynes' colloquy given in open Court for his ruling granting the motion to quash and protective

order without prejudice to renew, which are fully set forth in the section referenced above.

Dated: October 31, 2003

Respectfully Submitted,

By: _____

Kyle P. Tate
for Tate LAW FIRM
9085 Sandidge Center Cove
Olive Branch, MS 38654
(662) 893-8833
(662) 893-8824 facsimile

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that the foregoing has been served upon the attorney of record for all other parties in this proceeding and upon parties not represented by attorneys by telefax or by Federal Express, or by delivering a copy of this pleading to the attorney or party personally, or to the offices of such attorney or party, or by placing a copy in the U.S. Mail addressed to such attorney or party named below at his office with sufficient prepaid postage on this 31st day of October, 2003.

Mr. John Chesney
Ms. Julianne Peck
DRINKER BIDDLE & REATH, LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103-6996

Mr. Peter Boyer
Ms. Rosetta B. Packer
MCCARTER & ENGLISH, LLP
Mellon Bank Center, Suite 700
1735 Market Street
Philadelphia, PA 19103-7501

Kyle P. Tate

1            IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF TENNESSEE
2                   NASHVILLE DIVISION

3  _____

DELANGE LANDEN FINANCIAL        )
4  SERVICES, Inc.                  )
                                )
5  and                             )
                                )
6  TOSHIBA AMERICA MEDICAL         )
   SYSTEMS, INC.                   )
7                                  )
           Plaintiff,             )
8                                  )
   v.                              )   CASE NO. 3:03-0097
9                                  )
   DESOTO DIAGNOSTIC              )
10 IMAGING, LLC, et al,            )
                                )
11         Defendants.             )

12 _____

13

14              TRANSCRIPT OF PROCEEDINGS

15

16 _____

   DATE:            OCTOBER 9, 2003
17
   TIME:            10:00 A.M.
18
   BEFORE:          THE HONORABLE WILLIAM J. HAYNES, JR.
19 ------------------------------------------------------------

20

21

22

23 COURT REPORTER:       PEGGY G. TURNER, RPR CCR
                       OFFICIAL COURT REPORTER
24                     801 BROADWAY, ROOM A-837
                       NASHVILLE, TENNESSEE 37203
25                     (615)726-4893

                                              1

1                        A P P E A R A N C E S

2    For the Plaintiff:      Mr. John Hicks
                             Nashville, Tennessee
3
     For the Defendant:      Mr. Kyle Tate
4                            Memphis, Tennessee

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                        2

```
 1                  P R O C E E D I N G S
 2          THE COURT:  We're here in Delage Landen
 3   Financial Services, Inc. and Toshiba America Medical
 4   Systems, Inc. v. Desoto Diagnostic Imaging, LLC, et al,
 5   3:03-0097.  Are there any preliminary matters before we
 6   get started?
 7          MR. HICKS:  None, Your Honor, for the movant.
 8          THE COURT:  There was a request to appear pro
 9   hoc vice that I granted.  I read your motion and your
10   paper.  I really need to hear from counsel, Mr. Elliot,
11   why you need to take the deposition in light of this
12   proof that this guy doesn't know anything about this
13   case?
14          MR. TATE:  Your Honor, Mr. Tate for Desoto
15   Diagnostic Imaging and the other defendants.
16          THE COURT:  I'm sorry, Mr. Tate.
17          MR. TATE:  I think Mr. Elliot moved for my
18   admittance.  The motion, Your Honor, with all due
19   respect with to Mr. Hicks, was drafted by attorneys in
20   Philadelphia.  And I believe the motion and brief that
21   was filed by -- Mr. Hicks had no knowledge whatsoever.
22          THE COURT:  All right, sir.  But there is an
23   affidavit that he knows nothing about this case.
24          MR. TATE:  Your Honor, can I brief the Court
25   just shortly what the real facts are so I can show the
```

3

1  Court and provide the proof.

2       THE COURT:  What is it that you have that would

3  place at issue Mr. Bennett's assertion that he doesn't

4  know anything about this case?

5       MR. TATE:  First of all, Your Honor, in the

6  brief it stated that Mr. Bennett has no involvement in

7  the case whatsoever, which is absolutely incorrect.

8       THE COURT:  Counsel, if you could answer my

9  question, and then I will hear you out on what else you

10  have to say.

11       MR. TATE:  Yes, Your Honor.  Mr. Bennett has

12  knowledge about Mr. Charlie -- this is a very complex

13  case.  Charlie Ryan is the area service manager with

14  Toshiba that was designated for my client's business at

15  the time of the action.  Mr. Charlie Ryan was a

16  superior of Donnie Jenkins.  He was an engineer that

17  worked at Diagnostic Imaging Center.

18       The issues are that Donnie Jenkins made a

19  statement to some individuals at Toshiba regarding that

20  he may be canned if he spoke up regarding certain

21  employment issues.  That's how the movant in this

22  matter styled it.

23       That's really not the case, Your Honor.  The

24  characterization of the statement about being fired

25  was, Donnie Jenkins actually had complaints about

                                                    4

1  Charlie Ryan, the area service manager, and wanted to

2  make those complaints known based on his management

3  style and how he was treating service engineers and

4  other related matters.  Mr. Bennett has specific

5  knowledge about Charlie Ryan in this conversation with

6  Mr. Jenkins.

7       THE COURT:  How is it related --

8       MR. TATE:  I'm sorry, Your Honor.

9       THE COURT:  That's all right.  Go ahead.

10      MR. TATE:  It relates to the situation because

11  it's extremely relevant as to the credibility of

12  Charlie Ryan and his capabilities as the area service

13  manager.  It's extremely relevant as to Mr. Jenkins'

14  capabilities and credibilities, as Mr. Bennett referred

15  Mr. Jenkins to Charlie Ryan for hire.

16      Mr. Jenkins has knowledge about Mr. Bennett as a

17  service engineer, and how it relates to this case --

18  one of the central issues is unqualified incompetent

19  service engineers sent to Diagnostic Imaging.

20  Mr. Bennett has direct knowledge of that.  Mr. Bennett

21  also has knowledge about particular matters at hand

22  regarding certain disclosures that were made in this

23  case to date.  If I may present those to Your Honor.

24      THE COURT:  Whatever you want, counsel.

25      MR. TATE:  Respondent's Exhibit Number 1.  Your

5

1   Honor, these are disclosures that were made in the

2   pending litigation in Philadelphia that specifically

3   name Mr. Bennett and his association with this case.

4        If I could advise Your Honor that within this

5   matter there are only a few qualified MRI service

6   engineers in the entire country, Mr. Bennett being one

7   of those.  One of the issues in the case was the fact

8   that TAMS or Toshiba did not provide defendant with

9   qualified, competent service engineers and had a major

10  shortage of service engineers despite the warranty that

11  they could provide.  TAMS 6557 reveals that Mr. Bennett

12  was paged because of this exact shortage I'm talking

13  about.

14       This also has to do with a zap error that

15  occurred on the MRI system which only very few MRI

16  service engineers could speak of and explain the

17  situation.  Obviously, these are central issues in the

18  case as far as workings of the equipment and whether

19  the equipment was working or not, as my client

20  contends.

21       Mr. Bennett would have to testify per Rule 26

22  regarding his knowledge about the zap errors and the

23  fact that he was called when no other service engineers

24  were available, which obviously shows and provides

25  proof of the shortage of the service engineers in the

                                                    6

1    case.

2        They left my client basically high and dry in

3    this scenario.  Mr. Bennett has knowledge about that.

4    I've marked DDI 007080 also, Your Honor.  It makes

5    reference to a conversation Mr. Bennett had with my

6    client regarding this particular service call.

7        THE COURT:  Where are you talking about, now?

8        MR. TATE:  DDI 007080.  It's on the third page

9    of that exhibit, 06270, reference number 1045397.  It

10   confirms a telephone conversation with my client, Your

11   Honor, which we are entitled to discover the content of

12   that conversation and the content of the zap error

13   occurred only -- which very few people have knowledge

14   of these certain type of errors.  This is a very

15   limited industry as far as people understanding how to

16   operate, work and repair this equipment.  So he has

17   knowledge about that.  It goes on and TAMS 114, on the

18   fifth and sixth page, the same reference, Your Honor,

19   whereas Mr. Bennett spoke to the Jo Ann Tucker, a

20   former employee of the facility, regarding the zap

21   error.

22       THE COURT:  You are on TAMS 14, page 5?

23       MR. TATE:  Yes, the Bates stamp --

24       THE COURT:  Where is there a reference to a

25   telephone call?

                                                    7

1          MR. TATE:  Reference to the telephone call, Your

2     Honor, is in DDI 00782, which provides the reference

3     number now that I am pointing to you regarding the zap

4     error.

5          THE COURT:  I'm sorry, counsel.  I don't see.

6          MR. TATE:  May I approach?

7          THE COURT:  Just tell me which column.

8          MR. TATE:  Your Honor, in DDI.

9          THE COURT:  I'm on page 5 of TAMS 118, with a

10    Bates stamp at the bottom.  Which column?

11         MR. TATE:  Next page TAMS 118, TAMS 119, column

12    10397, left-hand column annex page where it says P2 II

13    Jo Ann Tucker zap error.  Which is also confirmed in

14    the first page of that exhibit which lists the zap

15    error.

16         THE COURT:  Where is the reference to Bennett?

17         MR. TATE:  The reference to Mr. Bennett is in

18    TAMS 6557, 6558, and also in --

19         THE COURT:  I thought we were on TAMS 118.  If

20    we are, where in this does it refer to Bennett?

21         MR. TATE:  Your Honor, it's referred by

22    reference number.  That's how Toshiba identifies --

23         THE COURT:  Which reference number here do you

24    contend applies to Bennett?  It says case ID number.

25         MR. TATE:  1045397, Your Honor, which is the

                                                      8

1  same DDI 00782 and --

2       THE COURT:  What is the number again?

3       MR. TATE:  1045397, which is the reference

4  number listed on DDI 00782, and also on TAMS --

5       THE COURT:  I'm sorry, counsel.  They've got a

6  lot of numbers on this left-hand column.

7       MR. TATE:  May I approach, Your Honor, and show

8  you real quick?

9       THE COURT:  Mark on it yours and give it to the

10  Marshal.  No, just mark it.  I don't want the Marshal

11  to have to interpret this.  Just mark it.

12       MR. TATE:  They are marked, Your Honor.

13       THE COURT:  This says J. Scott, closed.  What is

14  the significance of this?

15       MR. TATE:  That is the case work report.  The

16  actual service engineer that was involved was

17  Mr. Bennett as listed down on the page.  That's just

18  how they designate who designated the reference number.

19  Mr. Bennett is referenced throughout the first two

20  pages of that.

21       THE COURT:  Where in the record is there a

22  conversion of this number as identifying Mr. Bennett?

23       MR. TATE:  On the case report, Your Honor.

24       THE COURT:  Yes, but where is it before me that

25  refers to that?

                                                    9

1          MR. TATE:  I've given it to Your Honor.  The

2    case report, the next DDI disclosure, Your Honor, and

3    then the next report from Toshiba.

4          THE COURT:  I'm looking at these documents --

5    they don't say on their face what it is you say they

6    say.

7          MR. TATE:  Your Honor, I --

8          THE COURT:  It has an ID number, and the

9    references below refer to people other than

10   Mr. Bennett.  They refer, for example, to Ray

11   Roskowski, Michael Barr, there is a Jo Ann, there are a

12   number of references.  There are different names on

13   here, and it doesn't -- there is nothing on here that

14   says 1045397 means Mr. Bennett.

15         MR. TATE:  Your Honor, may I approach?  I am

16   begging you so I can show you.  These are very

17   convoluted.

18         THE COURT:  I'm looking at everything you have

19   underlined.  That's what I'm looking at, what you have

20   underlined on TAMS 6557.

21         MR. TATE:  I thought you asked me to circle or

22   mark the actual reference number.  Mr. Bennett is

23   listed on that document all the way through.

24         THE COURT:  I know he is listed on the document.

25   There are a number of other people listed on the

                                                        10

1  document.

2      MR. TATE:  I understand, Your Honor.  He is the

3  one that was contacted regarding this matter per that

4  document.  And he's the one that has the information

5  regarding the issue and the zap error and the content

6  of the conversation with my client, Your Honor.  He has

7  relevant information per Rule 26.

8      THE COURT:  I'm trying to work this through on

9  the basis of what you have given me.  And I'm having

10 difficulty making the connections that you want me to

11 make.  There is nothing on TAMS 114 through 119, the

12 two areas that you have marked, that make any expressed

13 reference to Bennett.

14     MR. TATE:  May I retrieve the documents back

15 again and try again to point it out?

16     THE COURT:  Well, I asked you to mark, and I'm

17 looking at the two portions you marked.  Is there

18 anything else on here you want to mark?

19     MR. TATE:  No, Your Honor.  If I had the

20 documents I could try to clarify.  Maybe I haven't done

21 a good job.

22     THE COURT:  Well, I'll give them back to you,

23 and you tell me what you are referring to.

24     MR. TATE:  I apologize.

25     THE COURT:  That's all right.

11

1          MR. TATE:  Is there a deposition that refers to
2    that number as Mr. Bennett?

3          MR. TATE:  No, Your Honor.  It's within the
4    disclosures on the litigation.

5          THE COURT:  Well, the disclosures on the
6    litigation can involve any number of sources.  Was
7    there --

8          MR. TATE:  These are disclosures from Toshiba
9    representatives, Your Honor.

10         THE COURT:  We're talking about Mr. Bennett.

11         MR. TATE:  I understand.  May I have an
12    opportunity just to try to explain?

13         THE COURT:  Yes, sir.

14         MR. TATE:  On TAMS 6557 -- and would Your Honor
15    look at the documents with me so maybe I could explain
16    it, with all due respect?

17         THE COURT:  We'll be in recess for a few
18    minutes.

19         (Recess.)

20         THE COURT:  I just want the record to reflect
21    that you handed me up these documents, you made
22    references on the documents, and I had no idea what you
23    were referring to.  I asked you to mark it, and I
24    looked at the mark references, and I still couldn't
25    figure out what you were saying.  So I will try again,

                                                      12

1  because obviously I'm missing something.

2       MR. TATE:  I apologize, Your Honor.  Obviously

3  I've done a poor job of explaining, so I will try.

4       THE COURT:  That's all right.

5       MR. TATE:  Looking at -- regarding Mr. Bennett,

6  on the TAMS document 6557, the reference number, the

7  case report, 1045397, is also listed in the middle of

8  the page as the ID number 1045397.  And also below

9  where it is listed as where it says, state subject case

10 under the case entry, where it says 1045397 regarding

11 David Bennett called, still opening, still unanswered,

12 below that, it still lists the same number, David

13 Bennett has called, he requested to get hold of the

14 primary, et cetera.

15      THE COURT:  That appears to refer to the case

16 number.  It says at the top case title, zap error, KG

17 ID 0145397.

18      MR. TATE:  Correct, Your Honor.  Which is the

19 same reference number --

20      THE COURT:  I recognize the same number, but

21 there is nothing to suggest on this document that that

22 refers to Mr. Bennett.

23      MR. TATE:  The case numbers, Your Honor, right

24 out to the side are the exact same.

25      THE COURT:  I realize they are the exact same,

                                          13

1  but that says subcase.  That's the case number.  Looks

2  like it refers to a case number, not a person.

3       MR. TATE:  The only number listed on this

4  document regarding case number or case report is

5  104597.

6       THE COURT:  Well, if it's the same case, I

7  expect that's probably what happened.

8       MR. TATE:  It is the same number, Your Honor.

9       THE COURT:  What is there before me that says

10  that that case number refers to a person and not a

11  subcase?

12       MR. TATE:  Your Honor, the way Toshiba does

13  their numbering --

14       THE COURT:  That's what I'm asking you for,

15  counsel.  Where is the proof that that's how Toshiba

16  does it?

17       MR. TATE:  The documents exposed in litigation

18  are as such --

19       THE COURT:  What do you have to present to me

20  that that's how Toshiba does it?  Do you have a

21  deposition?  Do you have an affidavit?  Do you have any

22  type of declaration that says that's how we identify

23  the salesperson who works on a case?

24       MR. TATE:  Their own case reports, Your Honor,

25  is all I'll have.  I have had two days since this

                                                    14

1  motion was filed to get prepared for you.  Obviously

2  I'm not explaining.  May I show you deposition

3  testimony regarding Mr. --

4        THE COURT:  That's what I asked you earlier.

5  Whatever you want to show, I would be pleased to see

6  it.

7        MR. TATE:  I would like to mark that as

8  Respondent's Exhibit Number 2.  I would like to look at

9  beginning line 13 on the second page of this exhibit

10  where Mr. Ryan makes mention of Mr. Bennett and that

11  Mr. Bennett -- and this is the summary of what was

12  said, is that Mr. Bennett had recommended Mr. Jenkins

13  for hiring.  He had filled out a referral form,

14  referring him or recommending him for hire, which was

15  the central issue in the case regarding the

16  capabilities of Mr. Jenkins as service engineer for

17  this Diagnostic Imaging.  He would have relevant

18  information regarding that.  It runs through the top of

19  the third page, Your Honor.

20        THE COURT:  This is a reference to Mr. Bennett

21  recommending Mr. Jenkins for hire.

22        MR. TATE:  Correct.

23        THE COURT:  It doesn't say he recommended him to

24  repair on your particular job, does it?

25        MR. TATE:  Your Honor, the overall issue is the

15

1   engineer's overall competency and capabilities as a

2   service engineer.  Not necessarily with respect to

3   anyone in a particular facility.  If he is not

4   competent or capable at all, he is not competent in any

5   facility.

6        THE COURT:  Anything else?

7        MR. TATE:  Yes, Your Honor.  I give these as

8   Respondent's Exhibit Number 3.  Your Honor, this would

9   be the deposition of Mr. Jenkins in a tape recorded

10  conversation with between Doctor Carvel and

11  Mr. Jenkins, which is also part of the deposition.

12       THE COURT:  What page of this deposition do you

13  want me to read?

14       MR. TATE:  Page 277, Your Honor, which is

15  actually the --

16       THE COURT:  277 to how far?

17       MR. TATE:  Beginning at the bottom of page 276,

18  through the middle of the page on 277.

19       THE COURT:  Well, which line?

20       MR. TATE:  Starting with line 23 on page 276.

21       THE COURT:  To where?

22       MR. TATE:  Running through line 12 on page 277.

23  It mentions the concern of being canned if he spoke up

24  for the issues that Mr. Ryan was there to serve as

25  service manager.

                                                    16

1        THE COURT:  This doesn't make any reference to

2   Mr. Bennett.

3        MR. TATE:  Your Honor, we had to go on the

4   record with Judge Buckwalter in Philadelphia, the

5   Eastern District.  Mr. Jenkins had refused to give that

6   information.  It's in this particular exhibit where we

7   went off the record.  And the judge in Philadelphia

8   ruled that it was relevant information regarding

9   Mr. Bennett in the case.

10       THE COURT:  Do I have all that before me?

11       MR. TATE:  You do.  It's in this transcript,

12  Your Honor.

13       THE COURT:  Well, where is it?

14       MR. TATE:  That would be on page 286, Your

15  Honor, where it says there was a short break after

16  strenuous opposition.

17       THE COURT:  286, what line?

18       MR. TATE:  Line five shows where a short break

19  was held and Mr. Chesney comes back on the record and

20  says the judge should answer the question regarding

21  Mr. Bennett.

22       THE COURT:  Where is the question he refused to

23  answer?

24       MR. TATE:  Actually, it was asking who the

25  friend of Donnie Jenkins was who mentioned the fact

                                                    17

1  that Donnie should not state anything or he would be

2  canned.

3        THE COURT:  Where is that?

4        MR. TATE:  On many of the previous pages about

5  going back and forth on the issue.

6        THE COURT:  Is there an order of the District

7  Court that reflects the Court's ruling?

8        MR. TATE:  It was off the record, Your Honor,

9  and we had to call him in at 4:30.  It was a later

10  time.  He heard the arguments from both sides, the same

11  arguments I'm making here, and he ruled that

12  Mr. Bennett's name should be revealed by Mr. Jenkins.

13        THE COURT:  All right.  What else do you want to

14  point out about that?  You gave me two excerpts.  What

15  other pages do you want me to read from this excerpt?

16        MR. TATE:  The second excerpt is also a recorded

17  conversation that you have seen all of the relevant

18  information.  I just want you to have all of the

19  documents before you.

20        THE COURT:  If you could give me the page and

21  line number, that would be helpful.

22        MR. TATE:  Pages 36 and 37, Your Honor, of the

23  second excerpt.  Starting on line 10, page 36, and

24  running through line 70, page 37.  36 and 37.

25        THE COURT:  Where is Mr. Bennett's name?

18

1      MR. TATE:  That was in the first transcript we

2 looked at where I asked a question regarding who was

3 the friend who told you that you would be canned.  And

4 that's when we had to call Judge Buckwalter.

5      THE COURT:  He said Donnie Jenkins was the one

6 that he described.  But this conversation doesn't refer

7 to Mr. Bennett, does it?

8      MR. TATE:  It does in the first transcript.

9      THE COURT:  That's what I'm asking for, counsel.

10 Where are the pages that describe this as referring to

11 Mr. Bennett?  You asked me to look at pages 36 and 37.

12 I don't see Mr. Bennett's name on any of those pages.

13 Now, I may have missed it, but --

14      MR. TATE:  It was on the reference, Your Honor,

15 where Mr. Chesney has instructed the witness to answer

16 the question.

17      THE COURT:  I got that part.  I asked you, what

18 is it about this second part that you wanted me to see?

19 And you said pages 36 and 37.  I looked at those pages.

20 There is no reference to Bennett on it.

21      MR. TATE:  That is the recorded conversation.

22      THE COURT:  I know.  There is no reference to

23 Mr. Bennett.

24      MR. TATE:  Not in that conversation; only in the

25 deposition transcript of Mr. Jenkins, Your Honor.

19

1    THE COURT:  Well, why am I looking at this?

2    MR. TATE:  For clarity, for purposes of the tape

3  that was played during the deposition and for the

4  questions, if you had any questions, regarding actually

5  what the tape said.

6    THE COURT:  Yes, but the only question here is

7  what is the factual basis for taking Mr. Bennett's

8  deposition.  And that's what I was trying to focus on.

9    MR. TATE:  On page 286, Your Honor, of the first

10  transcript, Mr. Jenkins finally answered the question

11  regarding Mr. Bennett, regarding making statements,

12  regarding issues of Charlie Ryan and his capabilities,

13  regarding his abilities.

14    THE COURT:  All right.  Anything else?

15    MR. TATE:  I would like to add, based on the

16  evidence and support provided here today, per Rule 26,

17  that the evidence has to do with the claims and

18  defenses in the case, the claims and services have to

19  do with the service engineer's capabilities, the

20  service engineer's competency.

21    THE COURT:  Who made the decision to hire the

22  engineer at issue?

23    MR. TATE:  Who made the ultimate decision?

24  Mr. Ryan, through referral from Mr. Bennett.

25    THE COURT:  All right.  But Ryan made the

20

1  decision on his competence.

2       MR. TATE:  Mr. Bennett filled out a form

3  regarding his capabilities, or Mr. Ryan, when he would

4  consider Donnie Jenkins.

5       THE COURT:  Anything else?

6       MR. HICKS:  If the Court wishes to hear anything

7  else from me, John Hicks, I'm glad to follow up.

8       THE COURT:  Did the District Court in wherever

9  it is, Pennsylvania, rule that information about

10  Bennett's conversation was relevant?

11       MR. HICKS:  Your Honor, my reading of the

12  deposition is that Judge Buckwalter said that he had to

13  reveal that name.  That's all.  The judge didn't rule

14  that the topic of the conversation or that anything

15  Mr. Bennett had to say had anything to do with this

16  case.

17       The only thing the judge said in a conversation

18  held during a break in a deposition by telephone is

19  that he didn't have a record before him, and it seemed

20  like he ought to reveal the name, Your Honor.  He

21  didn't make any ruling at all, and there is no ruling

22  in the record in Pennsylvania, that Mr. Bennett has any

23  knowledge that's discoverable in this case.

24       If I could point one thing out.  Mr. Bennett is

25  an employee of Toshiba.  And if his testimony is so

21

1  important, then the lawyers in Pennsylvania would have

2  an obligation to produce him.  If they objected to

3  that, it seems to me that the appropriate remedy for

4  the parties represented here would be to go to Judge

5  Buckwalter and say, Judge, compel them to produce this

6  man for a deposition.  There is no doubt he is a chief

7  employee.

8       Instead, there is a subpoena issued out of this

9  court.  And I'm faced with, and the Court is faced

10  with, a deluge of information we're trying to sort

11  through and figure out what's appropriate in order to

12  get some relief on this matter.

13       And if this information was truly discoverable

14  and appropriate, and the motives behind it were

15  appropriate, then it seems to me that the appropriate

16  place to address the issue would be Judge Buckwalter,

17  who knows everything about this case.

18       But that's not what happened.  What happened is,

19  a subpoena issued out of this Court, and Mr. Bennett

20  had no alternative but to come to this Court and seek

21  relief.  I haven't heard anything to rebut the

22  affidavit of Mr. -- Mr. Hicks was not present during

23  the hearing.  We went through the same exact issues

24  Judge Buckwalter did.

25       MR. TATE:  Your Honor, one final point.

                                                      22

1        THE COURT:  Yes.

2        MR. TATE:  I will, for the record, state that

3   Mr. Bennett did have relevant information that was

4   discoverable.  That's why he instructed Mr. Chesney to

5   instruct his client, Mr. Jenkins, to answer the

6   question.

7        As far as subpoenaing the client or the witness,

8   I have e-mails dating back to early September asking

9   for this witness to be produced.  It's my understanding

10  in the federal district courts that the district in

11  Philadelphia would not have power to compel

12  Mr. Bennett's testimony or compel him through a

13  deposition.  It would have to be through this district,

14  Your Honor.

15       THE COURT:  I think that that would be true if

16  he were not an agent of the party.  If he was an agent

17  of a party, the Court could require him to appear where

18  the action is pending.

19       MR. TATE:  There was no ill intent or motive as

20  far as subpoenaing.  The parties knew it for two months

21  now.  As far as producing Mr. Jenkins, they have had

22  plenty of notice.

23       THE COURT:  Did you file a motion up there and

24  the District Court denied it?

25       MR. TATE:  No, Your Honor.  No motion to compel

                                                    23

1  has been filed in that district.

2       THE COURT:  I'm going to grant the motion for

3  protective order and quash the subpoena without

4  prejudice to be filed in the District Court in

5  Pennsylvania.  I don't have enough information about

6  this suit to assure the Court that this deposition of

7  Mr. Bennett should be granted.  There no ruling --

8  no order of the court in the Pennsylvania on this issue

9  and the exhibits to which I have been referred are too

10 ambiguous on their face to draw the inference that

11 counsel is asking me to draw.  So I'm going to grant it

12 without prejudice to renew there.

13      If the court up there decides that it doesn't

14 have the jurisdiction or doesn't have the ability to

15 issue it, you could refile it here.  But if you refile

16 it here, I think you should submit a lot more proof

17 than what you've got before the Court now.

18      We'll be in recess for a few minutes.

19

20

21

22

23

24

25

                                                    24

1                        REPORTER'S CERTIFICATE

2

3          I, Peggy G. Turner, Official Court Reporter for

4     the United States District Court for the Middle

5     District of Tennessee, with offices at Nashville, do

6     hereby certify:

7          That I reported on the Stenograph machine the

8     proceedings held in open court on October 9, 2003, in

9     the matter of DELAGE LANDEN, et al v. TOSHIBA, et al,

10    Case No. 3:03-0097; That said proceedings in connection

11    with the hearing were reduced to typewritten form by

12    me; and that the foregoing transcript (pages 1 through

13    24) is a true and accurate record of said proceedings.

14         This the 27th day of October 2003.

15

16

17                        _____
                          Peggy G. Turner, RPR
18                        Official Court Reporter

19

20

21

22

23

24

25

                                                        25