IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DE LAGE LANDEN FINANCIAL SERVICES, INC., <br>     Plaintiff, <br><br> TOSHIBA AMERICA MEDICAL SYSTEMS, INC. <br>     Plaintiff/Intervener, <br><br> v. <br><br> DESOTO DIAGNOSTIC IMAGING, LLC., RANDON J. CARVEL, LYNN T. CARVEL, DELTA RADIOLOGY, P.C. and ZOBAR PROPERTIES, LLC. <br>     Defendants and Counter-Claimants | CIVIL ACTION NO. 2:02CV2810 |

## ORDER

AND NOW, upon consideration of Plaintiff Intervenor Toshiba America Medical Systems, Inc.'s Motion to Compel Discovery Directed to Defendants and for Expedited Relief, and Defendants' response thereto, it is hereby ORDERED that said Motion is DENIED. Moreover, a hearing will be scheduled to assess the amount of sanctions which Defendants are entitled to receive as a result of their attorneys' fees incurred in responding to this Motion.

 

Ronald L. Buckwalter, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DE LAGE LANDEN FINANCIAL SERVICES, INC., <br>      Plaintiff, <br><br> TOSHIBA AMERICA MEDICAL SYSTEMS, INC. <br>      Plaintiff/Intervener, <br><br> v. <br><br> DESOTO DIAGNOSTIC IMAGING, LLC., RANDON J. CARVEL, LYNN T. CARVEL, DELTA RADIOLOGY, P.C. and ZOBAR PROPERTIES, LLC. <br>      Defendants and Counter-Claimants | CIVIL ACTION NO. 2:02CV2810 |

### RESPONSE TO TOSHIBA AMERICA MEDICAL SYSTEMS, INC.'S MOTION TO COMPEL DISCOVERY DIRECTED TO DEFENDANTS AND FOR EXPEDITED RELIEF

This is a relatively simple case that is primarily about expensive, brand-new medical equipment that never worked properly, as evidenced by the more than 200 service calls the equipment required in the 14 months it was operative at Defendant DDI's facility. TAMS' Second Motion to Compel is the latest in the line of TAMS' attempts to avoid that simple fact and transform the undeniable deficiencies of its equipment into the product of some grand plot to manufacture and/or distort evidence by just about everyone involved in this case on Defendants' side, including its principal, her current and former employees, and even her counsel. Now, TAMS admits that the images produced by its equipment were terrible, but implies, not very subtly, that this is because Defendants must have tampered with the images: "Desoto has . . . produced degraded versions of the images taken by the equipment . . ." TAMS' Br. at 6.

This tactic is along the same lines as TAMS' inappropriate Motion for Terminating Sanctions, the gist of which was a preemptive strike that all witnesses that might testify that the equipment was poor must have been tainted by Defendants' "bribery" and "witness intimidation." Let the Court be assured, Defendants did not "degrade" any of the images taken by the equipment and produced to TAMS. TAMS' characterization is very telling. Rather than acknowledge any fault, TAMS insists that Defendants needed an "ulterior motive" (TAMS Br. at 10) to rescind a deal that would have otherwise cost millions of dollars for deficient medical equipment that produced what TAMS' itself describes as "degraded images."

Also significant, and consistent with TAMS' approach, is the outlandish depths to which TAMS will reach to avoid the simple facts of this case. Perhaps defining the phrase "fishing expedition", most of the focus of this Motion is TAMS' outrageous request for the Court's imprimatur on TAMS' efforts to prove that Defendants are "bank robbers" who are committing "Medicare fraud": "The issue of whether Desoto's practice includes regular over-billing is crucially relevant to a number of issues in this case. . . . To the extent TAMS is able to show that Defendants' 'profits' are in fact the result of revenues to which Desoto was not lawfully entitled . . . the loss of such 'profits' cannot constitute legally cognizable damages any more than could the loss of an opportunity to rob a bank." TAMS Br. at 7; *see also id.* at 5-8 (requesting information on such "issues" as claim forms submitted to third parties, requisition forms from referring physicians, dictation reports showing the reason for procedures, so-called "unnecessary procedures" and alleged "over-billing"); *id.* at 10 (suggesting that Defendants had an "ulterior motive" to "evad[e] lawfully incurred cost"); *id.* at 11 (Request No. 22 seeks documents TAMS' states are "necessary for the purpose of determining whether Desoto was operating pursuant to proper procedures"). Defendants are not even claiming lost profits in this case, as Defendants

have repeatedly made clear to TAMS. TAMS' comparison to bank robbery and allegations of illegal behavior is beyond any justifiable bounds of advocacy, and must cease. Unlike TAMS' Motion, this truly is a matter requiring immediate and expedited consideration.

TAMS' blatant efforts to sully Dr. Carvel, her business and her counsel simply must stop, and Defendants must be able to recover the sums it has had to incur in responding to these incessant attacks. This Motion is directed principally at requests for documents that only could go to TAMS' absurd, and insulting claims for which TAMS has admitted it has no proof. Interestingly, TAMS claims that this Motion required expedited relief, yet offered no explanation other than that it was required because of the impending deadline for expert disclosures. TAMS Br. at 8 ("Given the impending deadlines, the *immediate* production of [documents that might purportedly support TAMS' claims of over-billing by Dr. Carvel] is critical." (emphasis in original). Leaving no doubt that it has no intention of litigating this case on an honorable level, TAMS provided only one purported expert report, and that was the report of a Claudia Murray, who wrote that, if she were to receive additional documents (including those sought by this frivolous Motion), she could opine that Defendants Dr. Carvel and DDI committed Medicare and/or insurance fraud. TAMS offered no other experts: Medicare fraud is a large part of their case. *See* TAMS Br. at 7 ("The issue of whether Desoto's practice includes regular over-billing is crucially relevant to a number of issues in this case.") Defendants ask that the Court deny this Motion and require TAMS to pay the attorneys' fees and costs Defendants have had to incur responding to it, so that the parties can focus on the issues that are properly in this case, rather than all of the wild theories TAMS seems intent on pursuing in the hopes that it might inflict harm on Dr. Carvel for rejecting equipment that TAMS admits produced "degraded images."

I. **TAMS' ATTORNEYS HAVE <u>AGAIN</u> ATTEMPTED TO MISLEAD THE COURT AS TO THE FACTS AND CLAIMS IN THIS CASE IN ITS SELF STYLED INTRODUCTION AND FACTUAL BACKGROUND.**

As has become commonplace for TAMS in its recent pleadings, TAMS has misstated several material portions of the facts in its self-titled "Introduction and Factual Background." The truth as to TAMS' and DLL's involvement in this case is properly and particularly set forth in Defendants/Counterclaimants Amended Affirmative Defenses and Counterclaims and Exhibits thereto already filed in this Court and will not be repeated here, except to the extent that Defendants categorically deny TAMS' mischaracterization of the facts of the case, in particular TAMS' statements that "As this Court is by now well aware from previous filings, this case arises out of the breach by Defendant DeSoto Diagnostic Imaging, LLC of a lease covering a variety of medical diagnostic imaging equipment" and "DeSoto and the guarantor defendants breached their obligations under the Lease…"

II. **DEFENDANTS HAVE PROPERLY OPPOSED TAMS' OBJECTIONABLE DISCOVERY REQUESTS**

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that parties may obtain discovery regarding relevant, non-privileged matters. Further, the Federal Rules of Evidence provide that relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of an action more probable or less probable than it would be without the evidence. F.R.E. 401. TAMS fails to recognize that its discovery requests directed outside of the issues presented in the complaint, intervenor-complaint, and defendants' counterclaims and affirmative defenses, no matter how framed, simply fail to meet the minimum requirement of relevancy and as such are objectionable, and are simply not part of some

diabolical scheme on the part of the defendants to "conceal highly relevant discovery" as professed in its motion.

### A. TAMS is already in possession of Documents that Reflect the Use of the Equipment (Requests Nos. 1, 2, 25, 26 and 27).

As has become readily apparent through the course of discovery, TAMS requests are directed not at the actual claims and defenses in this matter, but rather at bolstering its preposterous claims of Medicare or insurance fraud which, by the way, it does not even have standing to raise. As defendants have previously stated, and continue to maintain, this is a case about faulty equipment sold to the defendants which failed to perform as promised and the resulting counterclaims against TAMS and DLL for fraud and civil conspiracy, and certainly not about Medicare or insurance fraud. While TAMS is attempting to mislead the Court into believing it needs to "explore its claims and defenses" the facts simply do not support or condone this line of questioning, which are obviously designed for the sole purpose of blackening the reputation of Dr. Carvel and her business.

TAMS has once more shamelessly engaged in providing the Court with half-truths which provide information only to the extent that it benefits TAMS. For example, in its motion to compel, TAMS cites a laundry-list of documents that it states relate to the use of the Toshiba equipment, which, if not explored would seemingly suggest that defendants had simply ignored their responsibility under the Federal Rules of Civil Procedure. That is simply not the case.

### 1. The patient records.

The very nature of this request is such that it seeks records *after* the removal of the Toshiba equipment, which is wholly inconsistent with TAMS' statement that "The captioned requests seek documents that relate to the use of the Toshiba equipment that is the subject matter

6

of this dispute." Clearly, patient or medical records for patients treated at DDI *after* the removal of the Toshiba equipment do not, and inherently cannot, relate in any imaginable way to the use of the Toshiba equipment, and as such are improper and objectionable based in part on relevancy alone. Further, throughout discovery it has been TAMS' position that this information was sought in order to determine the number of times the equipment was used for diagnostic purposes. With the disclosure of approximately 180 compact discs containing every image taken with the Toshiba equipment[1], that information is literally at TAMS' fingertips, and has been since approximately August 25, 2003. As such, defendants also properly objected to this request as being unnecessarily duplicative, yet TAMS has failed to provide the Court with the whole picture, thus defendants have no choice but to laboriously address each and every accusation set forth in TAMS *second* motion to compel.

2.    **The DDI billing records.**

TAMS is attempting to mislead the Court yet again into believing that Defendants have somehow attempted to dodge their discovery obligations, which is simply untrue. In its second motion to compel, TAMS takes issue with Request No. 2, and mentions in passing that it has requested *all* billing records relating to procedures performed by the equipment, as if to insinuate that Defendants have improperly held back relevant documents, which they have not.

Taking the request in its entirety, the Court will see that TAMS' request is, in fact, irrelevant, thus Defendants' objection is proper. In addition to the billing records, TAMS' request enumerates other ancillary documents, such as documents from referring physicians and "documents reflecting any additional procedures ordered by Dr. Carvel". Without waiving their objections to this request, on September 9, 2003, Defendants disclosed over four thousand

---

[1]    Defendants first disclosed 100 cd's on August 19, 2003, and upon completion of the cataloging and burning of the remaining images disclosed an additional 80 cd's on August 23, 2003.

7

(4,000) documents, which represent all of the billing records relating to procedures performed by the equipment. In fact, these documents were hand-delivered to opposing counsel in Memphis, Tennessee after the 30(b)(6) deposition of DDI on September 9, 2003. The remaining categories of documents requested are still objectionable, and completely irrelevant to the claims and defenses in this matter. No matter the connection TAMS' tries to draw between the remaining documents and the documents that have been produced thus far, the fact still remains that TAMS' ill-conceived notion of Defendants' purported Medicare fraud is the only motivating factor behind TAMS' scrambling to get ahold of these documents. In fact, in Request No. 17, TAMS has articulated a more definite purpose for which it intends to use the billing records, which is to calculate the number of times the medical equipment was used for diagnostic purposes. Oddly enough, TAMS did not take issue with the disclosure of DDI's billing records for that purpose, as evidenced by its second motion to compel which does not even mention Request No. 17. Logically then, the billing records disclosed are sufficient for TAMS' intended purpose.

### 3. The DDI annual financial information documents.

It is a far stretch of the imagination to argue that DeSoto's annual financial statements, revenue and profit and loss statements and any other annual compilation of DeSoto's financial information in fact reflect, or have anything to do, with the actual use of the equipment. Again however, in typical form, TAMS asserts an unlikely, not to mention factually inaccurate, argument to the effect that Dr. Carvel has testified under oath that DDI's "financial performance as reflected in its financial records is, therefore pristine" thus arguably, every financial record must be produced to ascertain Dr. Carvel's credibility. Even a cursory search of the deposition transcripts from the five days during which Dr. Carvel testified on behalf of DDI, Delta

Radiology, Zobar Properties and in her individual capacity, reveals that not once did Dr. Carvel even mention the word "pristine", and the dialogue relating to Dr. Carvel's knowledge with regard to DDI's financial performance took place as follows:

> Q: So do you have any knowledge as to which documents even exist relating to financial performance of DeSoto Diagnostic Imaging?
>
> A: I would imagine there are quarterly reports, as well as annual reports, monthly reports, all that sort of accounting stuff available.

See Exhibit "A".

Defendants properly objected to this request based upon the fact that it appears to call for the production of documents that have already been requested in TAMS' First Request for Production of Documents, No. 15, to which Defendants have properly objected in both their discovery response(s) and in response to TAMS' first Motion to Compel. Additionally, on October 16, 2003, TAMS had a subpoena duces tecum issued and served on John May, the Trustee and Certified Public Accountant for the Defendants whereby it requested the production of sensitive, confidential financial information concerning the Defendants and other entities unrelated to this litigation. In its Motion to Quash, Defendants agreed to permit the production of all Tax Returns which pertain to the Defendants for the calendar years 1999 through the present, so long as the requested documents are designated "confidential" and are produced pursuant to the terms of an agreed Confidentiality Stipulation and Protective Order, and noted that the tax returns for DDI have already been produced.

In addition to its duplicative nature, this request improperly seeks the production of confidential and privileged information regarding the private business concerns of entities whose financial or taxable matters are in no way relevant to the claims, issues and allegations involved in the pending litigation, particularly in light of the fact that punitive damages against the

9

Defendants are not an issue in the pending litigation. Simply put, TAMS has failed to show any proper justification for its request and thus, Defendants stand by their objections.

    4.    **The Lynn T. Carvel, PLLC billing, financial and miscellaneous documents.**

Defendants have properly, and repeatedly, objected to these overreaching and improper discovery requests. These requests, specifically Nos. 26 and 27, exceed the scope of discovery permitted under the Federal Rules of Civil Procedure, as they seek documents which are not relevant to the subject matter of this action and which are not reasonably calculated to lead to the discovery of admissible evidence. Further, such documents, if released, would cause serious business harm and competitive disadvantage to Lynn T. Carvel, PLLC, an entity <u>that is not a party to this action</u>. Thus, its billing records, financial documents and other miscellaneous documents are wholly irrelevant to this matter. Moreover, Request No. 27 is so broad to fully respond to this request would be unduly burdensome to say the least.

    **B.**    **TAMS cannot legitimately claim entitlement to Documents Relating to the Replacement Equipment (Request Nos. 8(b)(c)(d), 10-12, 18-20).**

This issue has already been addressed in Defendants' Response to TAMS' first Motion to Compel with regard to the capabilities, specifications and features of the replacement equipment, the dates DeSoto contracted to purchase or lease the replacement equipment, complaints regarding the replacement equipment, whether DeSoto has paid all fees owed on the replacement equipment, and the areas in which the replacement equipment exceeds the capabilities, specifications, performance and features of the Toshiba equipment. This motion adds to that list the installation of the replacement equipment, services required on the replacement equipment, and even goes so far as to sneak in a demand for the *billing records* for exams taken from the replacement equipment.

10

As stated in their previous response, although Defendants were forced to replace the malfunctioning Toshiba equipment, it is baffling that TAMS would argue what boils down to the fact that just because Defendants had to replace the poor Toshiba equipment, Toshiba has, for some unarticulated reason, a right to know anything at all about the replacement equipment. Even more baffling is TAMS' self-imposed entitlement to Defendants' sensitive and confidential information.

C.   **Defendants have properly objected to TAMS' remaining document requests.**

TAMS fails to recognize its own shortcomings in drafting its document requests, in that many of the requests are simply so broad, so vague, and so incomprehensible that Defendants would be left guessing at what it is TAMS is really seeking.

1.   **The vague and overbroad requests fail to set forth and describe the items requested to be reviewed with reasonable particularity.**

For example, TAMS Request No. 16 asks for "All correspondence and communications between DeSoto and any third party relating to the Medical Equipment." Defendants properly objected to the relevancy of this request, as well as to the fact that as written, the request clearly and unquestionably fails to set forth and describe the items requested to be reviewed with reasonable particularity as required by Federal Rules of Civil Procedure 34(b). Unfortunately TAMS has made a practice of submitting overbroad requests which could conceivably cover almost anything, making Defendants play guessing games as to what it is TAMS is actually seeking, and then moving to compel the actual documents it was seeking all along without the professional courtesy of narrowing the scope of the request as required by Rule 34(b) prior to filing the motion.

11

The request for production should identify the items to be produced and describe them with reasonable particularity. FRCP 34(b); *In re Kolinsky*, 140 B.R. 79, 87 (Bankr. S.D. N.Y.1992). In addition to Request No. 16, Request Nos. 29, 30, 32 and 34 are more such requests to which Defendants properly objected based upon the fact that the requests failed to meet the requirements of Rule 34(b) and set forth and describe the items requested to be reviewed with reasonable particularity. Moreover, to the extent that these requests are simply incomprehensible, Defendants have properly objected, and cannot respond. These requests pertain generally to documents relating to the "RIS system or information that resides on the RIS system" (No. 29), documents relating to "how the RIS system affected the performance of the medical equipment" (No. 30), documents relating to the "regular quality checks of the equipment and the results of the checks" (No. 32) and documents relating to "generally recognized standards among radiologists" (No. 34), but fail to set forth the items to be produced with reasonably particularity to allow the Defendants to identify documents, if any, in their custody, control or possession which would be responsive to these requests.

**2.   Documents must be in the custody, possession, or control of Defendants for their production to be compelled.**

TAMS' Request No. 31 seeks "all documents that relate to or describe the proper method of starting up, shutting down or operating the Medical Equipment, including without limitation all service, applications or operator's manuals and all protocol books or other notes (including without limitation notes of the kind described by May Vokaty in her deposition) relating to the appropriate protocols or settings to be used for particular purposes." To be subject to discovery, the thing or document must exist in the custody, control or possession of the party on whom the request is served. *Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193, 202 (N.D.

W.Va.2000). Defendants, in their response to these requests (as well as in communications with opposing counsel) have repeatedly confirmed that at the time the medical equipment was removed from DDI, TAMS took all service, applications or operator's manuals and all protocol books or other notes relating to the medical equipment.

      3.    **TAMS must show how the requested documents are relevant in order for their production to be compelled.**

The remaining document requests exceed the scope of discovery permitted under the Federal Rules of Civil Procedure, as the documents sought are not relevant to the matters in the pending litigation. By way of example, TAMS' requests are directed toward DDI's billing practices, communications with AGFA that do not relate to the medical equipment, documents relating to its radiology information system (RIS), and personnel files for every employee of DDI *ever*! TAMS makes a huge leap to argue that this information is compellable, much less discoverable. The simple truth is this: TAMS has improperly based numerous discovery requests on unsubstantiated accusations in the hope of finding particular evidence of wrongdoing to divert the Court's attention away from the true nature of this case, which is that this is a case about faulty equipment sold to the Defendants which failed to perform as promised, and resulting counterclaims against TAMS and DLL for fraud and civil conspiracy. *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1238 (10th Cir.2000) (A party may not base massive discovery requests on nebulous allegations in the hope of finding particular evidence of wrongdoing.)

The rules of discovery are clear: Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. FRCP 26(b)(1). Even more significant is the fact that the 2000 Amendment to Rule 26(b)(1), "signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and

signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." See Advisory Committee Notes to 2000 Amendment to Rule 26(b)(1). It is obvious that TAMS, in waging its unconventional attacks on the Defendants, is clearly attempting to develop claims or defenses outside those set forth in the pleadings, including without limitation its unfounded allegations of Medicare fraud, over-billing for appropriate procedures, and billing for inappropriate or unnecessary procedures, through the use of these discovery requests, thus Defendants' objections are proper and should be sustained.

### III. NO DOCUMENTS WERE WITHHELD ON THE BASIS OF THE ATTORNEY-CLIENT OR WORK PRODUCT PRIVILEGES

TAMS charges Defendants with "highly inappropriate" behavior in failing to identify on its privilege log those documents withheld on the basis of either the attorney-client or work product privileges. Defendants asserted both privileges at the time of their responses to TAMS' discovery requests to avoid any claims of waiver. However, after reviewing all documents, it was determined that, aside from innumerable documents that were created after the commencement of this litigation that are clearly protected by one or both of the privileges (which no party has listed on its privilege log, and which would require an overly burdensome effort with no benefit), there were no documents withheld on the basis of either privilege. TAMS' attacks of "highly inappropriate" behavior are groundless.

### IV. TAMS HAS FAILED TO PROVE ANY PREJUDICE FROM THE ACTIONS COMPLAINED OF

TAMS complains in its second motion to compel that DeSoto's actions have led to "considerable prejudice and hardship" but cites no sustainable injury which it has suffered as a

result of the false allegations that "DeSoto is deliberately withholding the information requested", which Defendants vigorously deny. Moreover, TAMS appears to argue that it had to take the 30(b)(6) deposition of DDI, Dr. Carvel and Randon Carvel "without critical documents", but fails to specify which documents it deems "critical". TAMS' argument is faulty for at least the following reason: this motion, by TAMS' own admission, deals only with TAMS' Third Request for Production of Documents, which was served on the Defendants via mail on August 27, 2003, thus Defendants responses were not due until September 30, 2003. Before Defendants' responses were even due, TAMS had already conducted all the depositions it claims were prejudiced due to a lack of critical documents. The 30(b)(6) deposition of DDI was taken over four days, July 21, 2003, July 22, 2003, September 8, 2003 and September 9, 2003. Dr. Carvel's deposition was conducted on September 16, 2003 and Randon Carvel's deposition was taken on September 17, 2003. It has been TAMS' prerogative to time the scheduling of these depositions exactly as it did, beginning early on in discovery. TAMS should not now be allowed to come back and say it was prejudiced based upon its own decision as to the timing of its scheduled depositions. It is clear that there is no showing of any prejudice at all, especially given that TAMS has conducted these depositions based upon its own timing.

WHEREFORE, for the reasons set forth above, Defendants respectfully request that this Court deny TAMS' Motion to Compel Discovery Directed to Defendants.

Dated: November 6, 2003

By: _____
Kyle P. Tate
for TATE LAW FIRM
9085 Sandidge Center Cove
Olive Branch, MS 38654
(662) 893-8833
(662) 893-8824 facsimile

16

## CERTIFICATE OF SERVICE

I certify that I am this day serving a copy of the attached Response to Toshiba America Medical Systems, Inc.'s Motion to Compel Discovery Directed to Defendants and for Expedited Relief upon the persons and in the manner indicated below:

Service by *first-class mail*, postage prepaid to:

Ms. Rosetta B. Packer
MCCARTER & ENGLISH, LLP
Mellon Bank Center, Suite 700
1735 Market Street
Philadelphia, PA 19103-7501

Mr. John Chesney
Ms. Julianne Peck
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996

_____
William Matthews

Date: November 6, 2003