## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| _____ | : | |
| DELAGE LANDEN FINANCIAL | : | |
| SERVICES, INC., | : | CIVIL ACTION NO. 2:02CV2810 |
| Plaintiff, | : | |
| | : | HON. RONALD L. BUCKWALTER |
| TOSHIBA AMERICA MEDICAL | : | |
| SYSTEMS, INC. | : | |
| Plaintiff/Intervenor, | : | |
| | : | |
| v. | : | |
| | : | |
| DESOTO DIAGNOSTIC IMAGING, | : | |
| LLC., RANDON J. CARVEL, LYNN T. | : | |
| CARVEL, DELTA RADIOLOGY, P.C. | : | |
| and ZOBAR PROPERTIES, LLC | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS AND TO COMPEL DISCOVERY DIRECTEDTO PLAINTIFF DELAGE LANDEN FINANCIAL SERVICES, INC.

Plaintiff DeLage Landen Financial Services, Inc. files this Memorandum of Law in Opposition to the Motion to Compel Discovery filed by Defendants DeSoto Diagnostic Imaging, LLC ("DeSoto"), Randon J. Carvel, Lynn T. Carvel, Delta Radiology, P.C. and Zobar Properties, LLC ("collectively referred to as "defendants").  While termed a Motion for Sanctions and to Compel Discovery, the only specifics provided in DeSoto's motion papers are claimed deficiencies in interrogatory answers detailed in the body of DeSoto's brief.  Plaintiff will respond generally to the contentions regarding sufficiency of plaintiff's document production, and specifically to the claimed deficiencies regarding interrogatory answers.  For the reasons set forth herein, defendants' motion should be denied.

The Complaint in this matter was filed on May 10, 2002, well over a year ago. The underlying facts have been summarized for the Court in connection with various motions presented to the court for determination. For purposes of the motion presently before the Court, the following brief summary is provided in order to place the issues raised by defendants' motion in context.

Defendant DeSoto Diagnostics, Inc. ("DDI") is a Mississippi corporation with a place of business in Olive Branch, Mississippi. Pl.'s Complaint at ¶ 2. On June 9, 2000, through its chief manager, Defendant Lynn T. Carvel ("Lynn Carvel"), DDI signed a Lease Agreement ("Master Lease") to lease certain radiological equipment from Toshiba American Medical Systems ("TAMS" or "Plaintiff/Intervenor. Defs.' Countercl. at ¶ 2. The Master Lease was for a term of 63 months, during which time DDI was to make 60 monthly payments to TAMS. Defendant Lynn Carvel, M.D. reviewed the terms of the Master Lease with counsel before signing it on behalf of DDI.

On June 9, 2000, the day Lynn Carvel signed the Master Lease, she and Defendant Randon J. Carvel ("Randon Carvel") each executed and delivered Personal Guaranties of DDI's obligations to TAMS under the Master Lease. On that same day, Defendants Delta Radiology, P.C. ("Delta") and Zobar Properties, LLC ("Zobar") each also executed and delivered Guaranties of DDI's obligations to TAMS under the Master Lease.

The Master Lease contains detailed terms and conditions as to the lease payments, remedies upon default, choice of law, venue selection provisions[1] and other provisions agreed upon by the parties as part of the Lease. With respect to issues relating to performance of the

---

[1] This Court has already referred to these provisions, including the parties' agreement that Pennsylvania law shall govern any issues arising out of the Lease, in denying Defendants' application for change of venue in a Memorandum Opinion and Order dated December 18, 2002.

PH1: 468721.01

equipment, the Lease is very clear that the lessee will look to TAMS and not the Lessor for recourse.  The Lease provides as follows:

> If the equipment is not properly installed, does not operate as represented and warranted by the Vendor and/or Manufacturer, or is unsatisfactory for any reason, Lessee shall make any claim on account thereof solely against the Vendor and/or Manufacturer and shall, nevertheless, pay Lessor all Lease Payments under the lease and shall not set up against lessee's obligations any such claims as a defense, counterclaim, set off or otherwise . .

Master Lease, Page 1, Paragraph 4.

Prior to the Lease becoming effective and prior to the funding of the purchase price of the equipment by Plaintiff, Defendants certified, in writing, that the equipment specified in the schedules to the Master Lease:

> Has been delivered to and been received by Lessee, that all installation or other work necessary prior to the use thereof has been examined by the Lessee and is in good operating order and condition and is in all respects satisfactory to Lessee, and that the Equipment is accepted by Lessee for all purposes under the Lease.

Exhibit "A" hereto (attached as part of the underlying lease documents attached to Plaintiff's Complaint and Defendants' Amended Counterclaim).

On February 1, 2002, DDI defaulted upon its obligations to Lessor under the lease by failing to make lease payments when due, and also by dismantling and removing the leased equipment prior to the end of the lease term.  DDI claims that the equipment did not function properly, and therefore, it was under no obligation to continue making payments.  Defs.' Countercl. at ¶¶ 21, 23.  DeLage demanded that DDI pay all amounts due and owing under the Master Lease, but DDI refused.  As a result, DeLage filed suit against Defendants.  Pl.'s Compl. at ¶ 14.

Subsequent to DeLage filing suit, TAMS joined the action as an Intervenor Plaintiff. TAMS joined the action for several reasons.  Among these reasons is that a separate agreement

PH1: 468721.01

between TAMS and DeLage provided that, if DDI defaulted, TAMS has recourse obligations to

DeLage.  In addition, TAMS is pursuing claims against DDI relating to the alleged breach of the

terms of the service agreements it entered into with TAMS.

At the heart of plaintiff's complaint is a claim for breach of an equipment lease by

Defendant DDI and breach of guaranty agreements by Defendants Randon Carvel, Lynn T.

Carvel, Delta Radiology, P.C. and Zobar Properties, LLC.

It is not disputed that in the transaction at issue, Defendants dealt with Toshiba America

Medical Systems, Inc. ("TAMS") as the seller of the equipment selected by defendants for its

new imaging facility and with Toshiba America Medical Credit, ("TAMC")which defendants

understood to be the financing arm of Toshiba America Medical systems, Inc.  TAMC was a

private label name used by DLL under its program agreement with TAMS.

The Master Lease Agreement[2](herein the "Lease") is attached as Exhibit "A" to

Plaintiff's Complaint and Defendants' Answer and Amended Counterclaim against DLL  It is the

operative document that defines the contractual relationship between Plaintiff and Defendants.

Pretrial discovery in this matter has been underway for over a year.  From time to time

the parties have agreed to relax the strict time requirements of the court rules with respect to

responses to discovery requests.  Prior to the filing of defendants' motion to compel, to which

this response is submitted, neither plaintiff nor defendants took the position, now taken for the

first time in defendants' motion to compel, that objections to discovery requests have been

waived by reason of their not being asserted within the 30 days provided for in the Federal Rules

of Civil Procedure.  It is well settled that it is within the Court's discretion not to compel

---

[2] The document is entitled "Master Lease Agreement" because it applied to a number of separate schedules of equipment selected by DDI and financed through the lease.

PH1: 468721.01

discovery which is improper, even where objections are technically filed out of time.  See, e.g., Stanley v. Chester County Prison Farm, 1986 WL305(E.D.Pa. 1986).

With respect to the Defendants' request for documents, while a formal response to the document requests was not served until recently, the underlying documents requested were produced previously and have been in the possession of defendants for months.  Defendants have not, as a result, been prejudiced in their pursuit of pre-trial discovery.  Depositions of Patrick Hiney, Dana Pinner, Lisa Sparta, Jake Hornung, and David Begy, all employees of plaintiff, have been noticed and completed by counsel for defendants.

With the foregoing background in mind, plaintiff will now respond to the specifics of defendant's motion.

A.  Motion to Compel Production of Additional Documents.

While defendants' motion purports to seek relief in the form of an order compelling production of documents as well as more complete answers to interrogatories, the motion papers make no effort to demonstrate why and in what respect plaintiff's current response to the document request is inadequate, other than to attach a copy of a letter from defendants' counsel dated October 6, raising purported issues which have no basis in fact, as is demonstrated by the response of plaintiff's counsel attached hereto.  In blatant disregard for their duties under Rule 11 and otherwise to make certain that positions asserted before the court have a reasonable basis, counsel for defendants admittedly "dashed off" a list of purported deficiencies which he then includes in a filing with the Court seeking relief.  Defendants' letter of October 6 is so clearly specious and lacking in substantive merit as to warrant a summary denial of their motion to compel further discovery.  While specifics are set forth in the responsive letter attached hereto, by way of example:

- 5 -

Item (1) is a reference in an email to a statement made by a representative of Toshiba to the effect that Toshiba can produce paperwork to support their position. In fact, Toshiba has produced reams of paper in this litigation which Toshiba contends supports its position in the case. There is nothing in DLL 900 to indicate that DLL is withholding specific documents that have been produced by Toshiba, and it is not.

Item (2) references attachments to emails produced as DLL 910-911. The attachments themselves were produced at DLL 913-915.

Item (3) refers to "multi-page equipment quotations" Numerous quotations of this type have been produced, including, without limitation, documents DLL 1162-1243.

Item (4) In this document there is a reference to a recommendation by <u>TAMS</u> that video tape or still pictures of the equipment be taken. TAMS took numerous photos of the equipment which have been produced. DLL does not separately have any photos or videotapes.

Item (9) demands production of records that were demanded and produced months before.

Plaintiff has responded fully to the claimed deficiencies in its document production, through its responsive letter of November 10, 2003. It has produced all documents that are the subject of the detailed letter from counsel dated October 6, 2003.[3]  Defendants' counsel's letter of October 6, 2003 is attached as Exhibit "B" hereto, with Plaintiff's Responsive letter attached as Exhibit "C". Accordingly, it is respectfully requested that defendants' motion to compel production of documents be denied.

---

[3] To the extent defendants' motion seeks to compel production of documents beyond those outlined in the letter, the motion should be denied both for failure to specify the grounds on which relief is sought and for failure to satisfy the "meet and confer" obligations under the Rules of Court.

PH1: 468721.01

**B.   Motion to Compel More specific Answers to Interrogatories.**

**INTERROGATORY NO. 2(a)**

Defendant correctly points out that plaintiff inadvertently failed to answer interrogatory

subpart (d).  However, a review of the answer to subpart (a) through (c), together with other

discovery produced in the case makes it obvious that the failure to respond was nothing more

than a typographical error, and that the same response should have been given to subpart (d) as

was given to subpart (a0- through (c).  Defendants are aware of the location of the equipment and

are aware that it is not in the possession of DLL.  They are also aware that TAMS has taken

custody of the equipment and has held it since it was deinstalled and removed.  Attached hereto

as Exhibit "D" is TAMS answers to the same interrogatory.  DLL has nothing to add to the

TAMS response.

**INTERROGATORY NO. 3**

Through this interrogatory defendants demand disclosure of all agreements between DLL

and Tokai Financial Services, Inc.  In answer to interrogatory no. 4 (not referenced in

defendant's motion to compel) DLL provided the following information:

> On March 31, 1999 Tokai Bank sold all of the stock of Tokai
> Financial Services, Inc. to DLL USA, Inc. a subsidiary of DLL
> International B.V.  Tokai Financial Services changed its name to
> DLL Financial Services, Inc.

That information, together with the information that there exists no Master Contract

Financing Program Agreement between DLL and Tokai, is all of the information that is

necessary for defendants to defend the claim and pursue their counterclaims.  Tokai changed its

name to DLL Financial Services, Inc. on March 31, 1999 as a result of a transaction in which

Tokai's parent company sold the stock of Tokai to DLL's parent company.  There is and can be

no showing of relevance with respect to agreements between Tokai and DLL preceding March

31, 1999.  After March 31, 1999, there are no agreements between Tokai and DLL by reason of the fact that Tokai is DLL, Tokai having changed its name to DLL as of that date.

The transactions at issue in this case between DLL and defendants occurred in 2000, well after the change of name from DLL to Tokai.

## INTERROGATORY NO. 14

This interrogatory defendant seeks all fictious and assumed names that DLL has used since 1996.  DLL responded to this interrogatory by saying none, except under private label agreements with banks and other vendors.  As is well known from other discovery in this case, DLL regularly participates in program agreements with vendors and manufacturers under which it provides financing under a private label name utilizing the name of the vendor or manufacturer.  In this case DLL utilized the name Toshiba America Medical Credit.  The disclosure of other private label names which DLL has used since 1996 is neither relevant nor reasonably calculated to lead to relevant admissible evidence in this case as it will not in any way bear upon the claim asserted by defendants in this case that DLL and TAMS somehow misrepresented their identify and financial relationship.  Moreover disclosure necessarily would result in an unwarranted and unnecessary disclosure of other customers of DLL with a resulting intrusion into customer relationships having nothing to do with the issues in this case.  Defendants' motion as to this interrogatory should be denied.

## INTERROGATORY NO. 17

Defendants seek to compel the identity of officers and directors of DLL in addition to the date of incorporation and state of incorporation, which was provided.  While in no way relevant to the issues in this case, DLL is willing to provide the information requested and will do so.

- 8 -

**INTERROGATORY NO. 18**

DLL properly responded to this interrogatory by providing information as to the credit fee and the amount paid. Defendants had the opportunity to question DLL's witnesses at length about this fee and the manner in which it was calculated. It was paid pursuant to the terms of the Master Contract Financing Program Agreement as set forth in response to this Interrogatory and to Interrogatory number 22.

**INTERROGATORY NOS. 20, 21 AND 24**

DLL objected to all three of these interrogatories to the extent they call for disclosure of information relating to transactions with customers other than DeSoto on the grounds that the information requested is not relevant and is not reasonably calculated to lead to the discovery of relevant admissible evidence and that responding would be oppressive and burdensome and that the information requested includes private and confidential information concerning other customers of DLL.

DLL is in the business of providing financing to a variety of industries in a variety of contexts. Under the Master Contract Financing Program Agreement with TAMS, DLL has, during the term of that agreement, provided financing to a variety of customers in the medical field, each of whom have provided confidential information to DLL concerning their operations, assets, net worth, and other information necessary to make an informed credit decision. The terms of any agreements reached with those other customers, the amount of payments received from those other customers, and whether and the extent to which DLL has made or received payments to TAMS in connection with these other transactions is totally irrelevant to the issues in this case which are governed by the Master Lease Agreement between DLL and plaintiff. Plaintiff's effort to go on a broad ranging fishing expedition should not be countenanced by this Court. DLL's objection is well founded and should be permitted to stand.

PH1: 468721.01

**INTERROGATORY NO. 27**

The amount of DLL's alleged "unrecovered investment" pursuant to the Master Financing Program Agreement is not relevant in this case. The program agreement provides for three types of financing, Type I, Type II and Type III. Type I and Type II, not used in this case, provide for a calculation of "unrecovered investment". In this case, the transaction with TAMS was pursuant to a Type III program. No "unrecovered investment" is calculated and provided for under the type of program used for this transaction. Even if an "unrecovered investment" calculation were appropriate for this transaction (which it is not), it has no bearing on plaintiff's claims against DeSoto or DeSoto's claims against plaintiff as the calculation is for purpose of detailing the level of recourse available to DLL from TAMS.

    C.  **Defendants' Request for Sanctions**

Although entitled a motion for sanctions and to compel discovery, defendants' motion papers and proposed form of order do not seek sanctions. To the extent defendants' motion can be read to be asking the Court to award sanctions as part of the relief sought, it is respectfully requested that no sanctions be imposed in light of the good faith response to the discovery that is the subject of this motion and the lack of merit to the contentions advanced by defendants.

**CONCLUSION**

For the foregoing reasons, it is respectfully requested that defendants' Motion for Sanctions and to Compel Discovery be denied.

               Respectfully submitted,

               **McCarter & English, LLP**

               _____
               Peter J. Boyer (Attorney ID No. 25517)
               Rosetta B. Packer (Attorney ID No.28357)
               McCarter & English, LLP
               Mellon Bank Center

PH1: 468721.01

1735 Market Street, Suite 700
Philadelphia, PA 19103

Attorneys for Plaintiff
De Lage Landen Financial Services

Dated: November 10, 2003

## CERTIFICATE OF SERVICE

I, Peter J .Boyer, Esquire, the undersigned, hereby certify that today I caused a true and correct copy of the within **Memorandum of Law in Opposition to Defendants' Motion for Sanctions and to Compel Discovery Directed to Plaintiff DeLage Landen Financial Services, Inc.** and this Certificate of Service to be served upon counsel of record by facsimile and first-class United States Mail, postage prepaid, at the following addresses:

>Kyle P. Tate
>TATE LAW FIRM
>9085 Sandidge Center Road
>Olive Branch, MS 38654
>
>William Matthews, Esquire
>SAUL EWING LLP
>Centre Square West
>1500 Market Street, 38th Floor
>Philadelphia, PA 19102
>
>John Chesney, Esquire
>Drinker Biddle & Reath, LLP
>One Logan Square
>18th & Cherry Streets
>Philadelphia, PA 19103

Dated:  November 10, 2003        _____

>Peter J. Boyer