**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DE LAGE LANDEN FINANCIAL SERVICES, INC., | : <br> : <br> : |
| Plaintiff, | : <br> : |
| TOSHIBA AMERICA MEDICAL SYSTEMS, INC., | : <br> : <br> : |
| Plaintiff/Intervenor, | : <br> : |
| v. | : <br> : |
| DESOTO DIAGNOSTIC IMAGING, LLC, RANDON J. CARVEL, LYNN T. CARVEL, DELTA RADIOLOGY, PC and ZOBAR PROPERTIES, LLC, | : <br> : <br> : <br> : <br> : |
| Defendants and Counter-Claimants. | : <br> : <br> : |

CIVIL ACTION NO. 2:02CV2810

**ORDER**

AND NOW, this _____ day of _____, 2004, upon consideration of Defendants' Motion to Compel Discovery Directed to Toshiba America Medical Systems, Inc., and any response thereto, it is hereby ORDERED that the motion is GRANTED. All of Plaintiff/Intervenor's objections are deemed waived. Within fourteen (14) days of the date of this ORDER Toshiba America Medical Systems, Inc. shall provide Defendants with the requested documents with the indicated particularity as outlined in Defendants' request for documents, and clarified in Defendants' present motion.

It is further ORDERED that where Plaintiff/Intervenor Toshiba America Medical Systems, Inc. determines there are no responsive documents to Defendants' requests,

-2-

Plaintiff/Intervenor shall affirmatively so state in their formal response to Defendants' document request.

BY THE COURT:

_____
Ronald L. Buckwalter, U.S.D.J.

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DE LAGE LANDEN FINANCIAL SERVICES, INC., : : : Plaintiff, : : TOSHIBA AMERICA MEDICAL SYSTEMS, INC., : : : Plaintiff/Intervenor, : : v. : : DESOTO DIAGNOSTIC IMAGING, LLC, : RANDON J. CARVEL, LYNN T. CARVEL, : DELTA RADIOLOGY, PC and : ZOBAR PROPERTIES, LLC, : : Defendants and Counter- : Claimants. : | CIVIL ACTION NO. 2:02CV2810 |

### DEFENDANTS' MOTION TO COMPEL DISCOVERY DIRECTED TO TOSHIBA AMERICA MEDICAL SYSTEMS, INC.

Defendants and Counter-Claimants, DESOTO DIAGNOSTIC IMAGING, LLC, RANDON J. CARVEL, LYNN T. CARVEL, DELTA RADIOLOGY, P.C. and ZOBAR PROPERTIES, LLC, by and through their undersigned attorneys, hereby move this Honorable Court pursuant to Federal Rule of Civil Procedure 37 and Local Rule 26.1 to compel Plaintiff/Intervenor Toshiba America Medical Systems, Inc. to provide answers and documents in response to Defendants' Fourth Request for Production of Documents, in the form of Order attached hereto and for the reasons set forth in the accompanying Memorandum of Law.

-2-

                              Respectfully Submitted,

By:   _KT823_____
         Kyle P. Tate
         for TATE LAW FIRM
         9085 Sandidge Center Cove
         Olive Branch, MS 38654
         (662) 893-8833

         Lynanne B. Wescott
         William Matthews
         for SAUL EWING, LLP
         Centre Square West
         1500 Market Street, 38th Floor
         Philadelphia, PA 19102-2186
         (215) 972-7106

         Attorneys for Defendants DeSoto Diagnostic
         Imaging, LLC, *et al*

Dated: January 28, 2004

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DE LAGE LANDEN FINANCIAL SERVICES, INC., : : : Plaintiff, : : TOSHIBA AMERICA MEDICAL SYSTEMS, INC., : : : Plaintiff/Intervenor, : : v. : : DESOTO DIAGNOSTIC IMAGING, LLC, : RANDON J. CARVEL, LYNN T. CARVEL, : DELTA RADIOLOGY, PC and : ZOBAR PROPERTIES, LLC, : : Defendants and Counter- : Claimants. : : | CIVIL ACTION NO. 2:02CV2810 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO COMPEL DISCOVERY DIRECTED TO TOSHIBA AMERICA
MEDICAL SYSTEMS, INC.**

Defendants and Counter-Claimants, DESOTO DIAGNOSTIC IMAGING, LLC, RANDON J. CARVEL, LYNN T. CARVEL, DELTA RADIOLOGY, P.C. and ZOBAR PROPERTIES, LLC, (collectively referred to as "Defendants"), seek to compel responsive answers and documents in response to their Fourth Request for Production of Documents Propounded to Intervenor/Plaintiff Toshiba America Medical Systems, Inc. ("TAMS"). As part of their continuing effort to obtain responses to various discovery requests which are essential to Defendants' claims and defenses in this matter, Defendants file the present Motion to Compel Discovery and accompanying Memorandum of Law. For the reasons set forth below, Defendants

request that this Court strike TAMS' objections and compel TAMS' complete responses to Defendants' discovery requests.

## II. BACKGROUND

### A. TAMS Has Failed To Properly Respond To Defendants' Fourth Request For Production of Documents

On October 29, 2003, Defendants served TAMS with their Fourth Request for Production of Documents via facsimile and by U.S. Mail, a copy of which is attached hereto as Exhibit "A". Due to the fact that TAMS, in its untimely response to Defendants' discovery requests, has objected to each and every request set forth in Defendants' Fourth Request for Production of Documents, in lieu of setting forth each request, and each response thereto verbatim, Defendants have attached copies of Defendants' requests and TAMS' responses as exhibits herein.

In TAMS' sorely overdue responses, which are attached hereto as Exhibit "B", TAMS recites a catalog of blanket objections, including approximately 43 objections that the requests were vague, 33 objections that the requests were not reasonably calculated to lead to the discovery of admissible evidence, 42 objections that the requests were overly broad, 39 objections that the requests failed to describe the documents to be produced with reasonable particularity, and 27 objections that the requests were irrelevant. It is beyond belief that TAMS could legitimately argue that all but two requests propounded by the Defendants are objectionable. What is objectionable, however, is TAMS' complete disregard for the discovery process as demonstrated by its submitting such trivial, generic and repetitious objections which now require court intervention to resolve, while producing not one single document in response to Defendants' present requests.

B.     **<u>Defendants Have Attempted to Resolve This Discovery Dispute</u>**

Pursuant to the Federal Rules of Civil Procedure, TAMS' responses or objections were due on or before November 28, 2003, which was prior to the November 30, 2003 close of discovery as set forth in the September 3, 2003 Stipulation and Order signed by Judge Buckwalter. On November 26, 2003, counsel for TAMS sent a letter to counsel for Defendants, objecting to Defendants' Fourth Requests in their entirety based upon the timeliness of Defendants' requests, although TAMS' objection was misplaced because Defendants' requests were in fact timely. See Exhibit "C". No formal written responses, nor any other objections, were submitted prior to the deadline for responding.

In the interim between Defendants' propounding their Fourth Requests and TAMS' deadline for responding, this Court suspended discovery until after the December 1, 2003 discovery conference. In a letter on December 3, 2003 to counsel for TAMS, counsel for Defendants rejected TAMS' claim of untimeliness for two reasons and requested that TAMS respond no later than December 7, 2003. See Exhibit "D". First, as explained above, TAMS' responses or objections were due without exception on or before November 28, 2003. Second, even if Defendants' discovery requests required TAMS to respond after the close of discovery, which they did not, the Court's acknowledgement that discovery was ongoing removed that alleged barrier to TAMS' responding within the timeframe contemplated by the Federal Rules of Civil Procedure.

Thereafter, on December 4, 2003, counsel for TAMS agreed to withdraw TAMS' sole objection to Defendants' Fourth Requests for Production of Documents as untimely and further agreed to provide Defendants "promptly with such substantive objections to that request as [TAMS] may have." See Exhibit "E" ¶ 5. In an e-mail to counsel for Defendants on December

-3-

24, 2003, TAMS' counsel again promised to provide Defendants with "substantive (instead of just timeliness) objections as a predicate to a meet and confer", and also promised that "We will do that promptly." See Exhibit "F". That same day, and in an effort to keep the discovery process moving forward by avoiding blanket objections from TAMS which would cause unnecessary delay, counsel for Defendants responded to TAMS' attorneys with an e-mail stating, "I want to make sure you… understand Request number #102 and Request numbers #108 and #129 so we can proceed efficiently and you can respond appropriately." See Exhibit "G". Defendants' counsel then proceeded to provide a detailed explanation of what information those requests in particular were seeking.

Counsel for Defendants followed up the December 24, 2003 e-mail with another message on January 8, 2004, stating that since counsel for TAMS failed to respond to that e-mail, it would be assumed that they had no problem understanding those requests, and that he was "hopeful that you will provide a response promptly as previously requested." See Exhibit "H". In so doing, counsel for Defendants was fulfilling the obligatory task of trying to get TAMS to respond to Defendants' discovery requests, and should not be interpreted in any way as an agreement to accept TAMS' untimely objections or responses.

After several exchanges of e-mail correspondence, counsel for TAMS has repeatedly assured counsel for Defendants that the responses would be provided no later than Monday, January 12, 2004. See Exhibit "I". But, by the end of the day, TAMS failed to deliver the responses as promised.

By the time TAMS' formal responses were finally submitted on January 13, 2004, they were long overdue and its substantive objections, which were now being made for the first time, 46 days late, had been waived. That same day, counsel for Defendants responded to TAMS'

recently faxed responses in an attempt to move forward and meet and confer with counsel for TAMS. See Exhibit "J". On Wednesday, January 21, 2004, counsel for Defendants and counsel for TAMS reviewed TAMS' responses, and although the TAMS attorneys promised to provide supplemental responses to certain of Defendants' requests, responses to other relevant requests were flatly denied. The present motion addresses only those requests on which the parties cannot agree and which call for immediate resolution. Defendants specifically reserve their right to address the remaining document requests, if and when TAMS provides the promised supplemental responses, though to date TAMS has provided nothing.

In addition to the untimely nature of TAMS' responses, TAMS' blanket objections now create the undesirable situation whereby Defendants are forced to seek Court intervention, at great expense to Defendants' time and money, to obtain relevant, necessary information to which they are undeniably entitled.

For these reasons and those set forth below, Defendants now move to strike all of TAMS' untimely objections, and to compel TAMS' immediate answers and responses to Defendants' outstanding discovery requests.

### III. ARGUMENT

TAMS has improperly refused to provide relevant information in response to Defendants' Fourth Requests for Production of Documents and in doing so is causing unnecessary delay to the progression of this case. At this point in discovery, TAMS' refusal to provide meaningful responses to clearly relevant discovery requests is seriously hindering the Defendants' ability to proceed with the discovery necessary to resolve this matter, in particular, the 30(b)(6) deposition of TAMS which cannot be conducted without such information. As such, TAMS cannot

unilaterally withhold relevant information and it cannot rely on general, unsupported objections to impede Defendants' ability to obtain relevant discovery to which they are entitled under the Federal Rules of Civil Procedure.

    **A.**    **Defendants Are Entitled to Documents Regarding the Manufacturer of the Equipment (Request No. 102)**

It is Defendants' position, and discovery has begun to reveal, that the medical equipment had a history of problems and the problems that occurred at Defendants' facility were of the same or similar nature of those experienced by other TAMS customers. TAMS has identified in its response to Defendants' Second Interrogatories that the manufacturer of the medical equipment is Toshiba Corporation, Medical Systems Company, 1385 Shimoishigami, Otawara-shi, Tochigi-ken, 329-26, Japan. (Resp. to Int. 24). Defendants seek, with regard to the above-manufacturer of the medical equipment, documents exchanged between TAMS and Toshiba Corporation that would identify the history of problems with the same or similar type of medical equipment used by the Defendants: Toshiba Field Reports; Toshiba Interoffice Memos; Toshiba National Service Support Reports; Toshiba Memos regarding meetings; Toshiba Work Orders; Toshiba "Product Issues"; Toshiba District Support Monthly Reports of Complaints; Toshiba Historical Activity Reports & Summaries; and Hospital Service Reports. This information is relevant to further support Defendants' position, as well as to rebut TAMS' assertion that the poor image quality Defendants complained of was a result of nothing more than operator error and/or lack of operator training.

TAMS also denies having made any material misrepresentations regarding the medical equipments' capabilities before, during and after the sale of the medical equipment to the Defendants, but discovery has shown that, for example, TAMS represented that the medical equipment was capable of providing high image quality at high speeds while remaining simple

and easy to operate. TAMS has, however, disclosed some documents confirming that it had knowledge of some of the problems experienced by the Defendants prior to the sale of the medical equipment to the Defendants, which would evidence that TAMS knew at a minimum that at the time it made those representations the information available to it did not support its assertion. See Torrance Memorial Medical Center v. Toshiba America Medical Systems, Inc., 2002 WL 453913 (Cal.App. 2 Dist.) (Evidence established scienter element of fraud claim alleging manufacturer's lack of intent to perform its contract with buyer because manufacturer knew the cardiac catheterization laboratory equipment did not have clear fluoroscopic image.) Attached hereto as Exhibit "K".

The production of the types of documents identified above exchanged between TAMS and Toshiba Corporation, the manufacturer of the medical equipment as identified through discovery, would bolster Defendants' allegations that TAMS made material misrepresentations to the Defendants. Clearly these documents are relevant and likely to lead to the discovery of admissible evidence, if not representing admissible evidence independently, thus Defendants are entitled to the production of all such documents immediately.

     **B.**    **Defendants Are Entitled to Documents Relating to Third Party Problems or Complaints (Request Nos. 108, 109 and 129)**

TAMS is in the business of selling medical equipment, and it is clear that TAMS has a nationwide, if not worldwide, client base. Defendants seek service reports, field reports, historical activity reports, work orders and complaints or inquiries from other Toshiba customers regarding any problem, malfunction or complaint involving the same or similar type equipment involved in the subject matter of this lawsuit. "Evidence that other buyers, at other sites, had problems with fluoroscopic images and complained to manufacturer was relevant, in action by

buyer of cardiac catheterization laboratory equipment against manufacturer for post-sale fraud." Id. at [16].

Although it is TAMS' position that Defendants' complaints of poor image quality are a result of poorly trained operators and operator errors, this information is undoubtedly relevant to this lawsuit in order to refute TAMS' position. TAMS contends, among other things, that Dr. Carvel did not have DDI's technologists properly trained on the TAMS equipment so as to allow them to optimize its performance. In this instance, documentation regarding the same or similar type complaints regarding image quality from the other TAMS customers is clearly relevant and directly relates to the issues of whether TAMS in fact had knowledge or notice of imaging problems with the medical equipment, whether TAMS made material misrepresentations to Defendants regarding the capabilities of the medical equipment, and whether the same or similar problems occurred with other technicians at other sites, who may have had either more or less training than the technicians at DDI. The Court in Torrence, when faced with a similar situation, found that other buyer's complaints did not constitute hearsay in buyer's action for post-sale fraud, but rather the complaints provided evidence that the manufacturer had notice of imaging problems. Id. at *16.

TAMS has identified in its disclosures, specifically TAMS-233, a list of only 13 other sites with the same or similar type equipment that was at Defendants' facility. In the deposition of a former TAMS sales representative, David Steiff, Mr. Steiff testified that there were situations where, based upon representations from his superiors at TAMS, he believed there were situations where he might have made fraudulent misrepresentations to other customers, including Dr. Donny Owens at St. Francis Hospital, which ultimately "turned that customer against Toshiba." See Exhibit "L". (Dep. of David Steiff, at 181-184). Defendants learned of another

-8-

TAMS customer, Dr. James V. Ferguson, Jr. who also had similar problems with his Toshiba equipment. It is reasonable, then, that TAMS would have documents like the ones listed above, for each of these known TAMS customers, which could then be used to prove or disprove Defendants' position that it was the equipment that was faulty, and not technologist error or lack of training as alleged by TAMS. With records from only 15 sites at issue[1], Defendants' request is certainly reasonable in scope. It is then, perhaps, a fair inference that TAMS, if it had nothing to hide, would not be so determined to withhold such obviously relevant documents.

Clearly, evidence of third party complaints or problems is unmistakably relevant to the Defendants' claims and defenses in this case, and Defendants are entitled to the immediate production of such documents.

### C. Defendants Are Also Entitled to the Remaining Documents Requested

As set forth below, there are several document requests to which TAMS has flatly refused to respond or to produce responsive documents, and as to which production should be compelled:

**Request No. 88:** This request seeks the entire personnel files of only eighteen current and former TAMS employees who have been identified through discovery. These files will reveal whether there were personnel issues with the named employees, problems with the performance of the employees' job duties, disciplinary actions against any of the employees, the employees' qualifications and training, any reasons behind the employees leaving their employment with TAMS, evidence that TAMS' sales personnel engaged in improper sales tactics, and evidence that the Defendants' equipment problems may have been caused by TAMS employees. Given the allegations by TAMS that Defendants' employees are to blame for Defendants' equipment

---

[1] In arriving at only fifteen sites at issue, Defendants are including the thirteen TAMS customers identified in TAMS-233, in addition to Dr. Donny Owens and Dr. James V. Ferguson, Jr.

problems, Defendants are entitled to discovery which would refute those allegations. Information that might bear significantly on the issues in this action are likely to be contained within the personnel files of TAMS employees who were involved in servicing and maintaining the Defendants' equipment. Moreover, it is absolutely ridiculous for TAMS to object to this request on, among other things, grounds that the request is "overly broad, unduly burdensome, irrelevant… and not reasonably calculated to lead to this discovery of admissible evidence." TAMS' objection defies logic, particularly in light of the fact that TAMS sought to compel the same information from Defendants, and to which Defendants produced over fifty employee files in response.

**Request No. 99:** This request seeks information relating to how and when TAMS began marketing its MRI Excelart XG unit, which was the upgraded version of the MRI at DDI. When TAMS sold the Excelart AG unit to the Defendants, they represented to Dr. Carvel that it was "state of the art". Defendants' counterclaims are based, in part, on the fact that TAMS made material misrepresentations with regard to the capabilities of the medical equipment, including the MRI Excelart AG unit. Documents from TAMS relating to its marketing of the Excelart XG unit are relevant to show that at the time TAMS was presenting the Excelart AG as "state of the art", TAMS knew that it was not, in fact, "state of the art" because it had already begun to market the upgraded version of the same equipment, and should be produced without exception.

**Request No. 100:** This request seeks information relating to commissions or compensation paid to TAMS' sales representatives for the sale of the medical equipment to the Defendants, which is directly related to the issue of damages in this case. To the extent that Defendants can show that TAMS fraudulently induced and intentionally misrepresented the capabilities of the medical equipment before, during and after the sale to the Defendants, any of

TAMS' damages, including commissions or compensation paid to TAMS' sales representatives, would be self-imposed and should therefore be considered in reducing the total damages claimed by TAMS.

**Request No. 120:** This request seeks to discover how many Excelart AG units have been in TAMS' inventory since prior to the installation of the medical equipment at Defendants' facility. Again, TAMS made considerable fraudulent misrepresentations with regard to the equipment's capabilities and their ability to provide Defendants with experienced service engineers to resolve Defendants' equipment problems, before, during and after the sale of the equipment to the Defendants. If in fact the evidence demonstrates, as Defendants suspect, that TAMS' inventory of Excelart AG units consisted of only six or seven units nationwide, TAMS' claims that it could provide Defendants with highly trained and capable engineers with specialized training were unsubstantiated and fraudulent. Discovery has already demonstrated that with a base of so few Excelart AG units in the United States there was "no deep well of problems/fixes in which to dip for a quick solution". See Exhibit "M". All such documents are relevant and should be produced.

**Request No. 121:** This request seeks to discover how many service engineers were in fact trained to maintain and service the Excelart AG units. Clearly with a diminutive inventory of MRI Excelart AG units to gain experience upon, TAMS could not provide the Defendants with the local, highly trained and capable service engineers with specialized training on the Excelart AG unit as promised. TAMS and Toshiba Corporation further assured Defendants that there were a number of specialized service engineers available to provide coverage for any particular piece of equipment at all times. This issue of whether or not TAMS had a sufficient number of service engineers who were trained to service and maintain the Excelart AG unit is relevant to

the Defendants' fraud claims as well as their claims of breach of express warranty and negligent misrepresentation, thus TAMS' attempts to withhold such clearly relevant documents should not be condoned. If TAMS claims it had service engineers who were trained to maintain and service the Excelart AG, it should be obliged to produce the relevant documents. If TAMS did not have trained service engineers, it is obliged to affirmatively state so.

> D. **All of TAMS' Objections Have Been Waived Due To TAMS' Untimely Responses**

Rule 34 of the Federal Rules of Civil Procedure states that "the party upon whom the request is served shall serve a written response within 30 days after the service of the request". Failure to object to a discovery request in a timely fashion constitutes a waiver of the objection. See Jet Plastica Ind., Inc. v. Goodson Polymers, Inc., Civ. A. No. 91-3470, 1991 WL 240729, at *1 (E.D. Pa. Nov. 12, 1991) (citations omitted); see also General Accident Insurance Co. of America v. Fidelity Deposit Co. of Maryland, Civ. A. No. 83-3223, 1984 WL 2736, at *2 (E.D. Pa. March 19, 1984).

Because TAMS provided late responses to Defendants' Fourth Request for Production of Documents, this Court should find that TAMS has waived all of its substantive objections. Specifically, TAMS did not serve responses to Defendants' Fourth Requests for Production of Documents until January 13, 2004 – 46 days overdue. Accordingly, all of TAMS' objections are waived and TAMS should be compelled to provide complete responses, without objections, to all of Defendants' discovery requests.

Pleading in the alternative, TAMS has failed to provide relevant information and documents but has also failed to set forth specific reasons, supporting information or affidavits as to why it claims each request is unclear, ambiguous, oppressive and/or unduly burdensome. See Josephs v. Harris Corp., 677 F.2d 985, 992 (3d Cir. 1982) (noting that mere statement by a party

-12-

that discovery sought is overly broad, burdensome, oppressive, vague or irrelevant is not adequate to voice a successful objection). Such blanket objections are simply not sufficient.

> The Federal Courts have held time and again that general objections are not proper and without more are an insufficient basis for refusal to answer. Further it is the obligation of the objecting party to object with particularity so that the Court can ascertain the objectionable character of the discovery request. Failure to meet this obligation may result in waiver of the objections. In light of the broad construction given to discovery requests, the objecting party has a heavy burden to show why discovery should be denied.

Harding v. Dana Transport, Inc. 914 F. Supp 1084 (D.N.J. 1996) (internal citations omitted) (alterations in original). TAMS has not met this "heavy burden" and it should therefore be compelled to respond fully to Defendants' discovery requests.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant Defendants' Motion to Compel and enter an Order in the form provided, compelling TAMS to provide full and complete responses without objection to Defendants' Fourth Request for Production of Documents Directed to Toshiba America Medical Systems, Inc.

Respectfully Submitted,

By:    _KT823_____
       Kyle P. Tate
       for TATE LAW FIRM
       9085 Sandidge Center Cove
       Olive Branch, MS 38654
       (662) 893-8833

-13-

                    Lynanne B. Wescott
                    William Matthews
                    for SAUL EWING, LLP
                    Centre Square West
                    1500 Market Street, 38th Floor
                    Philadelphia, PA 19102-2186
                    (215) 972-7106

                    Attorneys for Defendants DeSoto Diagnostic
                    Imaging, LLC, *et al*

Dated: January 28, 2004

-15-

**CERTIFICATE OF COMPLIANCE**
**WITH FEDERAL RULE OF CIVIL PROCEDURE 26(c)**

I, Kyle Tate, counsel for Defendants and Counter-Claimants, DESOTO DIAGNOSTIC IMAGING, LLC, ("DDI") RANDON J. CARVEL, LYNN T. CARVEL, DELTA RADIOLOGY, P.C. and ZOBAR PROPERTIES, LLC, hereby certify that I have conferred with John Chesney and Julianne Peck, counsel for Plaintiff/Intervenor Toshiba America Medical Systems, Inc. in a good faith effort to resolve the issues raised by the foregoing motion and that we have been unable to resolve the dispute.

```
                          _KT823_____
                          Kyle P. Tate
```

Dated: January 28, 2004

## CERTIFICATE OF SERVICE

I certify that I am this day serving a copy of the attached Defendants' Motion to Compel Discovery Directed to Toshiba America Medical Systems, Inc. and Memorandum of Law in Support upon the persons and in the manner indicated below:

Service by *facsimile and by first-class mail*, postage prepaid to:

Mr. John Chesney
Ms. Julianne Peck
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996

Mr. Peter Boyer
Ms. Rosetta B. Packer
MCCARTER & ENGLISH, LLP
Mellon Bank Center, Suite 700
1735 Market Street
Philadelphia, PA 19103-7501

                                                  _KT823_____
                                                  Kyle P. Tate

Date: January 28, 2004