# Exhibit "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DE LAGE LANDEN FINANCIAL SERVICES, INC., <br><br> Plaintiff, <br><br> TOSHIBA AMERICA MEDICAL SYSTEMS, INC., <br><br> Plaintiff/Intervenor, <br><br> v. <br><br> DESOTO DIAGNOSTIC IMAGING, LLC, RANDON J. CARVEL, LYNN T. CARVEL, DELTA RADIOLOGY, PC and ZOBAR PROPERTIES, LLC, <br><br> Defendants and Counter-Claimants. | CIVIL ACTION NO. 2:02CV2810 |

## FOURTH REQUEST FOR PRODUCTION OF DOCUMENTS PROPOUNDED TO INTERVENOR/PLAINTIFF TOSHIBA AMERICA MEDICAL SYSTEMS, INC.

NOW COME the Defendants, Desoto Diagnostic Imaging, LLC, Randon J. Carvel, Lynn T. Carvel, Delta Radiology, PC and Zobar Properties, LLC, by and through their attorneys, TATE LAW FIRM, by the undersigned attorney, and hereby submit their Fourth Request for Production of Documents to Intervenor/Plaintiff Toshiba America Medical Systems, Inc. ("TAMS").

PLEASE TAKE NOTICE that pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendants Desoto Diagnostic Imaging, LLC, Randon J. Carvel, Lynn T. Carvel, Delta Radiology, PC and Zobar Properties, LLC, through their undersigned attorneys, request that Intervenor/Plaintiff Toshiba America Medical Systems, Inc. respond to the following Request for Production of Documents and serve responses thereto in accordance with the

Definitions and Instructions set forth herein within thirty (30) days after service hereof at the offices of TATE LAW FIRM, 9085 Sandidge Center Cove, Olive Branch, Mississippi 38654.

## DEFINITIONS

1. "Intervenor/Plaintiff," "TAMS," "You" or "Your" refer to the persons and entities to whom this Request is addressed, namely Plaintiff/Intervenor Toshiba America Medical Systems, Inc., and any and all partners, associates, officer, directors, employees, accountants, agents, parent corporations, subsidiaries, affiliates, consultants, advisors, representatives, attorneys and any other person or entity purporting to act on its behalf.

2. "Plaintiff" or "DLL" shall mean De Lage Landen Financial Services, and all of its predecessors, including without limitation, Tokai Financial Services, Inc. Financial Services, Inc., and includes all partners, associates, accountants, parent corporations, subsidiaries, affiliates, consultants, advisors, representatives, officers, directors, employees, agents, attorneys and all other person acting or purporting to act on Plaintiff's behalf.

3. "DDI," "Defendants" or "Defendant" refers to the defendants in this action, Desoto Diagnostic Imaging, LLC, and any and all partners, officers, directors, employees, accountants, agents, parent corporations, subsidiaries, affiliates, consultants, advisors, representatives, attorneys and any other person or entity purporting to act on its behalf.

4. "Parties" refers to all of the Parties to this action defined in paragraphs 1-3, above, including TAMS, DLL and DDI.

5. "TAMC" refers to Toshiba America Medical Credit, and any and all partners, associates, employees, accountants, agents, parent corporations, subsidiaries, affiliates, consultants, advisors, representatives, attorneys and any other person or entity purporting to act on its behalf.

6. "Pleadings" refers to all pleadings filed to date or hereafter by TAMS, DLL and DDI and includes, but is not limited to, the respective Complaints of DLL and TAMS against DDI, the Crossclaim of DLL against TAMS, the Counterclaims of DDI against DLL and TAMS, and each party's respective Answer and Separate Defenses in response to the aforementioned Complaints, Crossclaim and Counterclaims. "Pleadings" shall also include all pleadings and motions filed by any of the parties allowed under Federal Rule of Civil Procedure 7 or any other rules of civil procedure, all defenses and objections filed by any of the parties allowed under Federal Rules of Civil Procedure 12, all counterclaims and crossclaims filed by any of the parties allowed under Federal Rule of Civil Procedure 13, all pleadings brought in connection with the rules governing third-party practice as prescribed by Federal Rule of Civil Procedure 14, and all amended and supplemental pleadings filed under Federal Rule of Civil Procedure 15.

7. The "Master Lease" refers to the Toshiba Master Lease Agreement for certain items of medical and/or radiological diagnostic equipment leased by TAMS, as lessor, to DDI, as lessee, and all related schedules, amendments, agreements and exhibits related thereto, a copy of which is attached to DLL's Complaint as Exhibit A.

8. The "Equipment" refers to those certain items of medical and/or radiological diagnostic equipment described in and covered by the Master Lease.

9. The "Master Contract Financing Program Agreement" refers to the agreement dated July 19, 1996 between DLL's alleged predecessor, Tokai Financial Services, Inc., and TAMS, a copy of which is attached to DLL's Crossclaim Against TAMS as Exhibit A.

10. The "Application Approval Form" refers to the form or agreement dated February 14, 2000, which TAMS executed and delivered to DLL, a copy of which is attached to DLL's Crossclaim against TAMS as Exhibit B.

11. The term "Credit Fees" refers to the fees that TAMS shall be entitled to as defined in the Master Contract Financing Program Agreement.

12. "Remarket" is given the same meaning herein as in the Master Contract Financing Program Agreement and Application Approval Form as defined above.

13. "Person" means any person, and includes persons, corporations, partnerships, associations, joint ventures and other business enterprises or legal entities, and includes both the singular and plural.

14. "Document" shall have the same full meaning as in Federal Rule of Civil Procedure 34 (a) and shall include all writings, drawings, graphs, charts, photographs, phono-records and other data compilations from which information can be obtained and translated, if necessary, by the respondent through electronic devices into reasonably usable form, and further including all the written or printed matter of any kind, including the originals and all non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, including, without limitation, correspondence, affidavits, witness statements of any kind, purchase agreements, buy/sell agreements for assets and or stock, assignments, memoranda, notes, diaries, electronic communications, e-mail, computer disks, magnetic tapes, software, computer information, statistics, letters, telegraphs, minutes, agendas, contracts, reports, studies, checks, statements, receipts, returns, summaries, pamphlets, books, prospectuses, inter-office and intra-office communications, offers, notations or any sort of conversation, bulletins, computer printouts, teletypes, fax, facsimile or telefax, invoices, worksheets and all drafts, alterations, modifications, changes and amendments of any of the foregoing, graphic or manual records or representations of any kind, including, without limitations, photographs, charts, graphs, microfiche, microfilm, videotape, records, motion

pictures, and electronic, mechanical or electric records or representations of any kind, including, without limitation, tapes, cassettes, disks and recordings.

15. Whenever the expression "and/or" is used in the requests that follow, the information called for should be set out both in the conjunctive and the disjunctive, and wherever the information is set out in the disjunctive, it should be given separately for each and every element sought.

16. "Disclosure" shall refer to all documents provided by the Parties in this action.

17. The term "Communication(s)" refers to any face-to-face conversation, telephone conversation, meeting, conference, and/or any other communication by any media or other method of transferring information, including but not limited to any written, taped or recorded communication of any kind, orally, in writing, electronic or by any other manner, at any time or place, and under any circumstance whatsoever.

18. "Employee" means a past or present employee, officer or agent.

19. "Relate to" or "relating to" or any form thereof, shall mean in any way referring to or concerning, directly or indirectly, in whole or in part, the requested subject matter, person, entity, transaction or occurrence and shall include, but is not limited to, the concepts constituting, embodied in, pertaining to, connected to, describing or detailing in any way.

20. The terms "Identify" or "Identification" mean:

  a. When used in reference to a document, state its author(s), sender(s), addressee(s), recipient(s), title or name (or if none, a brief statement of its contents), date and present location(s) or custodian(s);

  b. When used in reference to a person who is a natural person, state his or her full name, employer, present (or last known) position or job title, present (or last known) business and residence telephone numbers and his or her present (or last known) business and residence addresses; and

  c. When used in reference to any entity other than a natural person, state the entity's official name, organizational form, the nature of the business that it conducts, address and telephone number of its principal place of

business, and, if different, the address and telephone number of the location of the entity relevant to the response to any Interrogatory herein.

## INSTRUCTIONS

1. You are to produce all responsive documents within your possession, custody and/or control or in the possession, custody and/or control of your officers, directors, employees, agents, attorneys and all other persons acting or purporting to act on your behalf.

2. Produce each document requested herein with an indication of the particular paragraph or subparagraph hereof to which document is responsive.

3. It is requested that you provide a brief description of the documents, including:

   (a) the date of each such document;

   (b) the number of pages, attachments and appendices;

   (c) the names of its author(s) and/or preparer(s) with an identification by employment and titles of each such person;

   (d) the name of each person who was sent, shown, blind copied, or carbon copied the document, or had access to or custody of the document, together with an identification of each such person;

   (e) the present custodian; and

   (f) the subject matter of the document and in the case of any documents relating to or referring to a meeting or conversation, identification of such meeting or conversation.

4. Each request for a document or documents shall be deemed to call for the production of the original document or documents to the extent that they are in or subject to, directly or indirectly, your possession, custody and/or control or any of your officers, directors, employees, agents or attorneys. In addition, each request should be considered as including all

copies and preliminary drafts of documents that, as to content, differ in any respect from the original or final draft from each other (e.g. by reason of handwritten notes or comments having been added to one copy of a document but not the original or other copies thereto).

5. If any request for documents is deemed by you to call for the production of privileged or work product materials, and such privilege or work product is asserted, identify in writing each document so withheld and provide the following information:

    (a) the reason for withholding the documents;

    (b) a statement of the basis for the claim of privilege, work product or other ground(s) of nondisclosure;

    (c) a brief description of the document, including:

        (i) the date of the document;

        (ii) the number of pages, attachments and appendices;

        (iii) the names of its author(s), or preparer(s) with and identification by employment and title of each such person;

        (iv) the name of each person who was sent, shown, blind copied or carbon copied the document, or had access to or custody of the document, together with an identification of each such person;

        (v) the present custodian; and

        (vi) the subject matter of the document and in the case of any documents relating or referring to a meeting or conversation, identification of such meeting or conversation.

6. If any documents required herein were formerly in your possession, custody and/or control, or have been lost or destroyed, state the following with respect to each and every document:

      (a)    the type of each such document;

      (b)    the subject matter and contents of each such document;

      (c)    the author(s) or preparer(s) of the document, with an identification by employment and title of each such person;

      (d)    each person to whom the original or a copy of the document was sent;

      (e)    the date on which the document was prepared or transmitted; and

      (f)    the date on which the document was lost or destroyed and, if destroyed, the condition of, and the reason for, such destruction and the person requesting and performing the destruction.

7. In accordance with Federal Rule of Civil Procedure 34(b), it is requested that all documents be produced in the form and in the same order within each file in which they existed prior to production and that the file folders, boxes or other containers or bindings in which documents are found also be produced intact, including the titles, labels or other descriptions of each such folder, box or other binding or container. If any documents or data are in electronic form (e.g., computerized data, computer files, e-mails, word processing files, etc.), then a copy of the electronic data shall be provided on a disk or CD-ROM, together with an identification of the program or operating system required to view the data.

8. The request shall be deemed continuing so as to require prompt, further and supplemental production (without further requests by Defendants or their attorneys) if you locate or obtain possession, custody or control of additional responsive documents at any time prior to a hearing or a trial herein.

9. Unless otherwise stated, all requests herein shall be deemed to cover the period of January 1, 1998 to the present.

**REQUEST FOR PRODUCTION**

81. Any and all tape-recorded, video-taped, or otherwise recorded statements among any and all partners, associates, officers, directors, employees, accountants, agents, parent corporations, subsidiaries, affiliates, consultants, advisors, representatives, attorneys and any other person or entity purporting to act on the behalf of TAMS, and the named Defendants, their associates, officers, directors, employees, accountants, agents, advisors, representatives, attorneys and any other person or entity purporting to act on the behalf of the Defendants.

82. All written and oral communications between any director, officer, employee, representative, agent or attorney of Toshiba America Medical Systems, Inc., and any of the parties to this lawsuit, which includes any correspondence, memoranda, e-mails, notes (handwritten, typed or otherwise) affidavits, tape-recorded, video-taped, or otherwise recorded statements, letters, minutes, agendas contracts, reports, studies, checks, statements, receipts, summaries, interoffice and intraoffice communications, ledgers, appointment calendars, offers, notations of any sort of conversations (including without limitation to telephone conversations or meetings), and all drafts, alterations, modifications, changes, or amendments of any of the foregoing, and any and all mechanical, magnetic or electronic recordings or reproductions of any kind of the foregoing

83. All written and oral communications or between any of the directors, officers, employees, representatives, agents or attorneys of Toshiba America Medical Systems, Inc. and third parties including, but not limited to H. Paul King, Harold Paul King, Paul King, or any other witness or possible witness with regard to any of the matters involved in this action, which includes any correspondence, memoranda, e-mails, notes (handwritten, typed or otherwise) affidavits, statements, letters, minutes, agendas contracts, reports, studies, checks, statements, receipts, summaries, interoffice and intraoffice communications, ledgers, appointment calendars,

offers, notations of any sort of conversations (including without limitation to telephone conversations or meetings), and all drafts, alterations, modifications, changes, or amendments of any of the foregoing, and any and all mechanical, magnetic or electronic recordings or reproductions of any kind of the foregoing.

84. All written and oral communications between any director, officer, employee, representative, agent or attorney of Toshiba America Medical Systems, Inc., and any of the parties to this lawsuit, which includes any correspondence, memoranda, e-mails, notes (handwritten, typed or otherwise) affidavits, statements, letters, minutes, agendas contracts, reports, studies, checks, statements, receipts, summaries, interoffice and intraoffice communications, ledgers, appointment calendars, offers, notations of any sort of conversations (including without limitation to telephone conversations or meetings), and all drafts, alterations, modifications, changes, or amendments of any of the foregoing, and any and all mechanical, magnetic or electronic recordings or reproductions of any kind of the foregoing

85. Any and all written, tape-recorded, video-taped, or otherwise recorded statements to be used in this litigation for any purpose whatsoever.

86. Any and all Affidavits or Declarations, signed or unsigned, from any witness, potential witness or third party to be used in this litigation for any purpose whatsoever.

87. Any and all "One Touch" sheets referenced in TAMS' recently disclosed Case Reports.

88. The entire personnel files including but not limited to any and all exit interviews, exit agreements, employment separation agreements, severance agreements, severance packages, employee confidentiality agreements, for Mike O'Barr, Donny Jenkins, Charlie Ryan, Brian Turnbull, Michael Smith, Dan Smith, Greg Stalcup, Greg Zagorski, Ray Ruskowski, Richard

LaRosa, David Bennett, Gene Armstrong, Wendy McDonald, Jesse Jacobs, David Steiff, Scott Albright, Rick Prall and Kevin Smith.

89. Any and all documents relating to or regarding any tests or inspections performed by TAMS of the MRI room at the DDI facility, before the installation of the MRI, during the period in which the MRI was located in the DDI facility and after the MRI was removed from the DDI facilty.

90. Any and all documents relating to or regarding any inspections or tests of the equipment involved in the subject matter of this lawsuit during and after the removal of the equipment from the DDI facility.

91. Any and all documents relating to the removal and storage of the medical equipment that is the subject of the litigation including but limited to the location of storage, the length of time stored at each facility and all actions taken regarding the transportation/shipping of the equipment.

92. Any and all documents relating to the packing and/or crating of the medical equipment removed from the DDI facility.

93. Any and all documents from Plaintiff, DLL, regarding the possible resale and remarketing of the medical equipment.

94. Any and all documents regarding the corporate structure of Toshiba America Medical Systems, Inc., Toshiba, Inc., Toshiba America Credit, and/or Toshiba America Medical Credit, including, but not limited to (a) identification of all former and present corporate officers, directors, and shareholders and/or members; (b) identification of the date and place of incorporation for each entity; (c) the business of Toshiba America Medical Systems, Inc. and its principal place or places of business; (e) information regarding the internal structure or

departmental divisions of each entity; (f) the current status of each entity with regard to standing to conduct business in the State of Mississippi.

95.  Any and all documents relating to Toshiba America Medical Systems, Inc.'s recordkeeping, including Toshiba America Medical Systems, Inc.'s practices with regard to creating and maintaining hard copy and electronic documentation of all aspects of its business or operations and of its dealings and communications with representatives of Defendants or of Plaintiff De Lage Landen Financial Services with regard to any of the matters involved in this action.

96.  Any and all documents relating to Toshiba America Medical Systems, Inc.'s current net worth and the basis for that determination, including but not limited to Toshiba America Medical Systems, Inc.'s most recent (a) state and federal corporate tax returns together with schedules or attachments; (b) annual financial statements; (c) profit and loss statements; and (d) any other annual compilation of Toshiba America Medical Systems, Inc.'s financial information.

97.  Any and all documents regarding Toshiba America Medical Systems, Inc. marketing and advertising campaigns, including but not limited to the use of special marketing sites, national show sites, regional sites and/or a local reference sites in general, and the use of such sites in conjunction with the sale of medical equipment to potential customers.

98.  Any and all documents relating to Toshiba America Medical Systems, Inc.'s marketing strategy and/or plan for the Toshiba MRI Excelart AG unit.

99.  Any and all documents relating to Toshiba America Medical Systems, Inc.'s marketing strategy and/or plan for the Toshiba MRI Excelart XG unit from January 2000 through the present.

100. Any and all documents regarding compensation and/or commission paid to Toshiba America Medical Systems, Inc.'s sales representatives for the equipment involved in the subject matter of this lawsuit.

101. Any and all documents relating to or regarding compensation and/or commission paid by Toshiba America Medical Systems, Inc., its partners, associates, officers, directors, employees, accountants, agents, parent corporations, subsidiaries, affiliates, consultants, advisors, representatives, attorneys and any other person or entity purporting to act on the behalf of TAMS to Paul King.

101. Any and all documents regarding financing of the equipment involved in the subject matter of this lawsuit.

102. Any and all documents regarding the manufacturer of the equipment involved in the subject matter of this lawsuit and all documents regarding the published specifications for the equipment involved in the subject matter of this lawsuit.

103. Any and all documents regarding the owners of the equipment involved in the subject matter of this lawsuit from the time of its manufacture until the present.

104. Any and all documents that relate to Toshiba America Medical Systems, Inc. efforts to obtain FDA approval of the equipment involved in the subject matter of this lawsuit.

105. Any and all documents that relate to Toshiba America Medical Systems, Inc. efforts to obtain American College of Radiology (ACR) accreditation for the equipment involved in the subject matter of this lawsuit.

106. Any and all documents regarding the training, if any, provided by Toshiba America Medical Systems, Inc. to its service engineers regarding the maintenance or other service work performed by Toshiba America Medical Systems, Inc. on the equipment involved in the subject matter of this lawsuit.

107. Any and all documents regarding the training, if any, provided by Toshiba America Medical Systems, Inc. to its applications personnel regarding the maintenance or other service work performed by Toshiba America Medical Systems, Inc. on the equipment involved in the subject matter of this lawsuit.

108. Any and all documents regarding each and every similar occurrence of problems experienced by third parties with regard to the equipment involved in the subject matter of this lawsuit.

109. Any and all documents regarding Imaging Solutions, Inc., James V. Ferguson, Jr. M.D. and Donny Owens, M.D.

110. Any and all documents that relate to Toshiba America Medical Systems, Inc.'s efforts to perform a mechanical shim or an electronic shim.

111. Any and all documents regarding the efforts of Toshiba America Medical Systems, Inc., if any, to remarket the equipment involved in the subject matter of this lawsuit, or to provide remarketing support to the remarketing efforts of De Lage Landen Financial Services, Inc., including but not limited to information regarding the names, addresses, telephone numbers and offers of any individuals or entities with whom Toshiba America Medical Systems, Inc., or any director, officer, employee, representative or agent thereof, including third parties, has been in contact in connection with such remarketing efforts.

112. Any and all documents relating to the fair market value or reasonable commercial value of the equipment involved in the subject matter of this lawsuit as well relating to all actions taken by Toshiba America Medical Systems, Inc., if any, to assess the fair market value or reasonable commercial value of the equipment involved in the subject matter of this lawsuit at any time, including (a) prior to the installation of the medical equipment; (b) after deinstallation of the medical equipment, and (c) any time since the commencement of this litigation.

113.   Any and all documents regarding insurance coverage on the equipment involved in the subject matter of this lawsuit.

114..   Any and all documents regarding all insurance policies that provide any coverage whatsoever for any of the claims, counterclaims or defenses asserted in this lawsuit.

115.   Any and all documents relating to or supporting the contentions and allegations in Toshiba America Medical Systems, Inc.'s Intervenor Complaint that Desoto is in default of the terms and conditions of the Master Lease.

116.   Any and all documents relating to or supporting the contentions and allegations in Toshiba America Medical Systems, Inc.'s Intervenor Complaint that Desoto is in default of the terms of the service agreements.

117.   Any and all documents relating to or supporting the contentions and allegations in Toshiba America Medical Systems, Inc.'s Intervenor Complaint that Desoto accepted and received benefits of the maintenance and services provided by Toshiba America Medical Systems, Inc. for leased equipment and has been unjustly enriched thereby.

118.   Any and all documents relating to each and every aspect (including quantification of the amount) in which Toshiba America Medical Systems, Inc. claims that it has suffered economic damage or other legally compensable injury purportedly attributable to the Defendants.

119.   Any and all documents relating to Toshiba America Medical Systems, Inc's efforts to mitigate any damages or injury that it claims it has suffered purportedly attributable to the Defendants.

120.   Any and all documents relating to Toshiba America Medical Systems, Inc.'s inventory of Toshiba MRI Excelart AG units at the time (a) prior to the installation of the

medical equipment; (b) after deinstallation of the medical equipment, and (c) any time since the commencement of this litigation.

121. Any and all documents relating to the number of Toshiba America Medical Systems, Inc. service engineers trained to perform maintenance or other service work on the Toshiba MRI Excelart AG unit and other equipment that is the subject of this litigation (a) prior to the installation of the medical equipment; (b) after deinstallation of the medical equipment, and (c) any time since the commencement of this litigation.

122. Any and all documents relating to or regarding the profit generated by Toshiba America Medical Systems, Inc. resulting from the sale, at any time, of the equipment involved in the subject matter of this lawsuit.

123. Any and all documents relating to or regarding the amount of TAMS or De Lage Landen Financial Services, Inc.'s unrecovered investment pursuant to the Master Contract Financing Program Agreement.

124. Any and all documents regarding and identifying Masamichi Katsurada's as President of TAMS from July 1, 1996 to June 16, 1999; Any and all documents regarding Masamichi Katsurada's duties as President of TAMS July 1, 1996 to June 16, 1999; Any and all documents regarding Masamichi Katsurada's employment history from July1, 1993 to July 1, 1996 and from June 16, 1999 to the present.

125. Any and all documents regarding and identifying any common interest or interests between or among Toshiba America Medical Systems, Inc. and Toshiba America Medical Credit, Toshiba America Credit, Toshiba, Inc., De Lage Landen Financial Services, Inc., Tokai Financial Services and/or Rabobank.

126. Any and all documents regarding any joint defense agreement and/or common interest agreement or any other agreement whatsoever between Toshiba America Medical Systems, Inc. and De Lage Landen Financial Services, Inc. with respect to this litigation.

127. Any and all documents relating to Toshiba America Medical Systems, Inc.'s most recent (a) state and federal corporate tax returns together with schedules or attachments; (b) annual financial statements; (c) profit and loss statements; and (d) any other annual compilation of Toshiba America Medical Systems, Inc.'s financial information.

128. Any and all documents relating to De Lage Landen Financial Services, Inc.'s purchase of all of Toshiba America Medical Systems, Inc. right, title and interest in the Master Lease Agreement and/or guaranties

129. Any and all documents relating to complaints or inquiries from third parties regarding the same or similar type equipment involved in the subject matter of this lawsuit.

Respectfully Submitted,

By: _____
Kyle P. Tate
for TATE LAW FIRM
9085 Sandidge Center Cove
Olive Branch, MS 38654
(662) 893-8833
(662) 893-8824 facsimile

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that the foregoing has been served upon the attorney of record for all other parties in this proceeding and upon parties not represented by attorneys by telefax or by delivering a copy of this pleading to the attorney or party personally, or to the offices of such attorney or party, or by placing a copy in the U.S. Mail addressed to such attorney or party named below at his office with sufficient prepaid postage on this 29th day of October, 2003.

Mr. John Chesney
Ms. Julianne Peck
DRINKER BIDDLE & REATH, LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103-6996

Ms. Rosetta B. Packer
MCCARTER & ENGLISH, LLP
Mellon Bank Center, Suite 700
1735 Market Street
Philadelphia, PA 19103-7501

_____
Kyle P. Tate

TRANSMISSION VERIFICATION REPORT

```
                                    TIME    : 10/29/2003 19:26
                                    NAME    :
                                    FAX     : 6629962102
                                    TEL     : 6629962102
                                    SER.#   : BROC3N806452
```

```
DATE,TIME         10/29  19:22
FAX NO./NAME      912159802757
DURATION          00:04:11
PAGE(S)           20
RESULT            OK
MODE              STANDARD
                  ECM
```

01/27/2004  11:57   6629962102                    PAGE  03/03