**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| DELAGE LANDEN FINANCIAL SERVICES, INC., | : : : | |
| Plaintiff, | : : | |
| TOSHIBA AMERICA MEDICAL SYSTEMS, INC. | : : : | |
| Plaintiff/Intervener, | : : | |
| v. | : : | CIVIL ACTION NO. 2:02CV2810 |
| DESOTO DIAGNOSTIC IMAGING, LLC., et al. Defendants and Counter- Claimants | : : : : | |

## **ORDER**

**AND NOW**, upon consideration of Toshiba America Medical Systems, Inc.'s Motion for Protective Order and Defendants' Response thereto, it is hereby **ORDERED** that the Motion is **DENIED**.

**BY THE COURT:**

_____
**Honorable Ronald L. Buckwalter**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DELAGE LANDEN FINANCIAL SERVICES, INC., <br>                 Plaintiff, <br><br> TOSHIBA AMERICA MEDICAL SYSTEMS, INC. <br>                 Plaintiff/Intervener, <br><br> v. <br><br> DESOTO DIAGNOSTIC IMAGING, LLC., et al. <br>                 Defendants and Counter-Claimants | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CIVIL ACTION NO. 2:02CV2810 |

**RESPONSE TO TOSHIBA AMERICA MEDICAL SYSTEMS, INC.'S
MOTION FOR PROTECTIVE ORDER**

Defendants, Desoto Diagnostic Imaging, LLC, Randon J. Carvel, Lynn T. Carvel, Delta Radiology, PC and Zobar Properties, LLC, by and through their undersigned attorneys, hereby submit their Response to Toshiba America Medical Systems, Inc.'s Motion for Protective Order.

**I.**     **INTRODUCTION**

This is a case that is principally about faulty medical equipment that Defendant Desoto Diagnostic Imaging leased from Toshiba America Medical Systems ("TAMS"). The main dispute between Defendants and TAMS has been whether the equipment was defective. The discovery sought by the subpoenas that are the subject of this Motion is information from other facilities concerning the performance of equipment that was the same or similar to the equipment TAMS supplied to Defendants. TAMS telecopied a copy of their Brief, lacking

exhibits, to defense counsel at nearly 8:00 p.m. on the Friday before the holiday weekend, and, notwithstanding TAMS' counsel's Certificate of Service, did not serve a copy of the exhibits to their brief until late in the morning on Presidents' Day (and only after requested by defense counsel).

TAMS has produced documents in this case disclosing that there were some inherent problems with the type of equipment supplied to Defendants. TAMS also kept a Products Issue List on which TAMS would keep track of problems experienced with its various types of equipment. TAMS has yet to product that list. TAMS' Motion, which attempts in particular to quash a subpoena issued in the Middle District of Florida[1] setting a deposition for February 17 and in general moves to quash all subpoenas issued in other states as well, fails to address the relevancy of the discovery sought, and instead unfairly charges Defendants with both trying to drag TAMS' customers into this action and with violating a Court Order. Tellingly, TAMS did not attach or quote the Order it relies on, but referred to one of defendants' Requests for Production denied by this Court which is not related to the dispute at hand. Discovery related to the historical performance of the same or similar Toshiba equipment is certainly relevant in this case, and is the same type of evidence that was critical to a California decision against TAMS on nearly identical issues.[2]

---

[1] In connection with a subpoena issued to David Bennett, TAMS argued that this Court had no jurisdiction over subpoenas not issued from this Court.

[2] Defendants are appalled by TAMS' misleading complaints of supposedly "unethical" behavior by defense counsel, but will restrict itself to discussing the discovery issues raised by the Motion. Defendants posit, however, that TAMS' attorneys' fees, of which TAMS complains, would likely be significantly lower if TAMS would focus on the claims and defenses, rather than on vicious personal attacks on counsel. For the record, Defendants categorically deny all charges of misconduct.

## II. ARGUMENT

### A. TAMS Has Reversed Positions on This Court's Power Concerning Out-of-State Subpoenas.

TAMS' proposed Order asks this Court to quash all subpoenas issued by Defendants to third-party TAMS customers, without regard to where the subpoena may have been issued, or the Court's jurisdiction to do so.  This position stands in stark contrast to TAMS' Brief opposing Defendants' efforts to take the deposition of David Bennett, in which TAMS argued that the Federal Rules of Civil Procedure prevented this Court from enforcing a subpoena issued from the Middle District of Tennessee.  *See, e.g.*, TAMS Mot. to Vacate Dep. Notice of Bennett at 6-7.  Indeed, TAMS cited *In re Digital Equipment Corp.*, 949 F.2d 228 (8th Cir. 1991) for the proposition that only the Middle District of Tennessee could compel Mr. Bennett's deposition.  Moreover, TAMS' parenthetical description of the holding in *In re Digital Equipment* expresses that this Motion asks this Court to do something it cannot:  rule on something over which other courts have "exclusive jurisdiction."[3]  TAMS' Mot. to Vacate Dep. Notice of Bennett at 7.  TAMS prevailed on the issue of the deposition of Mr. Bennett, yet now takes a completely contrary position, without explanation.[4]

---

[3]   Aside from the Eastern District of Pennsylvania, the courts which issued the subpoenas at issue in this Motion are from the district courts for the following districts:  Western District of Tennessee, Southern and Eastern Districts of New York, District of Utah, District of Oregon, Northern District of Illinois, Middle District of Florida, District of New Jersey, District of Nebraska, and District of Connecticut.  *See* TAMS' Exhibit F.

[4]   TAMS also fails to explain the emergency nature of this Motion.  TAMS admits that the subpoenas were "issued in early December, 2003."  TAMS Br. at 3.  Defendants agreed to suspend enforcement of those subpoenas until such time as defense counsel provided 5 days notice of the intent to move forward, as stated by TAMS.  TAMS failed to mention, however, that defense counsel provided notice that it would seek to enforce those subpoenas in an e-mail dated January 30, 2004.  Exhibit A.  That TAMS waited 2 weeks to file a Motion does not create the need for emergency consideration.

**B.     The Evidence Defendants Seek Will Tend to Show Whether it is More or Less Likely That the Equipment TAMS Provided Was Inherently Defective.**

It is axiomatic that the scope of discovery is purposefully broad and that information may be deemed relevant for purposes of discovery even if not admissible at trial. Defendants wish to discover whether other facilities that had the same or similar Toshiba equipment as Defendants experienced problems with the equipment similar to some of the many problems Defendants encountered with respect to its equipment. Performance of the equipment is plainly one of the main issues in this case, and Defendants are entitled to test their theory that the equipment supplied by TAMS was inherently defective.

As evidenced by TAMS' own documents, TAMS keeps a "Product Issue List" that is apparently a list of the issues it encounters with respect to its equipment. *See* Exhibit B ("The bucky trays [that were a problem at Desoto] were recently added to the Product Issue List published by California.") The fact that TAMS maintains such a list not only shows that TAMS saw a possible connection between the problems at one facility and the problems at another facility, it also demonstrates that producing evidence of the problems at other facilities is not difficult or overly burdensome for TAMS to accomplish. TAMS has not produced this list in discovery.

Though not mentioned by TAMS, evidence of complaints and problems at other facilities was not only discoverable, but indeed was admissible and critical to the decision of a California state court action against TAMS. *See Torrance Memorial Med. Ctr. v. Toshiba America Medical Sys., Inc.,* 2002 Cal. App. Unpub. LEXIS 2678, (March 26, 2002) (a copy of this decision is attached hereto as Exhibit C). *Torrance Memorial*, like the instant case, arose from a transaction in which a medical facility received expensive medical equipment from TAMS that failed to perform properly. After years of false promises from TAMS that it would

fix the recurring problems, the customer filed a complaint against TAMS. In the face of arguments from TAMS that, *inter alia*, the trial court erred in allowing evidence of "complaints and problems at other sites and with other similar equipment", *id.* at *46-47, the California Court of Appeals affirmed a jury verdict in favor of the customer for nearly $2 Million. The Court ruled that this "evidence was properly admitted as proof that Toshiba was aware of fluoro imaging problems with its products." *Id.* at *47.

Defendants believe that that decision to admit evidence of complaints and problems from other facilities with the same or similar equipment is sound. Similar evidence in this case would be not only discoverable, but also admissible with respect to several issues in this case, including but not limited to those relating to the performance of the equipment, TAMS' service, TAMS' fraud and TAMS' violation of the Tennessee Consumer Protection Act. At this stage of discovery, Defendants maintain that this information, which has already been found to be critical at a trial involving faulty medical equipment supplied by TAMS, is, at a bare minimum, discoverable.

C.    **TAMS Did Not Focus on the Court's Order, with Good Reason**.

TAMS argues that the issues it attempts to place before the Court have somehow already been the subject of an Order by this Court. If this were indeed true, TAMS presumably would have attached such an Order to its pleading, and quoted the Order at great length. Tellingly, neither happened. Instead, TAMS made statements, often without any citation to anything, that the Court has barred Defendants from uncovering the damning evidence that the equipment TAMS supplied to Desoto was inherently defective, and failed at other facilities across the country as well. On only one occasion did TAMS offer even a glimpse into what Order they were discussing, and that occurred on page 6 of their Brief: "Thus, the Court denied DeSoto's request (Document Request No. 13) to delve into the particulars of unrelated customer

relationships." TAMS Br. at p.6. Conspicuously, TAMS did not then quote, or even discuss, Defendants' Document Request No. 13, or the Order entered in connection with it. The reason is clear: Document Request No. 13 does not seek documents or testimony from third party customers of TAMS, and is not nearly as far-reaching as TAMS apparently hopes. The full text of Document Request 13, and TAMS' response, is set forth below:

> 13. Produce any and all documents relating to any agreements entered into between TAMS and DLL, wherein TAMS assigned all of its right, title and interest in and to various equipment leases, including the lease between TAMS and DDI, as well as the Guarantees executed by the guarantor defendants as stated in Memorandum of Law in Support of TAMS' Motion to Intervene as Additional Party Plaintiff on page 3 paragraph 1.
>
> **RESPONSE:**
>
> TAMS objects to this Request as irrelevant to the extent that it does not relate to the lease of equipment to DeSoto. To the extent that it does relate to the lease of the equipment to DeSoto TAMS nevertheless objects to this Request on the ground that it is irrelevant. TAMS further objects to this Request as vague and overbroad in that it fails to set forth and describe the items requested to be reviewed "with reasonable particularity" as required by Federal Rule of Civil Procedure 34(b), and on the ground that it is duplicative of Request Nos. 8, 9 and 10 above. TAMS repeats and incorporates by reference as if fully set forth herein its responses to Request Nos. 8, 9 and 10.

Exhibit D.

A simple reading of the request on its face indicates that the request seeks documents exchanged between TAMS and the Plaintiff, De Lage Landen Financial Services, Inc. ("DLL") and not documents from third-parties. Moreover, the request does not seek information relating to equipment performance, but seeks information concerning title and guaranties. A ruling that TAMS will not be compelled to produce such documents is hardly a clear ruling that Defendants are barred from issuing subpoenas and taking deposition testimony from third parties

concerning one of the most critical and basic issues in the case, *i.e.*, whether the equipment was inherently defective.

TAMS' claims that Defendants have violated the Court's Order is at best an incredibly expansive and creative reading of the Court's Order and at worst misrepresentation. For this reason, Defendants ask that the Court disregard the bluster throughout TAMS' 18 page brief. The lengths to which TAMS has gone in "interpreting" this Order, which it conspicuously failed to quote or attach to its brief, is alarming, and is, Defendants believe, the best evidence of just how desperate TAMS is to avoid, at any cost, a certain repeat of its defeat in *Torrance Memorial*.

Interestingly, this expansive reading of the Court's Order is also a new position for TAMS. Defendants' Fourth Request for Production, which Defendants served on TAMS in October, 2003, before any subpoenas were issued to TAMS' customers, included the following requests:

> 108. Any and all documents regarding each and every similar occurrence of problems experienced by third parties with regard to the equipment involved in the subject matter of this lawsuit.
>
> 129. Any and all documents relating to complaints or inquiries from third parties regarding the same or similar type equipment involved in the subject matter of this lawsuit.

Exhibit E.

When TAMS filed its late objections to these requests on January 13, 2004, over one month after the Court's Order that supposedly barred discovery of such evidence, TAMS did not raise the Court's Order as one of its objections (instead relying on the same evasive objections that TAMS filed with respect to virtually every other document request). Exhibit F.

The propriety of TAMS' evasive behavior in connection with Defendants' Fourth Request for Production is the subject of a pending Motion to Compel.

> **D. TAMS' Claims that Defendants Wish to Harm TAMS' Relationships is Belied by the Facts.**

Defendants have paid over $500,000 to try to make use of faulty equipment supplied by TAMS, and are now being sued for an additional $3 Million for this same equipment (even though the equipment only cost DLL approximately $2.4 Million to purchase from TAMS). Defendants must of course defend this case, and believe that evidence that the same or similar TAMS equipment also failed at other facilities will help Defendants do so. The facilities served with subpoenas were facilities specifically identified by TAMS itself, through discovery, and in its disclosures. *See* Exhibit G.

Defendants have no desire to unnecessarily involve TAMS customers. TAMS' stated concerns that Defendants are harming TAMS' relationships with customers are belied by TAMS' actions. The true concern of TAMS is suppressing the same damning evidence that spelled its doom in *Torrance Memorial*.

This is manifested, most clearly, by TAMS' refusal to provide such documents upon receipt of Defendants' Fourth Request for Production, and in TAMS' recent unwillingness to compromise this issue and avoid Court intervention by agreeing to provide its documents concerning these problems themselves. As TAMS admits, Defendants were willing to not move to enforce its subpoenas if TAMS provided the information concerning the problems and complaints from other facilities. TAMS refused this request, and now tries to spin this offer. Ironically, though, TAMS' recent position in its opposition to Defendants' Motion for Leave to Amend to, *inter alia*, add Toshiba Corporation as a party, was that Defendants did not need to add Toshiba Corporation as a party because the Federal Rules provided means by which

Defendants could obtain discovery of information concerning non-parties: "As defendants well know, the Federal Rules of Civil Procedure supply numerous mechanisms to take discovery from non-parties. Consequently, Rule 19(a)(1) does not serve as a basis to add Toshiba Corporation as a party to this lawsuit." TAMS Br. at 18. TAMS now proposes to keep Defendants from exercising this right to subpoena non-parties.

### E. TAMS Has Sought the Same Evidence at Depositions.

TAMS' apparent position in its Brief is that evidence of equipment performance is only relevant if it relates to the equipment TAMS supplied to Defendants. Yet, TAMS has adopted an entirely different view at several recent depositions held between February 2, 2004 and February 12, 2004. At those deposition, TAMS' counsel asked former DDI technologists Brian Gibbs, Pam Paulk, Deborah May, Erin Singer and Cindi Holmes to compare the equipment involved in this case to equipment that is not involved in this case, to compare images generated from the equipment involved in this case to images generated from other equipment, and to compare the abilities of the Toshiba service engineers who worked on the equipment involved in this case to service engineers who worked on other equipment.

For example, in the deposition of Brian Gibbs, counsel for TAMS asked each of the following questions:

(1) "How did those images compare to images that you've seen coming off other CT machines that you've worked on?" Exhibit H at 40:9-11;

(2) "How did your experience with the CT machines at Desoto compare to your experience with CT machines at other sites that you have worked on?" *Id.* at 42:9-11;

(3) "Do you recall how those images compared to images that you've seen coming off of other x-ray machines that you've worked on?" *Id.* at 49:1-3;

  (4) "How did your overall experience with the Toshiba x-ray machine compare to your experience with other x-ray machines?" *Id.* at 49:20-22;

  (5) "Now, how did the images that were produced on that Desoto – the Toshiba MRI compare to the images produced on other MRIs that you've worked on?" *Id.* at 60:22-24; and

  (6) "How did they compare to other service engineers that you've dealt with on MRIs?" *Id.* at 404:15-16.

  In the deposition of Pam Paulk, counsel for TAMS inquires:

  (1) "How did the images that the CT produced compare to images that you were used to seeing on the GE CT or the Picker CT that you had used in the past?" Exhibit I at 46:24-47:3;

  (2) "How did your overall experience with the Toshiba CT compare to your overall experience with the GE and Picker CT that you had used in the past?" *Id.* at 47:7-10;

  (3) "How did the images that were produced on the Siemens CT compare to the images that were produced on the Toshiba CT?" *Id.* at 47:20-22.

  Likewise, in the deposition of Deborah May, counsel for TAMS inquired

  (1) "Now how did that CT operate compared to other CTs that you had operated in the past?" Rough[5] Dep. of Deborah May (attached as Exhibit J) at 23:18-19;

  (2) "Do you recall how those images compared to the images that were produced off of other - - the other MRIs that you had worked on?" *Id.* at 49:22-24;

---

[5]   At the time of the drafting of this response, the final transcripts with regard to deposition witnesses Deborah May, Erin Singer and Cindi Holmes had not yet been completed and released by the certified court reporter. Defendants requested rough drafts of the transcripts for the purpose of defending this present motion, and if the Court so desires, will submit excerpts from the final transcripts upon receipt of the same.

    (3) "How would you compare the Toshiba MRI's to the GE MRI in terms of user friendliness?" *Id*. at 52:1-2;

    (4) "How did the performance of the Siemens MRI, if you know, compare to the performance of the Toshiba MRI?" *Id.* at 53:23 – 54:1;

    (5) "How did the images that were being produced other than artifacts, how did the images that were being produced on the Siemens MRI compare to the images that were being produced off the Toshiba MRI?" *Id.* at 57:18-22;

    (6) "How did the quality of the images that were being produced on the Siemens MRI compare to the quality of the images that were produced on the Toshiba MRI, if you recall?" *Id.* at 58:6-9;

    (7) "Okay. Would you say that they were any better or any worse than the Toshiba MRI images?" *Id.* at 58:11-13; and

    (8) "Do you recall whether the images that were produced on the Siemens MRI were any better or worse than the images produced on the Toshiba MRI, or were they the same?" *Id.* at 58:21-24.

    Clearly, TAMS is applying a double standard with regard to discoverability of evidence of equipment performance at facilities other than Desoto.

    F. **Miscellaneous Items.**

    As Defendants recently received TAMS' Brief, Defendants are unable to correct every misstatement. Nevertheless, there are some points that Defendants can easily refute. For example, TAMS' position that counsel for Defendants had no discussions with Thomas W. Lewis, Esquire, regarding the subpoena properly served upon his client, Dr. Donald Owens, is false. After Dr. Owens was properly served with his subpoena, Dr. Owens' attorney contacted counsel for Defendants and discussed in great detail the information possessed by Dr. Owens, as

well as its relevancy to the case at hand. Mr. Lewis did write a letter to counsel for Defendants outlining his client's position, although he stated that he knew little about the substance of the pending lawsuit. After at least two additional telephone calls between Mr. Lewis and counsel for Defendants wherein counsel for Defendants explained the substance of the lawsuit and the necessity and relevancy of Dr. Owens' testimony, Mr. Lewis agreed to produce Dr. Owens for deposition, without the necessity of Court intervention, on a different date and time that was agreeable to Dr. Owens, and at a location that was more convenient to Dr. Owens. See Exhibit K.

TAMS also complains that DeSoto did not serve TAMS when it served the subpoenas on the third parties. Defendants' practice is to serve the subpoenas as required by the Rules and that is what occurred here.

### III.  CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court deny TAMS' Motion for Protective Order and its demand for imposition of sanctions against Kyle P. Tate, Esq. and The Tate Law Firm, and grant such further relief as the Court deems appropriate.

Respectfully Submitted,

By:      LBW227

     WM782
Lynanne B. Wescott
William Matthews
For SAUL EWING LLP
Center Square West
1500 Market Street, 38th Fl.
Philadelphia, PA 19102-2186
(215) 972-7106

                                                                     _____KT823_____
Kyle P. Tate
for TATE LAW FIRM
9085 Sandidge Center Cove
Olive Branch, MS 38654
(662) 893-8833

Attorneys for Defendants DeSoto Diagnostic Imaging, LLC, *et al*

Dated: February 17, 2004

## CERTIFICATE OF SERVICE

I certify that I am this day serving a copy of the attached Response to Toshiba America Medical Systems, Inc.'s Motion for Protective Order upon the persons and in the manner indicated below:

Service by *facsimile and by first-class mail*, postage prepaid to:

Mr. John Chesney
Ms. Julianne Peck
Mr. Jonathan Sturz
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996

Mr. Peter Boyer
Ms. Rosetta B. Packer
MCCARTER & ENGLISH, LLP
Mellon Bank Center, Suite 700
1735 Market Street
Philadelphia, PA 19103-7501

                                                     KT823
                                                     Kyle P. Tate

Dated: February 17, 2004