IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| DELAGE LANDEN FINANCIAL SERVICES, INC., <br>                   Plaintiff, <br><br> TOSHIBA AMERICA MEDICAL SYSTEMS, INC. <br>                   Plaintiff/Intervener, <br><br> v. <br><br> DESOTO DIAGNOSTIC IMAGING, LLC., et al. <br>                   Defendants and Counter-Claimants | CIV. A. NO. 2:02CV2810 |

**<u>ORDER</u>**

AND NOW, upon consideration of Defendants' Motion to Dismiss Plaintiff's Claims For Violation of the Pennsylvania Fictitious Name Act or In the Alternative for Dismissal for Lack of Jurisdiction and any response thereto, it is hereby ORDERED that the Motion is GRANTED, and that all claims of Plaintiff De Lage Landen Financial Services, Inc. against Defendants are hereby DISMISSED.

                                                        BY THE COURT:

                                                        Honorable Ronald L. Buckwalter

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DELAGE LANDEN FINANCIAL SERVICES, INC., <br>                    Plaintiff, <br> <br> TOSHIBA AMERICA MEDICAL SYSTEMS, INC. <br>                    Plaintiff/Intervener, <br> <br>            v. <br> <br> DESOTO DIAGNOSTIC IMAGING, LLC., et al. <br>                    Defendants and Counter-Claimants | CIV. A. NO. 2:02CV2810 |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLAIMS FOR VIOLATION OF THE PENNSYLVANIA FICTITIOUS NAME ACT OR IN THE ALTERNATIVE FOR DISMISSAL FOR LACK OF JURISDICTION**

Plaintiff De Lage Landen ("DLL") filed this suit against defendants on state law contract claims. The lease at issue is not in DLL's name, it is in what DLL refers to as a private label name,[1] ie a fictitious name. The laws of Pennsylvania require that fictitious names be registered before a lawsuit can be maintained in "tribunal[s] of this Commonwealth," whether the suit is brought in the fictitious name or in the name of a successor entity. DLL has never registered the fictitious names it used in this case with the Pennsylvania Department of State. Therefore this lawsuit must be dismissed.

---

[1] DLL response to Interrogatories 10 and 14 at Exhibit 1

2

**I.     DLL LACKS STANDING TO BRING THIS LAWSUIT IN THIS COURT**

The Pennsylvania Fictitious Names Act is found at 54 Pa. C.S.A. § 301 et seq. Section 303 of the Act makes registration mandatory. DLL has not registered any fictitious name used in the lease at issue and therefore lacks standing to bring this lawsuit. Specifically, 54 Pa. C.S.A. § 331(a) sets forth the condition precedent for an entity utilizing a fictitious name to bring a lawsuit:

> General Rule. No entity which has failed to register a fictitious name as required by this chapter shall be permitted to maintain any action in any tribunal of this Commonwealth until such entity shall have complied with the provisions of this chapter. Nor shall any action be maintained in any tribunal of this Commonwealth by any successor or assignee of such entity on any right, claim or demand arising out of a transaction with respect to which such entity used such fictitious name until such entity, or an entity which has acquired all or substantially all of its assets, shall have complied with the provisions of this chapter. The failure of any entity to register a fictitious name as required by this chapter shall not impair the validity of any contract…

The purpose of the Fictitious Name Act is to prevent fraud. F.F. Bollinger Co. v. Widmann Brewing Corp., 339 Pa. 289 (1940). In Pennsylvania a statutory civil penalty of $500 is also imposed for each lawsuit improperly filed and that penalty must be paid prior to the institution of suit. See 54 Pa. C.S.A. § 331(b). As set forth in more detail below, DLL is not legally entitled to sue on the lease in Pennsylvania courts because it has not registered the fictitious names it used in this transaction.

Under the Full Faith and Credit statute DLL similarly lacks standing to bring its lawsuit in this Court because it has violated the Pennsylvania Fictitious Name Act. See 28 U.S.C. § 1738; see also Camiolo v. State Farm Fire & Cas. Co., 334 F.3d 345, 354 (3d Cir 2003). Accordingly, DLL's claims must be dismissed for failure to comply with the conditions precedent of the Pennsylvania statute.

## II.    STANDING IS A JURISDICTIONAL REQUIREMENT

Because standing is a jurisdictional requirement, this Court must dismiss DLL's claims for failure to comply with state law that requires compliance before a lawsuit is instituted. See e.g. ACLU-NJ v. Township of Wall, 246 F.3d 258 (3d Cir. 2001) "[O]n every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it." Society Hills Towers Owners Assoc. v. Rendell, 210 F.3d 168, 175 (3d Cir. 2000)(citation omitted); Great Southern Fire Proof Hotel Co. v. Jones, 177 U.S. 449 (1900). "If plaintiffs do not possess Article III standing, both the District Court and this Court lack subject matter jurisdiction to address the merits of plaintiffs' case." Township of Wall, 246 F.3d at 261 (citing Warth v. Seldin 422 U.S. 490, 498 (1975); Morris v. Horn, 187 F.3d 333, 344 (3d Cir. 1999)). There is much at stake in the task of ensuring a proper jurisdictional bases for each and every claim - particularly when, as here, courts are called upon to review and enforce a state legislative enactment that has a specific condition precedent before a claimant can utilize Pennsylvania courts.  This motion is timely pursuant to Fed. R. Civ. P. 12(h)(3) which requires this Court to dismiss this case for lack of jurisdiction.

## III.   DLL'S MISREPRESENTATIONS SENT BY U.S. MAIL

Prior to the filing of this lawsuit, DeSoto received a letter on DLL letterhead dated March 15, 2002 (Exhibit 2) claiming that DLL was assigned the DeSoto lease from a company named Toshiba Medical Credit, a company not mentioned anywhere in the Master Lease.  A second letter sent a year later, and attached to defendants' summary judgment motion as Exhibit K, claimed in contradiction to the March 15, 2002 letter that DLL was the purchaser,

4

apparently by assignment, of the rights of Toshiba America Medical Credit. As set forth in defendants' summary judgment motion, it is undisputed that DLL prepared the lease documents and the name of the entity in the lease documents was Toshiba America Medical Credit, a program of Toshiba America Medical Systems, not Toshiba Medical Credit. DLL's name appears nowhere in the Master Lease. Those letters, sent through the United States mail, DLL concedes, are false. DLL responded to defendant's interrogatories 9 and 11 that there was no assignment to it from TAMC, rather "TAMC is the private label name used by DLL in connection with the Lease at issue".(Exhibit 1, Interrogatories 9 and 11).

As Jake Hornung, the sender of the first letter, disclosed at his deposition when asked why the March 15, 2002 letter was sent:

>13 Q Why do you tell the lessee that the
>14 lease has been assigned?
>15 A We normally only disclose that if
>16 we're prepared to take action against the
>17 lessee.
>18 Q Why is that the case?
>19 A Ultimately Delage Landen Financial
>20 Services owns the paper. We're the party
>21 that's going to be out money.
>
>6 MR. TATE: I'm asking in
>7 general right now, just in general.
>8 THE WITNESS: Deals originate
>9 through manufacturers, you know, every day I'm
>10 sure. And it's what we refer to as a private
>11 label program. Even though the financing of
>12 the deal is always done through Delage Landen,
>13 not always but sometimes done through Delage
>14 Landen, it's possible that the billing and the
>15 documents state Toshiba or Abbott or whoever
>16 the manufacturer is in that case and *that that*
>17 *would be blind to the customer that Delage*
>18 *Landen is involved.*

(Hornung dep.various lines p. 19-20)(emphasis added)

5

Dr. Lynn Carvel, a radiologist and DeSoto's Medical Director, was stunned by the unexpected disclosures in the letter. She was one of those customers "blinded" by the structure of the deal. In short, she had been deceived. DLL subsequently sued Dr. Carvel, her husband and her imaging center, DeSoto, for the remaining lease payments and other sums. DLL relies on the language of the Master Lease to support its claims. For the reasons set forth in the summary judgment motion filed on behalf of defendants, this Master Lease is ineffective. However, even if it was effective, this lawsuit must be dismissed for lack of jurisdiction.

### A.   DLL Has Not Registered Its Fictitious Names

DLL admits in its interrogatory answers[2] that TAMC is the "private label" name used by DLL on the DeSoto lease, in other words, TAMC is a fictitious name for DLL. DLL also states it administered the lease under the trade name Toshiba America Medical Credit (TAMC)[3]. Thus, Toshiba America Medical Credit is also a fictitious name for DLL. DLL's interrogatory responses further state, under penalty of perjury, that it is authorized to do business in the name of Toshiba America Medical Credit and/or Toshiba Medical Credit in "all fifty states."[4] Defendants have now checked the Pennsylvania corporate records filings and learned that DLL's interrogatory answer is false.

A search of the Pennsylvania fictitious name database shows that DLL has not registered the fictitious name or initials it used in this transaction: "Toshiba America Medical Credit," and "TAMC". Toshiba America Medical Credit is a fictitious name registered and used in Pennsylvania by another company. (See Exhibit 3) Similarly, the fictitious name TAMC was registered in 1982 and used by another company. (See Exhibit 4) When asked by interrogatory what authority it had to use these names, DLL did not mention the Commonwealth of

---

[2]   Interrogatories 9-10 at Exhibit 1.
[3]   Interrogatories 9-10 at Exhibit 1.

6

Pennsylvania, but responded that Toshiba America Medical Systems (TAMS) gave it the authority. See interrogatory 12 at Exhibit 1.

It could be inferred that DLL was aware of the legal obstacles to its filing a lawsuit and made false statements in sworn interrogatories about its authority to use the names at issue "in all fifty states" hoping defendants would not investigate its statements. In its response to interrogatory 14 at Exhibit 1, DLL responds that it has used fictitious names under private label agreements with banks and others. DLL has also filed a fictitious name with the Pennsylvania Department of State. The name "Medcredit" was filed on December 7, 2000, (prior to the lease at issue in this case) in connection with medical equipment financing/leasing. (Exhibit 5) DLL knew that Pennsylvania required filing fictitious names, it just did not do it for TAMC or Toshiba America Medical Credit, and now it must suffer the consequences.

In short, DLL cannot legally sue DeSoto in Pennsylvania state courts or in federal courts in Pennsylvania in any name, including its own name DLL, "Toshiba America Medical Credit" or "TAMC," because DLL has not complied with the registration requirements of the Fictitious Name Act, a condition precedent to filing suit.

    **B.**    **DLL is in Violation of the Fictitious Name Act and Cannot Bring Suit**

DLL's claims against DeSoto and the Carvels are state law claims, governed by state law. Because DLL alleges it is the same entity as TAMC, it is in clear violation of 54 Pa. C.S.A. § 331. As a result of failure to comply with the Fictitious Name Act, DLL has no standing to file its claim and therefore cannot recover in this lawsuit. See W.F. Meyer Co. Inc. v. Stoddard, 363 Pa. Super. 481, 526 A.2d 446, app. denied, 517 Pa. 594, 535 A.2d 84 (1987)(failure to register fictitious name precludes corporation from instituting an action or gaining recovery until requirements for registration are met). Accordingly, since DLL has not

---

[4]    Interrogatory 16 at Exhibit 1.

complied with the Fictitious Name Act, misrepresented that fact in its interrogatory answers and deliberately misled DeSoto as to its identity, DLL's complaint must be dismissed for lack of standing.

### IV.     CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court dismiss DLL's claims for lack of standing and grant such further relief as the Court deems appropriate.

Respectfully Submitted,

By: _____
Lynanne B. Wescott
The Wescott Law Firm P.C.
Two Penn Center Plaza, Suite 200
Philadelphia, PA   19102
(215) 755-6330

Kyle P. Tate
for TATE LAW FIRM
9085 Sandidge Center Cove
Olive Branch, MS 38654
(662) 893-8833

William Matthews
SAUL EWING LLP
Center Square West
1500 Market Street, 38th Fl.
Philadelphia, PA 19102-2186
(215) 972-7106


Attorneys for Defendants
DeSoto Diagnostic
Imaging, LLC, *et al*

Dated:  April 12, 2004

## CERTIFICATE OF SERVICE

I certify that I am this day serving a copy of the attached Defendants Motion to Dismiss for Violation of the Pennsylvania Fictitious Name Act or in the Alternative for Dismissal for Lack of Jurisdiction upon the persons and in the manner indicated below:

Service by hand delivery to:

Mr. John Chesney
Ms. Julianne Peck
Mr. Jonathan Sturz
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996

Mr. Peter Boyer
Ms. Rosetta B. Packer
MCCARTER & ENGLISH, LLP
Mellon Bank Center, Suite 700
1735 Market Street
Philadelphia, PA 19103-7501

                                                                    Lynanne B. Wescott

Dated: April 12, 2004