Table of Contents

Page

I. P RELIMINARY STATEMENT AND PROCEDURAL HISTORY ................................1

II. ARGUMENT ................................................................................................................3

    A. DLL is Entitled to Judgment as a Matter of Law for the Recourse Payment ................................................................................................................3

    B. TAMS is Estopped From Contesting Its Obligation Under the Recourse Payment Provisions ................................................................................5

    C. Plaintiff is Entitled to Prejudgment Interest on the Recourse Payment ................................................................................................................6

    D. DLL Is Entitled to Summary Judgment Enforcing TAMS' Indemnification Obligation Under the Program Agreement .................................7

III. CONCLUSION ............................................................................................................10

## TABLE OF AUTHORITIES

### CASES

*Apach v. Dismuke*, 134 F. Supp. 2d 682 (E.D.Pa. 2001) ...................................................... 5

*Cottman Transmission Systems, Inc. v. Melody*, 869 F. Supp. 1180 (E.D. Pa. 1994) ........................................................................................................................... 4

*Delgrosso v. Spang & Co.*, 903 F.2d 234 (3rd Cir. 1990) ...................................................... 6

*Financial Federal Credit Inc. v. Callender*, 2003 WL.22858389 (E.D.Pa. 2003) .............. 5

*Glick v. White Motor Company*, 458 F.2d 1287 (3rd Cir. 1972) ......................................... 5

*Hiser v. Neumann Medical Center, Inc.*, 117 B.R. 125 (Bankr. E.D. Pa. 1990) ................. 8

*Jaskey Finance and Leasing v. Display Data Corp.*, 564 F. Supp. 160 (E.D.Pa. 1983) ........................................................................................................................... 4

*Kiewit Eastern Co., Inc. v. L&R Construction Co., Inc.*, 44 F.3d 1194 (3d Cir. 1995) ...................................................................................................................... 4, 9

*Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941) .................................................................................................. 4

*McDermott v Park City Corp.*, 11 F. Supp. 2d 612 (E.D. Pa. 1998) .................................. 6

*Meade v. Florida Infusion Services, Inc.*, 120 F. Supp. 499 (E.D. Pa. 2000) ..................... 4

*Metzger v. Clifford Realty Corp.*, 327 Pa. Super. 377, 476 A.2d 1 (1984) ......................... 9

*Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir.), *cert. denied*, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988) ................................. 6

*Stradling v. Southland Corp.*, 924 F. Supp. 38 (E.D. Pa. 1996) ......................................... 4

*12th Street Gym v. General Star Indemnity Co.*, 93 F.3d 1158 (3d Cir. 1996) .................. 4

*Watkins v. Kmart Corp.*, 1998 WL. 355525 (E.D. Pa.) ....................................................... 4

### STATUTES

Pa. Stat. Ann. tit. 41, § 202 (1991) ........................................................................................ 6

IN THE UNITED STATES DISTRICT COURT
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| De Lage Landen Financial Services, Inc. | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION NO. 02-CV-2810 |
| | : | |
| vs. | : | |
| | : | |
| Toshiba America Medical Systems, Inc. | : | |
| | : | |
| Intervenor Plaintiff | : | |
| | : | |
| vs. | : | |
| | : | |
| DeSoto Diagnostic Imaging, LLC., Randon J. Carvel, Lynn T. Carvel, Delta Radiology, P.C. and Zobar Properties, LLC. | : | |
| | : | |
| Defendants | | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST
TOSHIBA AMERICA MEDICAL SYSTEMS, INC.**

**McCARTER & ENGLISH, LLP**
Rosetta B. Packer (Attorney ID No. 28357)
Peter J. Boyer (Attorney ID No. 25517)
Kevin J. Burke (Attorney ID No. 87214 )
Mellon Bank Center
1735 Market Street, Suite 700
Philadelphia, PA 19103
(215) 979-3800

Attorneys for Plaintiff
De Lage Landen Financial Services, Inc

I.    **PRELIMINARY STATEMENT AND PROCEDURAL HISTORY**

On or about July 19, 1996 Toshiba America Medical Systems Inc. ("TAMS") and Tokai Financial Services, Inc ("TFS") entered into a Master Contract Financing Program Agreement ("Program Agreement")(Appendix Exhibit "A")[1]. The Program Agreement provides, in pertinent part:

> "Notwithstanding anything to the contrary contained herein, the parties agree to operate this business of leasing equipment as provided in this Program Agreement using the program identifier Toshiba America Medical Credit, a program of Toshiba America Medical Systems, Inc."

Program Agreement Section 1, page 2. The Program Agreement further provided:

> 6.1 Servicing of Contract.
>
> (a) <u>TFS [now DLL] will service all contracts on a private label basis in the name of TAMS so that the Lease Financing Program will at all times appear to lessees to be a proprietary program of TAMS</u>. TFS shall provide general administrative services, including billing and collecting all payments, fulfilling the obligations as lessor under the contract, the enforcement of TFS rights under the contract including any guarantee and/or this agreement and the taking of such other actions that may be necessary to protect TFS's rights and interests in and to the contracts including any guarantee or equipment. TFS shall invoice each lessee for all amounts due under a contract in the name TAMS and will direct the lessee to make payments to the lockbox established in the name of TFS. TFS's collection personnel will perform collection activities in the name of TAMS in accordance with the power of attorney set forth in Section 8 and TFS will bill and collect applicable use and property tax in the name of TAMS, however, TFS shall report and remit said taxes to the appropriate tax authorities on TFS returns.

On 3/31/99 Tokia Bank sold all of the stock of Tokai Financial Services, Inc. to DLL USA, Inc. a subsidiary of DLL International B.V. Tokai Financial Services changed its name to

---

[1] Plaintiff is submitting, as part of its motions for Summary Judgment, an Appendix containing all evidence referenced in its summary judgment motions. Unless otherwise stated, Exhibit References are to the Appendix of Exhibits In Support of Plaintiffs' Motions for Summary Judgment filed herewith.

1

DLL Financial Services, Inc. (hereafter "DLL").  DLL Answer to Interrogatory No. 4. Appendix, Exhibit "B".  DLL is the plaintiff in this action.

Subsequently, DLL leased medical equipment to DeSoto Diagnostic Imaging, LLC ("DDI").  In accordance with the terms of the Program Agreement, the lessor was identified in the lease as Toshiba America Medical Credit, a program of Toshiba America Medical Systems, Inc.  (Exhibit "C").  As part of the lease transaction TAMC also was given personal guarantees (collectively, the "Guaranties") by Lynn Carvel, Randon Carvel, and two related entities, Delta Radiology, P.C. and Zobar Properties LLC. (collectively, the "Guarantor Defendants"). (Exhibits "D" through "G").

In addition to securing guarantees from the related entities, in accordance with the Program Agreement DLL submitted to TAMS an Application Approval Form (Exhibit "H") which was reviewed and approved by Kevin Abbott, Vice President of Finance for TAMS. Cross claim against TAMS ¶ 7 and Answer to Cross Claim ¶ 7 (Exhibit "I").  The Application Approval Form provides, in Section II, under the heading of "Credit Support":

> TAMS to provide one-off recourse as follows: Months 1-24 in the amount of $375,000; in months 25-36 in the amount of $350,000; in months 37-48 in the amount of $325,000; and in months 49-54 in the amount of $175,000.  All reductions in recourse support contingent upon satisfactory payment history on the lease.

In the pleadings, TAMS has admitted that DDI defaulted upon the Master Lease on or about February 1, 2002, which date is within the first 24 months of the term of the Master Lease. Cross Claim, paragraph 15 and Answer thereto. (Exhibit "I").  In addition, TAMS has admitted that it has not tendered the recourse payment in the sum of $375,000 demanded by DLL. Crossclaim , paragraph 16 and Answer thereto. (Exhibit "I").

On May 10, 2002, DLL commenced this diversity action by filing a Complaint against Defendants.  DLL's Complaint sets forth five causes of action alleging that DDI and the

2

Guarantor Defendants are liable to DLL for an amount in excess of $3.25 million for the various breaches of the Master Lease and Guaranties described above.

Within weeks of the filing of the Complaint by DLL, Toshiba America Medical Systems, Inc. ("TAMS") filed a Motion for Leave to Intervene as a Party Plaintiff. Plaintiff's Memorandum of Law in Support of Motion to Intervene TAMS averred as follows:

> As noted above, DeSoto de-installed the leased equipment, stopped making lease payments and stopped paying for the maintenance and services provided by TAMS on the basis that TAMS's equipment "never functioned correctly. <u>Due to DeSoto's breach of its lease payments,</u> TAMS is obligated to pay DLL its recourse obligation of $375,000. . ."

Memorandum of Law at page 5. (emphasis supplied) (Exhibit "J"). The Court granted TAMS' motion to intervene.

Plaintiff/Intervener TAMS' then filed its complaint in which it stated at paragraph 23:

> . . . Under the Master Contract Financing Program Agreement, in the event that defendants default in their payment obligations to DLL under the Master Lease, TAMS is obligated to pay DLL a recourse amount of $375,000."
>
> The basis for this recourse obligation is set forth in an application approval form, a copy of which is attached as Exhibit "B" [Exhibit H to the Appendix], the execution and delivery of which is admitted by TAMS.

Exhibit "K".

**II.     ARGUMENT**

    **A.     DLL is Entitled to Judgment as a Matter of Law for the Recourse Payment**

Rule 56 of the Federal Rules of Civil Procedure provides, in pertinent part:

> A party seeking to recover upon a claim, counterclaim or cross-claim, or to obtain a declaratory judgment, may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for Summary Judgment by the adverse party, move with or without supporting affidavits for a Summary Judgment in the parties favor upon all or any part thereof.

3

Interpretation of a written contract is a matter particularly suited to summary judgment. Interpretation of an unambiguous contract is a matter for determination by the Court in any event, and where, as here, there is no contention that the contract is ambiguous, summary judgment is appropriate even if the parties disagree as to what the agreement provides. Stradling v. Southland Corp., 924 F.Supp 38 (E.D. Pa. 1996). Whether contract provisions are clear or ambiguous is a question of law for the Court. Kiewit Eastern Co., Inc. v. L&R Construction Co., Inc., 44 F.3d 1194, 1199 (3d Cir. 1995). "A contract is ambiguous only if it is reasonably susceptible to different constructions and capable of being understood in more than one sense." 12th Street Gym v. General Star Indemnity Co., 93 F.3d 1158, 1165 (3d Cir. 1996).

Pursuant to Paragraph 14.8B of the Program Agreement (Exhibit "A"), TAMS agreed that the Program Agreement:

> Has been executed and delivered in, and shall be construed in accordance with the laws of the Commonwealth of Pennsylvania.

A federal district court exercising diversity jurisdiction must apply the choice of law rules of the forum state in determining what jurisdiction's law to apply in that particular case. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 497, 61 S.Ct. 1020, 1022 85 L.Ed. 1477 (1941). In Pennsylvania, courts traditionally uphold the intent of the contracting parties and will enforce a choice of law provision in a contract as long as the transaction bears a reasonable relationship to the state whose law is governing. See, Meade v. Florida Infusion Services, Inc., 120 F.Supp. 499, 501 (E.D. Pa. 2000); Watkins v. Kmart Corp., 1998 WL 355525 *3 (E.D. Pa.) Cottman Transmission Systems, Inc. v. Melody, 869 F. Supp. 1180, 1184 (E.D. Pa. 1994). As such, Pennsylvania courts will honor contractual choice of law provisions where parties have sufficient contacts to that state. Cottman Transmission Systems, Inc., 869 F. Supp at 1184, citing Jaskey Fin. and Leasing v. Display Data Corp., 564 F.Supp. 160 (E.D.Pa. 1983).

4

In the present case, the undisputed evidence demonstrates that this contract action bears a reasonable relation to the law of the Commonwealth of Pennsylvania. DLL maintains (as did its predecessor in interest) offices in the Commonwealth of Pennsylvania. The Program Agreement was executed and delivered in Pennsylvania. DLL disbursed funds from its offices in Pennsylvania and received lease payments in those offices in accordance with the Lease at issue in this case.

In this case there is no ambiguity as to the meaning of the agreement as it relates to Plaintiff's claims for the recourse payment. The Application Approval Form signed by TAMS provides for TAMS to provide, as credit support to DLL: "recourse as follows: Months 1-24 in the amount of $375,000". Exhibit "H".

There is no contention that this language is ambiguous, nor can there be. In its pleadings and briefs at the outset of this case, TAMS acknowledged and judicially pleaded the very same meaning relied upon by Plaintiff herein, namely that a result of DDI's default under the lease within the first 24 months of the lease term, TAMS is obligated to make a recourse payment in the sum of $375.000. Exhibit "J", page 5; Exhibit "K", paragraph 23.

**B.  TAMS is Estopped From Contesting Its Obligation Under the Recourse Payment Provisions.**

It is well settled that judicial admissions are factual assertions in pleadings that bind the party who made them and the cause of action in which they are filed. See, e.g., Glick v. White Motor Company, 458 F.2d 1287 (3rd Cir. 1972). In addition, statements by parties in their briefs are treated as binding judicial admissions. Apach v. Dismuke, 134 F.Supp.2d 682, 693 (E.D.Pa. 2001); Financial Federal Credit Inc. v. Callender, 2003 WL 22858389 (E.D.Pa. 2003).

Moreover, the doctrine of Judicial Estoppel acts as a rule of consistency which prevents litigants from maintaining inconsistent positions as their interests change. Judicial estoppel

5

focuses on the relationship between the litigant and the judicial system, and seeks to preserve the integrity of the system. Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 419 (3d Cir.), *cert. denied,* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988); Delgrosso v. Spang & Co., 903 F.2d 234 (3rd Cir. 1990). The underlying purpose of the doctrine, as articulated by the Third Circuit Court of Appeals, is applicable here:

> To permit a party to assume a position inconsistent with a position it had successfully relied upon in a past proceeding "would most flagrantly exemplify ... playing 'fast and loose with the courts' which has been emphasized as an evil the courts should not tolerate" . . .

Delgrosso, 903 F.2d at 241.

In this case, TAMS was permitted by the Court to intervene as a party plaintiff based upon its admitted recourse liability to DLL. TAMS affirmatively asserted the existence of that liability as a basis for intervening. Having secured the tactical advantage of having intervened as a co-plaintiff in the matter, TAMS should not now be permitted to disavow the very obligation which formed the basis of its permitted joinder as a party plaintiff.

### C. **Plaintiff is Entitled to Prejudgment Interest on the Recourse Payment**

Under Pennsylvania law where, as here, suit is brought to recover a liquidated amount under a contract claim, the prevailing plaintiff is entitled, as a matter of right, to recover prejudgment interest on the amount claimed, from the date in which the payment was improperly withheld. McDermott v Park City Corp., 11 F.Supp 2d 612, 632 (E.D. Pa. 1998). Under Pennsylvania law, unless otherwise specified by the parties, the rate of prejudgment interest is calculated as simple interest at a rate of six percent per year. Id.; Pa. Stat. Ann. tit. 41, § 202 (1991).

Accordingly, plaintiff requests the entry of summary judgment against TAMS in the sum of $375,000 plus interest at the legal rate of 6% from June 23, 2002, the date on which plaintiff

made a demand for payment of the recourse amount. Declaration of Lawrence Levin ( Exhibit "L").

For the foregoing reasons, it is respectfully requested that plaintiff's motion for partial summary judgment against TAMS be granted, and that partial summary judgment be entered on Count I of plaintiff's crossclaim against TAMS in the sum of $375,000, plus interest at the legal rate of 6% from June 23, 2002 in accordance with Pennsylvania law.

### D.   DLL Is Entitled to Summary Judgment Enforcing TAMS' Indemnification Obligation Under the Program Agreement

Should the trier of fact determine that TAMS (i) failed to perform such maintenance and warranties as agreed to between TAMS and DDI; or (ii) failed to provide all required service and/or maintenance for the leased equipment; or (iii) took any action or failed to take any action which caused the Master Lease or the Guarantees to become invalid, cancelable or unenforceable, then DLL is entitled to judgment against TAMS for its damages including attorneys' fees and costs. DLL's damages, as set forth in Exhibit "L" presently amount to $2,928,590 plus per diem interest of $984.53 per day from and after April 1, 2004 and fees and costs, including attorney's fees.

The Program Agreement provides that TAMS has the following responsibilities to Lessees:

> (a)   "e.   TAMS will perform such maintenance and service and provide such supplies, other soft costs and warranties as agreed to by TAMS and Lessee." (Exhibit "A", Page 14);
>
> (b)   "j.   TAMS will not take any action or omit to take any action which will cause the contract or any related document, including any guaranty, to be come invalid, cancelable or enforceable." (Exhibit "A", Page 15);

7

    (c)    "6.3    <u>Prepared Service/Maintenance</u>  TAMS agrees to provide all of the required service and/or maintenance for the Equipment . . ." (Exhibit "A", Page 17).

Section 9.1a of the Program Agreement provides:

"<u>Indemnification</u>.

    a.  TAMS agrees to indemnity and hold harmless TFS and its affiliates, subsidiaries, employees, officers and agents from any and all losses, claims, liabilities, demands and expenses ("Losses") whatsoever (including without limitation, reasonable attorneys' fees) sustained by TFS in connection with or in any way related to the breach by TAMS of any of TAMS warranties and representations. . . "

Section 9.2 further provides:

"<u>Survival of Indemnity</u>.  All obligations under this section shall survive any expiration or termination of this Agreement and the termination of any Contract, but in no event longer than the applicable statute of limitations."

The foregoing recital of provisions from the Program Agreement reveals an unambiguous agreement, designed to protect DLL from failures by TAMS to sell working equipment or to properly service the equipment.  In that regard, the foregoing reinforces the concept that DLL merely provided financing for customers of TAMS, relying entirely on TAMS to lease and service equipment to its customers.

An unambiguous contract must be interpreted as it is written, even if the parties meant or interpreted it differently.  <u>Hiser v. Neumann Medical Center, Inc.</u>, 117 B.R. 125 (Bankr. E.D. Pa. 1990).  The indemnity provisions of the Program Agreement leave no doubt that TAMS bears responsibility if it fails to provide service and/or maintenance for the leased equipment or takes any action causing a lease to become enforceable.

In defending DLL's claims under the lease and in pursuing counterclaims against DLL, Defendants have asserted, <u>inter</u> <u>alia</u>, that TAMS:

8

  (i) prematurely supplied and delivered the equipment to DDI's unfinished facility (¶35);

  (ii) delivered equipment which immediately began to malfunction (¶¶37-41);

  (iii) breached the express warranties made to them regarding the equipment (¶¶44-47);

  (iv) breached service agreements for the equipment (¶¶48-53 and 56)

(Exhibit "Q")

  Whether and the extent to which TAMS failed to sell equipment which functioned properly and/or failed to properly service the equipment will be presented to and decided by the jury in this matter.

  DDI seeks entry of a judgment against TAMS, as a matter of law, pursuant to the unambiguous indemnification provisions of the Program Agreement, in the event that the trier of fact find that TAMS breached its warranties to DDI or rendered the lease enforceable. In such case, DDI is entitled to judgment against TAMS, for all of its losses and its counsel fees and costs.

  As discussed herein, the construction and legal effect of an unambiguous writing is for the court and not for a jury. Goldinger at 413. It is the role of the Court to decide whether, as a matter of law, written contract terms are clear or ambiguous. Metzger v. Clifford Realty Corp. 327 Pa. Super. 377, 476 A.2d 1 (1984). When, as in the case of the indemnification provisions of the Program Agreement, the contract is clear and unequivocal, its meaning must be determined by its contents alone. Kiewit Eastern Co., Inc. v. L&R Construction Co., Inc., 44 F.3d 1194, 1199 (3d Cir. 1995).

  Under the terms of the Program Agreement, TAMS has a clear obligation to indemnify DLL for the claims asserted herein by plaintiffs. There are no disputed issues of material fact as

to that liability. Accordingly, Plaintiff is entitled to partial summary judgment on liability against TAMS on Counts X and XII of its crossclaim, is the amount of its damages as set forth in Exhibit "L" on those counts to be determined after a trial on the merits when the issues giving rise to defendants' claims against TAMS have been determined.

### III.   CONCLUSION

For the foregoing reasons, it is respectfully requested that summary judgment be entered in favor of plaintiff DLL and against Intervenor Plaintiff TAMS on DLL's crossclaim against TAMS as follows:

(a)   For summary judgment on Count I in the sum of $375,000 plus interest at the annual rate of 6% from June 23, 2002;

(b)   For partial summary judgment on Counts X and XII of the Crossclaim determining, as a matter of law, that TAMS is liable to indemnify DLL for its damages sustained as a result of a finding, by the trier of fact, that TAMS breached its warranties to DDI, failed to perform under the Program Agreement, or took any action that renders the Master Lease between Plaintiff and Defendants to be unenforceable.

Respectfully Submitted,

**McCARTER & ENGLISH, LLP**


By:   _____
Rosetta B. Packer, Esquire (Attorney ID No. 28357)
Peter J. Boyer, Esquire (Attorney ID No. 25517)
Mellon Bank Center
1735 Market Street
Suite 700
Philadelphia, PA  19103
Attorneys for Plaintiff,
De Lage Landen Financial Services, Inc.

Dated: April 12, 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| De Lage Landen Financial Services, Inc. : | |
| : | CIVIL ACTION NO. 02-CV-2810 |
| Plaintiff : | |
| and : | HON. RONALD L. BUCKWALTER |
| : | |
| Toshiba America Medical Systems, Inc. : | |
| : | |
| Intervenor : | |
| Plaintiff : | |
| : | |
| vs. : | |
| : | |
| DeSoto Diagnostic Imaging, LLC., Randon : | |
| J. Carvel, Lynn T. Carvel, Delta Radiology, : | |
| P.C. and Zobar Properties, LLC. : | |
| : | |
| Defendants | |

## CERTIFICATE OF SERVICE

      I, Peter J. Boyer, Esquire, hereby certify that on April 12, 2004, I caused a true copy of the foregoing Plaintiff's Motion for Partial Summary Judgment as to **Intervenor Plaintiff Toshiba America Medical Systems, Inc.**, and Memorandum of Law, Appendix of Exhibits and Proposed Form of Order in support thereof, to be served upon the following counsel in this action in the following manner:

| | |
|---|---|
| John Chesney, Esquire | William Matthews, Esquire |
| Drinker Biddle & Reath, LLP | Saul Ewing LLP |
| One Logan Square | Centre Square West |
| 18th & Cherry Streets | 1500 Market Street, 38th Floor |
| Philadelphia, PA  19103 | Philadelphia, PA  19102 |
| Attorney for Intervenor Plaintiff | Attorney for Defendants |
| **Via Overnight Mail** | **Via Overnight Mail** |

Kyle P. Tate, Esquire
Tate Law Firm
9085 Sandidge Center Cove
Olive Branch, MS 38654
 Attorney for Defendants
**Via Overnight Mail**

Peter J. Boyer

PH1: 471803.03

12