Table of Contents

Page

I. STATEMENT OF UNDISPUTED FACTS ............................................................................... 1
II. ARGUMENT............................................................................................................................. 3
    A.    The Master Lease Was Properly Executed. ............................................................. 3
    B.    The Master Lease Became Effective Upon DLL's Execution. ............................... 5
III. CONCLUSION ........................................................................................................................ 7

## TABLE OF AUTHORITIES

**Cases**

Chesapeake Industries, Inc. v. The Garrett Group, L.P., 2000 WL 1372877, *2 (M.D.Pa.),
   citing Smith v. Cumberland Group, Ltd., 455 Pa. Super. 276, 285, 687
   A.2d 1167, 1172 (1997) ................................................................................................... 5

KNK Medical-Dental Specialties, Ltd. v. Tamex Corporation, 2000 WL 1470665, *6 (E.D.Pa.). 5

L.B. Foster Co. v. Tri-W Construction Co., 409 Pa. 318, 186 A.2d 18, 19 (1962) ........................ 3

Mid-Atlantic Equipment Corp. v. Cape Country Club, Inc., 1997 WL 535156, *2 (E.D.Pa.) ....... 3

Rich v. Hosiery Corporation of America, 1990 WL 902462 (Pa.Com.Pl.),
   21 Phila.Co.Rptr. 404, 411 ............................................................................................... 3

Smith v. Cumberland Group, Ltd., 455 Pa. Super at 285, 687 A.2d at 1172 (citations omitted) ... 5

Taylor v. Stanley Co. of America, 305 Pa. 546, 553 158 A. 157 (1932) ........................................ 3

Zumpano v. Omnipoint Communications, 2001 WL 43781, *4 (E.D.Pa.),
citing Atacs Corp. v. Trans World Communications, Inc., 155 F.3d 659, 666 (3d Cir. 1998) ....... 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| De Lage Landen Financial Services, Inc. : | |
| : | CIVIL ACTION NO. 02-CV-2810 |
| Plaintiff : | |
| and : | HON. RONALD L. BUCKWALTER |
| : | |
| Toshiba America Medical Systems, Inc. : | |
| : | |
| Intervenor Plaintiff : | |
| : | |
| vs. : | |
| : | |
| DeSoto Diagnostic Imaging, LLC., Randon J. : | |
| Carvel, Lynn T. Carvel, Delta Radiology, P.C. : | |
| and Zobar Properties, LLC. : | |
| Defendants : | |
| : | |

## **ORDER**

AND NOW, upon consideration of Defendants' Motion for Summary Judgment on all Counts of Plaintiff's Complaint and the Response of Plaintiff, DeLage Landen Financial Services, Inc., thereto, and the record before this Court, it is hereby ORDERED that Defendants' Motion is DENIED with prejudice.

BY THE COURT:

HONORABLE RONALD L. BUCKWALTER

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| De Lage Landen Financial Services, Inc. | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 02-CV-2810 |
| v. | : | |
| | : | Honorable Ronald L. Buckwalter |
| Toshiba America Medical Systems, Inc. | : | |
| | : | |
| Intervenor Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DeSoto Diagnostic Imaging, LLC., Randon J. Carvel, Lynn T. Carvel, Delta Radiology, P.C. and Zobar Properties, LLC. | : | |
| | : | |
| Defendants. | : | |

---

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

                                  **McCARTER & ENGLISH, LLP**
                                  Rosetta B. Packer (Attorney ID No. 28357)
                                  Peter J. Boyer (Attorney ID No. 25517)
                                  Kevin J. Burke (Attorney ID No. 87214 )
                                  Mellon Bank Center
                                  1735 Market Street, Suite 700
                                  Philadelphia, PA 19103
                                  (215) 979-3800

                                  Attorneys for Plaintiff
                                  De Lage Landen Financial Services, Inc

## I. STATEMENT OF UNDISPUTED FACTS

The evidence of record reveals the following facts to be undisputed.

On or about February 17, 2000 Defendant DeSoto Diagnostic Imaging, LLC ("DDI") by its Chief Manager, Lynn Carvel, executed and delivered to Toshiba America Medical Credit, ("TAMC") a program of Toshiba America Medical Systems, Inc., ("TAMS"), a Master Lease Agreement and related schedules and attachments (collectively, the "Master Lease", attached hereto as Exhibit A).

The Master Lease was assigned to De Lage Landen Financial Services, Inc. ("DLL"), as successor to Tokai Financial Services, Inc. ("TFS") pursuant to a Master Contract Financing Program Agreement with TAMS dated July 19, 1996 (the "Program Agreement"). (Program Agreement, Section One, page 2, attached hereto as Exhibit B). Pursuant to the Program Agreement, in order for TAMS to lease and/or rent the medical equipment to its customers, the parties established a private label program whereby TAMS would sell and assign all of its right, title and interest in any lease or rental agreement to TFS, DLL's predecessor in interest. (Exhibit B, <u>Recital of Facts</u>, page 1). Prior to DLL's purchase of any lease and/or rental agreement, the following conditions had to be satisfied:

  a. [DLL]'s receipt of all required credit information and Contract documents including UCC-1 Financing Statements which are prepared by [DLL] and deemed necessary by [DLL];
  b. [DLL]'s credit approval of the Lessee;
  c. [DLL]'s confirmation that the Lessee has accepted the System; and
  d. TAMS performed and complied in all material respects with all covenants, agreements and conditions contained in this Agreement, which are required to be performed or complied with by TAMS as part of or prior to the date [DLL] accepts the Contract.

Exhibit B, Section 3.1.

As soon as these conditions were met, including DDI's acceptance of the equipment on December 27, 2000 (see Acceptance of Delivery of Equipment, attached hereto as Exhibit C),

Lisa Sparta, employee of DLL, executed the Master Lease on December 29, 2000, funded the purchase price to TAMS and commenced collecting lease payments under the private label name TAMC.

The uncontroverted testimony of Lisa Sparta describes the private label transaction as follows:

DLL and TAMS entered into the Program Agreement whereby DLL would provide financing to the customers of TAMS for the purchase and/or lease of medical equipment. (Deposition of Lisa Sparta, May 28, 2003, 33:24-35:6, attached hereto as Exhibit D). DLL's sales support team would prepare the lease documents and forward them to the customer for signature. (Exhibit D, 17:1-17:17). When the documents were returned to DLL's sales support team, the sales representatives reviewed the documents. (Exhibit D, 17:20-18:2). Once the documents were reviewed and in complete form, DLL issued a purchase order to the program vendor in order to arrange for the equipment to be purchased and shipped. (Exhibit D, 18:3-18:13; 18:23-19:12). As soon as the equipment was delivered and the customer accepted the equipment, DLL would execute the lease and fund the transaction. (Exhibit D, 24:5-25:3).

Ms. Sparta was authorized to execute documents such as purchase orders based upon her experience and position with DLL. (Exhibit D, 19:18-19:20). Additionally, she had authority to accept and sign certain documents on behalf of vendors, based upon the program agreement with the specific vendor (Exhibit D, 20:6-20:21). The Program Agreement between TAMS and DLL authorized Ms. Sparta to sign the Master Lease on behalf of DLL. (Exhibit D, 22:24). She appropriately signed the Master Lease on behalf of DLL because it was TAMS' private label document which was assigned to DLL[1]. (Exhibit D, 23:1-23:4).

---

[1] Reference to DLL's registration of the name "Medicredit" in Defendants" brief is a red herring. No showing has been made that the name "Medicredit" was utilized under a program agreement similar to the TAMS program agreement. Plaintiff submits that the Court should give no consideration to this reference, given the lack of foundation as to its underlying context.

2

## II. ARGUMENT

### A. The Master Lease Was Properly Executed.

Defendants, for the first time, argue in their memorandum of law in support of their motion for summary judgment that the Master Lease was never effective because TAMS was required to execute the Master Lease.[2] However, Defendants ignore the fact that this was a finance lease whereby DLL became the finance lessor. As a result, Lisa Sparta had the authority to execute the Master Lease on behalf of DLL.

Under Pennsylvania law, the main inquiry in determining whether two parties have entered into an enforceable contract is "the manifestation of assent of the parties to the terms of the promise and to the consideration for it." Zumpano v. Omnipoint Communications, 2001 WL 43781, *4 (E.D.Pa.), citing Atacs Corp. v. Trans World Communications, Inc., 155 F.3d 659, 666 (3d Cir. 1998). See also, Mid-Atlantic Equipment Corp. v. Cape Country Club, Inc., 1997 WL 535156, *2 (E.D.Pa.). It is well-settled that the essence of a contract is mutual assent or meeting of the minds. Rich v. Hosiery Corporation of America, 1990 WL 902462 (Pa.Com.Pl.), 21 Phila.Co.Rptr. 404, 411. The general rule is that a contract is created and becomes enforceable where there is mutual assent as to the terms of a contract by the parties to the contract. Taylor v. Stanley Co. of America, 305 Pa. 546, 553 158 A. 157 (1932). Generally, signatures are not required for the formation of the contract unless the signature is required by law or by the intent of the parties. L.B. Foster Co. v. Tri-W Construction Co., 409 Pa. 318, 186 A.2d 18, 19 (1962).

---

[2] It is important to note that Defendants have raised certain counterclaims against DLL and TAMS based on breach of the Master Lease. See, Defendants' First Amended Counterclaims, attached as Exhibit Q to the Appendix of Exhibits in support of DLL's Motion for Summary Judgment. Therefore, Defendants' claims in its First Amended Counterclaims and Motion for Summary Judgment are in direct contradiction to their claims herein.

In the present case, because this was a private label agreement and there were three parties involved, the Master Lease could not become enforceable until the satisfaction of certain conditions precedent. (Exhibit B, Section 3.1; Exhibit D, 24:5-25:3). In addition to those conditions described in the Program Agreement, DLL required the confirmation of delivery and acceptance of the medical equipment by DDI prior to DLL's execution of the Master Lease. (Exhibit D, 24:5-25:3). On December 27, 2000, DDI received and accepted the medical equipment. (Exhibit C). As a result, upon the funding of the lease by DLL to TAMS, the Master Lease was assigned from TAMS to DLL. (See, Exhibit B, Section 4(b); see also, Deposition of Nader Rad, Volume I, March 8, 2004, 25:4-25:22, attached hereto as Exhibit E).

In accordance with the Program Agreement and uncontroverted testimony of Lisa Sparta, the Master Lease was properly executed by DLL once the conditions precedent were met and the Master Lease was assigned to DLL. (Exhibit D, 22:24-23:3; 24:5-25:3). Further, TAMS' recitation of the facts is completely in accord. TAMS, in its Motion for Summary Judgment, states:

> In accordance with these procedures, DLL entered into the Master Lease Agreement with DeSoto, which became effective when the conditions precedent had been satisfied and Lisa Sparta, a DLL employee, signed the Master Lease. As Ms. Sparta testified, the Lessee's (i.e. DeSoto's) acceptance of the System was the final condition precedent to DLL's acceptance of the lease and evidence of acceptance was something Ms. Sparta required before signing the lease (footnote omitted).

Id. at p. 9-10.

In accordance with the Program Agreement, TAMS acknowledges that Ms. Sparta was authorized to execute the Master Lease. Therefore, the Master Lease became an effective and binding contract upon the due execution of the Master Lease.

### B. The Master Lease Became Effective Upon DLL's Execution.

Defendants cannot argue that DLL is not a party to the Master Lease. Under Pennsylvania law, contract rights are generally freely assignable. <u>KNK Medical-Dental Specialties, Ltd. v. Tamex Corporation</u>, 2000 WL 1470665, *6 (E.D.Pa.). Absent an express provision against assignment, the rights and duties under an executory bilateral contract may be assigned without the consent of the other party unless the assignment materially alters the other party's duties and responsibilities under the contract. <u>Chesapeake Industries, Inc. v. The Garrett Group, L.P.</u>, 2000 WL 1372877, *2 (M.D.Pa.), citing <u>Smith v. Cumberland Group, Ltd.</u>, 455 Pa. Super. 276, 285, 687 A.2d 1167, 1172 (1997). When the assignment is effective, the assignee stands in the shoes of the assignor and assumes all of the rights, duties and responsibilities under the contract. <u>Smith v. Cumberland Group, Ltd.</u>, 455 Pa. Super at 285, 687 A.2d at 1172 (citations omitted).

In the present case, not only was there no express provision prohibiting the lessor's assignment of the Master Lease, the Master Lease clearly indicated that the lessor had the right to assign. (Exhibit A, Paragraph 7)[3]. Moreover, the assignment to DLL did not alter Defendants' duties and responsibilities under the Master Lease. The Defendants had already accepted the equipment and the only duties remaining was for Defendants to make the required monthly payments and comply with the provisions of the Master Lease relating to care and insurance of the leased equipment. As stated above, once the conditions precedent under the Program Agreement were satisfied, as well as DDI's acceptance of the equipment, the Program

---

[3] Paragraph 7 of the Master Lease provides in pertinent part: "ASSIGNMENT:…Lessor <u>may at any time assign all or part of any interest in this Agreement or any Lease</u> and in each item of Equipment and monies to become due to Lessor hereunder; and Lessor may grant security interests in the Equipment, subject to Lessee's rights therein…" (emphasis supplied)

5

Agreement constituted a blanket assignment of the Master Lease from TAMS to DLL. (Exhibit B, Section 4(b); see also, Exhibit E, 25:4-25:22). As a result of the satisfaction of the conditions precedent, DLL was appropriately authorized to accept the terms of the Master Lease which became effective upon its execution.

Defendants mistakenly assert, at page 10 of their brief:

> Though DLL has brought its claims against defendants as the assignee of TAMS, DLL cannot argue that it had any power to accept DeSoto's offer to TAMS (the signed Agreement DeSoto returned, awaiting the signature of TAMS, the listed lessor), or that TAMS somehow assigned a "right to accept" to DLL because horn book law provides that only TAMS, as the offerree could accept. Restatement Second of Contracts § 52 (1981),

In fact, the official comment to Restatement Second of Contracts § 52 provides:

> [T]he rules stated in the Restatement of this subject are supplemented by the law of agency, and in the absence of contrary statement it is assumed that any necessary act may be performed on behalf of a contract party by his agent. Thus an offer may be accepted by an agent of the offeree. See Restatement Second Agency § 292.

Under the terms of the Program Agreement, DLL was authorized to enter into the Lease on behalf of TAMS, and to use the TAMS private label name Toshiba America Medical Credit. Pursuant to that authority, it executed the Master Lease Agreement (by DLL's authorized signatory, Lisa Sparta) and also executed Master Lease Schedule No. 1, which incorporated the terms and conditions of the Master Lease Agreement. TAMS has never disavowed DLL's authority to so execute the documents. Having reaped the benefits of the Lease Agreement, defendants cannot now be heard to assert that the contract is invalid on the grounds that DLL had no authority it under the name TAMS or TAMC.

Defendants' argument that the Master Lease was not effective is yet another excuse for its breach and failure to perform under the Master Lease. Defendants reaped the benefits of the Master Lease by accepting the equipment, utilizing the equipment for their financial benefit and

6

by not paying for it.  Defendants' belated attempt to question the validity of the Master Lease and DLL's authority to execute it is without merit.  Defendants seek to invalidate the Master Lease to excuse their failure to perform under the terms of the Master Lease and related guaranties.

### III.  CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that Defendants' Motion for Summary Judgment on all Counts of Plaintiff's Complaint be denied.

**Respectfully submitted
McCARTER & ENGLISH, LLP**

_____
Rosetta B. Packer (Attorney ID No. 28357)
Peter J. Boyer (Attorney ID No. 25517)
Kevin J. Burke (Attorney ID No. 87214 )
Mellon Bank Center
1735 Market Street, Suite 700
Philadelphia, PA 19103
(215) 979-3800

Attorneys for Plaintiff

Dated: April 12, 2004              De Lage Landen Financial Services, Inc

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| De Lage Landen Financial Services, Inc. : | |
| : | CIVIL ACTION NO. 02-CV-2810 |
| Plaintiff : | |
| and : | HON. RONALD L. BUCKWALTER |
| : | |
| Toshiba America Medical Systems, Inc. : | |
| : | |
| Intervenor Plaintiff : | |
| : | |
| vs. : | |
| : | |
| DeSoto Diagnostic Imaging, LLC., Randon J. : | |
| Carvel, Lynn T. Carvel, Delta Radiology, P.C. : | |
| and Zobar Properties, LLC. : | |
| Defendants : | |
| : | |

## CERTIFICATE OF SERVICE

I, Peter J. Boyer, Esquire, hereby certify that on April 26, 2004, I caused a true copy of the foregoing Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, Exhibits and Proposed Form of Order in support thereof, to be served upon the following counsel in this action:

John Chesney, Esquire
Drinker Biddle & Reath, LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA  19103
**Via Overnight Mail**

William Matthews, Esquire
Saul Ewing LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA  19102
**Via Overnight Mail**

Kyle P. Tate, Esquire
Tate Law Firm
9085 Sandidge Center Cove
Olive Branch, MS 38654
**Via Overnight Mail**

Lyneanne Westcott, Esquire
The Wescott Law Firm
Two Penn Center Plaza, Suite 200
Philadelphia, PA  19102
**Via Overnight Mail**

_____
**PETER J. BOYER**