## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DELAGE LANDEN FINANCIAL SERVICES, INC., | : | CIVIL ACTION NO. 2:02CV2810 |
| Plaintiff, | : | |
| | : | HON. RONALD L. BUCKWALTER |
| TOSHIBA AMERICA MEDICAL SYSTEMS, INC. | : | |
| Plaintiff/Intervenor, | : | |
| | : | |
| v. | : | |
| | : | |
| DESOTO DIAGNOSTIC IMAGING, LLC., RANDON J. CARVEL, LYNN T. CARVEL, DELTA RADIOLOGY, P.C. and ZOBAR PROPERTIES, LLC | : | |
| | : | |
| Defendants. | : | |

### TOSHIBA AMERICA MEDICAL SYSTEMS, INC.'S
### MOTION FOR SANCTIONS

Plaintiff/Intervenor Toshiba America Medical Systems, Inc. ("TAMS"), by and through

its undersigned attorneys, hereby moves this Honorable Court pursuant to Federal Rule of Civil

Procedure 37(b)(2) to sanction Defendants for their willful failure to comply with the Rules of

Civil Procedure and with this Court's discovery order of December 2, 2003. In support of this

motion, TAMS relies upon the Memorandum of Law and accompanying materials filed

herewith, all of which are incorporated herein by reference. As additional grounds for the relief

requested, TAMS further relies upon the conduct complained of in TAMS' prior Motion for

Terminating Sanctions filed in this action and the materials filed in support of that motion.

Dated: April 30, 2004

John Chesney (Attorney I.D. No. 24458)
Julianne Peck (Attorney I.D. No. 79966)
Jonathan Sturz (Attorney I.D. No. 88153)
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996
(215) 988-1996

Attorneys for Plaintiff/Intervenor
Toshiba America Medical Systems, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DELAGE LANDEN FINANCIAL      :
SERVICES, INC.,      :      CIVIL ACTION NO. 2:02CV2810
         Plaintiff,      :
     :      HON. RONALD L. BUCKWALTER
TOSHIBA AMERICA MEDICAL      :
SYSTEMS, INC.      :
         Plaintiff/Intervenor,      :
     :
         v.      :
     :
DESOTO DIAGNOSTIC IMAGING,      :
LLC., RANDON J. CARVEL, LYNN T.      :
CARVEL, DELTA RADIOLOGY, P.C.      :
and ZOBAR PROPERTIES, LLC      :
     :
         Defendants.      :
     :

## TOSHIBA AMERICA MEDICAL SYSTEMS, INC.'S MEMORANDUM OF
## LAW IN SUPPORT OF ITS MOTION FOR SANCTIONS

### I.     INTRODUCTION

From the outset of this action, Defendants have employed improper tactics aimed at

undermining the integrity of the judicial process and at preventing Plaintiff De Lage Landen

Financial Services, Inc. ("DLL") and Plaintiff/Intervenor Toshiba America Medical Systems,

Inc. ("TAMS") from having a fair trial. These tactics have taken two main forms. One has

involved a concerted effort to interfere improperly with the evidence of third-parties and with

DLL's and TAMS' access to such evidence. The other has involved an equally deliberate

campaign aimed at frustrating DLL's and TAMS' ability to obtain fair discovery from

Defendants themselves.

Defendants' campaign to interfere with their opponents' ability to obtain evidence fairly

from third party witnesses was detailed in TAMS' prior Motion for Terminating Sanctions in this

action. As shown in that motion, Defendants and their counsel, Mr. Tate, have engaged in an

astonishing array of misconduct, including: (1) improper and unethical communications with

represented witnesses such as former TAMS employee Mike Smith (Motion for Terminating

Sanctions at 18-20, 22); (2) falsely representing that Mr. Tate represented a key witness, Paul

King, in an effort to prevent communications with Mr. King (Motion for Terminating Sanctions

at 15-18); (3) falsely representing that all recordings of conversations with witnesses had been

turned over in discovery, then "springing" an unproduced tape (of an unethical communication

with a represented witness!) on a witness at deposition (Motion for Terminating Sanctions at 20-

22); (4) attempting to intimidate and bribe witnesses (Motion for Terminating Sanctions at 12-

15).[1]

The principal subject matter of this motion is Defendants' improper attempts to frustrate

DLL's and TAMS' efforts to obtain proper discovery from Defendants themselves.[2] As shown

---

[1] Not all of Defendants' misconduct came to light in time to be included in the Motion for
Terminating Sanctions and, even more remarkably, some of Defendants' more egregious
misconduct continued *even while that motion was pending.* For example, Mr. Tate drafted two
affidavits for a former TAMS employee, Dave Steiff, and had Mr. Steiff sign them at a time
when Mr. Steiff was represented by counsel for TAMS in this action. Mr. Tate did not produce
these affidavits, however, until Mr. Steiff's deposition. Prior to signing the first of these
affidavits, DeSoto advised Mr. Steiff that it might be interested in buying a General Electric R &
F Room from him (Mr. Steiff moved to GE when he left TAMS) and Mr. Steiff closed the deal
on the sale within a week or two of signing the affidavit. Only months later did he advise TAMS
counsel that he no longer wished to be represented by them. *See* Exhibit "A," Deposition of
David Steiff, dated November 6, 2003 ("Steiff Dep.") at 86:16-88:19; 89:14-90:21; 6:22-7:25.
Even more egregiously, when Mr. Paul King, DeSoto's former head technologist and
administrator, was being deposed in November, 2003 – while the prior motion for sanctions was
pending – Dr. Carvel approached Mr. King while he was eating lunch and told him that DeSoto
was in a position to pay him up to one million dollars over time if he would come back and work
at DeSoto. *See* Exhibit "B," Deposition of Paul King, dated March 5, 2004 ("3/5/04 King Dep.")
at 110:11-112:9. Counsel for Defendants, Kyle P. Tate, Esquire, was present in the restaurant at
another table when Dr. Carvel made this inappropriate overture. *Id.* at 110:21-22.

[2] This motion will also address, however, other aspects of Defendants' ongoing campaign of
misconduct, such as Mr. Tate's deliberate disregard of this Court's Order that any equipment
performance issues were to be limited to the equipment at issue in this case as exemplified by his

below, Defendants have failed and refused to provide proper discovery in conscious disregard of

the Rules of Civil Procedure, have in bad faith failed to make good on promises to produce

information that they made to avoid motions practice and, most egregiously, have refused to

produce information even when required to do so by order of this Court.[3]

For purposes of this motion, the main significance of Defendants' misconduct, TAMS

submits, is that it has been conscious, significant, ongoing and strategic. It has been in place

essentially since the first shot was fired in discovery and it has continued essentially unabated.

The following examples will "bracket" this conduct, showing how early it began and how

unremitting it has been:  During the initial Rule 30(b)(6) deposition of Defendant DeSoto

Diagnostic Imaging, Inc. by Dr. Lynn Carvel, Dr. Carvel deliberately refused to provide

responsive answers to questions posed and insisted upon providing self-serving, non-responsive

answers instead.  Asked to advise his client (and sister) of her duty to answer truthfully and

directly, Mr. Tate ignored his obligations as an officer of the Court, not only declining to instruct

his witness to provide responsive answers but affirmatively encouraging her in her efforts to

---

improper subpoenaing of substantial numbers of TAMS customers, conduct that this Court was
required to curtail.

[3] DLL has today filed a motion with this Court seeking sanctions based upon Defendants'
misconduct in connection with discovery proceedings taking place in Tennessee. The
information Defendants are improperly seeking to conceal in that proceeding is financial
information that would, TAMS believes, explode Defendants' phony claim that the Toshiba
equipment that DeSoto leased did not function properly. TAMS addresses this conduct briefly in
this motion but, having reviewed DLL's motion, respectfully joins in it rather than addressing it
in great detail here. TAMS submits that, because Defendants' bad faith efforts to frustrate
crucial discovery in Tennessee are of a piece with their conduct in this action, those efforts are
relevant to this motion. Indeed, that conduct is typical of a broader, and grossly improper,
attempt to refuse proper discovery while engaging in trial by ambush. Thus, on the last day of
fact discovery, March 15, 2004, Defendants *for the first time* identified no less than 34 witnesses
purportedly pursuant to their Rule 26 mandatory disclosure requirements! That particular piece
of shoddy conduct will be the subject of motions *in limine* and need not be dwelt upon here. It
is, however, typical of Defendants' arrogant conviction that they will be allowed to benefit from,
rather than answer for, sharp practice and misconduct.

stultify the discovery process.[4] Most recently, having been ordered (and having *had to be*

ordered!*) by the Court to produce a witness to complete the Rule 30(b)(6) deposition of DeSoto,

Defendants purported to interpose (and, in the deposition, insisted that they would stand upon)

objections to the Rule 30(b)(6) notice despite having made no such objections when the notice

was originally served many months before.  Among these objections was an objection to TAMS'

request to depose DeSoto regarding the alleged written and oral representations and warranties

by TAMS made in regard to the equipment on the basis that the topic on which examination was

requested was *irrelevant!*[5]

    The examples just given, however, are among the very least of Defendants' violations of

the rules of the game.  As shown below, Defendants' determination to frustrate proper discovery

---

[4] Dr. Carvel, counseled and apparently well coached by Mr. Tate, refused to answer even the
most simple of questions during her deposition testimony.  When asked on what date she signed a
certain service document, Dr. Carvel refused to answer the question without inserting blatantly
non-responsive and self-serving information.  *See, e.g.,* Exhibit "C," DeSoto 30(b)(6)
Deposition, dated 7/22/03 ("7/22/03 DeSoto 30(b)(6)"), at 169-182.  For example:

    Q.  What was the date on which you signed this document, if you signed it?
    A.  It appears I signed this document on 2/2/2000 in reliance on Toshiba's selection and
representations of the equipment I purchased.
    Q.  Okay.  And did you sign it on the first page and on the third page, Dr. Carvel?
    A.  Yes, I signed it on the third page on 2/2/2000 in reliance of Toshiba's selection and
representations  of the equipment I purchased.
    Q.  Thank you, ma'am. And have you now done the very best you can to provide me
with only the date on which you signed this document in your answer?
    A.  Yes, I have.

*See id.* at 177:21-178:10.  Even more disturbing, however, is the fact that Mr. Tate saw nothing
wrong with Dr. Carvel's inappropriate and improper responses to simple questions.  At the
deposition, Mr. Tate stated that  Dr. Carvel's "testimony was fairly accurate and forthright" and
that "I absolutely disagree with your statement that she's trying to be untruthful or not being
forthcoming or trying to intend to evade your questions, if I'm paraphrasing you properly."  *See
id.* at 170:9, 175:24-176:3.

[5] *See* Exhibit "D" (DeSoto's Objections to TAMS' 30(b)(6) Deposition Notice of DeSoto, Topic
No. 3).  At the 30(b)96) deposition, counsel for DeSoto stated that DeSoto would stand on this
objection.  Exhibit "E" (DeSoto 30(b)(6) Deposition, dated 3/14/04 at 9-10).

has resulted in a broad-based and serious refusal to live up to their obligations under the Rules of

Civil Procedure, promises they have made to avoid motions to compel and even this Court's

Orders. Given that Defendants' conduct has been conscious and deliberate, and given that their

misconduct cannot now otherwise be adequately remedied, TAMS submits that the sanctions it

seeks in this motion are more than justified. When the conduct addressed in the motion that DLL

has filed today, and in TAMS' prior Motion for Terminating Sanctions, is added to the conduct

addressed specifically herein, TAMS respectfully submits that this conclusion is inescapable.

Among the key information that Defendants have failed to produce in accordance with

the Rules, their own promises and this Court's orders are the following: (a) all financial

information relating to the profits generated from the Toshiba equipment at issue in this

litigation; (b) the majority of the patient records that relate to various issues in this case; and (c)

the personnel records of the radiologists (other than Dr. Carvel) that worked at DeSoto. All of

this information was ordered produced no later than December 15, 2004, and Defendants

continued refusal to produce this information warrants sanctions under Federal Rule of Civil

Procedure 37(b)(2).

Under Rule 37, in addition to finding Defendants in contempt of court and requiring them

to pay TAMS' expenses in having to file this motion, this Court may enter an order: (a) deeming

designated facts established for purposes of trial; (b) refusing to allow Defendants to support or

oppose designated claims or defenses; (c) prohibiting Defendants from introducing designated

matters into evidence; and/or (d) striking Defendants pleadings or parts thereof, including

dismissing Defendants' action and/or entering default against Defendants. Due to Defendants'

willful and bad faith efforts to conceal relevant and necessary information and to influence

testimony, TAMS seeks an Order dismissing with prejudice all counts of Defendants' Amended

Counterclaims against DLL and TAMS, as well as default judgment in TAMS' favor.[6] In the

alternative[7], TAMS seeks an Order deeming the following facts established as against all

Defendants for purposes of trial: (1) all of the Toshiba equipment leased by DeSoto performed

properly in accordance with its specifications and in accordance with any warranties or

representations that Defendants made to Defendants or any of them; (2) TAMS properly

serviced, maintained and repaired the Toshiba equipment leased by DeSoto; (3) DeSoto engaged

in Medicare fraud which adversely affected its operations due to technologist turnover, in that

the Medicare fraud caused technologists to quit and prevented DeSoto from being able to retain

qualified replacement technologists and; (4) DeSoto and the other Defendants were sophisticated

parties who freely entered into all agreements involved in this action and no such agreements

were contracts of adhesion or otherwise unlawful or unenforceable. In addition, and in the

alternative to terminating sanctions, TAMS requests an order: (1) Prohibiting Defendants from

introducing any evidence relating to any claimed damages, including without limitation damages

relating to the performance or alleged performance of the leased equipment; and (2) awarding

TAMS its costs, including reasonable attorney's fee, incurred in bringing this motion and in

bringing its original motion for terminating sanctions.

---

[6] TAMS' prior Motion for Terminating Sanctions was denied without prejudice. This motion should be considered as embodying, in addition to the matters specifically addressed, a renewal of that former motion based upon the misconduct demonstrated in that motion.

[7] At this point, anything less than dismissal of all of Defendants' claims and defenses would, TAMS submits, fail to remedy Defendants' gross misconduct. As a matter of proper representation of TAMS, however, TAMS' counsel feels obliged to articulate those lesser sanctions that it believes should apply should the Court deny complete relief.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Underlying Issues

This Court is by now well aware of the underlying issues: Defendant DeSoto Diagnostic Imaging, LLC leased a variety of Toshiba medical diagnostic imaging equipment, used it for fourteen months to develop a very profitable business from scratch, then unilaterally de-installed it and defaulted on its lease and service obligations. The other defendants, Randon J. and Lynn T. Carvel (DeSoto's principals), and Delta Radiology and Zobar Properties, each executed and delivered guarantees to secure Desoto's performance under the Lease. The issues are fully framed in all parties' pending summary judgment motions and need not be repeated here.

### B.    Relevant Discovery Proceedings

On October 23, 2003, TAMS filed an Emergency Motion to Compel discovery directed to Defendants based upon Defendants refusal to produce documents in response to TAMS' Third Request for Production of Documents (attached hereto as Exhibit "F"). The Motion was filed as an Emergency Motion due to the fact that the expert disclosure and discovery deadlines (October 29 and November 30, 2003) were fast approaching.

On January 30, 2004, the Court entered an Amended Scheduling Order, listing this case for trial on May 17, 2004, and extending the discovery deadline to March 15, 2004.

On December 2, 2003, the Court ordered Defendants to comply, on or before December 15, 2003, with all requests listed in TAMS' motion to compel (except Requests Nos. 28, 29 and 30, to which Defendants were excused from providing responses provided they did not present claims or defenses relating to the AGFA PACS or RIS systems). The Court ordered the responses in accordance with the terms, and particularity, specified in TAMS' requests and as clarified in its motion. To the extent they claimed no responsive documents existed, Defendants

were ordered affirmatively so to state in a formal response to TAMS. A copy of the Order is attached hereto as Exhibit "G."

Defendants served Amended Responses to TAMS' Third Request for Production on December 18, 2003 (three days after the date on which Defendants were due to comply with the Court's Order), stating that they were "working diligently" to comply with Request Nos. 1, 2, 26 and 27 (all of which relate to DeSoto's use of the Toshiba equipment), as well as Request No. 3 (which sought the personnel files for all persons employed by DeSoto at any time during its existence). A copy of Defendants' Amended Responses are attached hereto as Exhibit "H." Incredibly (given that TAMS was forced to file a motion to get these responses) Defendants claim that no additional responsive documents exist with regard to the remainder of the requests to which they were compelled to respond.

The documents Defendants promised (after being compelled) to produce include: DeSoto's patient medical records **(Request No. 1)**; records that identify the procedures ordered by referring physicians, and any records that identify additional procedures ordered by Dr. Carvel or any other radiologist at DeSoto **(Request No. 2)**; all documents relating to bills, charges, or invoices issued by Lynn T. Carvel, PLLC (the entity through which Dr. Carvel billed the professional component (interpretation of the radiologic images) of DeSoto's services **(Request No. 26)**; all documents that refer or relate to Lynn T. Carvel, PLLC, including but not limited to documents that reflect payments from Lynn T. Carvel, PLLC to DeSoto **(Request Nos. 27)**; and the personnel files for the radiologists that worked at DeSoto **(Request No. 3)**.

### 1.    Documents Relating to Lynn T. Carvel PLLC

To date, despite their December 18, 2003 representation that they were "working diligently" to produce documents that were due December 15, 2003, Defendants have produced

nothing that relates to Lynn T. Carvel, PLLC, and they have taken every conceivable step possible to prevent TAMS or DLL from getting this information elsewhere.

For example, due to defendants' refusal to turn over all of their and Lynn T. Carvel, PLLC's financial records, both DLL and TAMS subpoenaed DeSoto's accountants Rhea & Ivy, PLC and John A. May, Jr. Rhea & Ivy filed two motions to quash the subpoenas (the first was denied without prejudice on procedural grounds), both of which were denied. The United States District Court for the Western District of Tennessee ordered them to produce the records by March 26, 2004. Three days before they were due, Defendants filed a motion for reconsideration of the Court's Order on behalf of themselves as well as on behalf of Rhea & Ivy, PLC and John A. May, Jr. The motion for reconsideration was prepared solely by counsel for defendants, Kyle P. Tate, Esquire. In fact, Holly Brady, Esquire, also counsel for the defendants, signed the motion on behalf of Scott Crosby, Esquire, counsel for Rhea & Ivy, PLC and John A. May, Jr. *See* Exhibit "I." That motion was denied, and the records were ordered to be produced by April 26, 2004. *See* Exhibit "J." Defendants, as well as Rhea & Ivy, ignored this order and now have filed a notice of appeal seeking relief in the Court of Appeals for the Sixth Circuit.

Incredibly, Defendants have recently moved to sanction DLL and its counsel for subpoenaing defendants' financial information from Merchants & Farmers Bank after the close of discovery – an action that was only necessary due to Defendants' and their accountants' continued refusal to turn over financial records they have now been ordered *four times* to produce.

**2.    Medical Records Relating to Defendants' Use of the Toshiba Equipment**

With regard to the remainder of the information relating to DeSoto's use of the Toshiba equipment Defendants have yet to produce the information in a usable format.

Between December 18, 2003 and January 9, 2004, Defendants produced two DVDs labeled DIM/DOM, a CD labeled RadPro, a CD labeled Talk Technology, and a Medical Manager backup tape. However, because TAMS does not have the necessary software/hardware, it was unable to review the RadPro CD, the Talk Tech CD or the Medical Manager tape. Moreover, although TAMS could open some of the files on the two DIM/DOM DVDs, many of the files were corrupt and/or in an unreadable format, the files were not indexed, were not produced in any discernible order, and were so poorly imaged that they can not be printed and re-imaged in a searchable format. Contrary to Dr. Carvel's testimony that DeSoto can access the DIM/DOM database by date of service, the DIM/DOM files -- *to the extent they are not corrupt* -- are not identified, and cannot be accessed, by date.

TAMS informed Defendants of these deficiencies (of which Defendants were most certainly already aware) by letter dated January 30, 2004, demanding that Defendants produce the information in paper format or in a usable and readable format. *See* Exhibit "K." With regard to the DIM/DOM CDs, TAMS also requested that the files be produced in order by patient name or by date of service. *Id.* Defendants responded by letter dated February 6, 2004, stating that they had produced the documents in the format in which they were kept and that therefore their production complied with the Rules of Civil Procedure. *See* Exhibit "L." By letter dated February 26, 2004, TAMS informed Defendants that their continued refusal to produce the information in a usable and readable form is in direct violation of the Court's Orders, as well as Rule 34(a)(1) which requires the production of data compilations in a "reasonably usable format." TAMS notified Defendants in this letter that it intended to seek sanctions if they refused to produce the information, in accordance with the Rules, on or before March 2, 2004. *See* Exhibit "M."

Defendants responded to TAMS' threat of sanctions by letter dated March 1, 2004 (attached hereto as Exhibit "N") with feigned surprise, proposing that TAMS review the *"thousands and thousands"* of pages of records on a computer at DeSoto's facility in Mississippi under DeSoto's counsel's constant supervision, on March 15 – *the last day of discovery* – or later. By e-mail dated March 2, 2004 (attached hereto as Exhibit "O"), TAMS pointed out that providing "viewing" access on the last day of discovery, to what counsel for DeSoto had described as "thousands and thousands" of documents (too voluminous for DeSoto to print) was not a solution, or a good faith effort to provide access to relevant discovery. TAMS again made it clear that although it did not look forward to filing yet another motion in this case, it would have no choice unless DeSoto immediately provided paper copies. Defendants responded by letter dated March 4, 2004 (attached hereto as Exhibit "P") stating that their proposal was made in "utmost good faith" to accommodate TAMS' "unusual demands" and that their production was proper. Incredibly, Defendants, while claiming in the letter that it would take several weeks just to print the documents, still thought allowing TAMS' view only access to this volume of information, was reasonable. By e-mail dated March 5, 2004 (attached hereto as Exhibit "Q"), TAMS once again made it clear that it would seek sanctions absent compliance with the rules. No response was made, and to date, just weeks before trial, TAMS does not have access to the vast majority of the documents that Defendants were compelled to produce.

### 3.    Personnel Files for Radiologists at DeSoto

Pursuant to the Court's December 2, 2003 Order, Defendants were ordered to provide and promised to produce the personnel files for all persons employed by DeSoto at any time during its existence. To date, however, defendants refuse to produce the files for the radiologists that worked at DeSoto -- Steven Alexander, M.D., John Coy, M.D., Stella Powell, M.D. and

Matthew Williamson, D.O. – on the ground that these individuals were not "employees of DeSoto," but rather, of Lynn T. Carvel PLLC. *See* Exhibit "N" (March 1, 2004 letter from Kyle Tate). Mr. Tate's reliance on this meaningless technicality is yet another example of his inability to fight fair and his insistence on frustrating discovery in this case. As was disclosed in discovery, these individuals provided professional services to DeSoto's patients, and regardless of whether they were paid by DeSoto Diagnostic or Lynn T. Carvel (a company wholly owned by Dr. Carvel, and used to distinguish between the technical and professional services performed at DeSoto) is irrelevant. These documents are in Defendants possession, and are responsive to TAMS' request.

## C.    Defendants' Efforts to Obtain Carte Blanche Discovery Through Inappropriate Litigation Tactics.

Defendants' inappropriate litigation tactics goes beyond the conduct described above or complained of in TAMS' Motion for Terminating Sanctions filed in October 2003. At the December 2, 2003 hearing the Court denied Defendants' motion to compel TAMS to disclose information relating to its dealings with other customers, stating on the record that discovery in this case was limited to *this transaction only*. In a deliberate attempt to make that Order a dead letter, Defendants immediately subpoenaed fourteen (14) of TAMS non-party customers, seeking documents and information relating to their use of Toshiba equipment, despite the fact that none of them had any contact or involvement with the matters involved in this lawsuit, and many if not most did not have the same or similar types of Toshiba equipment at their facilities as did the Defendants.

Indicative of the fact that Defendants knew this Court would have quashed these subpoenas (given the opportunity), they did not give TAMS any notice whatsoever of these

subpoenas – either before *or after* they were served.[8]  As a result, TAMS was not made aware of

the subpoenas until it heard about them from its customers (some of whom thought they had

been sued by TAMS).  At that point, some had already responded to the subpoenas, and TAMS

was deprived of the opportunity to timely seek a protective order.  Ultimately, this Court quashed

these subpoenas pursuant to TAMS' emergency motion.

## III.  ARGUMENT

### A.  The Court Should Sanction Defendants by Dismissing with Prejudice All of Defendants' Counterclaims and Enter Default Judgment in Favor of TAMS.

Where, as here, a party disobeys a discovery order, Rule 37 sanctions are available.

These sanctions include:

1.  An order designating matters or facts as established for purposes of the litigation (Rule 37(b)(2)(A));

2.  An order precluding a party from supporting or opposing certain claims or defenses (Rule 37(b)(2)(B));

3.  An order precluding the introduction of designated matters into evidence (Rule 37(b)(2)(B));

4.  An order striking pleadings or dismissing the action or rendering a default judgment (Rule 37(b)(2)(C)).

Fed. R. Civ. Proc. 37.  The choice of the appropriate sanction is committed to the sound

discretion of the district court.  *Mangano v. American Radiator & Standard Sanitary Corp.*, 438

F.2d 1187, 1188 (3d Cir. 1971); *See also Ware Communs., Inc. v. Rodale Press, Inc.*, No. 95-

5870, 2002 U.S. Dist. LEXIS 1015, at *15 (E.D. Pa. Jan. 23, 2002) (whether sanctions are

---

[8] Although Mr. Tate purported to serve counsel for TAMS with the subpoenas, neither John Chesney, nor anyone at Drinker Biddle & Reath received copies from Mr. Tate until he was asked to send copies.  *See* Exhibit "R."

appropriate is within the district court's broad discretion of discovery matter), aff'd, 322 F.3d
218 (3d Cir. 2003).

Obviously, the entering of a default judgment and/or the dismissal of Defendants'
counterclaims is a harsh sanction. As the United States Supreme Court has stated, however, "the
most severe in the spectrum of sanctions . . . must be available to the District Court in
appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a
sanction, but to deter those who might be tempted to engage in such conduct in the absence of
such a deterrent." *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 639
(1976). As evidenced by Defendants' continuous and flagrant disregard for the Rules of Civil
Procedure and its discovery obligations -- even in the face of TAMS' initial motion for
terminating sanctions -- Defendants and their counsel, need just such a deterrent.

The Third Circuit has held that "district judges should determine the proprietary of
punitive dismissals in light of the factors outlined in *Poulis v. State Farm Fire and Casualty Co.*,
747 F.2d 863 (3d Cir. 1984)." *Derzack v. County of Allegheny*, 173 F.R.D. 400, 413 (W.D. Pa.
1996) (quoting *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992)), *aff'd without op.*, 118
F.3d 1575 (3d Cir. 1997).[9] Under these standards, the sanction of dismissal is proper only in
situations in which the offending party has engaged in repeated willful misconduct and bad faith.
It is not necessary that every one of the *Poulis* factors be met in order for dismissal or default to
be appropriate. All that is required is that "the district court carefully consider[ ] and weigh[ ]
several factors and reasonably exercise[ ] his or her discretion in finding the scales tip toward

---

[9] In considering whether or not to impose a dismissal or default, the district court must consider
the following: (1) the extent of the party's personal responsibility; (2) the prejudice to the
adversary caused by the failure to meet scheduling orders or respond to discovery; (3) a history
of dilatoriness; (4) whether the conduct of the party of the attorney was willful or in bad faith; (5)

dismissal." *Derzack*, 173 F.R.D. at 414 (citing *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992)). In short, the Court is free to apply the *Poulis* factors in a manner appropriate to the particular circumstances presented in the particular case. Here, all of the *Poulis* factors warrant dismissal of Defendants' counterclaims.

### 1.    Defendants are Responsible for Their Refusal to Accept and Respect the Rulings of This Court.

At all relevant times, Mr. Tate has been, in addition to Defendants' counsel of record in this action, DeSoto's CEO and inside General Counsel. Thus, there can be no claim that DeSoto, at least, knows what Mr. Tate knows. It also worthy of note that Mr. Tate is Dr. Carvel's brother, so it would be difficult for her to argue that she was not aware of his refusal to produce the information in question, or of the other litigation tactics referenced herein. Certainly, all Defendants were fully on notice of all of TAMS' complaints about their, and Mr. Tate's conduct, as delineated in the prior Motion for Terminating Sanctions. There simply can be no question that the first *Poulis* factor is satisfied.

### 2.    TAMS Has Been Prejudiced by Defendants' Refusal to Produce the Relevant Discovery.

Prejudice for the purposes of *Poulis* analysis does not mean "irremediable harm." *Ware Communs.*, 322 F.3d at 222. The burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy is sufficiently prejudicial. *Id.* (affirming order precluding plaintiff from alleging damages at trial where plaintiff did not produce calculation until the eve of trial, and only after defendant filed two motions: the motion to compel, and the motion to preclude). *See also Curtis T. Bedwell & Sons, Inc. v. International Fidelity Ins. Co.*, 843 F.2d 683, 694 (3d Cir. 1988) (affirming default sanction where plaintiff deprived the other

---

the effectiveness of sanctions other than dismissal, which entails an analysis of alternative

parties of important information and forced them to expend costs in obtaining court orders to force compliance).

Here, by refusing to produce any records at all, including the financial records, of Lynn T. Carvel, PLLC, which directly relate to the profits generated by the Defendants' use of the Toshiba equipment, Defendants have precluded TAMS and DLL from presenting crucial and telling evidence to the jury, and have prevented TAMS and DLL from any follow-up discovery with regard to those records. In an effort to obtain these records TAMS (aside from filing this motion) has had to file a motion to compel, and engage in a motions battle in Tennessee (despite this Court's ruling that the documents are relevant) seeking production from Defendants' accountants.

Likewise, TAMS has also been prejudiced by Defendants' failure to produce its patient records (including physician referrals and radiologist dictation reports) in a format accessible to TAMS. Without this information, TAMS cannot prove that Defendants used the Toshiba equipment to regularly commit Medicare fraud. Indeed, despite the fact that most of DeSoto's former employees testified that Dr. Carvel committed such fraud,[10] and despite the fact that

---

sanctions; and (6) the meritoriousness of the claim or defense. *See Poulis*, 747 F.2d at 868-70.

[10] *See, e.g.*, Deposition of Erin Galtelli-Singer at 43-58 (Exhibit "S") (testifying that she quit working at DeSoto because Dr. Carvel had a policy of taking of unnecessary skull x-rays, and performing MRI's with and without contrast on all Medicare patients "because Medicare would pay for it" and it would help her afford to get rid of the Toshiba equipment; Deposition of Brian Gibbs at 46-49, 94-96, 98-104 (Exhibit "T") (testifying that Dr. Carvel performed unnecessary skull x-rays, x-rays of body parts scheduled for MRI, and contrasted studies that were not ordered by the referring physician); Deposition of Pam Paulk at 85- 92 (Exhibit "U") (testifying that Dr. Carvel performed unnecessary skull x-rays, contrasted studies, and pelvis (in addition to abdomen) CTs regardless of whether they were ordered by the referring physician); Deposition of Cindi Holmes at 58-65 (Exhibit "V") (testifying that there was a policy at DeSoto of performing CT scans with and without contrast); Deposition of Deborah May at 78-100 (Exhibit "W") (testifying that DeSoto had a policy of performing scans with and without contrast on Medicare patients, as well as of performing unnecessary skull and other body part x-rays, and of recording certain exams as "3D Reconstructions" when a 3D Reconstruction had not actually

TAMS' expert identified various patterns of potential fraud in DeSoto's billing records, the fraud can only be proven by demonstrating that the procedures performed were not requested by the referring physician and/or were not warranted as reflected in the radiologists dictation reports. How Defendants' used the Toshiba equipment is critical to any defense by TAMS to DeSoto's allegations that the equipment failed to meet its essential purpose. Proof of such broad is also highly relevant to Defendants' credibility, especially the credibility of Dr. Carvel, and will support TAMS' theory that the high technologist turnover at her facility (resulting in a higher likelihood of operator error when using the Toshiba equipment) had everything to do with how Dr. Carvel ran her facility as opposed to, as claimed by Dr. Carvel, the technologists' frustrations with the Toshiba equipment.

### 3. Defendants' Have a History of Dilatoriness

In *Poulis*, one failure to answer interrogatories and a failure to file a pretrial statement were sufficient to support a dismissal.

> Time limits imposed by the rules and the court serve an important purpose for the expeditious processing of litigation. If compliance is not feasible, a timely request for an extension should be made to the court. A history by [a party] of ignoring these time limits is intolerable.

*Poulis*, 747 F.2d at 868. Here, defendants have engaged in a pattern of delay.

TAMS served its Third Request for production seeking documents relating to Lynn T. Carvel PLLC on August 27, 2003. When Defendants' failed to respond, TAMS filed a motion to compel, and on October 20, 2003 served Defendants' accountants with a subpoena. Despite the fact that the motion to compel was granted, both Defendants and their accountants have refused

---

been performed). Not surprisingly, TAMS' expert, Claudia Murray, identified billing patterns at DeSoto that were consistent with unlawful over-billing. *See* Exhibit "X" (Expert Report of Claudia Murray). These patterns included a high volume of skull x-rays, x-rays routinely billed with MRI's and CT scans, and reconstruction routinely billed with MRI's and CT scans. *Id.*

to turn over the information requested. In fact, Rhea & Ivy filed two motions for a protective order, and when they were denied, Defendants filed a motion for reconsideration. All of these motions were denied, and the documents were once again ordered produced. Defendants and Rhea & Ivy have ignored this fact.

Likewise, when Defendants refused to turn over all records relating to their use of the Toshiba equipment in response to TAMS' initial, more general requests, TAMS, in its Third Request served in August 2003 specifically asked for all patient records, including referring physician requests and radiologist dictation reports. Despite having been compelled to produce this information in December 2003, Defendants have still refused to produced this information in accordance with the Rules of Civil Procedure (*i.e.* in a format accessible to TAMS).[11] Defendants have outright ignored TAMS' request that they comply with Rule 34 by producing the information in a "reasonably usable" form. Instead, they offered to permit TAMS (on the last day of discovery or after) to "view" the records on a computer (which may amount to the equivalent of hundreds of boxes) at DeSoto's office. By deliberately ensuring that TAMS would not have even the limited access they proposed to this information until after the close of discovery, Defendants' have effectively precluded TAMS from making use of the information, and their action must be sanctioned.

### 4.    Defendants' Conduct was Willful and in Bad Faith

There can be no doubt here that Defendants have acted willfully and in bad faith in their continued refusal to produce the financial records of Lynn T. Carvel, or to produce DeSoto's patients medical records in a usable format. This is part of a strategy designed not only to

---

[11] Defendants purport to have produced the information on five disks. However, TAMS lacks the hardware/software to open or review the contents on three of those disks, and as stated

purposefully prevent TAMS from having access to documents and information relevant to this case, but also to delay this litigation and to make it cost TAMS more than it should. They have provided no excuse for their refusal to produce the financial records -- and have made every conceivable effort to prevent TAMS and DLL from obtaining these records elsewhere. They have also provided no excuse for their failure to produce the medical records in a usable format other than to state -- erroneously -- that they do not have to, and that they do not have the resources to print "thousands and thousands" of pages.[12]

The law recognizes that the "intentional advancement of a baseless contention that is made for an ulterior purpose, *e.g.*, harassment or delay" is indicative of bad faith. *See Ford v. Temple Hospital*, 790 F.2d 342, 347 (3d Cir. 1986). Here there simply is no justification for DeSoto's continued efforts to prevent proper discovery in this case.

---

earlier, although the remaining two discs do not appear to require special hardware/software, many of the files on those disks cannot be opened and/or are corrupt.

[12] This is at complete odds with their position that TAMS should have the resources to camp its attorneys and/or experts in Mississippi to review these "thousands and thousands" of pages on a computer screen under DeSoto's constant supervision -- *after* the close of discovery.

### 5.    Consideration of Lessor Sanctions

Dismissal/entry of judgment is a sanction of the last resort. *Poulis*, 747 F. 2d at 869. Alternative sanctions, however, will not be salutary. By refusing to produce the financial records of Lynn T. Carvel PLLC, and by failing to provide TAMS with meaningful access to the patient records Defendants were compelled to produce, TAMS has effectively been precluded from completing discovery, and from mounting an important part of its defense to Defendants claim that the equipment did not perform as warranted, and failed to meet its essential purpose. At this late stage, even if the documents were produced tomorrow, TAMS and its experts do not have the time to properly analyze the information. Defendants actions have had the deliberate effect of preventing TAMS from proving the alleged Medicare fraud, and from discovering the full extent of DeSoto's success during the time period that the Toshiba equipment was installed. To permit their Counterclaims and defenses to go forward in light of this conduct would be tantamount to rewarding their conduct, and as such any sanction, other than terminating sanctions, would be ineffective.

### 6.    Defendants Counterclaims and Defenses to TAMS Complaint are Not Meritorious.

Under *Poulis,* a claim or defense will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery or provide a complete defense. Here, as set forth in great detail in DLL and TAMS' motions for summary judgment this is simply not the case. DeSoto entered into a finance lease with DLL that obligated it to make payments under the lease (upon written acceptance of the equipment) regardless of any alleged failure of the equipment to perform as warranted. Likewise, Defendants have failed to set forth an adequate claim for fraud or conspiracy to commit fraud, and both TAMS and DLL are therefore entitled to

judgment as a matter of law, even if all of the allegations in Defendants Amended Affirmative

Defenses and Counterclaims were true.

>    **B.     Alternatively, The Court Should Sanction Defendants by Precluding them
>            From Supporting Certain Counterclaims, Affirmative Defenses, and
>            Damages And by Deeming it Established at Trial that Defendants' Engaged
>            in Medicare Fraud.**

Defendants may not dictate the outcome of this litigation by choosing not to produce

necessary information, or as in the case of the patient records, by producing them in a manner

not reasonably accessible to TAMS. As a result, should this Court decide not to dismiss

Defendants Counterclaims and grant TAMS default judgment as requested above, it should, at a

minimum, ensure that Defendants' purposeful concealment of the windfall they earned on the

allegedly "defective" equipment and the illegal manner in which they earned that windfall does

not get rewarded. Where, as here, a party does not produce documents that it has been

compelled to produce, preclusive sanctions as well the deeming of certain facts as established is

warranted. Fed. R. Civ. Proc. 37(b)(2)(A) and (B). *See also, Ware Communs.*, 322 F.3d at 224-

25 (affirming sanctions precluding Ware from introducing evidence of damages at trial where it

provided incomplete discovery with regard to its damages, despite discovery requests and

orders); *Allen Organ Co. v. Galanti Organ Builders, Inc.*, Civ. A. No. 89-7636, 1991 U.S. Dist.

LEXIS 1606, at *16 (E.D. Pa. Feb. 15, 1991) (designating contents of documents not produced

as admissions at trial); *Penn-Field Precision, Inc. v. General Plating Corp.*, Civ. A. No. 83-

2561, 1986 U.S. Dist. LEXIS 30488, at *13-14 (E.D. Pa. Jan. 14, 1986) (precluding defendant

from presenting evidence in support of counterclaim where defendant did not answer

interrogatories by the deadline set by the Court).

Indeed, "[s]anctions become meaningless unless they are applied when the circumstances

demand them." *In re Prof'l Hockey Antitrust Litig.*, 63 F.R.D. 641, 656 (E.D. Pa. 1974), *rev'd,*

531 F.2d 1188 (3d Cir.), *rev'd*, 427 U.S. 639 (1976). Here, Defendants refusal to produce the evidence necessary to TAMS' defense to Defendants' counterclaims should not, and cannot be countenanced. At a minimum, in addition to monetary sanctions, the following facts should be deemed established at trial: (a) all of the Toshiba equipment leased by DeSoto performed properly and in accordance with its specifications and in accordance with any warranties or representations made by TAMS; (b) TAMS properly serviced, maintained and repaired the Toshiba equipment leased by DeSoto; (c) DeSoto engaged in Medicare fraud; and (d) DeSoto and the other Defendants were sophisticated parties who freely entered into all agreements involved in this action and no such agreements were contracts of adhesion or otherwise unlawful or unenforceable. Defendants should also be prohibited from introducing any evidence relating to any claimed damages, including without limitation damages relating to the performance or alleged performance of the leased equipment. Any lessor sanction will not remedy the prejudice to TAMS.

## IV.    CONCLUSION

For the foregoing reasons, TAMS respectfully requests that this Honorable Court enter an Order in the form attached hereto.

Dated: April 30, 2004

John Chesney (Attorney I.D. No. 24458)
Julianne Peck (Attorney I.D. No. 79966)
Jonathan Sturz (Attorney I.D. No. 88153)
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996
(215) 988-2700
Attorneys for Plaintiff/Intervenor
Toshiba America Medical Systems

## CERTIFICATION OF COUNSEL

Pursuant to Local Rule 26.1(f), I hereby certify that Julianne Peck, Esquire of this office has conferred with Kyle P. Tate, Esquire, counsel for the Defendants in this matter, in a good faith effort to resolve by agreement the issues raised by the motion without intervention by the Court. The parties have been unable to resolve these issues through informal means. The issues which remain unresolved are discussed in the Memorandum of Law submitted herewith.

Dated: April 30, 2004

Julianne Peck, Esquire
DRINKER BIDDLE & REATH, LLP

Attorneys for Plaintiff/Intervenor
Toshiba America Medical Systems, Inc.

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that today I caused a true and correct copy of the within Motion For Sanctions and the Exhibits thereto to be served upon counsel of record for all of the other parties to this proceeding by Federal Express, at the following addresses:

Kyle P. Tate, Esquire
9085 Sandidge Center Cove
Olive Branch, Mississippi 38654

Rosetta B. Packer, Esquire
MCCARTER & ENGLISH
Mellon Bank Center, Suite 700
1735 Market Street
Philadelphia, PA 1910-7501

William Matthews, Esquire
SAUL EWING LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102

Lynn Wescott, Esquire
The Wescott Law Firm
Two Penn Center Plaza, Suite 200
Philadelphia, PA 19103

Dated: April 30, 2004

Julianne Peck