IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DELAGE LANDEN FINANCIAL SERVICES, INC., <br>                     Plaintiff, <br><br> TOSHIBA AMERICA MEDICAL SYSTEMS, INC. <br>                     Plaintiff/Intervener, <br><br> v. <br><br> DESOTO DIAGNOSTIC IMAGING, LLC., et al. <br>                     Defendants and Counter-Claimants | CIVIL ACTION NO. 2:02CV2810 |

## ORDER

**AND NOW**, upon consideration of Defendants' Motion for Summary Judgment Based on Plaintiff's Reliance on the Master Lease, Plaintiff's response thereto, and Defendants' Reply Brief, it is hereby **ORDERED** that the Motion is **GRANTED**, and that all claims of Plaintiff De Lage Landen Financial Services, Inc. against Defendants are hereby **DISMISSED WITH PREJUDICE**.

                                                                  BY THE COURT:

                                                                  Honorable Ronald L. Buckwalter

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DELAGE LANDEN FINANCIAL SERVICES, INC., <br>　　　　　　　　Plaintiff, <br><br> TOSHIBA AMERICA MEDICAL SYSTEMS, INC. <br>　　　　　　　　Plaintiff/Intervener, <br><br>　　　　　　v. <br><br> DESOTO DIAGNOSTIC IMAGING, LLC., et al. <br>　　　　　　　　Defendants and Counter-Claimants | CIVIL ACTION NO. 2:02CV2810 |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BASED ON PLAINTIFF'S RELIANCE ON THE MASTER LEASE**

**I. INTRODUCTION**

Plaintiff De Lage Landen Financial Services, Inc. ("DLL") did not dispute any of the critical facts on which Defendants based their Motion for Summary Judgment, and also did not distinguish Defendants' legal authority. Instead, DLL raised arguments that are either irrelevant and/or demonstrably and indisputably false. As DLL's response makes clear that there is no disputed issue of <u>material</u> fact, Defendants are entitled to summary judgment on all of DLL's claims.

**II. EACH ARGUMENT RAISED BY DLL IS IRRELEVANT AND/OR FALSE**

Each of the legal arguments made in DLL's section entitled "Argument" is either irrelevant and/or demonstrably and indisputably false:

- *"Defendants, for the first time, argue . . . that the Master Lease was never effective because TAMS was required to execute the Master Lease."* This is false.

See, e.g., Defs. First Amended Affirmative Defenses and Counterclaims at ¶ 24 ("The Master Lease Agreement was not executed on behalf of TAMS by an authorized party as set forth below and thus invalid and void and/or voidable by the Defendants"). This is also irrelevant because Defendants' Motion was filed in accordance with the Court's schedule for dispositive motions.

- *"Defendants ignore the fact that this was a finance lease whereby DLL became the finance lessor."* This is false. DLL and TAMS have judicially admitted that TAMS was the Lessor, and TAMS conceded in its summary judgment brief that it supplied the equipment to Desoto. TAMS S.J. Br. at 2-3 (describing itself as "supplier"). A finance lease is not created when the lessor also supplies the goods. 13 Pa. C.S. § 2A103(a) ("finance lease" defined as "a lease with respect to which (1) the lessor does not select, manufacture, or supply the goods").

- *"Lisa Sparta had the authority to execute the Master Lease on behalf of DLL."* This is irrelevant because DLL's form document mandated that TAMS, the Lessor, execute the Agreement for it to be effective. Conditions precedent to contract formation are strictly construed against the drafter. See, e.g., Cuchi v. Rollins Protective Servs. Co., 546 A.2d 1131, 1131 (Pa. Super. 1988), rev'd on other grounds, 574 A.2d 565 (Pa. 1990) (holding that where contract was signed by employee of drafter company who was not from "home office," even that signature was insufficient to enable drafter company to claim benefits of contract that included express condition precedent that officer from home office sign).

- *"Generally, signatures are not required for the formation of the contract unless the signature is required by law or by the intent of the parties."* While this may

be "generally" true, it is irrelevant here because the Master Lease Agreement expressed the parties' intent that "Agreement shall not be binding upon Lessor or become effective unless and until Lessor executes the Agreement."

- *"In accordance with the Program Agreement . . . the Master Lease was properly executed by DLL once the conditions precedent were met and the Master Lease was assigned to DLL."* This is false. One of the "conditions precedent" DLL refers to is that TAMS fully performed and complied with its obligations under the Program Agreement. Program Agreement at § 3.1; see also DLL Br. at 1. TAMS did not do so, and, moreover, DLL could not sign the Master Lease, because § 5.2(i) of the "Program Agreement" requires that <u>TAMS</u> "consummate" all contracts submitted for approval or assigned to DLL: "TAMS represents and warrants to [DLL] that as of the date each Contract is submitted for approval or assigned to [DLL] . . . <u>TAMS' conduct in . . . consummating the Contract</u> . . . has not violated in any material respect any federal or sate [sic] law, rule, or regulation which will result in the rescission of any Contract" (emphasis added).

- *"Defendants cannot argue that DLL is not a party to the Master Lease. Under Pennsylvania law, contract rights are generally freely assignable. . . . In the present case, not only was there no express provision prohibiting the lessor's assignment of the Master Lease, the Master Lease clearly indicated that the lessor had the right to assign."* The first sentence is false; the other two sentences are irrelevant. If DLL were a "party to the Master Lease," assignment would not even be an issue. DLL must mean that TAMS assigned to DLL the right to enter into the Master Lease with Desoto. While contract rights may be "generally"

assignable, the "right to accept" a contract is an exception, as this is personal in the offeree, and cannot be assigned, even if the contract provides that the agreement is assignable. See, e.g., 2 Williston on Contracts § 6:27 (4th ed.) ("an offer made to one person cannot be accepted by another, even though the offeree purports to assign it and this is true despite the fact that upon acceptance, the former offeree might assign his rights under the contract thereby formed") (emphasis added); see also Centre Area Trans. Auth. v. Common of Pennsylvania, Unemployment Compensation Bd., 531 A.2d 1172, 1173, n.3 (Pa. Commw. 1987) ("An offer creates a power of acceptance in a specified offeree to transform the offeror's promise into a contractual obligation") (citations omitted); Ott v. Home Sav. & Loan Assoc., 265 F.2d 643, 646-47 (9th Cir. 1958) ("Indeed, it is hornbook law even in the realm of bilateral contracts that a revocable offer cannot be accepted by anyone other than the offeree. And the offeree, in whom the power of acceptance lies by virtue of the offer, has no assignable rights.")[1]

- *"Under the terms of the Program Agreement, DLL was authorized to enter into the Lease on behalf of TAMS."* This is irrelevant and false. As noted above, it is irrelevant because TAMS could not, as a matter of law, authorize another party to accept Desoto's offer. At any rate, this is also false because the Program Agreement (1) expressly provided that it was TAMS' obligation to "consummate" contracts; (2) contained a limited power of attorney that did not allow DLL to enter into contracts on TAMS' behalf, and (3) expressly provided that DLL and TAMS could not act as agents for each other. See Program Agreement at § 5.2(i)

---

[1] Naturally, this also defeats DLL's related argument that "the Master Lease became effective upon its execution" by DLL.

(TAMS to consummate contracts); id. at § 8 (limited power of attorney); id. at § 14.1 (DLL "and TAMS are separate entities. . . .  Neither [DLL] nor TAMS have acted, act, or shall be deemed to have acted or act, as an agent for the other.")

### III. CONCLUSION

Given that there is not a single material issue of fact in dispute, summary judgment is appropriate.  As DLL did not dispute that all of its claims hinge on the ineffective Master Lease Agreement, Defendants are entitled to summary judgment on all of DLL's claims.

                    Respectfully Submitted,

By:      WM782
William Matthews
For SAUL EWING LLP
Center Square West
1500 Market Street, 38th Fl.
Philadelphia, PA 19102-2186
(215) 972-7106

Kyle P. Tate
for TATE LAW FIRM
9085 Sandidge Center Cove
Olive Branch, MS 38654
(662) 893-8833

Lynanne B. Wescott
The Wescott Law Firm P.C.
Two Penn Center Plaza, Suite 200
Philadelphia, PA 19102
(215) 755-6330

Attorneys for Defendants
DeSoto Diagnostic Imaging, LLC, *et al*

Dated:  May 3, 2004

# CERTIFICATE OF SERVICE

I certify that I am this day serving a copy of the attached Defendants' Reply Brief in Support of Motion for Summary Judgment Based on Plaintiff's Reliance on the Master Lease upon the persons and in the manner indicated below:

Service by *hand delivery* to:

    Mr. John Chesney
    Ms. Julianne Peck
    Mr. Jonathan Sturz
    DRINKER BIDDLE & REATH LLP
    One Logan Square
    18th & Cherry Streets
    Philadelphia, PA 19103-6996

    Mr. Peter Boyer
    Ms. Rosetta B. Packer
    MCCARTER & ENGLISH, LLP
    Mellon Bank Center, Suite 700
    1735 Market Street
    Philadelphia, PA 19103-7501

                                               WM782
                                               William Matthews

Dated: May 3, 2004