Table of Contents

Page

I.      NATURE OF THE CASE ................................................................................................ 1

II.     PLAINTIFF'S WITNESS LIST ..................................................................................... 4

III.    PLAINTIFF'S TRIAL EXHIBIT LIST ......................................................................... 7

IV.     ITEMIZED STATEMENT OF DAMAGES ................................................................. 11

V.      ANTICIPATED LEGAL ISSUES ................................................................................ 12

VI.     PROPOSED STIPULATIONS AND ADMISSIONS .................................................... 14

VII.    PLAINTIFF'S DEPOSITION DESIGNATIONS .......................................................... 16

VIII.   REQUESTED POINTS FOR CHARGE ....................................................................... 18

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| De Lage Landen Financial Services, Inc. | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 02-CV-2810 |
| | : | |
| v. | : | Honorable Ronald L. Buckwalter |
| | : | |
| Toshiba America Medical Systems, Inc. | : | |
| | : | |
| Intervenor Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DeSoto Diagnostic Imaging, LLC., Randon J. | : | |
| Carvel, Lynn T. Carvel, Delta Radiology, P.C. | : | |
| and Zobar Properties, LLC. | : | |
| | : | |
| Defendants. | : | |

---

## PLAINTIFF DE LAGE LANDEN FINANCIAL SERVICES, INC.'S PRETRIAL MEMORANDUM

---

**McCARTER & ENGLISH, LLP**
Rosetta B. Packer (Attorney ID No. 28357)
Peter J. Boyer (Attorney ID No. 25517)
Kevin J. Burke (Attorney ID No. 87214 )
Mellon Bank Center
1735 Market Street, Suite 700
Philadelphia, PA 19103
(215) 979-3800

Attorneys for Plaintiff
De Lage Landen Financial Services, Inc

I.    **NATURE OF THE CASE**

The underlying facts have been set forth in considerable detail in Motions for Summary Judgment filed by the parties.  Briefly, this is an action for breach of contract and indemnification.  On or about July 19, 1996 Toshiba America Medical Systems Inc. ("TAMS") and Tokai Financial Services, Inc ("TFS") entered into a Master Contract Financing Program Agreement ("Program Agreement").  Pursuant to the Program Agreement, in order for TAMS to lease and/or rent the medical equipment to its customers, the parties established a private label program whereby TAMS would sell and assign all of its right, title and interest in any lease or rental agreement to TFS.  TAMS and TFS agreed to operate the business of leasing equipment using the program identifier, Toshiba America Medical Credit, a program of Toshiba America Medical Systems, Inc.

Pursuant to the Program Agreement, TFS agreed to service all contracts, including <u>inter alia</u>, general administrative services such as billing and collecting payments under the leases, on a private label basis so that the Lease Financing Program would at all times appear to lessees to be a proprietary program of TAMS.

On or about February 17, 2000, Defendant DeSoto Diagnostic Imaging, LLC ("DeSoto") by its Chief Manager, Lynn Carvel, executed and delivered to Toshiba America Medical Credit, ("TAMC") a program of TAMS, a Master Lease Agreement and related schedules and attachments (collectively, the "Master Lease").

The Master Lease was assigned to De Lage Landen Financial Services, Inc. ("DLL"), as successor to Tokai Financial Services, Inc. ("TFS") pursuant to the terms of the Program Agreement.  In accordance with the terms of the Program Agreement, prior to DLL's purchase of any lease and/or rental agreement, the following conditions had to be satisfied:

    a.       [DLL]'s receipt of all required credit information and Contract documents including UCC-1 Financing Statements which are prepared by [DLL] and deemed necessary by [DLL];

    b.       [DLL]'s credit approval of the Lessee;

    c.       [DLL]'s confirmation that the Lessee has accepted the System; and

    d.       TAMS performed and complied in all material respects with all covenants, agreements and conditions contained in this Agreement, which are required to be performed or complied with by TAMS as part of or prior to the date [DLL] accepts the Contract.

As soon as these conditions were met, including DeSoto's acceptance of the equipment on December 27, 2000, Lisa Sparta executed the Master Lease on December 29, 2000, and DLL funded the purchase price to TAMS and commenced collecting lease payments under the private label name TAMC.

As part of the lease transaction and in order to secure the obligations of DeSoto to DLL, defendants/related parties Randon J. Carvel, Lynn T. Carvel, Delta Radiology, P.C. and Zobar Properties, LLC (collectively, the "Guarantor Defendants") executed and delivered to TAMC their respective blanket personal guarantees (collectively, the "Guarantees").

In addition to securing guarantees from the related entities, in accordance with the Program Agreement, DLL submitted to TAMS an Application Approval Form which was reviewed and approved by Kevin Abbott, Vice President of Finance for TAMS.  The Application Approval Form provided that TAMS would provide a one-off recourse payment in the event of a default by DeSoto under the terms of the Master Lease in the amount of $375,000 during months 1-24; in the amount of $350,000 during months 25-36; in the amount of $325,000 during months 37-48; and in the amount of $175,000 during months 49-54.

DeSoto defaulted upon the Master Lease on or about February 1, 2002, which date is within the first 24 months of the term of the Master Lease.  TAMS has not tendered the recourse payment in the sum of $375,000 demanded by DLL.

On May 10, 2002, DLL commenced this diversity action by filing a Complaint against DeSoto and the Guarantor Defendants (collectively, the "Defendants").  DLL's Complaint sets forth five causes of action alleging that DeSoto and the Guarantor Defendants are liable to DLL for an amount in excess of $3.25 million for the various breaches of the Master Lease and Guaranties described above.

Within weeks of the filing of the Complaint by DLL, TAMS filed a Motion for Leave to Intervene as a Party Plaintiff.  The Court granted TAMS' motion to intervene and TAMS subsequently filed its complaint.  On September 30, 2002, DLL filed a Cross-Claim against TAMS which sets forth, inter alia, a cause of action for breach of the Program Agreement for TAMS' failure to tender the recourse payment and claims for indemnification pursuant to the terms of the Program Agreement.

## II.     PLAINTIFF'S WITNESS LIST

Plaintiff intends to call any or all of the following witnesses as part of its case in chief.

1.      <u>Donald Flassing</u>.  Mr. Flassing will testify regarding a description of DLL and its business, a description of the type of transactions involved in the Health Care Group at DLL, the private label concept and how it works at DLL, when and how private label is broken, the Master Program Agreement with TAMS and how the Agreement functioned between DLL and TAMS, DLL's credit review process, the underwriting process for the DeSoto transaction and the credit enhancement required from Toshiba for the credit approval, Toshiba's approval of the credit requirements, preparation of contract documents and funding of the transaction, post default communications including communications with Toshiba regarding requests for recourse payment and status of remarketing efforts, damages suffered by DLL, and related issues.

2.      <u>Zeb Stewart</u>.  Mr. Stewart will testify regarding a description of DLL and its business, a description of the type of transactions involved in the Health Care Group at DLL, the private label concept and how it works at DLL, when and how private label is broken, the Master Program Agreement with TAMS and how the Agreement functioned between DLL and TAMS, DLL's credit review process, the underwriting process for the DeSoto transaction and the credit enhancement required from Toshiba for the credit approval, Toshiba's approval of the credit requirements, preparation of contract documents and funding of the transaction, post default communications including communications with Toshiba regarding requests for recourse payment and status of remarketing efforts, damages suffered by DLL and related issues.

3.      <u>Lisa Sparta</u>.  Ms. Sparta will testify regarding the procedures for processing Leases under the Program Agreement, preparation and review of documents, the underwriting process, preparation and approval of the application approval form, review of documents prior to issuing a purchase order for the equipment, acceptance of the equipment by the lessee, review

and execution of the documents, DLL's use of private label name, the manner in which this transaction conformed to other transaction between TAMS and DeSoto under the Program Agreement, absence of any inquiry from Dr. Carvel regarding questions or attempts to negotiate terms under the Lease and related issues.

4.      <u>Dana Pinner</u>.  Ms. Pinner will testify regarding the procedures for processing Leases under the Program Agreement, preparation and review of documents, the underwriting process, preparation and approval of the application approval form, review of documents prior to issuing a purchase order for the equipment, acceptance of the equipment by the lessee, review and execution of the documents, DLL's use of private label name, the manner in which this transaction conformed to other transaction between TAMS and DeSoto under the Program Agreement, absence of any inquiry from Dr. Carvel regarding questions or attempts to negotiate terms under the Lease and related issues.

5.      <u>Gerald Hayes</u>.  Mr. Hayes will testify regarding the matter set forth in his expert report dated October 31, 2003.

6.      <u>Lynn Carvel</u>.  Ms. Carvel will be called to testify in order to authenticate her signature on relevant documents signed by DeSoto and by Ms. Carvel individually, matters relating to the review and execution of the lease documents, de-installation of the equipment and the failure to make payments under the lease and related issues.

7.      <u>Randon Carvel</u>.  Mr. Carvel will be called to testify in order to authenticate her signature on relevant documents signed by DeSoto and by Mr. Carvel individually, matters relating to the review and execution of the lease documents, de-installation of the equipment and the failure to make payments under the lease and related issues.

8.     <u>Ed Detweiler</u>.  Mr. Detweiler will testify regarding the matters which are the subject of his expert report.

9.     <u>Patrick Hiney</u>.  Mr. Hiney will testify regarding his efforts to coordinate remarketing of the equipment with TAMS, including efforts to identify potential purchasers and efforts to conclude a sale of the MRI to Eugene Holliday and related matters.

10.     <u>Jake Hornung</u>.  Mr. Hornung will testify regarding DeSoto's payment default, and subsequent failure to remit payments; telephone conversation with Lynn Carvel regarding same, decision by DLL to break private label, preparation and transmission of default notices to DeSoto and related issues.

11.     <u>David Begy</u>.  Mr. Begy will testify regarding meetings and discussions with representatives of DeSoto and TAMS regarding DeSoto's desire for financing for the equipment, preparation of a Lease application for submission to DLL, follow through in connection with the credit approval process, execution of the lease documents, and post default communications with DLL and related issues.

Plaintiff reserves the right to call any witness identified in the pre trial witness lists submitted by other parties.

De Lage Landen v Desoto et al, USDC, ED PA No. 02-cv-2810

## III.    PLAINTIFF'S TRIAL EXHIBIT LIST[1]

| Trial Exhibit No. | Date[2] | Description | Dep Ex. Number[3] | Bates Number[4] |
|---|---|---|---|---|
| DLL-1 | 1/19/96 | Master Contract Finance Program Agreement | DLL-2 | |
| DLL-2 | 2/17/00 | Master Lease | Randon 2 | |
| DLL-3 | | Master Lease Schedule No. 1 and related documents | | DLL-001253-58 |
| DLL-4 | 2/17/00 | Guaranty of Lynn Carvel | | |
| DLL-5 | 2/17/00 | Guaranty of Randon Carvel | | |
| DLL-6 | 2/17/00 | Guaranty of Delta Radiology, P.C. | | |
| DLL-7 | 2/17/00 | Guaranty of Zobar Properties, LLC | | |
| DLL-8 | 2/14/00 | Application Approval Form | Crouse - 18 | |

[1] In addition to the documents listed herein, plaintiff reserves the right to use exhibits identified in exhibit lists of other parties.

[2] Where a document contains more than one date, the date appearing earliest in the document has generally been used, for purposes of identifying the document only. No legal significance is intended or should be implied from the dated referenced.

[3] Many documents have been marked as exhibits on more than one occasion. Reference herein is for purposes of identifying the document only. Plaintiff reserves the right to make a clearer or more complete copy of the document as the trial exhibit.

[4] Many documents have been produced more than once and sometimes by different parties. Reference herein is for purposes of identifying the document only. Plaintiff reserves the right to make a clearer or more complete copy of the document as the trial exhibit.

| DLL-9 | 2/10/00 | Application – Direct Lease | | DLL-000211 |
|---|---|---|---|---|
| DLL-10 | 12/27/00 | DDI Signed Acceptance of Delivery | Carvel 9 | |
| DLL-11 | 4/30/01 | DDI Signed Acceptance of Delivery | Carvel-11 | DeSoto 000086 |
| DLL-12 | | Cash Disbursement Authorization | | DLL-000290 DLL-000041 |
| DLL-13 | 5/19/03 | Equipment Sales Report | DLL-9 | DLL-000869-DLL-000871 |
| DLL-14 | | E-Mail D. Begy to P. Hiney | DLL-6 | DLL-000921 – DLL-000922 |
| DLL-15 | 11/15/03 | West Valley Imaging Report | | |
| DLL-16 | 11/03/02 | E-mail – Ray Crouse | DLL-14 | DLL-402 |
| DLL-17 | 7/19/02 | E-mail from D. Flassing | Crouse - 14 | DLL-940 |
| DLL-18 | 1/31/00 | Quotation/Order – Order Summary | | DeSoto 000117-DeSoto 000118 |
| DLL-19 | 1/29/00 | Quotation/Order – Order Summary | | TAMS 1173 – TAMS 1174 |
| DLL-20 | 2/24/00 | Quotation/Order – Order Summary | | DLL-001177 – DLL-001241 |
| DLL-21 | 2/00/00 | Quotation/Order – Order Summary | | DeSoto 000126 –DeSoto 000130 |

| | | | | |
|---|---|---|---|---|
| DLL-22 | 3/15/02 | DLL Letter – Hornung - DeSoto | | DeSoto 000202 |
| DLL-23 | 3/15/02 | DLL Letter – Hornung –Randon Carvel | | DeSoto 000203 |
| DLL-24 | 3/15/02 | DLL Letter – Hornung –Delta Radiology | | DeSoto 000204 |
| DLL-25 | 3/15/02 | DLL Letter – Hornung – Lynn T. Carvel | | DeSoto 000205 |
| DLL-26 | 3/15/02 | DLL Letter – Hornung – Zobar | | DeSoto 000206 |
| DLL-27 | 3/15/02 | DLL Letter – Hornung – DeSoto | | DeSoto 000201 |
| DLL-28 | 9/27/02 | Letter from J. Chesney to Packer and Tate | | |
| DLL-29 | 10/02/02 | Letter from Packer to Chesney | | |
| DLL-30 | 10/14/02 | Letter from Chesney to Packer | | |
| DLL-31 | 10/15/04 | Letter from Packer to Chesney | | |
| DLL-32 | 1/31/00 | DeSoto Package Question/Order Worksheet | | TAMS 2250 |
| DLL-33 | 5/23/02 | Stewart – Abbott e-mail and invoice | | DLL-000937 DLL-00093 |
| DLL-34 | 9/6/02 | Letter from Ray Crouse to K. Abbott | Crouse - 16 | DLL-000456 |
| DLL-35 | 5/3/02 | E-mail – Hiney to Crouse | DLL-14 | DLL-000402 |
| DLL-36 | 3/5/02 | E-mail – Stewart to Zibelman | DLL-3 | DLL-000902 |
| DLL-37 | 3/4/02 | E-mail Stewart to Harvey | DLL-4 | DLL-000900 |
| DLL-38 | 3/17/02 | E-Mail – Johnson to Harvey | DLL-7 | DLL-000923 |

| DLL-39 | 3/26/02 | E-Mail – Hanley to Stewart | DLL-8 | DLL-000929 |
|---|---|---|---|---|
| DLL-40 | 2/9/01 | Purchase Order and Conditional Purchase Order with invoice for Cardiac Gating | | |
| DLL-41 | 2/17/00 | Conditional Purchase Order for original equipment | | |
| DLL-42 | Various | Invoices for Various Pieces of Equipment | | |
| DLL-43 | | Photos received in Expert Report of Edward Detwiler | Electronically Produced with Detwiler Report | |
| DLL-44 | 2/17/01 | Master Lease Schedule No. 2 with Second Addendum to Master Lease | | DLL-0001252, 1256-59 |

Objections to Exhibits.  Because of the large number of exhibits designated by TAMS and the Defendants, and because the actual Exhibits have not yet been exchanged by the parties, DLL objects generally to all exhibits designated and reserves the right to make specific objections as to specific exhibits when the actual exhibits have been exchanged by the parties and counsel for DLL has an opportunity to review them.

**IV.    ITEMIZED STATEMENT OF DAMAGES**

**A.**    In accordance with the terms of the Master Lease and the Guaranty Agreements, as of

May 17, 2004, the following sums are due and owing from Defendants:

| | |
|---|---:|
| 49 payments at $45,266.23 | $2,218,045.00 |
| Rent Shortfall Accrued as of 2/1/02 | 6,162.00 |
| Total | $2,224,207.00 |
| Discount at 6% pursuant to lease | 1,969,064.00 |
| Interest at 18% from 2/1/02 – 5/17/04<br>(1,969,064 x .18 = 354,431/12 = 29,536 per month x 26) | 784,673.00 |
| Sales Tax at 7% | 191,590.00 |
| TOTAL | $2,945,327.00 |

Plus interest per diem aft 5/17/04:  $354,431/360 = $984.53

| | |
|---|---:|
| Estimated Legal Fees and Costs as of 4/30/04* | $   580,000.00 |

*Legal Fees continue to accrue

**B.**    In accordance with the terms of the Program Agreement as of May 17, 2004, the

following sums are due and owing from TAMS:

| | |
|---|---|
| One-off Recourse Payment | $   375,000.00 plus interest from June 23, 2002 at the rate of six (6%) per annum |
| Indemnity – As set forth above | |

## V.    ANTICIPATED LEGAL ISSUES

Many of the anticipated legal issues, and DLL's position on these issues, are set forth in some detail in connection with the Motions for Summary Judgment filed by the parties.  In addition, it is anticipated that the following legal issues will arise during the course of trial:

**1.    Whether, as a matter of law, the contract documents are clear and unambiguous**.

It is for the Court to determine whether the terms of the Master Lease, Guaranty Agreements and Program Agreement are clear and unambiguous.  Disagreement between parties over proper interpretation of a contract does not necessarily mean that the contract is ambiguous. Whether contract provisions are clear or ambiguous is a question of law for the Court.  Kiewit Eastern Co., Inc. v. L&R Construction Co., Inc., 44 F.3d 1194, 1199 (3rd Cir. 1995).  A contract is ambiguous only if it is reasonably susceptible to different constructions and capable of being understood in more than one sense.

**2.    Whether the absolute and unconditional language in the Master Lease and Blanket Guaranty Precludes the Defenses Asserted by Defendants**

It is DLL's position that the lease documents are clear and unambiguous, that the "hell or high water" provisions in the Master Lease are strictly enforceable and that the absolute and unconditional guarantees are enforceable as a matter of law.

Authority:  Philadelphia Savings Fund Society v. Deseret Management Corp., 632 F.Supp. 129 (E.D.Pa. 1985); Parker Hannifan Corp. v. Bradshaw, 1992 WL 150658 (E.D.Pa. 1992).

**3.    Determination of Legal Fees.**

This Court will be required to determine the reasonable amount of attorneys' fees and costs awarded to DLL in the event that the jury returns a verdict in favor of DLL and determines that DLL is entitled to recover attorneys fees.  Actions to recover contractual claims for

attorneys' fees should be submitted to a jury to determine whether a party is entitled to such an award.  If the jury determines that a party is entitled to an award of attorneys' fees pursuant to a contractual indemnification provision, the district judge must then determine the reasonable amount of attorneys' fees and costs to be awarded.

Authority: - <u>Longport Ocean Plaza Condominium, Inc. v. Robert Cato & Associates, Inc.</u>, 2002 WL 32348506.

- <u>Dunkin Donuts, Inc. v. Liu</u>, 2002 WL 31375509 (E.D.Pa. 2002)

- <u>McGuire v. Russell Miller, Inc.</u> 1 F.3d 1306 (2d Cir. 1993)

**4.      Determination as to Contract of Adhesion.**

This Court will be required to determine whether the Master Lease and/or Guaranties are contracts of adhesion and/or unconscionable.  The issue of whether a contract is unconscionable is a question of law to be determined by the court.

It is DLL's position that any issues regarding the Master Lease and/or Guaranties as contracts of adhesion and/or unconscionable are questions of law for the Court's exclusive determination.

Authority:  <u>Lytle v. Citifinancial Services, Inc.</u>, 810 A.2d 643, 2002 Pa.Super. 327 (Pa.Super. 2002)  or <u>Todd Heller, Inc. v. Inited Parcel Service, Inc.</u>, 754 A.2d 689 (Pa.Super. 2000).

**5.      Burden of Proof as to Mitigation of Damages.**

It is DLL's position that mitigation of damages is an Affirmative Defense.  Defendants bear the burden of proving that Plaintiff failed to mitigate damages.

Authority:  <u>Koppers Company, Inc. v. Aetna Casualty and Surety Company</u>, 98 F.3d 1440 (3d. Cir. 1996).

## VI.    PROPOSED STIPULATIONS AND ADMISSIONS

### A.    STIPULATIONS

Plaintiff agrees to the Proposed Stipulations of Intervenor Plaintiff.

In addition, Plaintiff proposes the following additional stipulations:

1.    Authorized Representatives of Tokai Financial Services, Inc. and Toshiba America Medical Systems, Inc. executed to Master Contract Financing Program Agreement dated as of July 19, 1996.

2.    Kevin B. Abbott, V.P. Finance of Toshiba America Medical Systems, Inc. executed the Toshiba America Medical Systems Program Application Approval Form dated February 14, 2000.  (DLL-8).

3.    John Chesney sent a letter dated September 27, 2002 to Rosetta Packer and Kyle Tate (DLL-28).

4.    Rosetta Packer sent letter dated October 2, 2002 to John Chesney (DLL-29).

5.    John Chesney sent letter dated October 14, 2002 to Rosetta Packer (DLL-30).

6.    Rosetta Packer sent letter dated October 15, 2002 to John Chesney (DLL-31).

### B.    ADMISSIONS

Plaintiff intends to read the following admissions into evidence at trial.

1.    Defendant DeSoto Diagnostic Imaging, LLC is a limited liability company organized under the laws of the State of Mississippi with the place of business at 9085 Sandridge Center Cove, Olive Branch, Mississippi (Complaint and Answer ¶ 2).

2.    Defendant Randon Carvel is an adult individual who resides in Memphis, Tennessee (Complaint ¶ 3, Answer ¶ 3).

3.    Defendant Lynn T. Carvel is an adult individual who resides in Memphis, Tennessee (Complaint ¶ 4, Answer ¶ 4).

4.    Defendant Delta Radiology, PC is a professional corporation organized under the laws of the State of Tennessee  (Complaint ¶ 5, Answer ¶5 ).

5.    Defendant Zobar Properties is a limited liability company organized and existing under the laws of the State of Mississippi with a place of business at 9085 Sandridge Center Cove, Olive Branch, Mississippi (Complaint ¶ 6, Answer ¶6 ).

6.    Defendant Randon Carvel signed the original blanket personal guaranty marked as Trial Exhibit DLL-5 (Complaint ¶ 20 Answer ¶ 20).

7.    Defendant Lynn T. Carvel signed the blanket personal guaranty marked as Trial Exhibit DLL-4 (Complaint ¶ 20, Answer ¶ 20).

8.    Defendant Delta Radiology, PC signed the blanket personal guaranty marked as Trial Exhibit DLL-6.  (Complaint ¶ 20, Answer ¶ 20).

9.    Defendant Zobar Properties, LLC signed the blanket personal guaranty marked as Trial Exhibit DLL-7.  (Complaint ¶ 20, Answer ¶ 20).

10.    Plaintiff Intervenor Toshiba America Medical Systems, Inc. is a corporation organized and existing under the laws of the State of California with its principal place of business in Tustin, California.  Crossclaim against Intervenor/Plaintiff (Complaint ¶ 2, Answer ¶ 2).

11.    On or about July 19, 1996 DLL's predecessor Tokai Financial Services, Inc. and TAMS entered into a Master Contract Financing Program Agreement , a copy of which has been marked as Trial Exhibit DLL-1.  Crossclaim ¶ 5, Answer to Crossclaim ¶ 5.

12.    On behalf of TAMS Kevin Abbott executed and delivered the application approval form marked as Trial Exhibit DLL-8.

13.    The application approval form marked as Trial Exhibit DLL-8 was signed on behalf of TAMS by Kevin B. Abbott who was authorized by TAMS to sign the application approval form on its behalf.  Request for Admission No. 6 and No. 7.

## VII.   PLAINTIFF'S DEPOSITION DESIGNATIONS

1.    Deposition of Paul King, Volume II (Nov. 18, 2003)

| Page | Line | | Page | Line |
|------|------|---------|------|------|
| 370 | 25 | Through | 373 | 5 |
| 15 | 3 | Through | 17 | 23 |

2.    Deposition of Paul King, Volume III (March 5, 2004)

| Page | Line | | Page | Line |
|------|------|---------|------|------|
| 15 | 3 | Through | 17 | 23 |
| 20 | 23 | Through | 26 | 16 |
| 89 | 15 | Through | 91 | 5 |
| 201 | 9 | Through | 202 | 19 |

3.    Deposition of Nader Rad (March 8, 2004)

| Page | Line | | Page | Line |
|------|------|---------|------|------|
| 7 | 5 | Through | 8 | 2 |
| 10 | 10 | Through | 10 | 22 |
| 15 | 13 | Through | 17 | 9 |
| 26 | 15 | Through | 28 | 9 |
| 34 | 1 | Through | 35 | 21 |

4.    Deposition of Nader Rad 30(b)(6), (March 8, 2004)

| Page | Line | | Page | Line |
|------|------|---------|------|------|
| 18 | 2 | Through | 21 | 18 |
| 24 | 3 | Through | 25 | 22 |
| 27 | 17 | Through | 29 | 18 |
| 50 | 9 | Through | 50 | 17 |

5.    Deposition of Kevin Abbott (March 9, 2004)

| Page | Line | | Page | Line |
|------|------|---------|------|------|
| 5 | 25 | Through | 6 | 17 |
| 11 | 16 | Through | 12 | 12 |
| 13 | 7 | Through | 13 | 25 |
| 15 | 16 | Through | 16 | 6 |
| 25 | 15 | Through | 25 | 23 |
| 45 | 22 | Through | 46 | 4 |
| 61 | 15 | Through | 63 | 15 |

| 72 | 11 | Through | 73 | 17 |
| 74 | 22 | Through | 75 | 20 |
| 80 | 2 | Through | 80 | 18 |
| 110 | 10 | Through | 112 | 20 |
| 127 | 21 | Through | 128 | 9 |

6.      Deposition of Kevin Abbott 30(b)(6) (March 9, 2004)

| Page | Line | | Page | Line |
|------|------|---------|------|------|
| 8 | 9 | Through | 8 | 17 |
| 9 | 19 | Through | 10 | 9 |
| 21 | 2 | Through | 24 | 23 |
| 37 | 11 | Through | 38 | 21 |

7.      Deposition of Eugene Holliday (January 26, 2004)

| Page | Line | | Page | Line |
|------|------|---------|------|------|
| 7 | 3 | Through | 8 | 2 |
| 10 | 10 | Through | 13 | 20 |
| 17 | 10 | Through | 19 | 13 |

8.      Deposition of Michael Smith (September 25, 2003)

| Page | Line | | Page | Line |
|------|------|---------|------|------|
| 95 | 3 | Through | 96 | 6 |

Plaintiff reserves the right to supplement these designations in accordance with Judge Buckwalter's Pretrial and Trial Procedures. Plaintiff reserves the right, in accordance with the Rules of Court and Judge Buckwalter's Pretrial and Trial Procedures, to make counter designations to portions of deposition testimony designated by other parties, and to object to the designations of other parties, including video designations. Because of the large number of witnesses identified and the large number of videotape designations, plaintiff reserves the right to make specific objections to the proposed videotape depositions (as well as the other deposition designations) in advance of their use at trial.

## VIII.    REQUESTED POINTS FOR CHARGE

Plaintiff hereby respectfully submits the following proposed points for charge:

### PROPOSED POINT FOR CHARGE NO. 1

### COURT'S ROLE:  JURY'S DUTY TO FOLLOW THE LAW[5]

It is my job to instruct you on the law that governs this case.  In this regard, you must accept my instructions.  You must ignore any contrary interpretations of the law that you may have heard from counsel or witnesses during the trial including any statements about the legal duties required of any party.

It is your duty as jurors to follow the law as stated in the instructions of the court and to apply the law to the facts as you find them from the evidence in this case.

You are not to be concerned with the wisdom of any rule of law stated by the court.  Regardless of any opinion you may have about what the law ought to be, you would be violating your sworn duty to base a verdict upon any other view of the law than that given you in these instructions, just as it would be a violation of your sworn duty, as judges of the facts, to base a verdict upon anything but the evidence in the case.

---

[5] See, Gallick v. Baltimore & Ohio Ry. Co., 372 U.S. 108, 113 (1963); Porter v. American Export Lines, Inc., 387 F.2d 409 (3d Cir. 1968); See also Devitt & Blackmar, *Federal Jury Practice & Instructions* §§71.01, 71.02 at §584-85 (1986)(hereinafter "*Federal Jury Practice & Instructions*").

## **PROPOSED POINT FOR CHARGE NO. 2**

### **ATTORNEY'S OBJECTIONS**[6]

You are reminded that it is the duty of any attorney to object when his adversary has offered testimony or other evidence which the attorney believes is not properly admissible. Unless expressly stated, when the court allowed testimony or other evidence to be introduced over the objections of a lawyer, no opinion of that court was indicated thereby as to the weight or the effect of that evidence.  Because you are the sole judge, not only of the credibility of all of the witnesses, but also of the weight and the effect of all of the evidence as well.

Now when the court sustained an objection to a question addressed to a witness, you must disregard that question entirely.  You must not draw any inference from the wording of the question, and you must not speculate as to what the witness might have said, if permitted to answer.

---

[6] Adapted from Sand, Siffert, Reiss, Sexton & Thrope, *Modern Federal Jury Instructions* §71.01 at §71-3 (1986)(hereinafter "*Modern Federal Jury Instructions*").

**PROPOSED POINT FOR CHARGE NO. 3**

**EQUAL STANDING OF ALL PARTIES**[7]

      This case should be considered and decided by you as a dispute between persons of equal standing in the community, of equal worth, and of the same station in life.  The parties in this case, plaintiffs and defendants, are on an equal footing in this Court.  You should base your verdict on an objective evaluation of the evidence that has been presented.  Certain of the parties are corporations, which are simply collections of people.  Corporations are on exactly the same footing as an individual, and their cases should be considered on the same basis as an individual.

---

[7] See, U.S. Constitution, 14th Amendment; Carpenters' District Counsel of Western Pennsylvania v. W.O. Kessel Co., 487 F. Supp. 54, 57 (W.D. Pa. 1980); Pennsylvania Bank & Trust Co. v. Hanisek, 426 F. Supp. 410, 413 (W.D. Pa. 1977); See also, *Federal Jury Practice & Instructions* §71.05 at §587 (1986).

## PROPOSED POINT FOR CHARGE NO. 4

## EVALUATION OF EVIDENCE[8]

As the sole judge of facts, you must determine which witnesses you believe, what portion of their testimony you accepted and what weight you attach to it.  The law does not require you to accept all of the evidence I have admitted, even though it be competent.  In determining what evidence you will accept you must make your own evaluation of the testimony given by each of the witnesses and determine the degree of weight you choose to give to his or her testimony.

The testimony of a witness may fail to conform to the facts as they occurred because the witness is intentionally telling a falsehood, because the witness did not accurately see or hear that about which he or she testified, because the witness' recollection of the event is faulty, or because the witness has not expressed himself or herself clearly.

There is no magical formula by which you evaluate testimony.  The factors to consider in determining the weight, if any, you assign to a witness's testimony include the interest or lack of interest of the witness in the outcome of the case, the bias or prejudice of a witness, if there be any, the age, the appearance, the manner in which the witness gives testimony on the stand, the opportunity that the witness had to observe the facts about which he or she testified, and the probability or improbability of the witness's testimony when viewed in the light of all the other evidence in the case.

If such consideration makes it appear that there is a discrepancy in the evidence, you will have to consider whether the apparent discrepancy may be reconciled by fitting the two stories together.  If, however, that is not possible, you will have to determine which of the conflicting versions you accept.  A witness may be discredited or impeached by contradictory evidence of by evidence that at some other time the witness has said or done something or has failed to say or do something which is inconsistent with the witness's present testimony.

If you believe that plaintiff, or any witness, willfully and knowingly exaggerated or testified falsely to any significant fact or circumstances, then you should take this into consideration in deciding whether or not to believe the rest of his testimony.

You may disregard the entire testimony of the witness, on the principle that one who testifies falsely about one fact is likely to testify falsely about other facts, as well.  Yet, you need not consider such a witness totally unworthy of belief.  You may accept so much of the testimony as you deem true, and disregard what you believe is false.

By the process that I have just described to you, you as the sole judges of the facts determine which of the witnesses you will believe, what portion of their testimony you accept, and what weight you will give it.

---

[8] Adapted from *Federal Jury Practice & Instruction*, § 72.01 at §598-600 (1986).

## PROPOSED POINT FOR CHARGE NO. 5

## ADMISSIONS OF FACT[9]

The admissions of fact made by the defendants in their answer to DLL's complaint, and the admissions of fact made by TAMS in its motion for leave to intervene in this action have been offered by DLL and received into evidence.  The defendants and TAMS are bound by these admissions.

---

[9] Adapted from the Pennsylvania Suggested Standard Civil Jury Instructions §2.10 (2nd ed. 2003)(hereinafter "SSCJI"); DeFrancesco v. Western Pennsylvania Water, 478 A.2d 1295 (Pa. Super. 1984).

## PROPOSED POINT FOR CHARGE NO. 6

## DEPOSITIONS[10] [IF NECESSARY]

Some of the testimony before you is in the form of depositions, which have been received in evidence.  A deposition is simply a procedure where the attorneys for one side may question a witness or a party under oath, before a court stenographer, prior to trial.  A deposition is part of the pretrial discovery, and each side is entitled to take depositions.  You may consider the testimony of a witness given at a deposition according to the same standards you would use to evaluate the testimony of a witness given at trial.

---

[10] Adapted from *Modern Federal Jury Instructions* §74.07, at §74-36 (1986).

## PROPOSED POINT FOR CHARGE NO. 7

## IMPEACHMENT OF WITNESS BY PRIOR INCONSISTENT STATEMENT[11] [IF NECESSARY]

### Inconsistent Statement

You have heard evidence that at some earlier time a witness has said or done something which counsel argues is inconsistent with the witness's trial testimony.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so, how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness's testimony.

---

[11] Adapted from SSCJI §2.20; See also, United States v. Carter, 417 F.2d 229 (3d Cir. 1969), cert. denied, 397 U.S. 999 (1970); Walley v. Iraca, 360 Pa. Super. 436, 443, 520 A.2d 886 (1987); Feingold v. Southeastern Pennsylvania Transportation Authority, 339 Pa. Super. 15, 26, 488 A.2d 284 (1985), aff'd 512 Pa. 567, 517 A.2d 1270 (1986).

## PROPOSED POINT FOR CHARGE 8

## CORROBORATION BY A PRIOR CONSISTENT STATEMENT[12] [IF NECESSARY]

### Consistent Statement

You have heard evidence that the witness made an earlier statement[s] consistent with the witness' testimony at this trial.  You may consider the statement[s] as evidence that the witnesses' testimony was not fabricated as a result of bias, or improper influence or motive.

---

[12] Adapted from SSCJI §2.20; See also, United States v. Carter, 417 F.2d 229 (3d Cir. 1969), cert. denied, 397 U.S. 999 (1970); Walley v. Iraca, 360 Pa. Super. 436, 443, 520 A.2d 886 (1987); Feingold v. Southeastern Pennsylvania Transportation Authority, 339 Pa. Super. 15, 26, 488 A.2d 284 (1985), aff'd 512 Pa. 567, 517 A.2d 1270 (1986).

## PROPOSED POINT FOR CHARGE NO. 9

## WILLFULLY FALSE TESTIMONY[13]

If you decide that a witness has deliberately testified falsely about a material point (that is, about a matter that could affect the outcome of this trial), you may for that reason alone choose to disbelieve the rest of the witness' testimony.  But you are not required to do so.  You should consider not only the deliberate falsehood, but also all other factors bearing on the witness' credibility in deciding whether to believe other parts of the witness' testimony.

---

[13] SSCJI at §5.05 (2nd ed. 2003); Lobozzo v. Adam Eidemiller, Inc., 263 A.2d 432 (Pa. 1970); Commonwealth v. Parente, 133 A.2d 561, 564 (Pa. Super. 1957), aff'd, 139 A.2d 924 (Pa. 1958); Commonwealth v. Joyce, 197 A.2d 226 (Pa.Super. 1963).

## PROPOSED POINT FOR CHARGE NO. 10

## NUMBER OF WITNESSES[14]

In deciding any disputed issue of fact, you need not consider the number of witnesses testifying on the issue.  The testimony of but one witness, if believed by you is sufficient for the proof of any fact, and would justify you finding in accordance with that testimony.  This is so, even if several witnesses may have testified directly to the contrary, provided that after considering all the evidence before you, you hold greater belief in the accuracy and honesty of that one witness.

---

[14] Adapted from SSCJI at §5.03 (2nd ed. 2003); See also, Pressler v. Pittsburgh, 419 Pa. 440, 447-48, 214 A.2d 616 (1965); Chitwood v. Philadelphia & Reading Ry. Co., 275 Pa. 22, 23, 118 A. 505 (1922).

## PROPOSED POINT FOR CHARGE NO. 11

### EXPERT WITNESS[15]

Witnesses can testify only about facts known to them; that is, what they saw or heard. Expert witnesses, however, may give their opinion, not what they saw or heard, but what they believe to be true based on certain facts that have been given to him.  In legal terminology, an "expert witness" is a witness who has some special knowledge, skill, experience, or training that is not possessed by the ordinary juror and who thus may be able to help the jury in its fact-finding.

In this case, several witnesses were called to testify as expert witnesses.  The court previously ruled that these witnesses had sufficient training and experience to testify as experts. You should not, however, consider this ruling to be an indication by the Court that these witnesses are believable or that their opinions are correct.  The Court's ruling merely means that the testimony of these witnesses is opinion evidence that may help you in coming to some conclusion on technical or scientific matters.

You are not bound by such expert opinions, but you should consider each opinion and give it the weight to which you deem it is entitled, whether that be great or slight, or you may reject it.  In examining each opinion, you may consider the qualifications and credibility of the expert.

---

[15] See, Rutter v. Northeastern Beaver County School District, 496 Pa. 584, 598, 437 A.2d 1198 (1981); Bessemer Stores v. Reed Shaw Stenhouse, 344 Pa. Super. 218, 225, 496 A.2d 762 (1985).

## PROPOSED POINT FOR CHARGE NO. 12

## EXPERT WITNESS:  WEIGHT OF OPINION[16]

The value or weight of the opinions of the experts is dependent upon, and no stronger than, the facts upon which they are based.  It is always within the special function of the jury to describe whether the facts on which the opinion of an expert is based actually exist.  Thus, if you as jurors do not believe the facts on which the expert bases an opinion, you have to reject that opinion.

In determining the weight to be given to the expert's opinion, you should consider the qualifications and reliability of the expert and the reasons and facts given for the opinion.  You are not bound by an expert's opinion merely because he or she is an expert; you may accept or reject it, as in the case of any other witness.

In resolving any conflict that may exist in the opinion testimony of two different expert witnesses, you must weigh one expert's opinion against that of the other, and you must consider the reasons given by one as compared to those of the other, and you should consider the relative credibility and knowledge of the experts who have testified. You should give greater credence to that expert testimony which, in your opinion, is entitled to the greater weight.

---

[16] See, Tinicum Estate Holding Corp. v. Commonwealth Dept. of Transportation, 480 Pa. 220, 232, 389 A.2d 1034 (1978); Martin v. Soblotney, 296 Pa. Super. 145, 169-70, 442 A.2d 700 (1982), rev'd on other grounds, 502 Pa. 418, 466 A.2d 1022 (1983); adapted in part from SSCJI at §5.30 (2nd ed. 2003).

## PROPOSED POINT FOR CHARGE NO. 13

## HYPOTHETICAL QUESTIONS[17] [IF APPLICABLE]

Questions have been asked in which an expert witness was invited to assume that certain facts were true and to give an opinion based upon that assumption.  These are called hypothetical questions.  If you find that any material fact assumed in a particular hypothetical question has not been established by the evidence, you should disregard the opinion of the expert given in response to that question.  A material fact in this instance is one that was important to the expert in forming his/her opinion.

Similarly, if the expert has made it clear that his/her opinion is based on the assumption that a particular fact did not exist and, from the evidence you find that it did exist and that it was material, you should give no weight to the opinion so expressed.

---

[17] SSCJI at §5.32 (2nd ed. 2003); Battistone v. Benedetti, 122 A.2d 536 (Pa. 1956); Karavas v. Poulos, 113 A.2d 300 (Pa. 1955); 2 Wigmore, Evidence, §382 (3d ed. 1940).

## PROPOSED POINT FOR CHARGE NO. 14

## EXPERT WITNESSES:  NUMBER

You are not to decide this case upon the number of experts on either side.  It is the quality of the expert opinion, not the quantity, which must guide your fact finding.

## PROPOSED POINT FOR CHARGE NO. 15

## BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE[18]

In this matter both DLL and DeSoto have alleged claims for breach of contract against each other.  DLL has also alleged breach of contract claims against TAMS.

You are instructed that in a civil action such as this, each party asserting a breach of contract claim (in this instance DLL and DeSoto) has the burden to prove the essential elements of its breach of contract claim by a preponderance of the evidence.  If either DLL or DeSoto should fail to establish an essential element of its breach of contract claim by a preponderance of the evidence, you should find against that party as to that specific claim.

"Preponderance of the evidence" means to prove that something is more likely so than not so.  In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds belief that what is sought to be proved is more likely true than not true.  This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

To put it another way, when evaluating both plaintiff and defendant's breach of contract claims, think, if you will, of an ordinary balance scale, with a pan on each side.  Onto one side of the scale, place all of the evidence favorable to the party asserting the breach of contract claim; onto the other, place all of the evidence favorable to the party opposing the breach of contract claim.  If, after considering the comparable weight of the evidence, you feel that the scales tip, ever so slightly or to the slightest degree, in favor of the party asserting the breach of contract claim, your verdict must be for that party on that claim.  If the scales tip in favor of the party opposing the breach of contract claim, or are equally balanced, your verdict must be for the party opposing the breach of contract claim.

In determining whether any fact in issue has been proved by a preponderance of the evidence you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

As I will instruct you in a moment, this preponderance of the evidence standard does not apply to defendant's counterclaim for fraud.

---

[18] Adapted from *Federal Jury Practice and Instructions, Civil.*

## PROPOSED POINT FOR CHARGE NO. 16

## BREACH OF CONTRACT – ELEMENTS OF CLAIM FOR PLAINTIFF

In this case, plaintiff has the burden of proving the following propositions:  (1) DeSoto breached the Master Lease by failing to make the required monthly payments due to DLL or by removing the leased equipment before the end of the lease term; (2) DeSoto's default on the Master Lease renders defendants/guarantors Randon J. Carvel, Lynn T. Carvel, Delta Radiology, P.C. and Zobar Properties, LLC liable to DLL as unconditional guarantors; (3) TAMS breached its contractual obligations to DLL by failing to tender payment in the amount of $375,000 to DLL upon DeSoto's default of the Master Lease; (4) TAMS breached its contractual obligations to DLL by failing to remarket the medical equipment or use its best efforts to remarket the medical equipment; and (5) TAMS breached its contractual obligations to DLL by failing to refund certain prepaid costs to DLL.

If, after considering all of the evidence, you feel persuaded that these propositions are more probably true than not true, your verdict must be for DLL on its breach of contract claims against all defendants and TAMS.  Otherwise, your verdict should be for the defendants and TAMS.[19]

---

[19] Adapted from *Federal Jury Practice and Instructions, Civil.*

**PROPOSED POINT FOR CHARGE NO. 17**

**BREACH OF CONTRACT – ELEMENTS OF CLAIM FOR DEFENDANT**

DeSoto has the burden of proving the following propositions: (1) that DeSoto is a third-party beneficiary of the contractual agreement between DLL and TAMS (I will instruct you on the law regarding third-party beneficiary claims momentarily); and (2) as a third-party beneficiary, DeSoto assumed the benefits and obligations of the contractual agreements between DLL and TAMS.

If, after considering all of the evidence, you feel persuaded that these propositions are more probably true than not true, your verdict must be for the defendant on its breach of contract claim. Otherwise, your verdict should be for DLL.[20]

---

[20] Adapted from *Federal Jury Practice and Instructions, Civil.*

## PROPOSED POINT FOR CHARGE NO. 18

## BREACH OF CONTRACT – GENERALLY[21]

Failure of a party to a contract to perform in accordance with its terms gives the other party a cause of action for breach. A breach of contract occurs when a party to the contract fails to perform any contractual duty of immediate performance, or violates an obligation, engagement or duty.

Not every nonperformance, however, is to be considered a breach of the contract. If you find that the nonperformance was trivial, and thus that the contract was substantially performed, you must also find that a breach of the contract has not occurred.

---

[21] SSCJI §15.06; In re Allegheny Imaging Institute, 69 B.R. 932 (Bankr. W.D.Pa. 1987); Johnson v. Fenestra, Inc. 305 F.2d 179 (3d Cir. 1962); In re Sugarhouse Realty, Inc., 192 B.R. 355 (Bankr. E.D.Pa. 1996).

## PROPOSED POINT FOR CHARGE NO. 19

## ELEMENTS OF CONTRACT ACTION[22]

In order for you to find for the either DLL or DeSoto on their breach of contract claims, you must find that the party bringing the breach of contract claim has proved a number of items by a preponderance of the evidence.  Each of these items will be discussed separately. But first, you need to know what constitutes a contract.

A contract is a legally enforceable agreement between two or more competent parties who have each promised to do, or refrain from doing, some lawful act. Whether oral or written, a contract is enforceable if its terms clearly express what each party intended and expected.  If the terms of the agreement are not definite and certain, any uncertainty may be clarified by examining the circumstances surrounding the bargain. The basic elements that must be present to form a contract, each of which must be proven by a preponderance of the evidence, are offer, acceptance, and consideration.

---

[22]  Adapted from SSCJI §15.00; Shovel Transfer & Storage, Inc. v. Pennsylvania Liquor Control Board, 739 A.2d 133 (Pa. 1999); Triffin v. Thomas, 462 A.2d 1346 (Pa. Super. 1983); In re Estate of Hall, 731 A.2d 617 (Pa. Super. 1999); Espenshade v. Espenshade, 729 A.2d 1239 (Pa. Super. 1999); Biddle v. Johnsonbaugh, 664 A.2d 159 (Pa. Super. 1995); First Home Sav. Bank, FSB v. Nernberg, 648 A.2d 9 (Pa. Super. 1994); app. Denied, 657 A.2d 491 (Pa. 1994); Linnet v. Hitchcock, 471 A.2d 537 (Pa. Super. 1984); Commonwealth Dep't of Transp. v. Manor Mines, Inc., 565 A.2d 428 (Pa. 1989).

**PROPOSED POINT FOR CHARGE NO. 20**

**ELEMENTS OF CONTRACT ACTION - OFFER**[23]

"Offer." A valid offer expresses a willingness to enter into a contract. The offer gives someone else the power to create the contract by making a valid acceptance of the offer and thereby "sealing the deal." In determining whether something was intended to be an actual offer, it must be examined in context, and it must be examined in light of the surrounding circumstances. You may find that one party's actions did constitute an offer when you consider the custom established in a particular trade or business, the relation between the parties, and the prior dealings between the parties.

---

[23] Adapted from SSCJI §15.00; Shovel Transfer & Storage, Inc. v. Pennsylvania Liquor Control Board, 739 A.2d 133 (Pa. 1999); Triffin v. Thomas, 462 A.2d 1346 (Pa. Super. 1983); In re Estate of Hall, 731 A.2d 617 (Pa. Super. 1999); Espenshade v. Espenshade, 729 A.2d 1239 (Pa. Super. 1999); Biddle v. Johnsonbaugh, 664 A.2d 159 (Pa. Super. 1995); First Home Sav. Bank, FSB v. Nernberg, 648 A.2d 9 (Pa. Super. 1994); app. Denied, 657 A.2d 491 (Pa. 1994); Linnet v. Hitchcock, 471 A.2d 537 (Pa. Super. 1984); Commonwealth Dep't of Transp. v. Manor Mines, Inc., 565 A.2d 428 (Pa. 1989)..

## PROPOSED POINT FOR CHARGE NO. 21

## ELEMENTS OF CONTRACT ACTION - ACCEPTANCE[24]

"Acceptance." An acceptance is a clear indication that one agrees to be bound by the terms of the offer. The acceptance must be given within the time specified by the offer, or within a reasonable time if none is specified.

If the parties have had previous dealings whereby certain methods of acceptance have become customary between them, then such will constitute valid acceptance. An example of this would be a beginning of the requested performance upon receipt of the offer, rather than sending notice of acceptance of the offer first.

An acceptance must not change the terms of the offer, or impose any additional conditions. If it does change the terms of the offer it will be considered a counteroffer, rather than an acceptance, and will therefore not create a contract.

---

[24] Adapted from SSCJI §15.00; Shovel Transfer & Storage, Inc. v. Pennsylvania Liquor Control Board, 739 A.2d 133 (Pa. 1999); Triffin v. Thomas, 462 A.2d 1346 (Pa. Super. 1983); In re Estate of Hall, 731 A.2d 617 (Pa. Super. 1999); Espenshade v. Espenshade, 729 A.2d 1239 (Pa. Super. 1999); Biddle v. Johnsonbaugh, 664 A.2d 159 (Pa. Super. 1995); First Home Sav. Bank, FSB v. Nernberg, 648 A.2d 9 (Pa. Super. 1994); app. Denied, 657 A.2d 491 (Pa. 1994); Linnet v. Hitchcock, 471 A.2d 537 (Pa. Super. 1984); Commonwealth Dep't of Transp. v. Manor Mines, Inc., 565 A.2d 428 (Pa. 1989)..

## PROPOSED POINT FOR CHARGE NO. 22

## ELEMENTS OF CONTRACT ACTION - CONSIDERATION[25]

"Consideration."  There must be consideration given by each party to a valid contract. That is, each party must have bargained to exchange his or her promise for another. The exchanged promises are either promises to perform or promises not to perform some act. The value or adequacy of the consideration given will not usually be examined, but the circumstances which show that both parties were capable of bargaining will be examined.  In that sense competent people are free to contract, and even if one makes a bad deal, he or she is bound by the agreement.

---

[25]  Adapted from SSCJI §15.00; Shovel Transfer & Storage, Inc. v. Pennsylvania Liquor Control Board, 739 A.2d 133 (Pa. 1999); Triffin v. Thomas, 462 A.2d 1346 (Pa. Super. 1983); In re Estate of Hall, 731 A.2d 617 (Pa. Super. 1999); Espenshade v. Espenshade, 729 A.2d 1239 (Pa. Super. 1999); Biddle v. Johnsonbaugh, 664 A.2d 159 (Pa. Super. 1995); First Home Sav. Bank, FSB v. Nernberg, 648 A.2d 9 (Pa. Super. 1994); app. Denied, 657 A.2d 491 (Pa. 1994); Linnet v. Hitchcock, 471 A.2d 537 (Pa. Super. 1984); Commonwealth Dep't of Transp. v. Manor Mines, Inc., 565 A.2d 428 (Pa. 1989)..

## PROPOSED POINT FOR CHARGE NO. 23

## BURDEN OF PROOF ON PARTY BRINGING ACTION – GENERALLY[26]

The party bringing an action on a contract must prove its own performance and a breach by the other party. If an affirmative contract to perform a duty is proved, the person bound to perform the duty must prove that the terms and conditions of the contract have been met. Likewise, where the acts of one party to a contract depend on the acts of the other party, the damaged party cannot support a breach of contract action without showing performance of each dependent act on its part. When suing on a contract to recover damages, it is enough to prove a breach, and it is not necessary to show that the contract was completely broken in every respect.

---

[26] SSCJI §15.22; Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001 (3d Cir. 1980); Lichter v. Mellon-Stuart Co., 305 F.2d 216 (3d Cir. 1962); Unverzagt v. Prestera, 13 A.2d 46 (Pa. 1940).

## PROPOSED POINT FOR CHARGE NO. 24

## CONTRACT TERMS – UNCONDITIONAL PROMISES[27]

As part of its breach of contract claim against DeSoto, DLL has referred to DeSoto's "unconditional promise to pay" the monthly lease payments in accordance with the terms of the Master Lease. Such a provision in a contract, like the Master Lease in this case, is oftentimes referred to as a "hell or high water" clause. DLL claims that the Master Lease contains this "unconditional promise to pay" and that DeSoto, in signing the Master Lease, agreed to make the monthly lease payments on the medical equipment under this "unconditional promise to pay" clause, without regard to the maintenance or operation of the leased medical equipment.

You are instructed that an "unconditional promise to pay" clause is strictly enforceable. This is true even if the party seeking to enforce the clause is in default, or if the party against whom payment is sought claims the equipment that it leased did not work. Stated differently, in your deliberations on DLL's claim for breach of contract against DeSoto, under the terms of the "unconditional promise to pay" clause of the Master Lease, you may not consider any claimed default by DLL or deficiencies in the equipment leased under the Master Lease.

This means that if you find that the Master Lease contained an "unconditional promise to pay" clause, you must find in favor of DLL and against DeSoto on DLL's claim for breach of the Master Lease against DeSoto.

---

[27] See, Philadelphia Savings Fund Society v. Deseret Management Corp., 632 F.Supp. 129 (E.D.Pa. 1985); See also National Equipment Rental v. J&I Carting, Inc., 73 A.D.2d 666, 423 N.Y.S.2d 205 (2nd Dept. 1979); Dixie Groceries, Inc. v. Albany Business Machines, 156 Ga.App. 36, 274 S.E.2d 81 (1980); First National Bank of Atlanta v. Harrison, 408 F.Supp. 137 (N.D.Ga. 1975).

## PROPOSED POINT FOR CHARGE NO. 25

## UNCONDITIONAL GUARANTY[28]

DLL has made a claim against Randon Carvel, Lynn Carvel, Delta Radiology, P.C. and Zobar Properties, LLC for breach of their guaranty agreements with DLL, pursuant to unconditional guaranty agreements in which they promised to pay DLL the money due and owing by DeSoto under the Master Lease, if DeSoto defaulted on its lease payments.

An "unconditional guarantee" requires the guarantor, in this case Randon and Lynn Carvel, Delta Radiology, P.C. and Zobar Properties, LLC, without limitation, to pay or perform a contract when the principal, in this case DeSoto, defaults on the contract. Stated differently, an unconditional guaranty is an absolute promise which the guarantor (i.e. the individual defendants) can only satisfy by making the payments required by the contract.

If you find that Randon Carvel, Lynn Carvel, Delta Radiology, P.C. and Zobar Properties, LLC, were unconditional guarantors of DeSoto's obligations to DLL under the Master Lease, and that defendants Randon Carvel, Lynn Carvel, Delta Radiology, P.C. and Zobar Properties, LLC, have failed to pay to DLL the remainder of the lease payments due and owing under the Master Lease, you must find in favor of DLL and against Randon Carvel, Lynn Carvel, Delta Radiology, P.C. and Zobar Properties, LLC on DLL's claims against Randon Carvel, Lynn Carvel, Delta Radiology, P.C. and Zobar Properties, LLC for breach of the guaranty agreements.

---

[28] See, Parker Hannifin Corp. v. Bradshaw, 1992 WL at *4 (E.D.Pa. 1992); Continental Leasing Corp. v. Lebo, 272 A.2d 193 (Pa. Super. 1970)

## PROPOSED POINT FOR CHARGE NO. 26

## THIRD-PARTY BENEFICIARY[29]

Defendants have alleged that they were "third-party beneficiaries" of the Program Agreement between DLL and TAMS. Since defendants have raised this allegation, it is their burden to prove, not DLL's burden to disprove. The term "third-party beneficiaries" is a legal term which, in the context of a contract, means a person or party for whose benefit a promise is made in a contract, but who is not a party to the contract.

In this instance, defendants were not parties to the Master Contract Financial Agreement between DLL and TAMS, but have made a claim for damages for the alleged breach of the contract between DLL and TAMS, as third-party beneficiaries of that contract.

In order to find for the defendants on this claim, you must find that DLL and TAMS expressed an intention to make the defendants third-party beneficiaries of their contract. Further, under the law in Pennsylvania, the defendants must prove that the intention of DLL and TAMS to make defendants the third-party beneficiaries of their contract appears in the contract itself.

This means that if you find defendants have failed to prove either an expressed intention on the part of DLL and TAMS to make defendants the third-party beneficiaries of their contractual agreement, or that DLL and TAMS expressed intention appears in the contract itself, you must find against defendants and in favor of DLL on defendants' third-party beneficiary claim.

---

[29] See, Scarpitti v. Weborg, 530 Pa. 366, 609 A.2d 147 (1992); Spires v. Hanover Fire Insurance Co., 364 Pa. 52, 70 A.2d 828 (1950); Chitlik v. Allstate Ins. Co., 34 Ohio App.2d 193, 299 N.E.2d 295, 63 O.O.2d 364.

## PROPOSED POINT FOR CHARGE NO. 27

## DAMAGES – GENERALLY[30]

Where one party to a contract breaches that contract, the other party may recover for those injuries which have been proved to you with reasonable certainty.  Any compensation awarded for an injury is termed "damages."  Generally, the measure of damages is that sum which will compensate the plaintiff for the loss sustained.

If you find that defendants or TAMS breached their respective contracts with DLL, you must then decide, based on the evidence DLL has presented, what amount of money will compensate DLL for those injuries which were a direct and foreseeable result of those breaches,

Similarly, if you find on the proofs presented by defendants, that defendants were third-party beneficiaries of the contract between DLL and TAMS, that DLL breached the contract with TAMS, and that defendants, as a third-party beneficiaries, were damaged by DLL's breach, you must then decide, based on the evidence defendants have presented, what amount of money will compensate defendants for those injuries which were a direct and foreseeable result of the breach.

---

[30] SSCJI 15.26; In re American Spinning Mills, Inc., 43 B.R. 365 (Bankr. E.D.Pa. 1984); Coleco Industries, Inc. v. Berman, 423 F.Supp. 275 (E.D.Pa. 1976), aff'd in part and remanded in part, 567 F.2d 569 (3d Cir. 1977), cert. denied, 439 U.S. 998 (1978); Reimer v. Tien, 514 A.2d 566 (Pa. Super. 1986); Scranton Penn Furniture Co. v. City of Scranton, 498 A.2d 469 (Pa.Cmwlth 1985).

## PROPOSED POINT FOR CHARGE NO. 28

## DAMAGES – ATTORNEY'S FEES AND COSTS

You have heard testimony that the Master Lease, the Program Agreement and the Guaranty Agreements each contain provisions requiring defendants and/or TAMS to pay DLL's attorneys' fees and costs in the event defendants and/or TAMS breach their obligations under their respective contracts.  These contracts have been introduced and moved into evidence, which means you will also have an opportunity to read these provisions regarding attorneys' fees and costs while you deliberate in the jury room.

If you find that defendants and/or TAMS breached their respective obligations under their respective contracts, you must then decide, based upon the terms of the respective contracts, whether defendants and/or TAMS are required to pay DLL's attorneys' fees and costs.  The amount of attorneys' fees and costs awarded will be determined by the Court.

## PROPOSED POINT FOR CHARGE NO. 29

## BURDEN OF PROOF – FRAUD

Defendants have alleged a claim of fraud against DLL and TAMS.  Since defendants have raised this allegation, it is their burden to prove, not DLL's burden to disprove.  The preponderance of the evidence burden of proof, which we discussed for a breach of contract claim, does not apply to defendants' fraud claims.  Defendants have a higher burden of proof with respect to their fraud claims, and must prove each separate element of those claims by clear, precise and convincing evidence.[31]  "In order to satisfy the 'clear, precise and convincing' standard," you must find the defendants' witnesses to be "credible, . . . the facts to which they testify [must] be distinctly remembered and the details thereof narrated exactly and in due order, and . . . their testimony . . . so clear, direct, weighty, and convincing as to enable [you] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.'"[32]

---

[31] See Rohm and Hass Co. v. Continental Cas. Co., 781 A.2d 1172, 1179 (Pa. Super. Ct. 2001).

[32] See, Lessner v. Rubinson, 592 A.2d 678, 681 (Pa. 1991).

## PROPOSED POINT FOR CHARGE NO. 30

## CLEAR AND CONVINCING

"Clear, precise and convincing evidence" is evidence that produces in your mind a firm belief or conviction as to the matter at issue.  It cannot be shown by mere insinuation.[33]

---

[33] See, Rohm and Hass Co. v. Continental Cas. Co., 781 A.2d 1172, 1179 (Pa. Super. Ct. 2001); Lessner v. Rubinson, 592 A.2d 678, 681 (Pa. 1991).

## PROPOSED POINT FOR CHARGE NO. 31

## BURDEN OF PROOF - FRAUD

Only if, after considering all of the evidence, you come to a clear conviction, without hesitation, that defendants have proven each element of their fraud claim, your verdict must be for the defendants.  Otherwise, your verdict must be for the DLL and/or TAMS.[34]

---

[34] See, Rohm and Hass Co. v. Continental Cas. Co., 781 A.2d 1172, 1179 (Pa. Super. Ct. 2001); Lessner v. Rubinson, 592 A.2d 678, 681 (Pa. 1991).

## PROPOSED POINT FOR CHARGE NO. 32

## FRAUD - ELEMENTS[35]

A person who makes a fraudulent misrepresentation of material fact to another person is responsible for all injuries resulting from that other person's reliance on the fraudulent misrepresentation. In order for the defendants to recover against DLL you must find: (1) that DLL made a misrepresentation to the defendants; (2) that the misrepresentation made by DLL to the defendants was fraudulent; (3) that the misrepresentation was of a material fact; (4) that DLL intended that the defendants would rely on DLL's misrepresentation; (5) that the defendants relied on the DLL's misrepresentation; (6) that the defendants were justified in relying on DLL's misrepresentation; and (7) that the defendants' reliance on DLL's misrepresentation was a substantial factor in bringing about the harm suffered by the defendants. You may find for the defendants on this claim only if you find that the defendants have proven each and every one of these elements by clear and convincing evidence. Otherwise, you must find for DLL.

---

[35] Adapted from SSCJI §13.14; Shane v. Hoffmann, 324 A.2d 532 (Pa. Super. 1974); See also Prosser, *Handbook of the Law of Torts* 685-86 (4th ed. 1974).

## PROPOSED POINT FOR CHARGE NO. 33

## MISREPRESENTATION[36]

  A misrepresentation is any assertion by words or conduct, which is not in accordance with the facts.  An assertion by words may, for example, arise from statements contained in the labeling or in the advertising of a product.  An assertion by conduct may, for example, arise from a usage of trade or a course of dealing.  A usage of trade is any practice or method of dealing which has been regularly observed among persons in a particular place, trade or vocation. Because a usage of trade is so regularly observed, a buyer may justifiably expect it to be observed by the seller in any sale.  A course of dealing arises from the previous conduct between the buyer and seller.  The course of dealing establishes a common basis for understanding each other's expressions or conduct.  An assertion by conduct may also arise when the seller knows the particular purpose for which the user or consumer requires the goods or product, and the seller furnishes the goods or product for that particular purpose.

---

[36] Adapted from SSCJI §13.14; <u>See</u> Restatement of Torts §525, comment b (1938); Restatement of Contracts §470(1) (1932); Restatement of Restitution §8, comment b (1936).

## PROPOSED POINT FOR CHARGE NO. 34

## FRAUDULENT MISREPRESENTATION[37]

A misrepresentation is fraudulent when the person making the misrepresentation: (a) knows that it is untrue, or (b) does not believe it is true or is indifferent as to whether it is true, or (c) by reason of special circumstance has a duty to know whether it is true.

---

[37] Adapted from SSCJI §13.14; Shane v. Hoffmann, 324 A.2d 532 (Pa. Super. 1974).

## PROPOSED POINT FOR CHARGE NO. 35

## REQUIREMENT THAT FRAUDULENT MISREPRESENTATION CAUSE DAMAGE[38]

You must determine whether DLL's alleged fraudulent misrepresentation was the legal cause of defendants' alleged damages. A fraudulent misrepresentation is a legal cause of damages resulting from action or inaction in reliance upon it if, but only if, the loss might reasonably be expected to result from the reliance.

---

[38] Rest (Second) of Torts § 548A

## PROPOSED POINT FOR CHARGE NO. 36

### MATERIAL FACT[39]

A fact is material if it is one which would be of importance to a reasonable person in determining a choice of action.  A material fact need not be the sole or even a substantial factor in inducing or influencing a reasonable person's decision.  A fact is also material if the maker of the misrepresentation knows that the person to whom it is made is likely to regard it as important even though a reasonable person would not regard it as important.

---

[39] Adapted from SSCJI §13.14; Restatement of Torts §538(2)(a) (1939), <u>accord</u>, Prosser, *Handbook of the Law of Torts* 718-19 (4th ed. 1974).

## **PROPOSED POINT FOR CHARGE NO. 37**

### **RELIANCE**[40]

     Reliance means a person would not have acted [or would not have failed to act] as he or she did unless he or she considered the misrepresentation to be true.  In order for the defendants to prevail on their fraud claim, however, they must prove not merely that they relied on a representation, but that they were justified in doing so.

---

[40] Adapted from SSCJI §13.14.

## **PROPOSED POINT FOR CHARGE NO. 38**

### **FRAUD**[41]

Fraud is never presumed, but must always be proved by clear and convincing evidence.

---

[41] Adapted from the *Federal Jury Practice and Instructions, Civil* §123.10.

## **PROPOSED POINT FOR CHARGE NO. 39**

## **FRAUD**[42]

You should assume that persons are fair and honest in their dealings until the contrary appears from the evidence.

---

[42] Adapted from the *Federal Jury Practice and Instructions, Civil* §123.10.

## **PROPOSED POINT FOR CHARGE NO. 40**

### **FRAUD**[43]

      If a transaction that is called into question is equally capable of two interpretations, one honest and the other fraudulent, it should be found to be honest.

---

[43] Adapted from the *Federal Jury Practice and Instructions, Civil* §123.10.

## PROPOSED POINT FOR CHARGE NO. 41

## NEGLIGENT REPRESENTATION[44]

A representation is not fraudulent if the plaintiff believed it stated the truth but, because of negligent expression stated what is false. Such a statement is a negligent, but not a fraudulent, representation.

---

[44] See Rest (Second) of Torts § 528

## PROPOSED POINT FOR CHARGE NO. 42

## CONSPIRACY TO COMMIT FRAUD

Defendants have alleged a claim for civil conspiracy to commit fraud against DLL and TAMS.  Since defendants have raised this allegation, it is their burden to prove, not plaintiff's burden to disprove.

"Civil conspiracy" is "a combination of two or more persons to do an unlawful or criminal act or to do a lawful act by unlawful means or for an unlawful purpose."[45]  In order to prove a conspiracy to commit fraud, defendants must prove: (1) an overt act on the part of DLL and/or TAMS in furtherance of the common purpose; (2) actual legal damages; and (3) malice on the part of DLL and TAMS.[46]  Proof of malice requires proof of an intent to cause injury without justification.  Stated differently, defendants must prove that DLL and TAMS came together for the express purpose of committing either a criminal act or intentional tort.

An intentional tort is one in which the actor expressly or impliedly intends to injure another.

---

[45] See, Landau v. Western Pennsylvania National Bank, 445 Pa. 217, 282 A.2d 335 (1971).

[46] See, McKeeman v. Corestates Bank, N.A., 2000 Pa.Super. 117, 751 A.2d 655 (2000); Mcguire v. Shubert, 722 A.2d 1087 (Pa. Super. 1998); Shaffer v. Proctor & Gamble, 412 Pa.Super. 630, 604 A.2d 289 (1992); Barmasters Bartending School, Inc. v. Authentic Bartending School, Inc., 931 F.Supp. 377 (E.D.Pa. 1996).

## PROPOSED POINT FOR CHARGE NO. 43

## CONSPIRACY TO COMMIT FRAUD – BURDEN OF PROOF

Only if defendants have proven each element of their civil conspiracy to commit fraud claim to you by full, clear and satisfactory evidence, may your verdict be for the defendants. Otherwise, your verdict must be for the DLL and/or TAMS.[47]

---

[47] See, Scully v. US WATS, Inc., 238 F.3d 497 (2001); Freeman v. Murray, 163 F.Supp.2d 478, aff'd 37 Fed.Appx. 49 (M.D.Pa. 2001).

## PROPOSED POINT FOR CHARGE NO. 44

## DAMAGES – FRAUD

If you find, by the higher standard of clear and convincing evidence, that DLL's conduct was fraudulent, and that the defendants have suffered actual damages as a result of the DLL's fraudulent conduct, then the defendants should be awarded their actual damages.

"Actual damages," with respect to a fraud claim, are those damages which are proximately caused by the defendants' reliance on a misrepresentation.[48]  Stated differently, fraud damages are limited to the actual monetary loss incurred as a result of the defendants' reliance on the misrepresentation.[49]

---

[48] See, Subar, Inc. v. Precision Plastics, Inc., 1998 WL 150992 (E.D.Pa. 1998)(citing Tunis Bros. Co., Inc. v. Ford Motor Co., 952 F.2d 715, 735 (3d. Cir. 1991); Torres v. Borzelleca, 641 F.Supp. 542, 545 (E.D.Pa. 1986).

[49] See, Killian v. McCulloch, 850 F.Supp.1239, 1252 (E.D.Pa.1994).

## PROPOSED POINT FOR CHARGE NO. 45

## MITIGATION[50]

Pennsylvania law requires a person who is injured as a result of the wrongful act of another to take all reasonable steps to minimize his/her damages. This is called a duty to mitigate damages. Defendants, in their defense to DLL's claims against them, have asserted a claim against DLL for failure to mitigate its damages. Since defendants have raised this allegation, it is their burden to prove, not DLL's burden to disprove.

The defendants have the burden of proving to you that DLL could have taken reasonable steps to minimize its damages and failed to do so. If you believe that the defendants have proven that DLL could have taken such steps and did not do so, then you must not award damages for that amount of the harm that could have been avoided.

In determining whether DLL's damages should be reduced by its alleged failure to take reasonable steps to minimize its damages, you must consider the amount of effort and the possible risk and expense that would have been involved in doing so. If there is a business risk that must be incurred, the breaching party not required to put himself/herself/itself at risk in order to mitigate its damages.

---

[50] Adapted from SSCJI §6.35; Rest. (Second) of Torts §918(1); Downs v. Scott, 191 A.2d 908 (Pa. Super. 1963); Bartuneck v. Koch, 170 A.2d 563 (Pa. 1961).

## PROPOSED POINT FOR CHARGE NO. 46

## TENNESSEE CONSUMER PROTECTION ACT

Defendants have alleged that DLL and TAMS' conduct in entering into what you have heard called a Program Agreement, without disclosing to defendants the existence, terms and parties to the Program Agreement, constitutes unfair or deceptive acts within the meaning of the Tennessee Consumer Protection Act.  Since defendants have raised this allegation, it is their burden to prove, not DLL's burden to disprove.

The Tennessee Consumer Protection Act protects Tennessee consumers from persons or businesses who engage in unfair or deceptive acts or practices while conducting any trade or commerce in whole or in part in Tennessee.[51]  The Act permits any Tennessee resident who suffers "an ascertainable loss of money or property," as a result of another person's use of unfair or deceptive acts or practices in Tennessee to sue for those damages.[52]  This means that if the unfair or deceptive acts or practices complained of by the defendants in this case did not occur in whole or in part in Tennessee, then you must find against defendants and for DLL on defendants' claims under the Tennessee Consumer Protection Act.

A deceptive act or practice under the Tennessee Consumer Protection Act is a "material representation or practice likely to mislead a reasonable consumer," or the "concealment, suppression, or omission of a material fact."[53]  If you find that the defendants have presented evidence sufficient to prove that DLL and TAMS, in entering into the Program Agreement, made a material misrepresentation to the defendants with the intent to deceive the defendants, than you should find in favor of the defendants on their claim against DLL under the Tennessee Consumer Protection Act.  If defendants have not presented such proofs, you must find for DLL.

You have heard the term "Private Label Agreement" used throughout this trial.  The Tennessee Consumer Protection Act does not apply to Private Label Agreements.  This means, if you find that the agreement between DLL and TAMS was in fact a Private Label Agreement, you must find against defendants and for DLL on defendants' claims under the Tennessee Consumer Protection Act.

---

[51] Tennessee Consumer Protection Act, §47-18-102(2).

[52] Tennessee Consumer Protection Act, 47-18-109(a)(1).

[53] Ganzevoort v. Russell, 949 S.W.2d 293, 299 (Tenn. 1997).

<u>**PROPOSED POINT FOR CHARGE NO. 47**</u>

<u>**STATUTE OF LIMITATIONS - TENNESSEE CONSUMER PROTECTION ACT**</u>

A person bringing a claim under the Tennessee Consumer Protection Act must do so within one year from his/her discovery of the unfair or deceptive act or practice and in no event more than five years after the date of the transaction which gave rise to the claim.[54]

This means that if you find that defendants knew of the alleged unfair or deceptive act or practice of DLL and TAMS a year or more before they filed their counterclaim in this case, than you must find against defendants and for DLL on defendants' claims under the Tennessee Consumer Protection Act. Since we are talking about contracts dated from February of 2000 forward, you need not concern yourselves with the five year limitation period.

---

[54] Tennessee Consumer Protection Act §47-18-110.

## PROPOSED POINT FOR CHARGE NO. 48

### PARTNERSHIP[55]

      Defendants have alleged that DLL and TAMS were undisclosed partners in the sale and financing of the medical equipment at issue in this case, and as such defendants allege that the acts of DLL may be imputed to TAMS and vise versa.  Stated differently, defendants allege that DLL, as a partner with TAMS, can be held liable for the actions of TAMS and vise versa.  Since defendants have raised this allegation, it is their burden to prove, not DLL or TAMS' burden to disprove.

---

[55] Pennsylvania Uniform Partnership Act ("PAUPA"), 15 Pa.C.S.A. §8311(a).

## PROPOSED POINT FOR CHARGE NO. 49

## PARTNERSHIP

Under Pennsylvania law, a partnership is defined as "an association of two or more persons to carry on as co-owners of a business for profit."[56]  The existence of a partnership depends on the intention of the parties.[57]  While no formal or written agreement must be executed in order for a valid partnership to exist, such an agreement must nonetheless "be composed of the clear, mutual assent on the part of two or more persons."[58]

---

[56] Pennsylvania Uniform Partnership Act ("PAUPA"), 15 Pa.C.S.A. §8311(a).

[57] See, Barbet v. Ostovar, 273 Pa.Super. 256, 417 A.2d 636 (1979); Murphy v. Burke, 454 Pa. 391, 311 A.2d 904 (1973).

[58] See, In re Jackson, 28 B.R. 559 (1983); See also, Barbet v. Ostovar, 273 Pa.Super. 256, 417 A.2d 636 (1979); Murphy v. Burke, 454 Pa. 391, 311 A.2d 904 (1973).

## PROPOSED POINT FOR CHARGE NO. 50

## PARTNERSHIP

In determining whether defendants' have proven the existence of a partnership between DLL and TAMS, you should consider the following legal principals:

(a)    Persons who are not partners as to each other are not partners as to third persons. This means, if you find that plaintiff and intervenor plaintiff did not intend to form a partnership between themselves then they cannot be considered a partnership in their dealings with defendants.

(b)    Common property ownership or part ownership does not, in and of itself, establish a partnership whether or not the co-owners share any profits made by the use of the property.

(c)    Sharing gross returns does not, in and of itself, establish a partnership whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived.

(d)    The receipt by a person of a share of the profits of a business is evidence that he/she is a partner in the business, but no inference shall be drawn if the profits were received as payment. [59]

---

[59] PAUPA, 15 Pa.C.S.A. §8312.

## PROPOSED POINT FOR CHARGE NO. 51

### PARTNERSHIP[60]

The fourth principal, the sharing of profits, is an "indispensable requisite" for a partnership. This means that if defendants have not proven to you that DLL and TAMS share in the profits of their transactions, then you must find against defendants and for DLL and TAMS on defendants' claim that DLL and TAMS are partners.

---

[60] See, Barbet v. Ostovar, 273 Pa.Super. 256, 417 A.2d 636 (1979); Murphy v. Burke, 454 Pa. 391, 311 A.2d 904 (1973); See, In re Jackson, 28 B.R. 559 (1983); See also, Barbet v. Ostovar, 273 Pa.Super. 256, 417 A.2d 636 (1979); Murphy v. Burke, 454 Pa. 391, 311 A.2d 904 (1973).

## PROPOSED POINT FOR CHARGE NO. 52

## JOINT VENTURE[61]

Defendants have also alleged that DLL and TAMS were undisclosed joint venturers in the sale and financing of the medical equipment at issue in this case, and as such defendants allege that the acts of DLL may be imputed to TAMS and vise versa. Stated differently, defendants allege that DLL, as a joint venturer with TAMS, can be held liable for the actions of TAMS and vise versa. Since defendants have raised this allegation, it is their burden to prove, not DLL or TAMS' burden to disprove.

---

[61] Duquesne Light Co. v. Woodland Hills School Dist., 700 A.2d 1038 (1997); U.S. v. USX Corp., 68 F.3d 811 (3d Cir. 1995); McRoberts v. Phelps, 391 Pa. 591, 138 A.2d 439 (1958); Snellbaker v. Hermann, 315 Pa.Super. 520, 462 A.2d 713 (1983), citing 2 Williston on Contracts 557 §318A (3d ed. 1959); Snellbaker v. Hermann, 315 Pa.Super. 520, 462 A.2d 713 (1983), citing 2 Williston on Contracts 557 §318A (3d ed. 1959); Keeler v. International Harvester Used Truck Center, 317 Pa.Super. 244, 463 A.2d 1176 (1983); Beavers v. West Penn Power Co., 436 F.2d 869 (3d Cir. 1971).

<u>**PROPOSED POINT FOR CHARGE NO. 53**</u>

<u>**JOINT VENTURE**</u>

Under Pennsylvania law, a joint venture is an association of persons or corporations who by contract (whether express or implied) agree to engage in a common enterprise for their mutual benefit.[62]  The essential element of a joint venture is an agreement between the parties (here DLL and TAMS) to share in the profits or losses of the venture.[63]  Such an agreement does not need to be expressly stated, but may be implied from the acts or conduct of the parties.[64]

A joint venture is voluntarily assumed and arises wholly from a contract.[65]  Therefore, the existence of a joint venture depends on what the parties intended in contracting together.[66]

In order for defendants to prove the existence of a joint venture between DLL and TAMS, they must have presented evidence sufficient to prove the following elements:

(a)    each party to the venture made a contribution, not necessarily of capital, but by way of services, skill, knowledge, materials or money;

(b)    the profits must have been shared among the parties;

(c)    there must have been a joint proprietary interest and a right of mutual control over the subject matter of the enterprise; and

(d)    there must be a single business transaction rather than a general and continuous transaction.[67]

If you find that defendants have proven all four of these elements, than you must find for defendants on their claim that DLL and TAMS were joint venturers.  If you find that defendants have not proven all four of these elements, than you must find for DLL and TAMS.

---

[62] <u>See</u>, <u>Duquesne Light Co. v. Woodland Hills School Dist.</u>, 700 A.2d 1038 (1997).

[63] <u>See</u>, <u>U.S. v. USX Corp.</u>, 68 F.3d 811 (3d Cir. 1995).

[64] <u>See</u>, <u>McRoberts v. Phelps</u>, 391 Pa. 591, 138 A.2d 439 (1958).

[65] <u>See</u>, <u>Snellbaker v. Hermann</u>, 315 Pa.Super. 520, 462 A.2d 713 (1983), <u>citing</u> 2 Williston on Contracts 557 §318A (3d ed. 1959).

[66] <u>See</u>, <u>Snellbaker v. Hermann</u>, 315 Pa.Super. 520, 462 A.2d 713 (1983), <u>citing</u> 2 Williston on Contracts 557 §318A (3d ed. 1959).

[67] <u>See</u>, <u>Keeler v. International Harvester Used Truck Center</u>, 317 Pa.Super. 244, 463 A.2d 1176 (1983); <u>Beavers v. West Penn Power Co.</u>, 436 F.2d 869 (3d Cir. 1971).

## PROPOSED POINT FOR CHARGE NO. 54

## EFFECT OF INSTRUCTION AS TO DAMAGES[68]

The fact that I have instructed you as to the proper measure of damages should not be considered as indicating any view of mine as to which party is entitled to your verdict in this case. Instructions as to the measure of damages are given for your guidance only in the event you should find in favor of any party in the case in accordance with the other instructions.


Respectfully submitted
McCARTER & ENGLISH, LLP


_____
Rosetta B. Packer (Attorney ID No. 28357)
Peter J. Boyer (Attorney ID No. 25517)
Kevin J. Burke (Attorney ID No. 87214 )
Mellon Bank Center
1735 Market Street, Suite 700
Philadelphia, PA 19103
(215) 979-3800

Attorneys for Plaintiff
Dated: May 7, 2004                     De Lage Landen Financial Services, Inc

_____

[68] Adapted from *Federal Jury Practice and Instructions, Civil* §106.02.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| De Lage Landen Financial Services, Inc. | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 02-CV-2810 |
| | : | |
| v. | : | Honorable Ronald L. Buckwalter |
| | : | |
| Toshiba America Medical Systems, Inc. | : | |
| | : | |
| Intervenor Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DeSoto Diagnostic Imaging, LLC., Randon J. | : | |
| Carvel, Lynn T. Carvel, Delta Radiology, P.C. | : | |
| and Zobar Properties, LLC. | : | |
| | : | |
| Defendants. | : | |

## <u>CERTIFICATE OF SERVICE</u>

I, Peter J. Boyer, Esquire, hereby certify that on May 7, 2004, I caused a true copy of the

foregoing Plaintiff's Pretrial Memorandum and this Certificate of Service to be served upon the

following counsel in this action in the manner indicated:

John Chesney, Esquire
Drinker Biddle & Reath, LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA  19103
**Via Hand Delivery**

William Matthews, Esquire
Saul Ewing LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA  19102
**Via Hand Delivery**

Kyle P. Tate, Esquire
c/o William Matthews, Esquire
Centre Square West
1500 Market Street, 38th Fl.
Philadelphia, PA  19102
**Via Hand Delivery**

Lynanne B. Wescott, Esquire
The Westcott Law Firm
Two Penn Center Plaza, Suite 200
Philadelphia, PA 19102
**Via Hand Delivery**

_____
**PETER J. BOYER**