# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DELAGE LANDEN FINANCIAL : 
SERVICES, INC., :     CIVIL ACTION NO. 2:02CV2810
        Plaintiff, :
  :     HON. RONALD L. BUCKWALTER
TOSHIBA AMERICA MEDICAL :
SYSTEMS, INC. :
        Plaintiff/Intervenor, :
  :
     v. :
  :
DESOTO DIAGNOSTIC IMAGING, :
LLC., RANDON J. CARVEL, LYNN T. :
CARVEL, DELTA RADIOLOGY, P.C. :
and ZOBAR PROPERTIES, LLC :
  :
        Defendants. :
  :

## <u>ORDER</u>

     AND NOW, this _____ day of _____, 2004, upon consideration of the Motion

in Limine of Defendants to Bar Use of the Terms Such as "Medicare Fraud," "Fraudulent

Billing" or "Improper Billing"; to Bar Claudia Murray's Testimony and to Bar Mark L. Winkler,

M.D. from Testifying to Dr. Carvel's Billing Practices and TAMS' opposition thereto, it is

hereby ORDERED that the Motion is DENIED.


                     BY THE COURT:


                     _____
                     Ronald L. Buckwalter, U.S.D.J.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

DELAGE LANDEN FINANCIAL                  :
SERVICES, INC.,                          :     CIVIL ACTION NO. 2:02CV2810
                    Plaintiff,           :
                                         :     HON. RONALD L. BUCKWALTER
TOSHIBA AMERICA MEDICAL                  :
SYSTEMS, INC.                            :
                    Plaintiff/Intervenor, :
                                         :
            v.                           :
                                         :
DESOTO DIAGNOSTIC IMAGING,               :
LLC., RANDON J. CARVEL, LYNN T.          :
CARVEL, DELTA RADIOLOGY, P.C.            :
and ZOBAR PROPERTIES, LLC                :
                                         :
                    Defendants.          :
_____         :

**TOSHIBA AMERICA MEDICAL SYSTEMS, INC.'S MEMORANDUM
OF LAW IN OPPOSITION TO MOTION IN LIMINE
OF DEFENDANTS TO BAR USE OF THE TERMS SUCH AS "MEDICARE FRAUD,"
"FRAUDULENT BILLING" OR "IMPROPER BILLING"; TO BAR CLAUDIA
MURRAY'S TESTIMONY AND TO BAR MARK L. WINKLER, M.D.
FROM TESTIFYING TO DR. CARVEL'S BILLING PRACTICES**

**I.     INTRODUCTION**

        Defendants have disobeyed this Court's Order requiring them to produce documents

related to its billing practices, including patient records, dictation reports, referring physician

forms and billing records of Lynn Carvel, PLLC.  The Court denied TAMS' motion for sanctions

based upon this misconduct, determining that TAMS could and should have sought sanctions

immediately upon Defendants' violation of the Order rather than trying to resolve disputes with

Defendants as to whether the Order had been complied with.[1]  Now, Defendants ask the Court not merely to punish them for their improper tactics, but to reward them by precluding TAMS from presenting the evidence that it does have regarding DeSoto Diagnostic Imaging, LLC's ("DeSoto") improper "billing practices" claiming that such evidence is "irrelevant" and without "proper foundation."

In fact, as this Court has already ruled on two separate occasions, the issues that DeSoto would like to conceal from the jury are highly relevant to the claims and issues in this case. Furthermore, Defendants are and should be deemed estopped to attack, or to have waived any right to attack, the "foundation" of such evidence due to their continued concealment, in the face of this Court's Order, of the complete documents and information relating to Defendants' relevant practices

In this regard, despite DeSoto's withdrawal of its lost profits claims, the question of whether DeSoto engaged in the types of activities that it would like to conceal from the jury is directly and indisputably relevant to a number of issues that remain in this case.  In particular, Defendants' conduct is highly relevant to at least the following issues:

1.      Whether TAMS or DeSoto is responsible for anything less than optimal performance that DeSoto experienced in operating the Toshiba equipment;

2.      Whether certain elements of their damages claims that Defendants have *not* withdrawn – such as the loss of income Randon Carvel supposedly incurred as a result of

---

[1] As set forth in TAMS' Motion for Sanctions, Defendants originally claimed not to have violated the Order and TAMS, in good faith but apparently unwisely, sought to explain in detail to Defendants why they had not complied and to gain their compliance.  TAMS did so, quite frankly, because it believed that it would be more important to obtain, so that it could use, the information ordered to be produced, rather than to seek sanctions which the Court might or might not grant.

supposedly having to quit his job to help out at DeSoto – can fairly be laid at TAMS' door; and

3.    Whether a jury should find the testimony of Dr. Lynn Carvel, DeSoto's key, and on some issues only, witness, to be credible or unworthy of belief.

## II.    FACTUAL BACKGROUND

As this Court is by now well aware, this case arises out of the breach by DeSoto of a lease covering a variety of medical diagnostic imaging equipment and the related breaches by the other Defendants of guarantees given to secure Desoto's performance under the Lease.

Defendants will, if permitted, seek to justify their conduct at trial through a variety of contentions, including, among other things, claims that the Toshiba equipment they leased was misrepresented to them, that it did not perform in accordance with supposed oral representations and warranties and that they were entitled to remove the equipment due to deficiencies in its performance.[2]    For example, Defendants allege: (1) that "the equipment did not perform the essential purpose for which it was intended" (Counterclaim I, ¶76); (2) that the equipment was "not suitable for its intended purpose [and] was not timely or adequately repaired" (Counterclaim IV, ¶113); (3) that "the subject equipment routinely produced poor images that were not capable of being used by the physicians for diagnostic purposes" (Counterclaim II, ¶95); and (4) that "the

---

[2] As the Court is aware, TAMS believes that it would be error to allow DeSoto to pursue claims based upon oral representations and warranties, in view of DeSoto's own representations to TAMS and DLL that it was not relying upon any oral representations or warranties in connection with the relevant transactions.  DeSoto's Motion in Limine is, however, based upon the (hopefully erroneous) assumption that DeSoto will be permitted to ignore the parol evidence rule and to introduce testimony concerning alleged warranties that were never in fact made.  If DeSoto should be allowed to offer such evidence, TAMS respectfully submits that the Court would be compounding the error in allowing such evidence if it were to preclude TAMS from introducing evidence that would show that DeSoto's problems did not arise from the sources DeSoto claims they did but, rather, from other sources.

non-conformity of the equipment substantially impaired its value to defendants . . . and caused undue hardship of [sic] the defendants' business" (Counterclaim IX, ¶143).

To the extent evidence on these claims were to be allowed (which it should not), it is self evident that TAMS would have to be allowed to dispute them.  In order to dispute them, TAMS would intend (and would be entitled) to present a comprehensive picture of DeSoto's imaging operations to the jury that would allow the jury to determine whether, in fact, any particular problems DeSoto had were of its own making.  As shown below, DeSoto's practices in terms of the procedures it performed and its billing practices are simply part of the overall picture that TAMS would need, and would be entitled, to present to the jury in order to build a complete picture of the situation "on the ground" at DeSoto.

### III.    ARGUMENT

#### A.    The Information That DeSoto Seeks To Preclude Is Relevant and Highly Probative

DeSoto asserts, but does nothing whatever to show, that the subject matter is irrelevant. Instead, DeSoto summarily states that presentation of evidence regarding DeSoto's "billing practices" and the use of the terms "Medicare Fraud" and "Fraudulent Billing" would be prejudicial and unfair to Defendants.   Under Federal Rule of Evidence 401, "relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.  "The standard of relevance established by [Rule 401] is not high." *Carter v. Hewitt*, 617 F.2d 961, 966 (3d Cir. 1980).

This Court has already ruled on two separate occasions that DeSoto's billing practices are relevant to his litigation, albeit in the context of the broader notion of relevance applicable to discovery proceedings.  First, this Court denied Defendants' Emergency Motion for Protective

Order to prevent TAMS from inquiring into DeSoto's billing practices. *See* Exh. A, December 2, 2003 Order. Second, on December 2, 2003 this Court granted TAMS' Emergency Motion to Compel information and documents relating to DeSoto's business and billing practices, including billing records, patient records, dictation reports, and referring physician forms. *See* Exh. B, December 2, 2003 Order.

In their Motion in Limine, Defendants' "argument" is basically the bald and unsupported statement that "testimony as to DeSoto's billing practices "is completely unnecessary to the claims of this case" and that it is "not relevant to the performance of the equipment." Defendants correctly note that they have withdrawn all claims for economic loss in the form of lost profits or revenues, but incorrectly conclude that this makes their business and billing practices irrelevant. This "argument" is without merit for multiple reasons.

  i.  The Information DeSoto Seeks To Preclude Is Directly Relevant To
      One Claim DeSoto Seeks To Advance, Whether The Equipment Failed
      Of Its Essential Purpose

One of the central claims that DeSoto seeks to advance is the proposition that the Toshiba medical imaging equipment that DeSoto leased performed so badly as to fail of its essential purpose, *i.e.,* performed so badly that DeSoto was justified in rejecting it after keeping and operating it for fourteen months. In its pleadings, DeSoto variously alleges: (1) that "the equipment did not perform the essential purpose for which it was intended" (Counterclaim I, ¶76); (2) that the equipment was "not suitable for its intended purpose [and] was not timely or adequately repaired" (Counterclaim IV, ¶113); (3) that "the subject equipment routinely produced poor images that were not capable of being used by the physicians for diagnostic purposes" (Counterclaim II, ¶95); and (4) that "the non-conformity of the equipment

substantially impaired its value to defendants… and caused undue hardship of [sic] the defendants' business" (Counterclaim IX, ¶143).

In opposing these contentions, TAMS intends to rely, in part, on the degree to which Desoto was able to perform procedures using the Toshiba equipment, to use the images created as a result of those procedures for diagnostic purposes, to meet its commitments to referring physicians and to bill and collect for the procedures performed. The extent to which DeSoto was able to use, and profit from the use of, the Toshiba equipment is clearly relevant to the question of whether the equipment was fit for its essential purpose, whether it produced diagnostic quality images, whether it was repaired adequately and timely and whether it hindered Defendants in the conduct of their business. The information contained in DeSoto's financial and billing records, both for the period while the Toshiba equipment was installed and thereafter, is clearly one category of information that is TAMS is entitled to present to a jury. Indeed, Defendants cannot shield such relevant information from the jury on the theory that its production might "prejudice" them by showing that they have operated their business unlawfully.

      ii.    The Information DeSoto Seeks To Preclude Is Directly Relevant To The Issue of Whether TAMS Or DeSoto Should Be Held Responsible For Any Less Than Optimal Results That DeSoto Obtained Using Its Toshiba Equipment

At least equally important to the point made in the preceding section is the point that TAMS (assuming DeSoto is allowed to advance the case it seeks to advance) is entitled to present evidence to the jury that DeSoto's practices, as confirmed by their billing and operational records, actually *contributed to* the problems that DeSoto claims are "equipment problems". There are at least two respects in which the relevant records would tend to make this conclusion "more probable" within the meaning of F.R.Evid. 401.

One claim that DeSoto has advanced is that the heat capacity of the Asteion CT Scanner was "insufficient" in that it required cool down time between repeat full body scans of patients. As former DeSoto technologist Brian Gibbs confirmed in his deposition, this was an issue that presented itself in situations where DeSoto was doing "with and without" studies of patients – that is, studies that first scanned a patient without any "contrast" having been injected and then scanned a patient with contrast. *See* Exh. C, Deposition of Brian Gibbs at 42-50. Both Mr. Gibb and other former technologists testified that "with and without" studies should not be done routinely, but that Dr. Carvel did them routinely and without regard to whether they were requested by the referring physician or indicated by patient history. *Id.* 46-47. TAMS is entitled to show the jury that Dr. Carvel's desire to perform and bill for excessive and unlawful studies, not equipment inadequacy, caused her to use the equipment in ways that would not have been anticipated by TAMS, with the result that Dr. Carvel could seek to misrepresent its inherent characteristics and limitations as "defects". The fact that the studies in question *were* unlawful and excessive is relevant to this issue. If they were not, then Dr. Carvel's position would be less unreasonable; if they were, then it is more unreasonable.

Relatedly, DeSoto has claimed that it lost qualified radiological technologists due to their dissatisfaction with the Toshiba equipment. TAMS contends, and numerous former DeSoto employees including Paul King, the former Administrator agree, that DeSoto suffered significant technologist turnover, *not* because of the Toshiba equipment, but because they became concerned about precisely the practices that DeSoto claims did not take place – unprofessional imaging practices, the unlawful performance of unnecessary procedures and unlawful billing practices.

TAMS is *absolutely entitled* to present evidence to establish: (1) that DeSoto suffered unusually high technologist turnover; (2) that it did so, not because of the equipment, but because of the unprofessional and deleterious working atmosphere at DeSoto, *including but not limited to* Dr. Carvel's insistence on performing and billing for unlawful procedures; and (3) that many of the problems that DeSoto seeks to blame on the equipment were in fact the result of DeSoto's inability to retain staff due to its own improper business practices, inability to replace its original modality registered technologists with modality registered or experienced technologists and unwillingness to purchase proper training for those replacement technologists it had to hire because it drove their predecessors away.

      iii.    The Information DeSoto Seeks To Preclude Is Directly Relevant To The Credibility Of DeSoto's Main, And In Some Respects Only, Witness

As Defendants freely admit (1) according to their own employee, Ms. May Vokaty, Dr. Carvel is herself in charge of DeSoto's billing and (2) Dr. Carvel was allowed to testify during her Rule 30(b)(6) deposition that DeSoto did not perform and bill procedures fraudulently (*Id.* at 6). Dr. Carvel's credibility, *vel non,* will be one of the major issues in this case.[3] Here, DeSoto's billing practices, as well as related records, will show, TAMS believes, that Dr. Carvel testified falsely under oath in her deposition, a fact that is obviously highly relevant to her credibility on other contested issues in this case.

Whatever the validity of this argument might be if Dr. Carvel's testimony existed in a vacuum, it is unquestionably valid in this case, because Dr. Carvel has claimed that DeSoto's

---

[3] Among other reasons, Dr. Carvel's credibility is central because she claims that DeSoto should not be held to what they bought when she signed written purchase orders because of alleged oral representations that she would be receiving equipment other than that which she actually ordered. Most egregiously, Dr. Carvel claims that although she ordered a fixed dual head

(continued...)

technologist turnover was attributable to the Toshiba equipment, not to the conditions at and practices engaged in at DeSoto. Given that those practices are at issue for the reasons outlined above, evidence that Dr. Carvel has lied under oath about what those practices are in an effort to avoid the conclusion that they contributed to such imaging difficulties as DeSoto may have experienced is highly relevant and self-evidently admissible in this case.

            iv.    The Information DeSoto Seeks To Preclude Is Relevant To Defendants'
                    Claim Based Upon Randon Carvel's Alleged Loss of Income

One of the damages claims that Defendants have *not* thrown overboard is the contention that DeSoto was "damaged" due to income that Mr. Randon Carvel allegedly lost as a result of Toshiba's equipment supposedly being defective. The story is that Mr. Carvel was required to leave his former employment to help out at DeSoto due to the burdens on DeSoto's other staff that resulted from the fact that the Toshiba equipment did not work properly.

TAMS intends to dispute the validity of this claim and is entitled to dispute it by any legitimate means. Specifically, TAMS is entitled to present evidence from which a jury could reasonably conclude that, assuming Mr. Carvel joined DeSoto because DeSoto needed help in its operations, such additional help was required only because (a) DeSoto significantly inflated its level of activity, and the demands on other employees, through the routine performance of and billing for excessive and fraudulent procedures and (b) the high turnover created by the conditions and practices engaged in at DeSoto, not the equipment, adversely affected morale and efficiency at DeSoto. Should a jury believe that Mr. Carvel was required to quit his prior job

---

(..continued)
camera, she thought she would be receiving a variable dual head camera – this despite having been shown the camera she would actually be receiving on a site visit to Pensacola, Florida.

simply to help DeSoto keep up with a pattern of fraudulently excessive procedures and billing,

that would defeat the lost income claim.

**B.**     **The Probative Value of the Information That DeSoto Seeks To Preclude Substantially Outweighs Any Prejudice That May Be Suffered by Defendants**

Under Federal Rule of Evidence 403, relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Fed. R. Evid. 403. However, "Rule 403 does not act to exclude any evidence that *may be prejudicial*, but only evidence the prejudice from which substantively outweighs its probative value." Charles E. Wagner, Federal Rules of Evidence Case Law Commentary 212 (1999-2000). "Federal Rule 403 creates a presumption of admissibility, and . . . district courts may utilize the rule only rarely to cause the exclusion of evidence." *United States v. Universal Rehabilitation Servs. (PA), Inc.*, 205 F.3d 657, 664 (3d Cir. 2000) (en banc).

Consequently, to exclude otherwise relevant evidence under Rule 403, the court must balance the probative value of the evidence against the dangers of unfair prejudice. *See Shushereba v. R.B. Indus., Inc.*, 104 F.R.D. 524, 531 (W.D. Pa. 1985). Interestingly, Defendants do not even attempt to engage in the balancing that Rule 403 requires. Instead, Defendants merely recite their mantra that terms such as "Medicare fraud" and "improper billing" would be highly prejudicial. To the extent DeSoto engaged in Medicare fraud and improper billing, and to the extent those practices are shown to have caused or contributed to the problems that DeSoto tries to lay off on the Toshiba equipment, that might well be "prejudicial" to Desoto. It will not, however, be *unfairly* prejudicial, and Rule 403, by its terms, does not offer a party protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case; rather the rule only protects against evidence that is *unfairly prejudicial*. *See Fisher v. Accor*

11

*Hotels, Inc.*, No. 02-CV-8576, 2004 U.S. Dist. LEXIS 1551, at *8 (E.D. Pa. Feb. 2, 2004) (citing *Carter*, 617 F.2d at 972). (emphasis added).

As set forth above, DeSoto's practices – including whether it committed Medicare fraud or engaged in improper billing practices, thus driving its employees away to the detriment of its ability to operate the Toshiba equipment through adequately trained technologists – is highly relevant to the issues Defendants seek to make central to this case, the question of whether and to what extent operational issues resulted from equipment problems or from DeSoto's own conduct. TAMS clearly entitled to present such evidence to the jury. *See Papizzo v. O. Robertson Transport, Ltd.*, 401 F. Supp. 540, 542 (E.D. Mich. 1975) (holding that rules of evidence generally favor admissibility of evidence which is logically probative of a material fact).

The easiest way to think about this issue is, perhaps, to assume for the moment that the Defendants are allowed to defend their breach of the lease on the basis that the leased equipment did not function properly. (TAMS believes that allowing such a "defense" would be error, but Defendants unquestionably seek to present it). If that defense (and related counterclaims) are at issue, then the evidence Defendants here seek to exclude would be "prejudicial" to Defendants only in precisely the same way as evidence offered by DeSoto designed to establish that the equipment did not work properly would be "prejudicial" to TAMS. The evidence, in short, would be highly probative on an issue in the case and that fact would, therefore, outweigh any possible prejudicial effect on Defendants. *See Wright v. Montgomery County,* No. 96-4597, 1998 U.S. Dist. LEXIS 19162, at *20-21 (E.D. Pa. Dec. 3, 1998) (holding that defendant could present evidence of fraud on the part of plaintiff because it was probative to claims in case and outweighed any prejudice).

**C.**    **Excluding TAMS' Expert Testimony Regarding DeSoto's Billing Practices Would Only Serve to Reward Defendants' Contumacious Discovery Conduct**

Defendants further seek to exclude the expert report of Claudia Murray and preclude another of TAMS' experts, Dr. Mark Winkler, from testifying as to DeSoto's improper billing techniques.  In her expert report (a copy of which is attached hereto as Exh. D)[4], Ms. Murray opines that "[b]ased on our review . . . we have identified various billing patterns that are consistent with DeSoto having overbilled for (a) unnecessary services and/or (b) services it did not perform."  Ms. Murray further states that the "degree, however, to which this can be definitively proven, requires the review of documents that we understand have been requested, but not yet produced, in this litigation.  These documents include the radiology requisitions from the referring physicians and the radiology reports for each service in question."

The documents needed by Ms. Murray to *definitively prove* that DeSoto had committed Medicare fraud are precisely the same documents that Defendants refused to produce in a usable and readable format and which were the subject of TAMS' most recent Motion for Sanctions against Defendants.  The Court denied TAMS motion, *inter alia*, because the Court found that TAMS should have filed its motion in December when the Order was not complied with.

TAMS felt, albeit in this Court's view erroneously, that it was under a duty, in accordance with the law of the this Circuit, to meet and confer with DeSoto prior to moving for relief before this Court, particularly since Defendants claimed that they had complied, or at least

---

[4] Although Defendants purport to preclude Ms. Murray's expert report, they did not even attach a copy of the report for the Court's review.

tried to comply with this Court's Order.[5]  While this Court has determined that TAMS' decision to meet and confer in good faith should result in denial of the sanctions TAMS requested, it should not reward Defendants for their contumacious conduct in refusing to produce documents or to do so in a usable format.  With their customary brazenness, Defendants request precisely such a reward in the form of a ruling precluding Ms. Murray's expert report for conduct that any Court should in fact find repugnant.

Furthermore, and contrary to Defendants' claims, Ms. Murray's report *does* contain an "opinion", mainly that various billing patterns employed by DeSoto were consistent with overbilling for unnecessary services and for services it did not perform.  This opinion was based on a review of an electronic sample of 1,636 line-item services relating to Medicare patients and 1,1,92 line-item services relating to Medicaid, Blue Shield, other insurers and self-pay patients. In the review, Ms. Murray identified numerous billing patterns that were consistent with unlawful overbilling.

Ms. Murray's opinion certainly is "reliable", that is, it is based on objective methods and procedures rather than on "subjective belief or unsupported speculation."  *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 742 (3d Cir. 1994).  Ms. Murray's opinion directly flows from the billing records reviewed and her over twenty-five years of experience in the health care field. Consequently, Ms. Murray should be permitted to testify as to the opinions contained in her report.  In particular, Ms. Murray's report supports the testimony of those former Desoto

---

[5]  TAMS will not rehash the issues here, but Defendants claimed to have produced information that they had not produced and they claimed to have produced information in usable form that had not in fact been so produced.  TAMS' efforts to resolve these issues without seeking this Court's involvement were fully set forth in TAMS' motion for sanctions.

technologists who claim that Dr. Carvel engaged in unlawful procedures and billing practices and who have testified that this led to their unwillingness to remain associated with DeSoto.

As to Dr. Winkler, Defendants suggest that the portions of Dr. Winkler's expert report relating to DeSoto's billing practices should be excluded because he "asserts no opinion" regarding improper billing practices and that any testimony offered by Dr. Winkler regarding DeSoto's billing practices is "irrelevant." A review of Dr. Winkler's expert report (which is attached hereto as Exh. E) shows that his discussion of the billing practices employed by DeSoto relates directly to the performance of the equipment, a principal issue in this case. As Dr. Winkler's report states, DeSoto "grossly over-utilized contrast on spinal examinations" which diminished the technologist's ability to focus on obtaining a high quality examination. This over-utilization of contrast on spinal studies also lengthened exam time which would "increase the likelihood of patient movement" which would degrade image quality. *See* Exh. E at 10. In short, here, as elsewhere, evidence derived from DeSoto's billing practices directly relates to the performance of the equipment at issue, making such evidence highly relevant to this case. Consequently, Dr Winkler should be permitted to testify regarding DeSoto's billing practices.

IV.    <u>**CONCLUSION**</u>

For all of the foregoing reasons, Defendants' Motion in Limine to Bar Use of the Terms

Such as "Medicare Fraud," "Fraudulent Billing" or "Improper Billing"; to Bar Claudia Murray's

Testimony and to Bar Mark L. Winkler, M.D. from Testifying to Dr. Carvel's Billing Practices

should be denied in all respects.

Dated: May 12, 2004

_____
John Chesney (Attorney I.D. No. 24458)
Julianne Peck (Attorney I.D. No. 79966)
Jonathan Sturz (Attorney I.D. No. 88153)
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996
(215) 988-2700
Attorneys for Plaintiff/Intervenor
Toshiba America Medical Systems, Inc.

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that today I caused a true and correct copy of

**Toshiba American Medical Systems, Inc.'s Response to Defendants Motion in Limine to**

**Bar Use of the Terms Such as "Medicare Fraud," "Fraudulent Billing" or "Improper**

**Billing"; to Bar Claudia Murray's Testimony and to Bar Mark L. Winkler, M.D. from**

**Testifying to Dr. Carvel's Billing Practices** to be served upon counsel of record for all of the

other parties to this proceeding by Hand Delivery, at the following addresses:

> Kyle Tate
> c/o William Matthews, Esquire
> SAUL EWING LLP
> Centre Square West
> 1500 Market Street, 38th Floor
> Philadelphia, PA 19102
>
> Rosetta B. Packer, Esquire
> MCCARTER & ENGLISH
> Mellon Bank Center, Suite 700
> 1735 Market Street
> Philadelphia, PA 19103-7501
>
> Lynn Wescott, Esquire
> The Wescott Law Firm
> Two Penn Center Plaza, Suite 200
> Philadelphia, PA  19102

Dated:  May 12, 2004                       _____

                                           Jonathan Sturz